## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ELECTRONIC PRIVACY INFORMATION CENTER** ) | |
| **1718 Connecticut Ave., NW** ) | |
| **Suite 200** ) | |
| **Washington, DC 20009** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | **Civ. No. 1:13-cv-01961** |
| ) | |
| **UNITED STATES DEPARTMENT OF JUSTICE** ) | |
| **Washington, DC 20530** ) | |
| ) | |
| **Defendant** ) | |

## <u>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION</u>

This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking the expedited processing and release of agency records regarding the semiannual congressional Pen Register/Trap and Trace reports. Defendant Department of Justice ("DOJ") has acknowledged that the requested information fits squarely within the narrow category for which Congress has mandated expedited processing, and, on November 5, 2013, granted EPIC's request for such expeditious treatment. Nonetheless, in violation of the FOIA and its own regulations, DOJ has failed to process EPIC's FOIA request within even the twenty business-day timeframe for processing a standard FOIA request not entitled to expedited treatment.

DOJ's failure to process EPIC's request – or to identify a date by which it expects to complete its processing – is a clear violation of the law. Because, as DOJ concedes, time is of the essence and because the information at issue concerns a matter of extraordinary public interest,

EPIC seeks the Court's immediate consideration of this matter and entry of an order compelling

DOJ to process and disclose the requested records within twenty days.

### Statement of Facts

**A.      The Foreign Intelligence Surveillance Act and the Use of Pen Registers/Trap and Trace to Collect Bulk E-mail and Internet Metadata**

Under the Foreign Intelligence Surveillance Act ("FISA"), the government can apply for

an order from the Foreign Intelligence Surveillance Court ("FISC") authorizing the use of a Pen

Register/Trap and Trace to obtain "dialing, routing, addressing, and signaling information." 18

U.S.C. § 3127(3)-(4) (2013); 50 U.S.C. § 1842 (2013). Under amendments to the FISA in the

USA PATRIOT Act, this information can pertain to either wire (telephone) or electronic

(Internet) communications. Pub. L. 107-56 § 216(c) (2001); *see also* 18 U.S.C. § 3127(3)-(4)

(2013). Congress again amended the law in 2006 to also allow the collection of certain

identifying information about "the customer or subscriber using the service covered by the [FISC

order]". Pub. L. 109-177 § 128(a) (2006); *see also* 50 U.S.C. 1842(d)(2)(C)(i) (2013). A FISC

order may only be used "to obtain foreign intelligence information not concerning a United

States Person or to protect against international terrorism or clandestine intelligence activities."

50 U.S.C. § 1842(a)(1) (2013).

On June 27, 2013, *The Guardian* reported that the NSA had received authorization to

collect bulk email and Internet metadata using the Pen Register and Trap and Trace provisions of

the FISA on July 14, 2004. Glenn Greenwald & Spencer Ackerman, *NSA Collected US Email

Records in Bulk For More Than Two Years Under Obama*, The Guardian (June 27, 2013),.[1]

According to *The Guardian*, the surveillance program was authorized by Judge Kollar-Kotelly of

the Foreign Intelligence Surveillance Court ("FISC"). *Id.* On November 18, 2013, less than five

---

[1] http://www.theguardian.com/world/2013/jun/27/nsa-data-mining-authorised-obama.

months after *The Guardian*'s report and during the pendency of EPIC's FOIA Request, the

Office of the Director of National Intelligence ("ODNI") released an undated and previously

unpublished FISC opinion signed by Judge Kollar-Kotelly. IC On the Record, *DNI Clapper*

*Declassifies Additional Intelligence Community Documents Regarding Collection Under Section*

*501 of the Foreign Intelligence Surveillance Act* (Nov. 18, 2013).[2] Judge Kollar-Kotelly found

that the Pen Register/Trap and Trace provisions allowed the National Security Agency ("NSA")

to collect certain redacted categories of bulk Internet and e-mail metadata. [Redacted], PR/TT-

[Redacted] (FISC).[3] Judge Kollar-Kotelly found that the government's proposal "satisfie[d] each

of the elements of the applicable statutory definition of a 'pen register' [or a 'trap and trace.']"

*Id*. at 13; 15.

The program allegedly continued until 2011, when it was discontinued for "operational

and resource reasons." Greenwald, *supra*. Senators Ron Wyden and Mark Udall explained:

> We are quite familiar with the bulk email records collection program that operated
> under the USA Patriot Act and has now been confirmed by senior intelligence
> officials. We were very concerned about this program's impact on Americans'
> civil liberties and privacy rights, and we spent a significant portion of 2011
> pressing intelligence officials to provide evidence of its effectiveness. They were
> unable to do so, and the program was shut down that year.

Press Release, Mark Udall, Udall, Wyden Statement on the Disclosure of Bulk Email Records

Collection Program (July 3, 2013).[4] There is no evidence that the program has been re-instituted

since its cessation in 2011.

---

[2] http://icontherecord.tumblr.com/post/67419963949/dni-clapper-declassifies-additional-intelligence.

[3] *Available at* http://www.dni.gov/files/documents/1118/CLEANEDPRTT%201.pdf.

[4] *Available at* http://www.markudall.senate.gov/?p=press_release&id=3552.

The FISA requires the Attorney General to make a semiannual report on the use of Pen

Registers and Trap and Trace to the Permanent Select Committee on Intelligence of the House of

Representatives, the Select Committee on Intelligence of the Senate, and the Committees on the

Judiciary of the House of Representatives and the Senate. 50 U.S.C. § 1846 (2013). The reports

must include the number of applications granted and the number of applications modified under

the FISA, as well as the total number of installations approved and denied under emergency

circumstances. *Id*. These reports would include any orders for bulk collection of information.

Statistical reports of this type provide essential information about government

surveillance programs, particularly when government claims that operational details of the

program are too sensitive to release to the public. Similar reports that provide statistics related to

the use of other FISA authorities have been made publicly available on a routine basis. *See*, *e.g.*,

EPIC, Foreign Intelligence Surveillance Act Court Orders 1979-2012.[5] However, the Department

of Justice has never released the Pen Register/Trap and Trace reports to the public.

### B.   The Freedom of Information Act and Its Progeny

The Freedom of Information Act was signed in to law by President Lyndon Johnson on

July 4, 1966. Pub. L. 89-487 (1966). The FOIA's purpose is "to ensure an informed citizenry,

vital to the functioning of a democratic society, needed to check against corruption and to hold

governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 352, 261

(1976). In 1996, Congress passed the Electronic Freedom of Information Act Amendments that,

*inter alia*, required that agencies process certain categories of documents on an expedited basis.

Pub. L. 104-231 § 8 (1996). Typically, a FOIA Request must be processed within twenty

business days. 5 U.S.C. § 552(a)(6)(A)(i) (2013). However, expedited processing is to be granted

---

[5] http://epic.org/privacy/wiretap/stats/fisa_stats.html.

in cases where either the "failure to obtain requested records…could reasonably be expected to pose an imminent threat to the life or physical safety of an individual," or "with respect to a request made by a person primarily engaged in disseminating information" there is an "urgency to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v) (2013). In these cases, an agency must process the FOIA request "as soon as practicable". 5 U.S.C. § 552(a)(6)(E)(iii) (2013). "Where an agency fails to comply with the twenty-day deadline applicable to a standard FOIA request, the agency 'presumptively also fails to process an expedited request 'as soon as practicable." *Elec. Frontier Foundation v. Office of the Director of Nat'l Intelligence*, 542 F. Supp. 2d 1181, 1186 (N.D.Cal. 2008), *citing EPIC*, 416 F. Supp. 2d 30, 39 (D.D.C. 2006).

## C.   EPIC's FOIA Request and Request for Expedited Processing and the Responses from the Department of Justice

By letter dated October 3, 2013, EPIC transmitted, via certified mail, a FOIA request to the National Security Division ("NSD") of the DOJ. Letter from Amie Stepanovich, EPIC, to Arnetta James, NSD (Oct. 3, 0213) (Exhibit A) ("EPIC's FOIA Request"). EPIC's FOIA Request sought three categories of records:

1. All reports made to the Permanent Select Committee on Intelligence in the House of Representatives and the Select Committee on Intelligence in the Senate, detailing the total number of orders for pen registers or trap and trace devices granted or denied, and detailing the total number of pen registers or trap and trace devices installed pursuant to 50 U.S.C. § 1843;

2. All information provided to the aforementioned committees concerning all uses of pen registers and trap and trace devices; and

3. All records used in preparation of the above materials, including statistical data.

EPIC's FOIA Request at 2-3. EPIC's FOIA Request requested "News Media" fee status and a waiver of duplication fees, as provided for by the FOIA. *See Id.*; 5 U.S.C. §§ 552(a)(4)(A).

EPIC's FOIA Request also requested expedited processing. EPIC's FOIA Request at 3-4; *see* 5 U.S.C. § 552(a)(6)(E)(v)(II) (2013); *Al-Fayed v. CIA*, 254 F.3d 300, 306 (D.C. Cir. 2001) ("FOIA directs the agencies to provide expedited processing where a requester demonstrates 'compelling need.'" (internal citations omitted)). EPIC's FOIA Request explained that EPIC was "primarily engaged in disseminating information" and that there was a "urgency to information the public about" the subject matter of EPIC's FOIA Request. EPIC's FOIA Request at 3; 5 U.S.C. § 552(a)(6)(E)(v)(II) (2013). Specifically, EPIC noted, "[t]he public has an urgent need to obtain any information regarding the use of surveillance technologies for national security purposes to better understand the scope of authority the government possesses and how this authority is being employed in practice." EPIC's FOIA Request at 3. EPIC's FOIA Request was delivered to the proper office on October 7, 2013. *See* Exhibit A.

NSD acknowledged receipt of EPIC's FOIA Request by letter dated October 29, 2013. . *See* Letter from Arnetta Mallory, NSD, to Amie Stepanovich, EPIC (Oct. 29, 2013) (Exhibit B) ("NSD's Acknowledgement"). Then, by letter dated November 5, 2013, NSD granted EPIC's request for expedited processing:

> You have demonstrated that there is a particular urgency to inform the public about an actual or alleged federal government activity. Therefore, your request for expedited processing is granted.

Letter from Arnetta Mallory, NSD, to Amie Stepanovich, EPIC (Nov. 5, 2013) (Exhibit C) ("NSD's Second Response"). NSD's November 5, 2013 letter also granted EPIC's request for a fee waiver.

Notwithstanding Defendant's decision to expedite the processing of EPIC's FOIA Request, to date EPIC has received no further communication from NSD confirming that the processing of EPIC's FOIA Request has been completed or even providing an anticipated date

for the completion of said processing. Forty-two business days have now passed since the delivery of EPIC's FOIA Request to NSD. Not only has Defendant failed to expedite the processing of EPIC's FOIA Request, it has also far exceeded the otherwise generally applicable twenty-day deadline for the processing of *any* FOIA request. *See* 5 U.S.C. § 552(a)(6)(A)(ii) and (a)(6)(E)(iii) (2013).

## ARGUMENT

Although Defendant acknowledged EPIC's legal entitlement to expedited processing of EPIC's FOIA Request over one month ago, the Agency has failed to comply with the FOIA's provisions for expedited processing. In fact, Defendant has already exceeded the statutory deadline of twenty working days for responding to a standard, non-expedited request. The Agency's failure to process EPIC's FOIA Request constitutes a continuing impediment to Plaintiff's (and the public's) ability to examine the government's surveillance activities and to participate meaningfully in the debate over the implications of that activity. The Agency's inaction is clearly unlawful and should be enjoined.

### A.     The Court Has Jurisdiction to Grant the Requested Relief

The FOIA grants the D.C. District clear jurisdiction to consider this matter and grant appropriate relief:

> On complaint, the district court of the United States…in the District of Columbia, has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant. In such a case the court shall determine the matter de novo…

5 U.S.C. § 552(a)(4)(B) (2013); *Al-Fayed*, 254 F.3d at 304. The statute further provides:

> [a]ny person making a request to any agency for records…shall be deemed to have exhausted his administrative remedies with respect to such request if the agency fails to comply with the applicable time limit provisions of this paragraph.

5 U.S.C. § 552(a)(6)(C) (2013); *Oglesby v. Dep't of the Army*, 920 F.2d 57, 62 (D.C. Cir. 1990) ("If the agency has not responded within the statutory time limits, then…the requester may bring suit.").

"[T]he FOIA imposes no limits on courts' equitable powers in enforcing its terms and unreasonable delays in disclosing non-exempt documents violate the intent and purpose of the FOIA, and the courts have a duty to prevent such abuses." *EPIC,* 416 F. Supp. 2d at 35 (internal citations omitted) citing *Payne Enters v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988). Here, notwithstanding its agreement to "expedite" EPIC's FOIA Request, Defendant has failed to respond within the generally applicable time limit of twenty working days established by 5 U.S.C. § 552(a)(6)(A). All applicable administrative remedies have therefore been exhausted and Plaintiff's claim is ripe for adjudication.

## B.     Plaintiff is Entitled to Entry of a Preliminary Injunction

EPIC satisfies the four-factor balancing test for preliminary injunction and is therefore entitled to injunctive relief. In considering EPIC's request for the entry of a preliminary injunction compelling Defendant to expeditiously complete the processing of EPIC's FOIA Request, the court must assess "[t]he familiar factors affecting the grant of preliminary injunctive relief – (1) likelihood of success on the merits, (2) irreparable injury to the plaintiff, (3) burden on…others' interests, and (4) the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008) (internal citations omitted). Consideration of these factors in this case firmly establishes EPIC's entitlement.

### 1.  Plaintiff is Likely to Prevail on the Merits

Given the clarity of EPIC's statutory entitlement to the expedited processing of EPIC's FOIA Request, EPIC's likelihood of prevailing on the merits is extremely high. In assessing

EPIC's likelihood of success, the Court must consider the merits of only one discrete issue: whether Defendant has processed EPIC's FOIA Request in an expedited manner within the FOIA's statutory time frame and the applicable DOJ regulations. Plaintiff will almost certainly prevail on this issue.

According to the FOIA and the DOJ regulations, the Agency is generally required to "determine within 20 days (except Saturdays, Sundays, and legal public holidays) after the receipt of…[a] request whether to comply with such request and shall immediately notify the person making such request of such determination[.]" 5 U.S.C. 5 52(a)(6)(A)(i) (2013); *see also* 28 C.F.R. § 16.6(b). If the Agency grants expedited treatment, the agency obligated to process the request "as soon as practicable." 5 U.S.C. § 552(a)(6)(E)(iii) (2013); 28 C.F.R. § 16.5(d)(4).

DOJ determined that EPIC's FOIA Request was entitled to expedited processing. There is no indication on the record, however, that DOJ has acted upon EPIC's statutory and regulatory entitlement to expedition. Although it is undisputed that EPIC's FOIA Request is legally entitled to expedited treatment, DOJ has failed to comply with the time frame required by the FOIA and DOJ regulations for issuing a determination on a *standard* FOIA request. Plaintiff is unambiguously entitled to the immediate processing and release of the requested records.

**2.  Plaintiff Will Suffer Irreparable Injury in the Absence of the Requested Injunctive Relief**

Unless DOJ's unlawful failure to comply with its obligation to expedite the processing of EPIC's FOIA Request is immediately enjoined, EPIC will suffer irreparable harm. The nature of the right that EPIC seeks to vindicate in this action – expedited processing – depends upon timeliness. The courts have recognized that the requisite injury is present, and preliminary injunctive relief is appropriate where, as here, "time is of the essence." *See, e.g., EPIC*, 416 F. Supp. 2d 30; *Wash. Post v. Dep't of Homeland Security*, 459 F. Supp. 2d 61 (D.D.C. 2006),

*vacated as moot by Wash. Post v. Dep't of Homeland Security*, 2007 U.S. App. LEXIS 6682

("upon consideration of the consent motion to vacate preliminary injunction as moot and dismiss

appeal, it is…ordered that the district court's order filed October 18, 2006 and memorandum

opinion filed October 19, 2006…be vacated."); *Aguilera v. FBI*, 941 F. Supp. 144 (D.D.C.

1996); *Cleaver v. Kelley*, 427 F. Supp. 80 (D.D.C. 1976). Under the statutory scheme Congress

established in the FOIA, it is clear that "time is of the essence" here, and that any further delay in

the processing of EPIC's FOIA Request will cause irreparable injury. As this Court has

explained:

> [P]ublic awareness of the government's actions is "a structural necessity in a real
> democracy." Not only is public awareness a necessity, but so too is timely public
> awareness. For this reason, Congress recognized that delay in complying with
> FOIA requests is "tantamount to denial." The D.C. Circuit likewise acknowledged
> that "stale information is of little value."

*EPIC*, 416 F. Supp. 2d at 40 (internal citations omitted). Unless DOJ is ordered to process

EPIC's FOIA Request immediately, EPIC's right to expedition under the FOIA will be

irretrievably lost and the expedited processing provisions will be rendered meaningless.

In addition to the loss of a clearly established statutory right, any further delay in the

processing of EPIC's FOIA Request will also irreparably harm EPIC's ability and the ability of

the public to obtain in a timely fashion information that is vital to the current and ongoing debate

surrounding the scope of NSA surveillance programs. That debate has already received

extraordinary public attention. *See, e.g.,* Barton Gellman and Laura Poitras, *U.S., British*

*Intelligence Mining Data from Nine U.S. Internet Companies in Broad Secret Program*,

Washington Post (June 6, 2013);[6] Glenn Greenwald, *XKeyscore: NSA Tool Collects 'Nearly*

---

[6] http://articles.washingtonpost.com/2013-06-06/news/39784046_1_prism-nsa-u-s-servers.

*Everything a User Does on the Internet'*, the Guardian (July 31, 2013);[7] Ellen Nakashima, *NSA Cites Case as Success of Phone Data-Collection Program*, Washington Post (Aug. 8, 2013);[8] Siobhan Gorman and Jennifer Valentino-Devries, *New Details Show Broader NSA Surveillance Reach*, Wall Street Journal (Aug. 20, 2013);[9] Glenn Greenwald, Laura Poitras, and Ewen MacAskill, *NSA Shares Raw Intelligence Including Americans' Data with Israel*, the Guardian (Sept. 11, 2013);[10] Alan Butler and Amie Stepanovich, *Guest Post: Square Peg, Round Hole – How the FISC Has Misapplied FISA to Allow for Bulk Metadata Collection*, Just Security (Dec. 2, 2013);[11] Danny Yadron, *Microsoft Compares NSA to 'Advanced Persistent Threat'*, Wall Street Journal (Dec. 5, 2013).[12]

Many prominent congressional committees have acknowledged the importance of the debate currently taking place around government surveillance powers, and have held several hearings on the topic over the past six months. *See, e.g.*, Senate Committee on the Judiciary, *Updated: Continued Oversight of the Foreign Intelligence Surveillance Act* (Oct. 2, 2013);[13] House of Representatives Committee on the Judiciary, *Oversight of the Administration's Use of*

---

[7] http://www.theguardian.com/world/2013/jul/31/nsa-top-secret-program-online-data.

[8] http://articles.washingtonpost.com/2013-08-08/world/41198093_1_phone-records-nsa-national-security-agency.

[9] http://online.wsj.com/news/articles/SB10001424127887324108204579022874091732470.

[10] http://www.theguardian.com/world/2013/sep/11/nsa-americans-personal-data-israel-documents.

[11] http://justsecurity.org/2013/12/02/butler-stepanovich-square-peg-round-hole-fisc-fisa/.

[12] http://stream.wsj.com/story/latest-headlines/SS-2-63399/SS-2-397700/.

[13] http://www.judiciary.senate.gov/hearings/hearing.cfm?id=0c23b88fc3b21bc51f6445cd14baddfe.

*FISA Authorities (Classified)* (Sept. 18, 2013);[14] Senate Select Committee on Intelligence, *Open*

*Hearing: FISA Legislation* (Sept. 26, 2013).[15] Over two dozen bills are currently pending in the

Senate and the House of Representatives that would amend or change current surveillance laws.

*See, e.g.*, The FISA Accountability and Privacy Protection Act of 2013, S. 1215, 113th Cong.

(2013); Limiting Internet and Blanket Electronic Review of Telecommunications and Email Act

(LIBERT-E Act), H.R. 2399, 113th Cong. (2013); Surveillance Transparency Act of 2013, S.

1452, 113th Cong. (2013). The likelihood of a bill being passed in the near future is both "certain

and great." *See Wisc. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam); *cf.*

*Judicial Watch, Inc. v. Dep't of Homeland Security*, 514 F. Supp. 2d 7, 10 (D.D.C. 2007) ("there

is no indication, however, that proceeding with the normal litigation process in this case will

injure the plaintiff in a way that is both 'certain and great.'").

      Perhaps most importantly, President Obama has personally acknowledged the importance

of an open debate to the current controversies surrounding NSA surveillance. Press Release,

White House, Remarks by the President in a Press Conference (Aug. 9, 2013);[16] *See also EPIC*,

416 F. Supp. 2d at 41 (discussing the importance of the information sought under FOIA to the

public discussion and emphasizing President Bush's invitation to a "meaningful debate about the

warrantless surveillance program"). To meaningfully contribute to the current debate, the public

must have access to as complete a record as possible. Indeed, the public oversight mechanism

provided by the FOIA is central to open and democratic debate on critical policy issues such as

---

[14] http://judiciary.house.gov/hearings/113th/hear_09182013.html.

[15]

http://www.intelligence.senate.gov/hearings.cfm?hearingId=e419ea0c4a3b17dbece8cca516ad10
be.

[16] *Available at* http://www.whitehouse.gov/the-press-office/2013/08/09/remarks-president-press-
conference

this. As the Supreme Court has observed, the FOIA is "a means for citizens to know 'what the Government is up to.' This phrase should not be dismissed as a convenient formalism. It defines a structural necessity in a real democracy." *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 171-72 (2004) (citation omitted).

This case is markedly distinguishable from other cases where irreparable injury has not been found. First, Defendant has already conceded that there is a "particular urgency to inform the public" about the subject matter of EPIC's FOIA Request. Exhibit C; *see also* 5 U.S.C. § 552(a)(6)(E)(v) (2013); *cf. Aguilera*, 941 F. Supp. 144; *Wadelton v. Dep't of State*, 941 F. Supp. 2d 120 (D.D.C. 2013); *Wiedenhoeft v. U.S.*, 189 F. Supp. 2d 295 (D.Md 2002); The harm to be suffered here is not "merely feared as liable to occur at some indefinite time in the future." *Judicial Watch*, 514 F. Supp. 2d at 10 (internal citations omitted); *see also Wadelton*, 941 F. Supp. 2d at 124 ("the Court does not find that there is a robust public discussion taking place on this topic at this time."). Instead, the irreparable injury to be suffered by EPIC and the public concerns the inability to participate in  "ongoing public and congressional debates about issues of vital national importance that 'cannot be restarted or wound back.'" *Elec. Frontier Foundation*, 542 F. Supp. 2d at 1186, *citing, inter alia, EPIC*, 416 F. Supp. 2d at 41; *cf. Judicial Watch*, 514 F. Supp. 2d at 10 ("plaintiff has failed to demonstrate *any* time sensitive need for this information that will be irreparably lost if disclosure does not occur immediately." (emphasis in original)).

It is clear that the information EPIC seeks to contribute to the time-sensitive public debate on NSA surveillance must be disclosed expeditiously. DOJ has acknowledged that there is "an urgency to inform the public about" the information in the Pen Register/Trap and Trace

reports. Exhibit C. Because time is of the essence in this matter, there will be irreparable harm to EPIC and the public unless the Court acts now.

### 3. Injunctive Relief Will Not Burden Others' Interests

Defendant cannot claim to be "burdened" by a requirement that it comply with its statutory obligations. The immediate relief EPIC seeks will require nothing more of DOJ than what the law already mandates: the expedited processing of EPIC's FOIA Request. Requiring that DOJ and its components actually act expeditiously in cases where they have determined that such action is warranted will not unduly burden the Agency. In fact, NSD has only granted expedited processing to nine FOIA requests between the years of 2010-2012, the most recent three years for which reporting is available.[17] *See EPIC*, 416 F. Supp. 2d at 41 ("The DOJ statistics for 2004 indicate that OIPR, OLP, and OLC handled no requests that merited expedited processing, and OAG handled only two. Therefore, requiring expediting processing of the requests at issue should not be unduly burdensome to DOJ and should not cause any delay to other expedited FOIA requests." (internal citations omitted)).

Nor will the requested relief burden the interests of other parties who have submitted FOIA request to the DOJ in any manner beyond that foreseen by Congress. *See*, *id.* In providing for expedited processing of qualifying requests, Congress has already balanced competing interests and reached the conclusion that a certain category of qualifying requests should take

---

[17] NSD granted expedited processing to 3 FOIA requests in 2010, 5 in 2011, and 1 in 2012. *See* U.S. Department of Justice Freedom of Inforamation Act Annual Report Fiscal Year 2010, *available at* http://www.justice.gov/oip/annual_report/2010/10contents.htm; U.S. Department of Jusice Freedom of Inforamation Act Annual Report Fiscal Year 2011, *available at* http://www.justice.gov/oip/annual_report/2011/oip-foia-fy11.pdf; U.S. Department of Justice Freedom of Inforamation Act Annual Report Fiscal Year 2012, *available at* http://www.justice.gov/oip/annual_report/2012/oip-foia-fy12.pdf.

precedence over those that do not qualify for such treatment. Fulfillment of that legislative intent cannot be characterized as a burden on any party's interests.

### 4. The Public Interest Favors the Requested Relief

The final element to be considered in the issuance of a preliminary injunction – the public interest – is clearly satisfied in this case. The D.C. Circuit has long recognized that "there is an overriding public interest…in the general importance of an Agency's faithful adherence to its statutory mandate." *Jacksonville Port Auth.*, 556 F.2d at 59. Likewise, it is "axiomatic that an 'agency is required to follow its own regulations.'" *Brock v. Cathedral Bluffs Shale Oil Co.*, 796 F.2d 522, 526 (D.C. Cir. 1986) (Scalia, J.). Such adherence is key to what EPIC seeks in its request for a preliminary injunction.

The public's interest is also served by the expedited release of the requested records, which will further the purpose of the FOIA and "shed[] light on an agency's performance of its statutory duties." *Dep't of Justice v. Reporter's Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989). As this Court has noted, "[t]here is public benefit in the release of information that adds to citizens' knowledge of government activities." *Ctr. to Prevent Handgun Violence v. Dep't of Treasury*, 49 F. Supp. 2d 3, 5 (D.D.C. 1999). The public interest favors the issuance of an order directing DOJ to immediately process and release the requested information.

### C.     The Court Should Order DOJ to Process EPIC's FOIA Request Immediately

Preliminary injunctive relief is appropriate in FOIA cases where, as here, an agency has admitted that a FOIA request is entitled to expedited processing but failed to take action in order to effectively implement that designation. *See, e.g., EPIC*, 416 F. Supp. 2d 30; *Washington Post*, 459 F. Supp. 2d 61. Congress expressly requires an agency to make a determination on a request for expedited processing within ten calendar days, 5 U.S.C. § 552(a)(6)(E)(ii)(I) (2013), and

provides for immediate judicial review of adverse determinations, 5 U.S.C. § 552(a)(6)(E)(iii) (2013). Clearly, Congress has demonstrated an intent that the courts should act quickly to vindicate a right to expedition. *See, e.g.*, *Am. Civil Liberties Union v. Dep't of Justice*, 321 F. Supp. 2d 24, 28-29 (D.D.C. 2004) (complete exhaustion of administrative remedies not a prerequisite to judicial review of agency expedition decisions). The legislative mandate that disputes concerning expedited processing should be quickly resolved would be frustrated if aggrieved requesters were required to remain idle for twenty days after initiating suit before moving for partial summary judgment. Fed. R. Civ. P. 56(a); *see also Elec. Frontier Foundation*, 542 F. Supp. 2d at 1186 ("Where an agency fails to comply with the twenty-day deadline applicable to a standard FOIA request, the agency 'presumptively also fails to process an expedited request 'as soon as practicable.'") *citing EPIC*, 416 F. Supp. 2d at 39. As such, claims involving entitlement to expedited processing are appropriately addressed through motions for preliminary relief.

Recognizing the extraordinary public interest in the records at issue here, and in order to facilitate the informed participation of EPIC and the public in the current and ongoing debate on the propriety of NSA surveillance programs, the Court should direct DOJ to complete the processing of EPIC's FOIA Request and produce or identify all responsive records within 20 days of the issuance of the order EPIC now seeks. The Court should further order DOJ to serve on EPIC a *Vaughn* index ten days following the processing of EPIC's FOIA Request.

## CONCLUSION

For the foregoing reasons, EPIC's Motion for a Preliminary Injunction should be granted. Plaintiff asks that the Court, pursuant to Local Rule 65.1(d), schedule a hearing on this motion at the Court's earliest convenience.

Respectfully submitted,

MARC ROTENBERG, D.C. Bar # 422825
EXECUTIVE DIRECTOR
ELECTRONIC PRIVACY INFORMATION CENTER

*/s/ Amie L. Stepanovich*
Amie Stepanovich, D.C. Bar # 1011950
ELECTRONIC PRIVACY INFORMATION CENTER
1718 Connecticut Avenue, N.W.
Suite 200
Washington, D.C. 20009
(202) 483-1140 (telephone)
(202) 483-1248 (facsimile)

Counsel for Plaintiff