**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| ELECTRONIC PRIVACY | ) | |
|     INFORMATION CENTER, | ) | |
| | ) | Case No. 1:13-cv-01961-KBJ |
|     Plaintiff, | ) | |
| | ) | |
|     v. | ) | |
| | ) | |
| UNITED STATES | ) | |
|     DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
|     Defendant. | ) | |
| _____ | ) | |

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S**
**MOTION FOR PRELIMINARY INJUNCTION**

STUART F. DELERY
Assistant Attorney General

RONALD C. MACHEN
United States Attorney

ELIZABETH J. SHAPIRO
Deputy Branch Director

STEVEN Y. BRESSLER
Senior Counsel
U.S. Department of Justice, Civil Division
Ben Franklin Station, P.O. Box 833
Washington, D.C.  20044
(202) 305-0167
Steven.Bressler@usdoj.gov

*Counsel for Defendant*

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ......................................................................... *ii*

**PRELIMINARY STATEMENT** ....................................................................1

**BACKGROUND** ..........................................................................................3

    1. Statutory and Regulatory Framework ...................................................3

        a. FOIA's Expedited Processing Provision ....................................3

        b. The Department's Regulations ...................................................4

    2. Factual Background. .............................................................................5

**ARGUMENT** ................................................................................................6

    I.      Plaintiff Cannot Establish it is Likely to Succeed on the Merits of its Claim Because FOIA's Expedited Processing Provisions Require Processing As Soon As Practicable, Not Within any Time Certain. ........................................8

    II.     Plaintiff has Failed to Establish it Will Suffer Any Irreparable Harm Absent A Mandatory, Emergency Injunction. ..................................................14

    III.    The Mandatory Emergency Injunction Plaintiff Seeks Would Harm the Public Interest. .........................................................................................19

    IV.    Plaintiff's Requested Mandatory, Emergency Injunction Is Improper Because It Would Afford Plaintiff Full Relief, Not Intermediate Relief.........21

**CONCLUSION** ............................................................................................22

# TABLE OF AUTHROITIES

**CASES**                                                                                                   **PAGE(S)**

*Al-Fayed v. CIA*,
   2000 WL 34342564 (D.D.C. 2000) ........................................................................ 8

*Al-Fayed v. CIA*,
   254 F.3d 300 (D.C. Cir. 2001) ......................................................................... 4, 19

*American Civil Liberties Union v. Dep't of Defense*,
   339 F. Supp. 2d 501 (S.D.N.Y. 2004).................................................................. 10

*American Civil Liberties Union v. Dep't of Justice*,
   321 F. Supp. 2d 24 (D.D.C. 2004) ........................................................................ 9

*Assassination Archives and Research Ctr., Inc. v. CIA*,
   No. 88-2600, 1988 U.S. Dist. LEXIS 18606 (D.D.C., Sept. 29, 1988) ................... 15

*Bayer HealthCare, LLC v. FDA*,
   942 F. Supp. 2d 17 (D.D.C. 2013) ........................................................................ 7

*CityFed Fin. Corp. v. Office of Thrift Supervision*,
   58 F.3d 738 (D.C. Cir. 1995) ..................................................................... 7, 14, 19

*Classified National Security Information*,
   " 75 Fed. Reg. 707 (Dec. 29, 2009) ....................................................................... 7

*Cobell v. Kempthorne*,
   455 F.3d 301 (D.C. Cir. 2006) .............................................................................. 7

*Cobell v. Norton*,
   391 F.3d 251 (D.C. Cir. 2004) .............................................................................. 7

*Columbia Hosp. for Women Found., Inc. v. Bank of Tokyo-Mitsubishi, Ltd.*,
   15 F. Supp. 2d 1 (D.D.C. 1997) ............................................................................ 7

*Davis v. Pension Benefit Guar. Corp.*,
   571 F.3d 1288 (D.C. Cir. 2009) ............................................................................ 7

*Dorfmann v. Boozer*,
   414 F.2d 1168 (D.C. Cir. 1969) .......................................................................... 21

*Edmonds v. FBI,*
    2002 WL 32539613 (D.D.C. 2002) .................................................................. 9

*Electronic Frontier Found. v. Dep't of Justice,*
    563 F. Supp. 2d 188 (D.D.C. 2008) .................................................................. 8

*EPIC v. Dep't of Justice,* slip op.,
    No. 03-2078 (D.D.C., Oct. 20, 2003) ............................................................ 8, 13

*EPIC v. Dep't of Defense,*
    355 F. Supp. 2d 98 (D.D.C. 2004) ................................................................ 8, 13

*Fiduccia v. DOJ,*
    185 F.3d 1035 (9th Cir. 1999) ........................................................................ 18

*Greater New Orleans Fair Hous. Action Ctr. v. U.S. Dep't of Hous. & Urban Dev.,*
    639 F.3d 1078 (D.C. Cir. 2011) ...................................................................... 14

*In re Navy Chaplaincy,*
    534 F.3d 756 (D.C. Cir. 2008) ........................................................................ 14

*Jack's Canoes & Kayaks, LLC v. Nat'l Park Serv.,*
    933 F. Supp. 2d 58 (D.D.C. 2013) .................................................................. 7

*Judicial Watch v. Dep't of Justice,*
    slip op., No. 00-1396  (D.D.C., June 27, 2000) .............................................. 8

*Judicial Watch v. Rossotti,*
    285 F. Supp. 2d 17 (D.D.C. 2003) .................................................................. 11

*Judicial Watch, Inc. v. Dep't of Energy,*
    888 F. Supp. 2d 189 (D.D.C. 2012) ................................................................ 11

*Landmark Legal Foundation v. EPA,*
    910 F.Supp.2d 270 (D.D.C. 2012) .................................................................. 9

*Love v. FBI,*
    660 F. Supp. 2d 56 (D.D.C. 2009) .................................................................. 11

*Miscavige v. IRS,*
    2 F.3d 366 (11th Cir. 1993) ............................................................................ 14

*Nat'l Conference on Ministry to Armed Forces v. James,*
    278 F. Supp. 2d 37 (D.D.C. 2003) .................................................................. 8

*Navistar, Inc. v. EPA*,
    Civ. No. , 2011 WL 3743732 (D.D.C. August 25, 2011) ...................................... 11, 13, 15, 20

*Ogelsby v. Dep't of Army*,
    920 F.2d 57 (D.C. Cir. 1990), ............................................................................... 11

*Open America v. Watergate Special Prosecution Force*,
    547 F. 2d 605 (D.C. Cir. 1976) ............................................................................. 11

*Petit-Frere v. U.S. Attorney's Office for S.D. of Fla.*,
    664 F.Supp.2d 69 (D.D.C. 2009) ........................................................................... 11

*Phillip v. Fairfield Univ.*,
    118 F.3d 131 (2d Cir. 1997), *aff'd*, 159 F.3d 636 (D.C. Cir 1998). ........................................... 7

*Sampson v. Murray*,
    415 U.S. 61 (1974) ................................................................................................ 14

*Serono Labs., Inc.*,
    158 F.3d at 1317 .................................................................................................. 19

*Spannaus v. U.S. Dep't of Justice*,
    824 F.2d 52 (D.C. Cir. 1987) ................................................................................ 10

*Stimac v. Dep't of Justice*,
    620 F. Supp. 212 (D.D.C. 1985) ........................................................................... 14

*The Nation Magazine v. Dep't of State*,
    805 F. Supp. 68 (D.D.C. 1992) ......................................................................... 10, 17

*United States Committee on Refugees v. Dep't of State*,
    No. 91- 3303, 1992 WL 35089 (D.D.C. Feb. 7, 1992) ........................................... 14

*Univ. of Texas v. Camenisch*,
    451 U.S. 390 (1981) .............................................................................................. 21

*Wadelton v. Dep't of State*,
    941 F. Supp. 2d 120 (D.D.C. 2013) ................................................................... 8, 20

*Winter v. NRDC, Inc.*,
    555 U.S. 7 (2008) ................................................................................................... 7

*Wisc. Gas. Co. v. Federal Energy Regulatory Comm'n*,
    758 F.2d 669 (D.C. Cir. 1985) ......................................................................... 15, 16

## STATUTES

5 U.S.C. § 552 ......................................................................................................... *passim*
50 U.S.C. § 1843 ................................................................................................................ 5
50 U.S.C. § 1846 ................................................................................................................ 5

## FEDERAL RULES OF CIVIL PROCEDURE

Fed. R. Civ. P. 12 ............................................................................................................. 2
Fed. R. Civ. P. 4 ........................................................................................................... 5, 6
Fed. R. Civ. P. .................................................................................................................. 2

## REGULATIONS

28 C.F.R. § 16 .................................................................................................... *passim*

## MISCELLANEOUS

H.R. Rep. No. 104-795, *reprinted at* 1996 U.S.C.A.A.N. 3448,
   3469 (Sept. 17, 1996) .................................................................................... 4, 9, 20

S. Rep. 104-272, 1996 WL 262861, *17 (May 15, 1996) ........................................... 9

*Revision of Freedom of Information Act and Privacy Act Regulations and Implementation of*
   *Electronic Freedom of Information Act Amendments of 1996,*
   63 Fed. Reg. 29591 (1998) ..................................................................................... 7, 8

Classified National Security Information,
   75 Fed. Reg. 707 (Dec. 29, 2009) ......................................................................... 12

Declaration of Mark A. Bradley .............................................................................. *passim*

**PRELIMINARY STATEMENT**

Plaintiff Electronic Privacy Information Center ("EPIC") seeks an extraordinary, emergency injunction compelling defendant, the United States Department of Justice ( "the Department") to complete the processing of plaintiff's requests under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, within the next twenty days and to provide a *Vaughn* index ten days thereafter. Plaintiff's request for such relief by way of a preliminary injunction – which is not preliminary in any sense but rather is an attempt to use as a scheduling tool a procedural mechanism intended only to provide emergency relief – is wholly without merit. Indeed, the Department has already agreed to expedite processing of plaintiff's FOIA request. That is all plaintiff is entitled to under the law – not disclosure of sensitive documents on an arbitrary timetable.

The relief plaintiff seeks is inconsistent with the plain language of the expedited processing provision of the FOIA. As noted, the Department has already granted plaintiff's request to expedite processing under FOIA, 5 U.S.C. § 552(a)(6)(e), and the National Security Division ("NSD") has begun identifying and collecting responsive documents. Contrary to the claims made by plaintiff, the expedited processing provision of FOIA provides that expedited FOIA requests are to be processed by the agency "as soon as practicable," *id.* § 552(a)(6)(e)(iii), and imposes no time limits on such processing. The Department is proceeding under that standard, and plaintiff – which bears the burden on a motion for preliminary injunction – offers no proof to the contrary. Indeed, far from being supported by either proof or precedent, plaintiff's request is fundamentally incompatible with the statute. Plaintiff therefore cannot establish it is likely to succeed on the merits of its claims – an essential prerequisite to emergency relief.

Plaintiff also fails to meet its essential burden of identifying any irreparable harm that it will suffer if responsive, non-exempt documents are not immediately ordered to be produced. Plaintiff argues it will be irreparably barred from meaningful participation in the public debate over National Security Agency ("NSA") surveillance if it does not receive the voluminous documents it seeks within 20 days, but much information about the previously classified program

that plaintiff's request concerns – bulk collection of electronic communications metadata by pen register/trap and trace ("PR/TT") devices under the Foreign Intelligence Surveillance Act ("FISA") – is already available.  The bulk collection program discussed in plaintiff's FOIA request is discontinued, and therefore not even a particular focus of public debate.  In any event, plaintiff offers no support for its claim that it will be unable to participate in public debate over FISA PR/TT authority if it must wait until it is practicable for the Department to process plaintiff's request, though that is what the law requires.  Instead plaintiff offers a conclusory statement that it is "certain" Congress will soon pass legislation on the subject.  Plaintiff's certainty over the content and timing of future Acts of Congress is not based on anything in the evidentiary record.  What the record, including the declaration filed herewith, does establish is that forcing the Department to process plaintiff's broad FOIA request on an artificial timeline, rather than as quickly as practicable as required by the statute, would harm the public interest, upsetting Congress's careful balance under FOIA, risking inadvertent disclosure of exempt material, and disadvantaging others whose FOIA requests to NSD were expedited prior to plaintiff's.

Thus, plaintiff identifies no reason why the agency must be required to complete the processing of plaintiff's request within the artificial period proposed in plaintiff's injunctive demand as opposed to "as soon as practicable" as specifically set forth in FOIA.  Instead, it is plain that plaintiff seeks to use the preliminary injunction provisions of Federal Rule of Civil Procedure 65, which are intended to provide a shield against imminent injury while a court considers the merits of a dispute, to artificially accelerate the proceedings in this case.[1]  The Court should not indulge this litigation tactic.

Moreover, plaintiff must meet an even higher standard than the usual, stringent standard

---

[1] Congress has specifically recognized that litigation involving FOIA claims is to be accelerated. See 5 U.S.C. § 552(a)(4)(C) (providing that government defendants have 30 days in which to answer a FOIA complaint as opposed to the ordinary 60 days provided by Fed. R. Civ. P. 12). Plaintiff's motion for preliminary injunction is an effort to bypass these already-accelerated procedures.

for emergency relief in this Circuit because plaintiff seeks a mandatory injunction, not to preserve

the status quo pending this Court's adjudication of the merits, but to alter the status quo and award

plaintiff a version of ultimate relief – the immediate disclosure of non-exempt documents.  *See* 5

U.S.C. § 552(a) (4)(B) (under FOIA, court has "jurisdiction to enjoin the agency from

withholding agency records and to order the production of any agency records improperly

withheld").

Plaintiff's application meets none of the applicable standards and is without any basis in

law or fact.  This Court should deny it.

## BACKGROUND

1.      Statutory and Regulatory Framework

a.      FOIA's Expedited Processing Provision

Agencies ordinarily process FOIA requests for agency records on a first-in, first-out basis.

In 1996, Congress amended the FOIA to provide for "expedited processing" of certain categories

of requests.  *See* Electronic Freedom of Information Amendments of 1996 ("EFOIA"), Pub. L.

No. 104-231, § 8 (codified at 5 U.S.C. § 552(a)(6)(E)).  Expedition, when granted, entitles

requesters to move immediately to the front of an agency processing queue, ahead of requests

filed previously by other persons.

As part of EFOIA, Congress directed agencies to promulgate regulations providing for

expedited processing of requests for records (i) "in cases in which the person requesting the

records demonstrates a compelling need"; 5 U.S.C. § 552(a)(6)(E)(i)(I); and (ii) "in other cases

determined by the agency."  *Id.* § 552(a)(6)(E)(i)(II).  FOIA defines "compelling need" to mean:

(I)    that a failure to obtain requested records on an expedited basis under this
paragraph could reasonably be expected to pose an imminent threat to the life or
physical safety of an individual; or

(II)   with respect to a request made by a person primarily engaged in
disseminating information, urgency to inform the public concerning actual or
alleged Federal Government activity.

5 U.S.C. § 552(a)(6)(E)(v).[2]   The requester bears the burden of showing that expedition is appropriate. *See Al-Fayed v. CIA*, 254 F.3d 300, 305 n.4 (D.C. Cir. 2001).  FOIA provides that "[a]n agency shall process as soon as practicable any request for records to which the agency has granted expedition."  5  U.S.C. § 552(a)(6)(E)(iii).

> ### b.     The Department's Regulations

DOJ implemented EFOIA by final rule effective July 1, 1998.  See Revision of Freedom of Information Act and Privacy Act Regulations and Implementation of Electronic Freedom of Information Act Amendments of 1996, 63 Fed. Reg. 29591 (1998), codified at 28 C.F.R. Part 16. This regulation, which governs FOIA requests to all DOJ components, see 28 C.F.R. § 16.1(b), states that "[r]equests and appeals" will be "taken out of order and given expedited treatment whenever it is determined that they involve":

> (i)     Circumstances in which the lack of expedited treatment could reasonably be expected to pose an imminent threat to the life or physical safety of an individual;

> (ii)    An urgency to inform the public about an actual or alleged federal government activity, if made by a person primarily engaged in disseminating information;

> (iii)   The loss of substantial due process rights; or

> (iv)    A matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence.

28 C.F.R. § 16.5(d)(1)(i)-(iv).   Categories (i) and (ii) implement the FOIA's "compelling need" standard; categories (iii) and (iv) define additional categories for expedition.[3]  See 63 Fed. Reg. at

---

[2] Both Congress and the Court of Appeals have recognized that the expedition categories are to be "narrowly applied" because, "[g]iven the finite resources generally available for fulfilling FOIA requests, unduly generous use of the expedited processing procedure would unfairly disadvantage other requesters who do not qualify for its treatment." *Al-Fayed v. CIA*, 254 F.3d 300, 310 (D.C. Cir. 2001) (quoting H.R. Rep. No. 104-795, *reprinted at* 1996 U.S.C.A.A.N. 3448, 3469 (Sept. 17, 1996)).

[3] Requests for expedition based on categories (i), (ii), and (iii) must be submitted to the component that maintains the records requested.  *See* 28 C.F.R. § 16.5(d)(2).   Requests for expedition based on category (iv) – the Department's "special media-related standard," *see* 63

29592.

Within ten calendar days of receiving a request for expedited processing, the component must "decide whether to grant it and . . . notify the requester of the decision."  28 C.F.R. § 16.5(d)(4); *see also* 5 U.S.C. § 552(a)(6)(E)(ii)(I) (requiring notice of decision within ten days of request).  If the request is granted, "the request shall be given priority and shall be processed as soon as practicable."  28 C.F.R. § 16.5(d)(4).  If the request is denied, "any appeal of that decision shall be acted on expeditiously."  Id.; see also 5 U.S.C. § 552(a)(6)(E)(ii)(II) (requiring "expeditious consideration of administrative appeals of such determinations of whether to provide expedited processing").

2.      Factual Background.

By letter dated October 3, 2013, and received on October 18, plaintiff submitted a request to NSD.  *See* Declaration of Mark A. Bradley (Exhibit 1 hereto), ¶ 2.  The letter stated:

> EPIC seeks all records related to the Attorney General's required semiannual reports between 2001 and the present under 50 U.S.C. § 1846.
>
> 1.  All reports made to the Permanent Select Committee on Intelligence in the House of Representatives and the Select Committee on Intelligence in the Senate, detailing the total number of orders for pen registers or trap and trace devices granted or denied, and detailing the total number of pen registers or trap and trace devices installed pursuant to 50 U.S.C. § 1843.
>
> 2.  All information provided to the aforementioned committees concerning all uses of pen registers and trap and trace devices.
>
> 3.  All records used in preparation of the above materials, including statistical data.

See EPIC Request, Exhibit A to Pl. Motion; Compl. ¶ 18.  By letter dated October 29, 2013, NSD acknowledged receipt of the request.  And by a subsequent letter dated November 5, 2013, NSD granted plaintiff's requests for expedited processing and waiver of processing fees.  Plaintiff served its Complaint in this action on the United States Attorney pursuant to Fed. R. Civ. P. 4 on December 23,

---

Fed. Reg. at 29592 – must be submitted to the Director of the Department's Office of Public Affairs ("OPA").  *See* 28 C.F.R. § 16.5(d)(2).   This enables "the Department's media specialists [to] deal directly with matters of exceptional concern to the media."   63 Fed. Reg. at 29592.

2013.  In conversation with undersigned counsel on January 7, 2014, counsel for plaintiff agreed to exclude from its request internal Department of Justice emails and drafts of documents for which a final version is processed, although plaintiff declined to narrow its request in other respects.

At the time that the Department granted plaintiff's request for expedited processing, there were already thirteen pending FOIA requests before the agency which were entitled to expedited processing.  *See* Bradley Decl. ¶ 4.  Although expedited processing entitled plaintiff to have its request processed ahead of those requesters in the normal FOIA queue, to whom no expedited processing had been accorded, plaintiff was not accorded any special right to have its request processed before the already-pending expedited requests.  *See id.* ¶¶ 4-6.  Indeed, given the substantial volume of documents to be processed and complexity of issues to be resolved in some of in the previously expedited cases, the NSD currently has only limited resources available to work on expedited processing of plaintiff's request.  *See* Bradley Decl. ¶¶ 5, 7, 9-10.

Defendant has begun the process of collecting documents responsive to plaintiff's sweeping FOIA request, *see id.* ¶¶ 7, 13,  and has preliminarily determined that there are 50 documents responsive to the first category of plaintiff's request, *id.*, all of which must undergo a classification review, *id.* ¶¶ 8, 10.  Defendant has not completed its search of documents for the second and third, considerably broader categories of plaintiff's FOIA request.  Accordingly, defendant is not yet in a position to provide the Court or plaintiff with an estimate of exactly how long it will take defendant to complete its expedited processing of plaintiff's entire request.  However, defendant estimates it will be able to process the documents responsive to category 1 of plaintiff's request by February 28, 2014; and that by that time, if not sooner, it should also have a better sense of the volume of documents responsive to categories 2 and 3 and the time that will be needed to process them.  *See id.* ¶ 12.   Furthermore, if plaintiff is interested in receiving documents faster, it can work with the NSD to further narrow the scope of this broad request.

## ARGUMENT

"The standard for issuance of the extraordinary and drastic remedy of a temporary restraining order or a preliminary injunction is very high."  *Jack's Canoes & Kayaks, LLC v. Nat'l*

*Park Serv.*, 933 F. Supp. 2d 58, 76 (D.D.C. 2013) (quotation marks and citation omitted).  Indeed, an interim injunction is "never awarded as of right," *Winter v. NRDC, Inc.*, 555 U.S. 7, 24 (2008), and "should be granted only when the party seeking the relief, by a clear showing, carries the burden of persuasion," *Cobell v. Norton*, 391 F.3d 251, 258 (D.C. Cir. 2004).

A party moving for a preliminary injunction accordingly "must demonstrate '(1) a substantial likelihood of success on the merits, (2) that it would suffer irreparable injury if the injunction is not granted, (3) that an injunction would not substantially injure other interested parties, and (4) that the public interest would be furthered by the injunction.'" *Jack's Canoes,* 933 F. Supp. 2d at 75-76 (quoting *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 746 (D.C. Cir. 1995)). This Court has explained that a "positive showing on all four factors is required." *Bayer HealthCare, LLC v. FDA*, 942 F. Supp. 2d 17, 23 (D.D.C. 2013) (citing *Davis v. Pension Benefit Guar. Corp*., 571 F.3d 1288, 1292 (D.C. Cir. 2009)).

"The usual role of a preliminary injunction is to preserve the status quo pending the outcome of litigation."  *Cobell v. Kempthorne*, 455 F.3d 301, 314 (D.C. Cir. 2006) (quotation omitted).  Therefore, when, as here, a movant seeks mandatory injunctive relief, *i.e*., an injunction that "would alter, rather than preserve, the status quo," an even higher standard applies and "the moving party must meet a higher standard than in the ordinary case by showing 'clearly' that he or she is entitled to relief or that 'extreme or very serious damage' will result from the denial of the injunction." *Columbia Hosp. for Women Found., Inc. v. Bank of Tokyo-Mitsubishi, Ltd*., 15 F. Supp. 2d 1, 4 (D.D.C. 1997) (quoting *Phillip v. Fairfield Univ*., 118 F.3d 131, 133 (2d Cir. 1997)), *aff'd*, 159 F.3d 636 (D.C. Cir 1998). "A district court should not issue a mandatory preliminary injunction unless the facts and the law clearly favor the moving party." *Nat'l Conference on Ministry to Armed Forces v. James*, 278 F. Supp. 2d 37, 43 (D.D.C. 2003) (internal quotations omitted).

I.      **Plaintiff Cannot Establish it is Likely to Succeed on the Merits of its Claim Because FOIA's Expedited Processing Provisions Require Processing As Soon As Practicable, Not Within any Time Certain.**

Plaintiff cannot demonstrate a likelihood of success on the merits of its claim because it has already received all the relief to which it is entitled: NSD granted plaintiff's request for expedition of the underlying FOIA request, and moved plaintiff's request to the head of the queue, ahead of non-expedited requests. Extraordinary, emergency injunctive relief is wholly inappropriate.[4]

Plaintiff's circular argument that the Department of Justice has violated FOIA is predicated on the erroneous assertion that the expedited processing provision of FOIA requires an agency to complete its processing within a specific period of time. The statute, however, does not require agencies to process expedited requests within a specific time limit. Instead, the statute directs agencies to "process *as soon as practicable* any request for records to which [they have] granted expedited processing." 5 U.S.C. § 552(a)(6)(E)(iii) (emphasis added); *see also* 28 C.F.R. § 16.5(d)(4) ("If a request for expedited treatment is granted, the request shall be given priority

_____

[4] Indeed, courts in this district routinely deny requests for preliminary relief in FOIA cases – including several brought by the same plaintiff as this action. *See, e.g.*, *Wadelton v. Dep't of State*, 941 F. Supp. 2d 120, 124 (D.D.C. 2013) (Huvelle, J.); *Landmark Legal Foundation v. EPA*, 910 F.Supp.2d 270, 279 (D.D.C. 2012) (Lamberth, CJ) (denying PI to expedite processing where agency stated request is already at the top of the queue and requester failed to meet other PI prongs); *Electronic Frontier Found. v. Dep't of Justice*, 563 F. Supp. 2d 188 (D.D.C. 2008) (Walton, J.) (granting *Open America* stay after denying PI); *EPIC v. Dep't of Justice*, slip op., No. 03-2078 (D.D.C., Oct. 20., 2003) (Robertson, J.) (attached as Ex. 3), (denying, *sua sponte*, a request for preliminary injunction "'enjoining defendant Department of Justice from continuing to deny plaintiff expedited processing of plaintiff's Freedom of Information Act request'" because such relief "would effectively grant all the relief plaintiff seeks" and was in the nature of a request for mandamus), *vacated as moot* 2004 WL 2713119 (D.C. Cir. 2004); *Al-Fayed v. CIA*, 2000 WL 34342564, *6 (D.D.C. 2000) (Kollar-Kotelly, J.) (finding that "upon consideration of the parties' arguments, the statutory and regulatory context, and the applicable case law," emergency relief was not warranted despite the agency's delay in responding to FOIA requests); *Judicial Watch v. Dep't of Justice*, slip op., No. 00-1396 (D.D.C., June 27, 2000) (Robertson, J.) (attached as Ex. 4) (denying plaintiff's "emergency motion for expedited treatment" to "compel defendant to respond to plaintiff's Freedom of Information Act request"); *Assassination Archives and Research Ctr., Inc. v. CIA*, No. 88-2600, 1988 U.S. Dist. LEXIS 18606, *1 (D.D.C., Sept. 29, 1988) (Revercomb, J.) (rejecting motion for preliminary injunction asking the Court to order expedited processing of a FOIA request). *But see, e.g.*, *EPIC v. Dep't of Justice*, 416 F. Supp. 2d 30 (D.D.C. 2006) ("EPIC I") (discussed infra).

and shall be processed *as soon as practicable*") (emphasis added).    As the Senate Report accompanying the FOIA amendments  which inserted the expedited processing procedures explains, the intent of the expedited processing provision was to give certain requests *priority*, not to require that such requests be processed within a specific period of time:

> [Once] the request for expedited processing is granted, the agency must then proceed to process the request "as soon as practicable." *No specific number of days for compliance is imposed by the bill* since depending on the complexity of the request, the time needed for compliance may vary.  *The goal is not to get the request processed within a specific time period, but to give the request priority in processing more quickly than would otherwise occur.*

S. Rep. 104-272, 1996 WL 262861, *17 (May 15, 1996) (emphasis added); *see also* H. R. Rep. No. 104-795, *reprinted at* 1996 U.S.C.A.A.N. 3448, 3461 (Sept. 17, 1996) ("certain categories of requesters would receive priority treatment of their requests . . . .").    Thus, the expedited processing provision of FOIA is an ordering mechanism, allowing certain FOIA requesters to jump to the head of the line and avoid the ordinary "first in, first out" processing queue.   Once a request is at the front of the line, however, "practicability" is the standard that governs how quickly any particular request can be processed. *See Landmark Legal Foundation*, 910 F. Supp. 2d at 279 (denying preliminary injunction to expedite processing where, *inter alia*, agency stated request is already at the top of the queue).

Consistent with the plain language of the statute, and Congress's clearly stated intent, this Court has repeatedly recognized that when expedited processing of a FOIA request is granted, the appropriate standard to be applied to determine when documents might be identified for release is "as soon as practicable," not "in less than 20 days."  *See American Civil Liberties Union v. Dep't of Justice*, 321 F. Supp. 2d 24, 38  (D.D.C. 2004) (Huvelle, J.) (granting request for expedited processing and ordering that DOJ "shall process plaintiffs' requests for all records relating to section 215 consistent with 5 U.S.C. § 552(a)(6)(E)(iii) and 28 C.F.R. § 16.5(d)(4) ('as soon as practicable')"); *Edmonds v. FBI*, 2002  WL 32539613, *4 (D.D.C. 2002) (Huvelle, J.) (directing defendants to advise the Court "of the date when the request will be processed consistent with 5 U.S.C. § 552(a)(6)(E)(iii) and 28 C.F.R. § 16.5(d)(4) ('as soon as practicable')").

Plaintiff ignores the plain language of the statute and clear legislative intent, and instead, attempts to invent a time limit applicable to its expedited requests by citing 5 U.S.C. § 552(a)(6)(A)(i), which it characterizes as the "the time frame required by the FOIA and DOJ regulations for issuing a determination on a *standard* FOIA request."[5]  Pl. Mem. at 9 (emphasis plaintiff's).  That provision has no bearing on when expedited processing must be completed.  *See American Civil Liberties Union v. Dep't of Defense*, 339 F. Supp. 2d 501, 503 (S.D.N.Y. 2004) ("While it would appear that expedited processing would necessarily require compliance in fewer than 20 days, Congress provided that the executive was to 'process as soon as practicable' any expedited request.").   An agency's inability to respond within the 20-day period simply means that the requester may, before a response has been made, file suit and be found to have constructively exhausted administrative remedies.  *See The Nation Magazine v. Dep't of State*, 805 F. Supp. 68, 72 (D.D.C. 1992).  The provision simply does not purport to establish an "outside" time limit on what is "practicable" in responding to an expedited request.

Indeed, as Judge Wilkins cogently explained in rejecting another requester's motion for preliminary injunction in a FOIA case, the 20-day deadline under FOIA is *not* a deadline for production of documents:

> "Notification by an agency of whether it will comply with the request is not the same thing as delivering the requested documents."  *See Spannaus v. U.S. Dep't of Justice*, 824 F.2d 52, 59 n. 7 (D.C. Cir. 1987) (distinguishing between when the FBI determined whether to comply with the request and when it delivered the documents).  Thus, section 552(a)(6)(A)(i) only requires a response to a FOIA request within the 20–day period, not production of the requested documents.  However, even if an agency fails to respond within this 20–day window, section 552(a)(6)(C)(i) provides that:
>
> > [a]ny person making a request to any agency for records under paragraph ... (3) of this subsection shall be deemed to have exhausted his administrative remedies with respect to such request if the agency fails to comply with the applicable time limit provisions of this paragraph.
>
> 5 U.S.C. § 552(a)(6)(C)(i). Therefore, even if the EPA failed to respond to Navistar's requests by the statutory deadline, it only entitles Navistar to

---

[5] 5 U.S.C. § 552(a)(6)(i) provides that an agency shall "determine within twenty working days (except Saturdays, Sundays, and legal public holidays) after the receipt of the request whether to comply with such request."

constructive exhaustion of its administrative remedies, *not immediate production of the requested documents.*

*Navistar, Inc. v. EPA*, Civ. No. , 2011 WL 3743732, *3-*5 (D.D.C. August 25, 2011) (Wilkins, J.) (emphasis added).  *See also Judicial Watch, Inc. v. Dep't of Energy*, 888 F. Supp. 2d 189, 193 (D.D.C. 2012) (Contreras, J.) ("After an agency receives a FOIA request, '[a]ll that is required to satisfy [the statute] in this [C]ircuit is "a reply from the agency indicating that it is responding to [the] request."'") (quoting *Love v. FBI*, 660 F. Supp. 2d 56, 59 (D.D.C. 2009), and *Oglesby*, 920 F.2d at 61); *Petit-Frere v. U.S. Attorney's Office for S.D. of Fla.*, 664 F.Supp.2d 69, 71 (D.D.C. 2009) (same); *Judicial Watch v. Rossotti*, 285 F. Supp. 2d 17, 26 (D.D.C. 2003) (Collyer, J.) ("Certainly, it took longer than twenty days to respond to Judicial Watch's FOIA requests, but that is explained by the nature of these requests, the many offices to which they were directed, the number of FOIA requests [the agencies] regularly receive, and the treatment of FOIA requests on a first in/first out basis.").   Thus, under FOIA, a court may grant an extension to allow the agency to finish its search and processing where the agency requires additional time because of exceptional circumstances.  *See* 5 U.S.C. § 552(a)(6)(c); *see also Open America v. Watergate Special Prosecution Force*, 547 F. 2d 605, 615 (D.C. Cir. 1976).[6]  Such circumstances make the 20-day deadline "not mandatory but directory."  *Id.* at 616.   Accordingly, the 20-day requirement can hardly be found to establish a mandatory deadline as to the "practicability" of responding to expedited requests.

Instead, what is practicable will vary depending on the size, scope, detail, and complexity of issues presented by the request; the number of offices with responsive documents; other agencies or components which must be consulted or to which documents might have to be referred for additional review, and exemption issues.   Plaintiff has made broad FOIA requests seeking *all* documents or other information provided to the Congressional intelligence

---

[6] As the Court of Appeals explained in *Ogelsby v. Dep't of Army*, 920 F.2d 57 (D.C. Cir. 1990), "[f]requently if the agency is working diligently, but exceptional circumstances have prevented it from responding on time, the court will refrain from ruling on the request itself and allow the agency to complete its determination." *Id.* at 64.

committees concerning use of PR/TT authority under FISA, 50 reports to those committees made by the government from 2001 until late 2013, and *all* material relied upon to create such Congressional submissions.  Plaintiff's request thus seeks documents spanning thirteen years that, by their very nature, are likely to include classified material.  *See* Bradley Decl. ¶ 8.   The existence of any significant volume of classified materials contributes mightily to the complexities attendant to processing a FOIA request.  *See* Bradley Decl.  ¶¶ 8, 10.  Thus, classified documents responsive to plaintiff's request must be evaluated for release under 5 U.S.C. § 552(b)(1), and Executive Order 13,526, "Classified National Security Information," 75 Fed. Reg. 707 (Dec. 29, 2009); *see also* 28 C.F.R. § 16.4(e), § 16.7.[7]  As Congress has recognized, such review may require additional time.  *See* H.R. Rep. No. 104-795, 1996 U.S.C.A.A.N. at 3466 ("In underscoring the requirement that agencies respond to requests in a timely manner, the Committee does not intend to weaken the interests protected by the FOIA exemptions.   Agencies processing some requests may need additional time to adequately review requested material to protect these exemption interests.  For example, processing some requests may require additional time to properly screen material against the inadvertent disclosure of material covered by the national security exemption").   Moreover, documents subject to other exemptions, *see generally* 5 U.S.C. § 552(b), must similarly be identified and, where necessary, redacted, and documents generated by other agencies or authorities must be referred for review back to those same agencies or authorities.  Plaintiff offers no reason to believe that the agency is not performing these tasks as soon as practicable, and thus fails to meet its burden of demonstrating, "by a clear showing," *Mazurek*, 520 U.S. at 972, that relief of any kind is

---

[7] Executive Order 13,526 establishes a uniform system for classifying, safeguarding, and declassifying national security information, and specifically provides that "[w]hen an agency receives any request for documents in its custody that contain information that was originally classified by another agency . . . it shall refer copies of any request and the pertinent documents to the originating agency for processing, and may, after consultation with the originating agency, inform any requester of the referral unless such association is itself classified under this order or its predecessors." *Id.* § 3.6(b).  Department of Justice regulations similarly require referral of classified records to the original classifying agency prior to completion of processing under FOIA. 28 C.F.R. §§ 16.4(e), 16.7.

warranted at this juncture.  Indeed, Mr. Bradley's declaration provides uncontroverted evidence that defendant *is* processing plaintiff's broad request as soon as practicable.  Bradley Decl. ¶ 14.

Plaintiff relies heavily on a single, non-precedential, contrary decision it obtained eight years, ago, *EPIC v. Dep't of Justice*, 416 F. Supp. 2d 30 (D.D.C. 2006) ("*EPIC I*"), in which a preliminary injunction was granted in the FOIA expedited processing context requiring the agency to produce or identify all responsive documents within 20 days.  As is plain from the above discussion, *EPIC I* is in tension with the FOIA statutory and regulatory framework and the general principles governing issuance of preliminary relief.  Moreover, plaintiff fails to note that the preliminary injunction entered in that case was later modified upon reconsideration to provide the government considerably longer to process responsive documents, following a factual submission by the government regarding its processing capacity. *See EPIC I*, slip op., No. 06-0096 (D.D.C. Mar. 24, 2006) (Kennedy, J.) (attached as Exhibit 2) (granting in part the government's expedited motion for relief from the February 16, 2006 Order and extending the deadline for several DOJ components to process plaintiff's FOIA request by 60 or 120 additional days, respectively). Defendant respectfully submits that the *EPIC I* opinion (unlike the *EPIC I* Court's reconsideration and substantial subsequent modification of its accompanying Order) is in error.  As Judge Wilkins recognized in *Navistar*, FOIA's 20 day administrative exhaustion requirement has no bearing on the date by which an agency must produce records responsive to a request.  In any event, even the *EPIC I* Court's decision was greatly influenced by its view that the agency did not "present [] evidence that processing EPIC's FOIA requests within the next twenty days would be impracticable." *Id.* at 39-40.  Indeed, the *EPIC I* Court emphasized that "[t]he presumption of agency delay raised by failing to respond to an expedited request within twenty days is certainly rebuttable if the agency presents credible evidence that disclosure within such time period is truly not practicable." *Id.* at 39.  Here, even if such a presumption of agency

delay was supported by the law, it has been rebutted with Mr. Bradley's declaration explaining defendant's efforts to process plaintiff's FOIA request and the reasons why plaintiff's request for immediate relief is unreasonable and impracticable.

Finally, plaintiff also asks the Court to order defendant to provide a Vaughn index within 30 days (ten days after processing is complete on plaintiff's invented 20 calendar day timeline). There is no support for this request in law, and plaintiff does not even attempt to offer one. Indeed, courts generally do not require *Vaughn* indicies until dispositive motions are filed.[8]  This is another portion of plaintiff's Complaint on which it has failed to establish (in this case, to even attempt to establish) likelihood of success.

## II.    Plaintiff has Failed to Establish it Will Suffer Any Irreparable Harm Absent A Mandatory, Emergency Injunction.

"The basis of injunctive relief in the federal courts has always been irreparable harm." *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir.1995) (citing *Sampson v. Murray*, 415 U.S. 61, 88 (1974)).  The D.C. Circuit "has set a high standard for irreparable injury," *In re Navy Chaplaincy*,534 F.3d 756, 766 (D.C. Cir. 2008) (quotation marks and citation omitted), and because plaintiff has not made the requisite showing, its application should be denied on that basis alone, *see Greater New Orleans Fair Hous. Action Ctr. v. U.S. Dep't of Hous. & Urban Dev.*, 639 F.3d 1078, 1088 (D.C. Cir. 2011).  Moreover, injunctive relief "will not be granted against something merely feared as liable to occur at some indefinite time."  *Wisc. Gas. Co. v. Federal Energy Regulatory Comm'n*, 758 F.2d 669, 764  (D.C.

---

[8] *See, e.g., Miscavige v. IRS*, 2 F.3d 366, 369 (11th Cir. 1993) (The "early attempt in litigation of this kind to obtain a *Vaughn* index . . . is inappropriate until the government has first had the chance to provide the court with the information necessary to make a decision on the applicable exemptions."); *United States Committee on Refugees v. Dep't of State,* No. 91- 3303, 1992 WL 35089, *1 (D.D.C. Feb. 7, 1992) ("the preparation of a *Vaughn* index is unwarranted before the filing of dispositive motions in FOIA actions because the filing of a dispositive motion, along with detailed affidavits, may obviate the need for indexing the withheld documents") (internal quotation marks and citation omitted); *Stimac v. Dep't of Justice*, 620 F. Supp. 212, 213 (D.D.C. 1985) ("the preparation of a Vaughn Index would be premature before the filing of dispositive motions").

Cir. 1985) (citation omitted).    Instead, the party seeking injunctive relief must show that "[t]he injury complained of [is] of such imminence that there is a 'clear and present' need for equitable relief to prevent irreparable harm."  *Id.* (citations and internal quotations omitted).  It is a "well known and indisputable principle[]" that a vague or speculative harm cannot constitute "irreparable harm" sufficient to justify injunction relief. *Id.*

Plaintiff's first attempt to establish irreparable harm is entirely circular and conclusory:  it argues that the Department of Justice has failed to expedite plaintiff's FOIA request, and therefore it is being harmed.  Of course, as explained above and established by Mr. Bradley's declaration, this premise is false – plaintiff *has been granted* expedition of its FOIA request, and processing of that request *is being expedited* to the extent practicable.  See *Navistar*, 2011 WL 3743732*5 ("Navistar's argument here suffers from the same weaknesses as its arguments on the previous two factors. Navistar has not shown that the EPA has violated the FOIA [by taking over 20 days to respond to the request].  Navistar has also failed to show why it is entitled to immediate production of requested documents—a result they could not receive under the provisions of the FOIA.").

Plaintiff's second claimed injury is similarly insufficient to establish a right to extraordinary, complete, emergency relief.  Plaintiff argues its ability, "and the ability of the public to obtain in a timely fashion information that is vital to the current and ongoing debate surrounding the scope of NSA surveillance programs," will be irreparably harmed absent an injunction.[9]  Pl. Mem. 10. This is specious on several levels.  First, plaintiff adduces nothing to support its mere assertion that a document will lose its value to the public debate absent a preliminary injunction.  Indeed, it is just as likely that significant new information would reinvigorate public interest in a story.  It is, again, the plaintiff's burden to establish (rather than merely assert) that failure to grant a preliminary

---

[9] Plaintiff appears to be describing a harm that is suffered primarily by the public, not by plaintiff itself.  The public interest is properly considered as its own factor in the injunction analysis – and, as explained below, in this case the public interest counsels against the award of the preliminary injunction plaintiff seeks – but it cannot be substituted for a showing that plaintiff itself will be harmed.

injunction will cause irreparable harm, but plaintiff offers only conclusory assertions.  Plaintiff notes legislation concerning NSA surveillance (if not FISA PR/TT authority) in Congress, and goes so far as to baldly state that "[t]he likelihood of a bill being passed in the near future is both 'certain and great.'"  Pl. Mem. 12 (quoting *Wisc. Gas Co*. 758 F. 2d 674.  Unsurprisingly, plaintiff offers no evidentiary support for its *certainty* regarding what legislation Congress will quickly pass.

Moreover, the public debate plaintiff describes broadly concerns "the current controversies surrounding NSA surveillance."  Pl. Mem. 12.  Plaintiff's request, of course, is for more specific documents about PR/TT authority under FISA.  Plaintiff does not explain why or how its ability to contribute to public debate on that topic will be irreparably harmed if it receives non-exempt material "as soon as practicable" rather than on its preferred, artificial timeline.  While defendant has granted expedition of plaintiff's FOIA request, it nonetheless bears noting that the public debate on which plaintiff relies to establish its "urgency to inform" the public is centered on matters other than the actual subject of plaintiff's request.  Thus, in *EPIC v. Dep't of Defense*, this Court rejected this plaintiff's argument that it had demonstrated an "urgency to inform" the public when it had demonstrated public interest only in a general topic, not the specific subject of the relevant FOIA request.  355 F. Supp. 2d 98, 101 (D.D.C. 2004).  Public debate over the focus of plaintiff's FOIA request – PR/TT bulk collection of electronic communications metadata – is unlikely to be pressing since the government discontinued that activity over two years ago, in 2011.  *See, e.g*., "DNI Clapper Declassifies Additional Intelligence Community Documents Regarding Collection Under Section 501 of the Foreign Intelligence Surveillance Act," and linked documents ("November 18 DNI Statement), *available at* http://www.odni.gov/index.php/newsroom/press-releases/191-press-releases-2013/964-dni-clapper-declassifies-additional-intelligence-community-documents-regarding-collection-under-section-501-of-the-foreign-intelligence-surveillance-act-nov.  ("The Intelligence Community regularly assesses the continuing operational value of all of its collection programs. In 2011, the Director of NSA called for an examination of this program to assess its continuing value as a unique source of foreign intelligence information.  This examination revealed that the

program was no longer meeting the operational expectations that NSA had for it.  Accordingly, after careful deliberation, the Government discontinued the program.").

In any event, plaintiff's argument that it requires disclosure in order to "meaningfully contribute to the current debate," *see* Pl. Mem. at 12, rings substantially hollow.  There is already considerable, now-declassified information in the public domain about PR/TT collection of internet metadata pursuant to FISA following various government releases.  *See, e.g.,* "DNI Announces the Declassification of the Existence of Collection Activities Authorized by President George W. Bush Shortly After the Attacks of September 11, 2001," and linked documents ("December 21 DNI Statement"), *available at* http://www.odni.gov/index.php/newsroom/press-releases/191-press-releases-2013/991-dni-announces-the-declassification-of-the-exisitence-of-collection-activities-authorized-by-president-george-w-bush-shortly-after-the-attacks-of-september-11,-2001; November 18 DNI Statement.  This information includes the Foreign Intelligence Surveillance Court opinion authorizing internet metadata collection, a subsequent FISC opinion, and a description of the now-discontinued program, *see* November 18 DNI Statement, as well as numerous declarations by high-level officials discussing the program, *see* December 21 DNI Statement.  Based upon the information that the government has already made public, therefore, plaintiff is hardly precluded from participating in public debate and can demonstrate no harm stemming from the absence of the injunctive relief it seeks.

Moreover, in light of the fact that plaintiff cannot now show what non-exempt information – if any – it may eventually receive as a result of the completed processing of its FOIA requests, plaintiff cannot meet its burden to establish that it will be irreparably harmed if it fails to receive that information in the next twenty days.  *See The Nation Magazine*, 805 F. Supp. at 74 (denying motion for preliminary injunction on ground that plaintiff had failed to demonstrate irreparable harm because "[e]ven if this Court were to direct the speed up of *processing* of their requests, [plaintiffs] have not shown at this time that they are entitled to the *release* of the documents that they seek.   To the contrary, it is undisputed that at least some of the documents are probably exempt from production under FOIA").   Even with respect to any non-exempt documents that

-17-

may be released once processing is complete, plaintiff's ability to inform the public about the subject matter of its FOIA requests will not be precluded, but merely postponed (and, again, plaintiff's requests have already been granted expedition and thus, any such release will occur as soon as practicable).

Finally, plaintiff's claim that preliminary injunctive relief is necessary because the Department of Justice granted plaintiff's request for expedited processing, thereby recognizing the urgency of the matter, is circular. If plaintiff's view prevailed, anyone who sought to have their FOIA request processed on an expedited basis would automatically have a claim of irreparable injury regardless of whether any real harm existed. (Indeed, that would include the requesters whose thirteen FOIA requests remain pending and were granted expedition by NSD before this request.) *Cf. Fiduccia v. Dep't of Justice*, 185 F.3d 1035, 1041 (9th Cir. 1999) (rejecting argument that "requesters who sue agencies under the FOIA should have their requests handled before requesters who do not file lawsuits"). This was not the result contemplated by Congress when it authorized a limited exception for expedited processing. Instead, Congress deferred to the necessity for ensuring adequate time for appropriate agency. Thus, while the purported urgency of plaintiff's request may be a factor in determining whether a request for expedited treatment will be granted, *see* 5 U.S.C. § 552(a)(6)(E)(v)(ii), it is not a factor in determining the speed by which an agency needs to complete the request, nor does it mean that plaintiff will suffer any harm by adhering to the statute, let alone irreparable harm. As previously explained, the statute does not require an agency to complete the processing "as soon as a requester needs it." Plaintiff makes no showing of irreparable harm, and has demonstrated no reason for the Court to invoke its emergency powers at this early stage.[10]

---

[10] Plaintiff does not even attempt to explain why the failure to obtain a *Vaughn* index would result in irreparable harm, though it asks this Court to order defendant to provide such an index within 30 days.

III.    **The Mandatory Emergency Injunction Plaintiff Seeks Would Harm the Public Interest.**

Plaintiff's failure to show that it would be irreparably harmed if the requested injunction is not granted is by itself sufficient to defeat their motion for preliminary injunction. *CityFed Fin. Corp.*, 58 F.3d at 747.   There is further reason, however, to deny the injunction.   Along with alleged harm to the plaintiff, the court must consider whether a preliminary injunction of the sort demanded by plaintiff would be in the public interest.   See Al-Fayed, 254 F.3d at 303; accord Serono Labs., Inc., 158 F.3d at 1317-18.   Here, it would not.

Plaintiff's effort to impose an artificial time frame on the Department does not take account of the realities attendant to processing a request like plaintiff's, including the necessity to search for and identify responsive materials, get those materials electronically scanned for processing, review a significant volume of responsive materials for classification, review the material to determine if it is otherwise exempt from disclosure under FOIA, and consult with the appropriate operational divisions or other agencies prior to releasing any non-exempt, responsive documents. *See, e.g.*, Bradley Decl. ¶¶ 5-8, 10-14.   That process simply cannot be completed in the twenty-day time frame plaintiff proposes. *Id. ¶* 14.

Plaintiff's request for the proposed preliminary injunction ignores these realities, and, as a result, threatens to compromise the delicate balancing of the public interest that Congress undertook in enacting FOIA between the general interest in disclosure of government information and the necessity of ensuring that certain types of documents, the disclosure of which would cause harm, were not to be disclosed.   The exemptions listed in § 552(b) embody a judgment by Congress that the public interest would best be served by allowing the agencies to withhold certain records – for example, those records whose disclosure would interfere with other vital public interests such as national security, 5 U.S.C. § 552(b)(1); efficient and frank intra- and inter-agency deliberations and attorney-client communications, 5 U.S.C. § 552(b)(5); or effective law enforcement, 5 U.S.C. § 552(b)(7).   Congress specifically noted that even with respect to expedited requests, in certain cases, depending on the subject matter of the request, additional

time would be required to ensure that the public's interest in preventing  the public disclosure of these exempted documents was not compromised. *See* H. R. Rep. No. 104-795, 1996 U.S.C.A.A.N. at 3466 ("In underscoring the requirement that agencies respond to requests in a timely manner, the Committee does not intend to weaken the interests protected by the FOIA exemptions.  Agencies processing some requests may need additional time to adequately review requested material to protect these exemption interests.   For example, processing some requests may require additional time to properly screen material against the inadvertent disclosure of material covered by the national security exemption").   As Congress  acknowledged, those concerns are only heightened in a case such as this one, where numerous  classified documents are at issue, and the Department has independent obligations under federal  regulations and Executive Order to ensure that no unwarranted disclosure occurs.

Ordering the Department to disclose documents not "as soon as practicable" as dictated by FOIA, but rather on plaintiff's artificial timetable, causes significant harm to the balancing of these competing public interests.    The fact that the records may shed light on the government's activities, Pl. Mem. 15, does not outweigh the harm to the public interest that would be caused by compelling disclosure before appropriate agency review, intended to protect material that is subject to statutory exemptions from disclosure, can be completed.  *Wadelton v. Dep't of State*, 941 F. Supp. 2d 120, 124 (D.D.C. 2013) (Huvelle, J.) ("Plaintiffs argue that a preliminary injunction will be in the public interest, based on little more than the core purpose of FOIA being to 'allow the public to be informed about "what their government is up to"' . . . . This explanation does nothing to distinguish plaintiffs' FOIA request from any other FOIA request. Therefore, the Court finds that plaintiffs fail to satisfy the public interest prong.") (Citations omitted.); *Navistar*, 2011 WL 3743732, *4-*5 (in rejecting an application for a preliminary injunction to compel FOIA processing, finding harm to agency outweighed harm to movant; holding it is not in the public interest to enter an injunction not justified under law, particularly where it would alter, rather than maintain, the status quo).

Importantly, granting plaintiff's motion would also disadvantage other, similarly situated members of the public.  As noted, thirteen FOIA requests to NSD were granted expedition before plaintiff's.  While NSD continues to work on them, along with plaintiff's, enjoining defendant to complete plaintiff's request on an artificial timeline – indeed, faster than practicable – would require resources be diverted from those other requests and, thus, would undermine their interests while further undermining the overall public interest in proper operation of the FOIA, including its provision for expedition.

## IV.    Plaintiff's Requested Mandatory, Emergency Injunction Is Improper Because It Would Afford Plaintiff Full Relief, Not Intermediate Relief

Preliminary injunctive relief is not intended to provide plaintiffs with a means to bypass the litigation process and achieve rapid victory, and so a preliminary injunction should not work to give a party essentially the full relief it seeks on the merits.  *See Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) ("[I]t is generally inappropriate for a federal court at the preliminary injunction stage to give a final judgment on the merits."); *Dorfmann v. Boozer*, 414 F.2d 1168, 1173 n.13 (D.C. Cir. 1969) ("a preliminary injunction should not work to give a party essentially the full relief he seeks on the merits.").  As plaintiff has made clear, however, that is what it seeks here:  an injunction that the government produce responsive documents to plaintiff almost immediately.  *E.g.,* Pl. Mem. at 16; Compl. At 7 ("Requested Relief").  That is further indication that plaintiff's emergency motion is merely an improper litigation scheduling tactic. This Court should reject it.

//

//

//

//

//

//

-21-

## CONCLUSION

For all of the foregoing reasons, the Court should deny plaintiff's Motion for Preliminary Injunction.  Had plaintiff met and conferred with defendant prior to filing its Motion for Preliminary Injunction, as required by Local Rule 7(m), the parties could have agreed upon a schedule for completing the processing of plaintiff's FOIA request.  The parties can still attempt to do so and proceed to further litigation, if any, as necessary.  Use of the preliminary injunction procedure accomplishes nothing that could not be achieved through the standard, already-expedited procedures that generally apply in FOIA cases like this one.

Dated January 10, 2013                        Respectfully submitted,

                                              STUART F. DELERY
                                              Assistant Attorney General

                                              RONALD C. MACHEN
                                              United States Attorney

                                              ELIZABETH J. SHAPIRO
                                              Deputy Branch Director

                                               */s/ Steven Y. Bressler*
                                              STEVEN Y. BRESSLER
                                              Senior Counsel
                                              U.S. Department of Justice, Civil Division
                                              Ben Franklin Station, P.O. Box 833
                                              Washington, D.C.  20044
                                              (202) 305-0167
                                              Steven.Bressler@usdoj.gov

                                              *Counsel for Defendant*