**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | )    No. 1:13-cv-01961-KBJ ) |
| UNITED STATES DEPARTMENT OF JUSTICE | ) ) ) |
| Defendant. | ) ) ) |

**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR A
PRELIMINARY INJUNCTION**

In this case EPIC seeks the timely release of documents that are essential to a critical

matter of national importance now under consideration by all three branches of government. The

President today, January 17, 2014, set out recommendations concerning reforms to surveillance

authority in the United States and has called on Congress to make significant changes. The

documents that EPIC seeks are central to this debate. They include final reports submitted by the

Department of Justice ("DOJ") to Congressional oversight committees regarding surveillance

orders issued by the Foreign Intelligence Surveillance Court. Public access to these documents is

now essential to a meaningful public debate on the President's proposal.

The DOJ argues that EPIC's motion is "improper." This same argument was rejected

eight years ago in a similar case, brought by EPIC, regarding internal agency reports following

the first news report of the "warrantless wiretapping" program. *EPIC v. DOJ*, 416 F. Supp. 2d 30

(D.D.C. 2006). In that matter, Judge Kennedy had no difficulty describing the many instances in

which courts have granted a motion for a Preliminary Injunction in FOIA matters and with dates

certain for production. As Judge Kennedy explained:

> On numerous occasions, federal courts have entertained motions for a preliminary injunction in FOIA cases and, when appropriate, have granted such motions. See *ACLU v. DOD*, 339 F.Supp.2d 501, 503 (S.D.N.Y.2004) (granting preliminary injunction motion in FOIA case and requiring production within one month); *Aguilera v. FBI*, 941 F.Supp. 144, 152–53 (D.D.C.1996) (granting preliminary injunction in FOIA case and requiring expedited processing to be completed within approximately one month); *Cleaver v. Kelley*, 427 F.Supp. 80, 81–82 (D.D.C.1976) (granting preliminary injunction in FOIA case and requiring expedited processing to be completed within approximately twenty days); see also *Al–Fayed v. CIA*, 2000 WL 34342564, at *6, 2000 U.S. Dist. LEXIS 21476, at *19–20 (D.D.C. Sept. 20, 2000) (denying preliminary injunction in FOIA case after conducting four-part analysis); *Assassination Archives & Research Ctr. v. CIA*, 1988 U.S. Dist. LEXIS 18606, at *1–3 (D.D.C. Sept. 29, 1988) (same).

*Id*. at 35. As Judge Kennedy further explained, the FOIA imposes "no limits on courts' equitable

powers in enforcing its terms" and "where an agency's actions in response to a FOIA request

'violate the intent and purpose of the FOIA . . . the courts have a duty to prevent these abuses.'"

*Id.* (citing *Payne Enters. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988). *See also Nat'l Sec.*

*Counselors v. CIA*, 898 F. Supp. 2d 233, 264 (D.D.C. 2012). Courts also have the power under

the FOIA to craft equitable relief to prevent "an agency *policy or practice* that will impair the

party's lawful access to information in the future." *Nat'l Sec. Counselors*, 898 F. Supp. 2d at 252

(citing *Payne Enters.*, 837 F.2d at 494). *See also Newport Aeronautical Sales v. DOJ*, 684 F.2d

160, 164 (D.C. Cir. 2012).

This Court has the authority to issue the relief that EPIC seeks, and should do so because

EPIC is likely to succeed on the merits of its FOIA claim, faces immediate and irreparable

injury, seeks disclosure in the public interest, and because an injunction would not unduly burden

the interests of others. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008).

Because the DOJ's arguments to the contrary are unavailing, EPIC respectfully asks that this Court grant the motion and set a date certain for a determination and DOJ's processing of EPIC's FOIA request.

**I.      A Preliminary Injunction is Appropriate in this Case to Compel DOJ to Process EPIC's FOIA Request**

The DOJ's argument that preliminary injunctive relief is "wholly inappropriate" in a FOIA case is contrary to the record, the earlier determination by the agency, and the relevant law. DOJ cites cases that present an entirely different procedural posture because those plaintiffs sought a Preliminary Injunction yet had failed to obtain a determination by the agency that their requests merited expedited processing. In this case, EPIC seeks to enforce its right to expedited processing by requiring that the DOJ issue a determination and process the responsive records within a time certain. EPIC's argument is not circular, as the agency claims; it is straightforward. The agency has failed to issue a determination within twenty business days as required under the statute, 5 U.S.C. § 552(a)(6)(A)(i). A determination requires DOJ "at least inform [EPIC] of the scope of the documents that the agency will produce, as well as the scope of the documents that the agency plans to withhold under any FOIA exemptions." *Citizens for Responsibility and Ethics in Washington v. Federal Election Com'n*, 711 F.3d 180, 186 (D.C. Cir. 2013).

The agency has also failed to process EPIC's FOIA request expeditiously.[1] The DOJ has conceded that "NSD and OI are still searching their records to determine how many documents are responsive to categories 2 and 3" of EPIC's request. Decl. of Mark A. Bradley ("Bradley Decl.") ¶7. The DOJ has yet to produce responsive records, and any further delay will have the effect of denying EPIC the expedited treatment to which it is entitled and, as a result, EPIC will suffer irreparable injury. None of the cases cited by the DOJ provided the court with a basis to

---

[1] The DOJ did not indicate the date when it actually began processing EPIC's FOIA Request in its opposition or attached declaration.

deny EPIC's motion. In *Judicial Watch, Inc. v. DOJ*, No. 00-1396, the plaintiff filed an

"emergency motion for expedited treatment" to compel a response to a FOIA Request, which is

not the same relief that EPIC seeks here. *See* Def. Opp. Ex. 4. In denying Judicial Watch's

motion that court noted that, unlike the instant case, Judicial Watch had neither requested nor

received expedited processing from DOJ. *Id*. Similarly, in the other cases cited by DOJ, the

plaintiffs sought a preliminary injunction after their request for expedited processing was denied

by the agency. *See Wadelton v. Dep't of State*, 941 F. Supp. 2d 120, 121 (D.D.C. 2013) ("the

State department denied the request for expedited processing"); *Landmark Legal Foundation v.

EPA*, 910 F. Supp. 2d 270, 273 (D.D.C. 2012) ("The EPA acknowledged receipt of the FOIA

request but denied Landmark's request for expedited processing").

In this case, EPIC has already been granted expedited processing by the DOJ and merely

seeks an order from the Court compelling DOJ to provide a determination and complete its

processing of responsive records in a timely manner. Many courts have held that a preliminary

injunction is an appropriate remedy where an agency fails to provide a timely determination in

response to a request that was granted expedited processing. The DOJ has only been granted

additional time to process an expedited request in a case where the court found that it satisfied

the "four factors courts have employed in assessing a request for an *Open America* stay." *Elect.

Frontier Found. v. DOJ*, 563 F. Supp. 2d 188, 1996 (D.D.C. 2013). As the DOJ has made no

such showing in this case and a preliminary injunction is the appropriate relief.

## II.     EPIC is Clearly Likely to Succeed on the Merits of the Underlying Action

The DOJ's argument that the FOIA's statutory deadline "has no bearing on this case" has

been rejected, and is contrary to this Circuit's recent determination of a similar matter. An

agency has a clear and unambiguous requirement to issue a determination in response to a

standard FOIA request within twenty business days. 5 U.S.C. § 552(a)(6)(A)(i) (2013). The D.C.

Circuit recently explained what this duty entails:

> The statute requires that, within the relevant time period, an agency must determine whether to comply with a request—that is, whether a requester will receive all the documents the requester seeks. It is not enough that, within the relevant time period, the agency simply decide to later decide. Therefore, within the relevant time period, the agency must at least inform the requester of the scope of the documents that the agency will produce, as well as the scope of the documents that the agency plans to withhold under any FOIA exemptions.

*Citizens for Responsibility and Ethics in Washington*, 711 F.3d at 186. The DOJ has clearly

violated this statutory obligation by failing to provide a determination regarding EPIC's FOIA

request, and EPIC is entitled to injunctive relief.

The D.C. Circuit's recent decision in *CREW v. FEC* clarified precisely what an agency is

required to do prior to the twenty-day statutory deadline. In *CREW*, the defendant agency argued

that a FOIA requester was not entitled to injunctive relief under the FOIA, since the agency had

"responded" to the FOIA request within twenty working days. However, the agency's "response"

constituted a letter to the requester, stating that it would "provide non-exempt responsive

documents (and thus also claim exemptions over any withheld documents) on a rolling basis in

the future)." *CREW*, 711 F.3d at 183. The court in *CREW* rejected the agency's contention that

the "response" letter satisfied the agency's legal obligation under the FOIA. The statute requires

a "determination" within twenty days, which cannot be satisfied by a communication promising

a future determination. The court recognized that if the agency were allowed to defer its

"determination" on the FOIA request to a date beyond the twenty-day deadline, FOIA requesters

would face a "Catch-22" in which they "cannot appeal within the agency because the agency has

not provided the necessary information. Yet the requester cannot go to court because the

requester has not appealed within the agency." *Id.* at 186. The court found that the FOIA "simply

does not countenance such a system." *Id*. at 187. Instead, an agency is obligated to provide requesters, at the very least, with an accounting of responsive records, including the number of responsive documents located, the number of documents being withheld, and the exemptions the agency plans to invoke. *Id*.

The decision in *CREW* reverses earlier opinions cited by DOJ because those decisions were based on an incorrect interpretation of the agency's statutory obligation. *See, e.g.*, *Navistar, Inc. v. EPA*, 2011 WL 3743732 (D.D.C. Aug. 25, 2011); *Judicial Watch, Inc. v. Dept. of Energy*, 888 F. Supp. 2d 189, 193 (D.D.C. 2012). As the court in *EPIC v. DOJ* noted, it would be an "absurd situation" if "standard FOIA requests must be processed within twenty days . . ., yet expedited requests empower an agency to unilaterally decide to exceed the standard twenty-day period." *See EPIC v. DOJ*, 416 F. Supp. 2d 30, 38 (D.D.C. 2006) ("*EPIC I*"), *see also Mova Pharmaceutical Corp. v. Shalala*, 140 F.3d 1060, 1067 (D.C. Cir. 1998) ("In expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy" (*citing Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 51 (1987))).

DOJ correctly points out that the Court in *EPIC I* later modified its scheduling order entered pursuant to the Preliminary Injunction. *See* Def. Opp. Ex. 2. However, the modification did not vacate the Preliminary Injunction, and only offered limited relief in the form of well-defined extensions to the time for some, but not all, components to process the FOIA request at issue. These extensions were made only after the case had been consolidated with a separate but related case, and then only on the basis of DOJ's affidavits demonstrating that it had been exercising due diligence to process the FOIA request at issue. *See EPIC I,* Defendant's Expedited Motion for Relief from the Court's Order of February 16, 2006 at 2, No. 06-0096,

Dkt. No. 13 (Mar. 7, 2006). DOJ has made no such showing of due diligence in this case, and in fact has made clear that it has not yet completed its initial search for records responsive to two of the three categories of requested documents. *See* Bradley Decl ¶7.

Congress set the outside limit for issuing a determination as to an expedited FOIA request at twenty business days. 5 U.S.C. §§ 552(a)(6)(A)(ii), 552 (a)(6)(E)(iii) (2013). DOJ has failed to cite any controlling case law that contravenes this requirement, which the D.C. Circuit recently affirmed in *CREW v. FEC*.[2] As such, the DOJ has violated its statutory obligation regardless of whether it is processing EPIC's request as expeditiously as "practicable."[3] Because DOJ has failed to make a determination on EPIC's FOIA Request in more than sixty days, more than twice the time allotted by Congress in the FOIA, EPIC is exceptionally likely to succeed on the merits of its underlying claim.

Further, EPIC is entitled to receive a *Vaughn* index in this matter. Courts in this circuit have recognized that a *Vaughn* index is the appropriate means of providing a list of responsive documents, along with a justification for any withholdings pursuant to statutory exemption.

---

[2] In fact, the only citation DOJ provides in support is a passing reference, with no further discussion, in a 2004 case from the Southern District of New York. Def. Opp. at 10, *citing American Civil Liberties Union v. Dept. of Defense*, 339 F. Supp. 2d 501, 503 (S.D.N.Y. 2004).

[3] When an Agency deems it cannot comply with the deadlines for processing a FOIA request at the litigation stage, the appropriate avenue for relief is a request for a stay of proceedings as described in *Open America v. Watergate Special Prosecution Force*, 547 F.2d 605 (D.C. Cir. 1976) ("Good faith and due diligence call for a procedure which is fair overall in the particular agency.") *see also EPIC v. FBI*, 933 F. Supp. 2d 42, 46 (D.D.C. 2013) ("In *Open America v. Watergate Special Prosecution Force* . . . the D.C. Circuit found that an agency is entitled to additional time under this 'exceptional circumstances' provision when the agency: is deluged with a volume of requests for information vastly in excess of that anticipated by Congress, when the existing resources are inadequate to deal with the volume of such requests within th etime limits of subsection (6)(A), and when the agency can show that it 'is exercising due diligence' in processing the requests.") (internal citations omitted). EPIC would contest that DOJ can show the exceptional circumstances necessary for such a stay. For example, while DOJ asserts that NSD has received 40 FOIA requests in this fiscal year, Bradley Decl. at ¶ 10, previous reports indicate that this is far less than NSD typically receives in a fiscal year. See U.S. Department of Justice Freedom of Inforamation Act Annual Report Fiscal Year 2010, available at http://www.justice.gov/oip/annual_report/2010/10contents.htm (NSD received 185 requests received in fiscal year 2010); U.S. Department of Justice Freedom of Inforamation Act Annual Report Fiscal Year 2011, available at http://www.justice.gov/oip/annual_report/2011/oip-foia-fy11.pdf (NSD received 289 requests received in fiscal year 2011); U.S. Department of Jusice Freedom of Inforamation Act Annual Report Fiscal Year 2012, available at http://www.justice.gov/oip/annual_report/2012/oip-foia-fy12.pdf (NSD received 223 requests received in fiscal year 2012).

*Vaughn v. Rosen*, 484 F.2d 820, 824-25 (D.C. Cir. 1973) ("[C]ourts will simply no longer accept

conclusory and generalized allegations of exemptions, the need for adequate specificity is closely

related to assuring a proper justification by the governmental agency"); *see also King v. Dept. of

Justice*, 830 F.2d 210, 219 (D.C. Cir. 1987 ("Thus, when an agency seeks to withhold

information, it must provide 'a relatively detailed justification, specifically identifying the

reasons why a particular exemption is relevant and correlating those claims with the particular

part of a withheld document to which they apply"). While it may be true, as DOJ contends, that

*Vaughn* indices are in some cases filed in conjunction with the defendant's dispositive motion,

this specific practice does not lessen EPIC's entitlement.

Courts have also routinely required *Vaughn* indices to be produced on dates certain, prior

to the filing of dispositive motions, in order to promote expeditious resolution of the litigation.

*See EPIC v. DHS,* Order, No. 12-00333, Dkt. No. 39 (filed Jan. 8, 2013) (attached as Exhibit 1);

*EPIC v. FBI,* Order, No. 12-00667, Dkt. No. 24 (filed Aug. 29, 2013) (attached as Exhibit 2). In

fact, this is increasingly considered best practice in the FOIA community when there is a

substantial interest in narrowing the scope of the issues in the litigation prior to the Agency's

investment of time and resources in the drafting of its dispositive motion.

**III.    The Likelihood of Irreparable Harm and the Public Interest Both Support
EPIC's Request for a Preliminary Injunction**

On January 17, 2014, the President announced "a series of concrete and substantial

reforms" that he will adopt and "seek to codify with Congress." *Remarks by the President on

Review of Signals Intelligence* (Jan. 17, 2014).[4] If the DOJ continues to withhold its

determination and delay the processing of responsive records, EPIC will be unable to

disseminate information that is vital to the current public debate over the proposals to reform the

---

[4] *Available at* http://www.whitehouse.gov/the-press-office/2014/01/17/remarks-president-review-signals-intelligence.

25

surveillance activities of the federal government. The records that EPIC seeks include final reports routinely sent by the DOJ to congressional oversight committees regarding the use of its FISA pen register authority. This authority is a key part of the legal architecture that is currently under review; EPIC's request is pending at a critical moment prior to adoption of the proposals in Congress. The DOJ recognized the importance of this information when it granted expedited processing, and the urgency has increased dramatically since EPIC filed the request.

Contrary to the DOJ's argument, the injury EPIC faces is both "certain and great," and the harm is "actual and not theoretical" as described by this court. *Sierra Club v. U.S. Army Corp. of Engineers*, ___ F. Supp. 2d ___, No. 13-1239, 2013 WL 6009919 (D.D.C. Nov. 13, 2013). The injury is certain because there is no question that the debate over foreign intelligence surveillance in the United States is current and ongoing, and that it has reached a critical juncture. Congress is presently focused on shaping its reform proposals. *See* Siobhan Gorman, *Lawmakers Debate Overhauls to NSA Spying Programs*, Wall St. J., Jan. 14, 2014.[5] The two major reform proposals in Congress – the USA Freedom Act, H.R. 3361, 113th Cong. (2013),[6] and the FISA Improvements Act of 2013, S. 1631, 113th Cong. (2013)[7] – have already been introduced, and could be amended, modified, or enacted by Congress at any time. The USA FREEDOM Act would require that all applications for Pen Registers / Trap and Trace include a statement of facts that demonstrate "that there are reasonable grounds to believe that the information sought . . . is relevant and material to an authorized investigation . . .". H.R. 3361 § 201. The FISA Improvements Act of 2013 includes provisions to greatly increase the amount of reporting on the uses of Pen Register / Trap and Trace authorities. S. 1631 § 5. Both bills would

---

[5] *Available at* http://online.wsj.com/news/article_email/SB10001424052702303819704579321140066583378-lMyQjAxMTA0MDEwNDExNDQyWj.
[6] *Available at* http://beta.congress.gov/bill/113th/house-bill/3361.
[7] *Available at* http://www.intelligence.senate.gov/pdfs113th/113fisa_improvements.pdf.

greatly alter the current laws concerning these authorities under the FISA, though, like the President's proposals, it is difficult to discuss the need for either until more information is released.

The harm caused by delay is great, as the DOJ recognized when it granted expedited processing, because information about the government's surveillance activities is needed before reforms are enacted and implemented, not after. The period immediately following the President's statement today will be a critical period for shaping national policy. As the President explained, the intelligence community and the Attorney General will identify reform approaches "before the [§215] program comes up for reauthorization on March 28th." *Remarks by the President on Review of Signals Intelligence* (Jan. 17, 2014). During that period, the President will "consult with the relevant committees in Congress to seek their views, and then seek congressional authorization for the new program as needed." *Id*. Any delay during this timeframe will irreparably injure EPIC's efforts to inform policy makers and the public about FISA reforms, because Congress will likely seek to bundle the proposals into a single reform bill. The President voiced a specific interest in metadata programs akin to those previously operated under the Pen Register / Trap and Trace provisions. *Id*. The President affirmatively promised to "reform programs and procedures in place to provide greater transparency to our surveillance activities, and fortify the safeguards that protect the privacy of U.S. persons." *Id*. However, it is impossible for groups such as EPIC to contribute meaningfully about the proper level of transparency for surveillance activities undertaken under Pen Register / Trap and Trace authorities without more information. Any changes to the FISA pen register authority or oversight mechanisms need to be identified during the President's proposed review period.

The documents that EPIC seeks are clearly salient to the current FISA reform debate. Recent disclosures by the Director of National Intelligence have shown that the FISA Pen Register authority was used by the Government to obtain Internet metadata until 2011. *See* Office of the Dir. of Nat'l Intelligence, *DNI Clapper Declassifies Additional Intelligence Community Documents Regarding Collection Under Section 501 of the Foreign Intelligence Surveillance Act* at 4 (2013).[8] However, these disclosures do not provide context for this program within the Government's other pen register operations. Without access to the information contained in the pen register reports, it is impossible to assess whether this program was merely a failed experiment, or part of a larger trend of government overreach. Current reform proposals contain provisions addressing the Government's use of pen register authority. *See, e.g.*, USA Freedom Act § 201. But the intelligence oversight provisions in these proposals cannot be properly understood without access to existing pen register reports.

The Government's assertion that there is "already considerable" information in the public domain about this topic is inapposite. FOIA was designed precisely to prevent the Government from making such determinations about what the public "needs to know." EPIC need not establish that it would be "precluded from participating in public debate" absent the relief it seeks. Instead, EPIC must only show that it would suffer irreparable injury as a result of the delay. EPIC has shown that it will suffer actual injury as a result of the delay in releasing information about an issue of immediate public concern.

In addition, EPIC will suffer an irreparable procedural injury if the preliminary injunction is not granted. EPIC has a statutory right to expedited processing of its request, and a preliminary injunction is necessary in this matter to ensure that the agency processes and produces

---

[8] *Available at* http://www.dni.gov/index.php/newsroom/press-releases/191-press-releases-2013/964-dni-clapper-declassifies-additional-intelligence-community-documents-regarding-collection-under-section-501-of-the-foreign-intelligence-surveillance-act-nov?tmpl=component&format=pdf.

documents expeditiously. It is not enough for the DOJ to simply *grant* EPIC expedited processing, as the Agency argues. Def. Opp. at 15. "What matters to EPIC is not how the requests are labeled by the agency, but rather when the documents are actually released." *EPIC I*, 416 F. Supp. 2d at 41. The DOJ is required by law to make a timely determination and to process EPIC's request expeditiously, and the preliminary injunction would ensure that EPIC's rights are not eliminated through agency delay. Other courts in this district have recognized that irreparable injury would result from delay in processing an expedited request given that the "very nature of the right the plaintiff seeks to vindicate . . . depends on timeliness." *Washington Post v. DHS*, 459 F. Supp. 2d 61, 74 (D.D.C. 2006). Without a preliminary injunction, EPIC's FOIA case will proceed like any other matter not subject to expedited processing. This would, in effect, nullify the statutory expedition to which EPIC is entitled.

Furthermore, the public interest would not be harmed by granting EPIC's motion for a preliminary injunction in this case. EPIC merely seeks compliance with the statutory framework that Congress created for disclosure of agency records. Congress has already balanced the public interest in disclosure with the "necessity of ensuring certain types of documents" would not be disclosed. *Center for Nat'l Sec. Studies v. DOJ*, 331 F.3d 918, 925 (D.C. Cir. 2003). Thus, any harm caused by the expeditious production of records has already been taken into account by Congress. The same is true of the effect of FOIA litigation on other pending requests. Congress provided a specific mechanism for modification of a production schedule where an agency "can show exceptional circumstances exist and that the agency is exercising due diligence in responding to the request." 5 U.S.C. § 552(a)(6)(C)(i). The burden is on the agency to prove to the court that it cannot comply with the statutory deadlines, not on the requestor to show that the agency is not diligently processing the request. Importantly, the DOJ has not shown in this case

that it faces exceptional circumstances or that it is exercising due diligence in responding to

EPIC's request.

## **CONCLUSION**

For the foregoing reasons, EPIC asks the Court to deny Defendant's Motion for Summary

Judgment and grant EPIC's Cross-motion for Summary Judgment.

Respectfully submitted,

MARC ROTENBERG, D.C. Bar # 422825
EXECUTIVE DIRECTOR
ELECTRONIC PRIVACY INFORMATION CENTER

*/s/ Alan Jay Butler*
Alan J. Butler, D.C. Bar # 1012128
Amie Stepanovich, D.C. Bar # 1011950
ELECTRONIC PRIVACY INFORMATION CENTER
1718 Connecticut Avenue, N.W.
Suite 200
Washington, D.C. 20009
(202) 483-1140 (telephone)
(202) 483-1248 (facsimile)

Counsel for Plaintiff