**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil No. 13-cv-1961 (KBJ) |
| DEPARTMENT OF JUSTICE, | ) ) | |
| Defendant. | ) ) ) | |

## <u>MEMORANDUM OPINION</u>

In early October of 2013, plaintiff Electronic Privacy Information Center ("EPIC") submitted a document request to defendant Department of Justice ("DOJ") under the Freedom of Information Act ("FOIA") seeking records regarding a national security program that involves the United States government's surreptitious use of certain devices to collect communications information.  EPIC asked DOJ to expedite the processing of its FOIA request, which DOJ agreed to do.  But after forty-two business days elapsed and DOJ had not responded to EPIC's FOIA request, much less produced the requested records, EPIC filed the instant lawsuit along with a motion for a preliminary injunction, requesting that the Court compel DOJ to process its request immediately and provide responsive documents within 20 days of the Court's order.

Before this Court at present is EPIC's preliminary injunction motion.  EPIC argues that because DOJ did not respond to its FOIA request within the 20-day time frame that FOIA prescribes for non-expedited cases, DOJ is not in fact expediting EPIC's document request, and EPIC is therefore entitled to a preliminary and permanent

injunction compelling DOJ to disclose the records forthwith.  DOJ responds that EPIC

is not entitled to immediate production of the records because the agency has complied

with FOIA's requirements for processing expedited requests—it has moved EPIC's

request ahead of all non-expedited requests in its FOIA queue and is working to process

the request as soon as practicable, which is taking longer than 20 days.

This Court has considered the complaint, the parties' briefs on the motion for a

preliminary injunction, the arguments made at the preliminary injunction hearing, and

the applicable law, and for the reasons explained below, the Court concludes that EPIC

has failed to establish a likelihood of success on the merits of its argument that the

organization is entitled to the injunctive relief it seeks.  Moreover, EPIC has fallen

short of demonstrating that it will suffer irreparable harm if this Court does not order

DOJ to produce responsive records now, and the Court is not convinced that the balance

of harms and public interest factors weigh in EPIC's favor, particularly in light of the

classified nature of the documents at issue.  Consequently, the Court concludes that

EPIC's motion for a preliminary injunction must be **DENIED**.

## I.    BACKGROUND

### A.    Facts Alleged In The Complaint

EPIC is "a public interest research organization incorporated as a not-for-profit

corporation in Washington, D.C."  (Complaint for Injunctive Relief ("Compl."), ECF

No. 1, ¶ 4.)  According to the complaint, EPIC performs the following work:

> EPIC conducts oversight of government activities and
> policies and analyzes their impact on civil liberties and
> privacy interests.  Among its other activities, EPIC publishes
> books, reports, and a bi-weekly electronic newsletter. EPIC
> also maintains a popular Internet site, http://epic.org, which
> contains extensive information on current privacy issues,

2

> including documents obtained from federal agencies under
> the FOIA.  EPIC routinely and systematically disseminates
> information to the public through its website and other
> media outlets.

*Id.*

On October 3, 2013, EPIC mailed a FOIA document request ("FOIA Request") to the National Security Division of DOJ ("NSD") via certified mail, which the NSD's FOIA office officially received on October 18, 2013.  (*Id.* ¶ 16; *see also* Mem. in Support of P.'s Mot. for a Prelim. Inj. ("PI Mem."), Ex. B, Letter from Arnetta Mallory to Amie Stepanovich, dated Oct. 29, 2013 ("NSD Acknowledgement"), ECF No. 3-3.) The FOIA Request explained that EPIC was seeking copies of reports that the Attorney General had submitted to Congress pursuant to the Foreign Intelligence Surveillance Act ("FISA"), 50 U.S.C. § 1846, for the past 12 years—reports that, according to EPIC, summarize "all uses of pen registers and trap and trace devices obtained under the FISA[,]" and "include the number of applications granted and the number of applications modified under the FISA, as well as the total number of installations approved and denied under emergency circumstances."  (PI Mem., Ex. A, Letter from Amie Stepanovich to Arnetta James, dated Oct. 3, 2013, ECF No. 3-2, at 3.)[1]  The FOIA Request specified that EPIC was seeking "all records related to the Attorney General's required semiannual reports between 2001 and present" (*id.*), and in particular, the following three categories of documents:

---

[1]  According to the Complaint, "[a] Pen Register is a device or process 'which records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted[,]'" and "[a] Trap and Trace is a device or process 'which captures the incoming electronic or other impulses which identify the originating number or other dialing, routing, addressing, and signaling information reasonably likely to identify the source of a wire or electronic communication.'"  (Compl. ¶¶ 9-10.)  Under 50 U.S.C § 1846, the Attorney General is required to provide Congress with semiannual reports on the use of these devices, including the number of applications made for court orders approving use of such devices, and the number of orders granted, modified or denied.

> 1.  all reports made to the Permanent Select Committee on Intelligence in the House of Representatives and the Select Committee on Intelligence in the Senate, detailing the total number of orders for pen registers or trap and trace devices granted or denied, and detailing the total number of pen registers or trap and trace devices installed pursuant to 50 U.S.C. § 1843[;]
>
> 2.  all information provided to the aforementioned committees concerning all uses of pen registers and trap and trace devices;
>
> 3.  all records used in preparation of the above materials, including statistical data.

(Compl. ¶ 18.)  As part of the FOIA Request, EPIC asked DOJ to waive all duplication fees pursuant to 5 U.S.C. § 552(a)(4)(A).  (*Id. ¶¶* 19-20.)  EPIC also requested expedited processing of the FOIA Request because EPIC is "'primarily engaged in disseminating information[]'" and its document request related to a matter about which there is an "'urgency to inform the public about an actual or alleged federal government activity.'"  (*Id.* ¶ 21 (quoting 5 U.S.C. § 552(a)(6)(E)(v)(II)).)

On October 29, 2013, seven business days after receiving the FOIA Request, the NSD sent EPIC a letter acknowledging its receipt of the request.  (*Id.* ¶ 22; *see also* NSD Acknowledgement (noting that "[o]ur policy is to process FOIA requests on a first-in, first-out basis[,]" and that "every effort will be made to respond to your request as quickly as possible" but the "processing time will depend upon the complexity of the request, whether it involves sensitive or voluminous records, and whether consultations with other agencies or agency components are appropriate").)  The NSD followed up with a second letter on November 5, 2013, which explained that the agency was granting EPIC's requests for a fee waiver and expedited processing.  (Compl. ¶¶ 23-24; *see also* PI Mem., Ex. C, Letter from Arnetta Mallory to Amie Stepanovich, dated Nov.

5, 2013, ECF No. 3-4.)  The November 5th letter was the last communication that EPIC received from the NSD or DOJ regarding the FOIA Request before December 19, 2013, which is the date on which EPIC filed the instant complaint.  (Compl. ¶ 26.)

EPIC's complaint contains two counts.  Count I is captioned:  "Violation of FOIA:  Failure to Comply with Statutory Deadlines," and asserts that "DOJ's failure to respond to [the FOIA] Request violated the statutory deadline imposed by the FOIA set forth in 5 U.S.C. § 552 (a)(6)(A)(ii) and (a)(6)(E)(iii) (2013)."  (*Id.* ¶ 32.)  Count II is captioned:  "Violation of FOIA:  Unlawful Withholding of Agency Records"; that count maintains that "EPIC and the public have been denied access to responsive agency records to which the parties are lawfully entitled under the FOIA, 5 U.S.C. § 552(a)(3)(A)."  (*Id.* ¶ 37.)  The complaint states that each of these alleged violations independently entitles EPIC "to injunctive relief compelling the immediate disclosure of the requested agency records," (*id.* ¶ 34; *see also id.* ¶ 39), and in its prayer for relief, EPIC specifically requests that this Court:

> A.  order Defendant to promptly immediately [sic] process responsive agency records;
>
> B.  order Defendant to disclose all responsive agency records in their entirety and make copies available to EPIC[;]
>
> C.  award Plaintiff its costs and reasonable attorneys' fees incurred in this action pursuant to 5 U.S.C. § 552(a)(4)(E) (2010); and
>
> E.  [sic] grant such other relief as the Court may deem just and proper.

(*Id.* at 7.)

## B.    EPIC's Motion For Preliminary Injunction

At the same time that EPIC filed its complaint, EPIC also filed a separate motion that requests "entry of a preliminary injunction to enjoin defendant [DOJ's] unlawful

attempts to impede plaintiff's efforts to obtain agency records under the [FOIA]."  (P.'s
Mot. for a Prelim. Inj. ("PI Motion"), ECF No. 3, at 1.)  The injury alleged and the
relief requested in EPIC's preliminary injunction motion are coterminous with those set
forth in the complaint.  Specifically, the motion maintains that EPIC is statutorily
entitled to have its FOIA Request processed within at least 20 days of the agency's
receipt of that request—a deadline that DOJ admittedly has not met—and thus EPIC's
"likelihood of prevailing on the merits is extremely high."  (PI Mem. at 8.)
Additionally, EPIC asserts that it will suffer irreparable injury if this Court does not
order DOJ to process its request expeditiously because "extraordinary public attention"
is currently focused on the issue of government surveillance programs, and "time is of
the essence" with respect to getting information that will inform the "current and
ongoing" debate.  (*Id.* at 10.)  EPIC also argues that the balance of interests weighs in
its favor because DOJ "cannot claim to be 'burdened' by a requirement that it comply
with its statutory obligations" (*id.* at 14), and that "faithful adherence" to FOIA is in the
public interest (*id.* at 15 (internal quotation marks and citation omitted).)  And like the
complaint itself, the motion for a preliminary injunction ultimately requests that this
Court "direct DOJ to complete the processing of EPIC's FOIA Request and [to] produce
or identify all responsive records within 20 days of the issuance of the order EPIC now
seeks."  (*Id.* at 16.)

Notably, the memorandum that EPIC has filed in support of the PI Motion
indicates that the precipitating event for EPIC's FOIA Request was *The Guardian*
newspaper's recent release of information regarding the existence, from 2004-2011, of a
program under which the National Security Administration ("NSA") secured approval

from the Foreign Intelligence Surveillance Court ("FISA Court") to use pen register and

trap and trace devices to collect bulk e-mail and internet metadata.  (PI Mem. at 2

(citing Glenn Greenwald & Spencer Ackerman, *NSA Collected US Email Records in*

*Bulk For More Than Two Years Under Obama,* The Guardian (June 27, 2013)).)  EPIC

admits that the NSA discontinued this particular program in 2011 "for operational

resource reasons[,]" and that "[t]here is no evidence that the program has been re-

instituted since its cessation in 2011."  (*Id.* at 3 (internal quotation marks and citation

omitted).)  However, at the preliminary injunction hearing, EPIC's counsel suggested

that the organization's interest in getting the requested reports and information stems

from the possibility that the U.S. government may be conducting other, separate e-mail

and internet metadata collection programs under the pen register/trap and trace

authority that exists under sections 1842-43 of Title 50 of the U.S. Code.

## II.    PRELIMINARY INJUNCTION STANDARD

A preliminary injunction is "an extraordinary remedy that may only be awarded

upon a clear showing that the plaintiff is entitled to such relief."  *Winter v. Natural Res.*

*Def. Council, Inc.*, 555 U.S. 7, 22 (2008).  A party seeking a preliminary injunction

"must establish [1] that [it] is likely to succeed on the merits, [2] that [it] is likely to

suffer irreparable harm in the absence of preliminary relief, [3] that the balance of

equities tips in [its] favor, and [4] that an injunction is in the public interest."  *Id.* at 20.

In conducting an inquiry into these four factors, "[a] district court must 'balance the

strengths of the requesting party's arguments in each of the four required areas.' . . . If

the showing in one area is particularly strong, an injunction may issue even if the

showings in other areas are rather weak."  *Chaplaincy of Full Gospel Churches v.*

*England*, 454 F.3d 290, 297 (D.C. Cir. 2006) ("*CFGC*") (quoting *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 746 (D.C. Cir. 1995)). However, "a movant must demonstrate 'at least some injury' for a preliminary injunction to issue." *Id.* (citation omitted).[2]

It is clear beyond cavil that two of the prongs of the four-factor preliminary injunction test—likelihood of success and irreparable injury—are the most significant aspects of the court's inquiry because they relate directly to the purpose of a preliminary injunction. "It is particularly important for the movant to demonstrate a substantial likelihood of success on the merits," because "absent a substantial indication of likely success on the merits, there would be no justification for the [C]ourt's intrusion into the ordinary processes of administration and judicial review." *Navistar, Inc. v. EPA.*, No. 11cv449, 2011 WL 3743732 (D.D.C. Aug. 25, 2011) (internal quotation marks and citation omitted)). Furthermore, "the basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies," *Sampson v. Murray*, 415 U.S. 61, 88 (1974) (internal quotation marks and citation omitted); indeed, a preliminary injunction entitles the movant to action before a ruling

---

[2] This approach to analyzing the preliminary injunction factors is traditionally used in this Circuit and is often referred to as a "sliding scale." The D.C. Circuit has recently suggested that this sliding scale approach may no longer be applicable after the Supreme Court's decision in *Winter*, and that a more stringent test applies instead. *See Sherley v. Sebelius*, 644 F.3d 388, 393 (D.C. Cir. 2011) (likelihood of success on the merits and irreparable harm may be "independent, free-standing requirement[s] for a preliminary injunction" (internal quotations marks and citation omitted)); *see also Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1296 (D.C. Cir. 2009) (Kavanaugh & Henderson, JJ., concurring) ("[U]nder the Supreme Court's precedents, a movant cannot obtain a preliminary injunction without showing *both* a likelihood of success *and* a likelihood of irreparable harm, among other things."). However, in the absence of a precedential ruling to this effect, this Court will apply the more lenient sliding scale standard to the injunction at issue here. *Cf. Kingman Park Civic Ass'n v. Gray*, No. 13-cv-990, 2013 WL 3871444, at *3 (D.D.C. Jul. 29, 2013) ("[A]bsent . . . clear guidance from the Court of Appeals, the Court considers the most prudent course to bypass this unresolved issue and proceed to explain why a preliminary injunction is not appropriate under the 'sliding scale' framework. If a plaintiff cannot meet the less demanding 'sliding scale' standard, then it cannot satisfy the more stringent standard alluded to by the Court of Appeals.").

on the merits precisely because "the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered." 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2948.1 (2d ed. 2013).

Significantly, in this jurisdiction, it is also well established that "[t]he power to issue a preliminary injunction, especially a mandatory one, should be sparingly exercised." *Dorfmann v. Boozer*, 414 F.2d 1168, 1173 (D.C. Cir. 1969) (internal quotation marks omitted). "[W]here an injunction is mandatory—that is, where its terms would alter, rather than preserve, the status quo by commanding some positive act—the moving party must meet a higher standard than in the ordinary case by showing clearly that he or she is entitled to relief or that extreme or very serious damage will result from the denial of the injunction." *Columbia Hosp. for Women Found., Inc. v. Bank of Tokyo-Mitsubishi Ltd.*, 15 F. Supp. 2d 1, 4 (D.D.C. 1997) (internal quotation marks and citations omitted), *aff'd*, 159 F.3d 636 (D.C. Cir. 1998); *see also, e.g.*, *In re Navy Chaplaincy*, 516 F. Supp. 2d 119, 123 (D.D.C. 2007); *Veitch v. Danzig*, 135 F. Supp. 2d 32, 35 (D.D.C. 2001); *Adair v. England*, 217 F. Supp. 2d 1, 3 n. 6 (D.D.C. 2002). This higher standard for injunctive relief appears to apply in this case, given that EPIC is requesting a preliminary injunction order that requires DOJ to take action (*i.e.*, to review and release responsive documents). Nevertheless, for the reasons explained *infra*, the Court concludes that a preliminary injunction is not warranted in this case even under the comparatively lesser standard that applies to typical (non-mandatory) preliminary injunctions.

III.    **Analysis**

A.      **Likelihood of Success on the Merits**

EPIC's argument regarding likelihood of success flows from its belief that DOJ's

failure to respond to the FOIA Request within 20 days, as set forth in the FOIA statute,

constitutes a *per se* violation of the law that entitles the requester to get the requested

records immediately.  (*See* PI Mem. at 9.)  EPIC points to 5 U.S.C. § 552(a)(6)(A)(i),

which does state that an agency shall "determine within 20 [business] days . . . after the

receipt of [a FOIA] request whether to comply with such request and shall immediately

notify the person making such request of such determination and the reasons therefor,

and of the right of such person to appeal to the head of the agency any adverse

determination[.]"  But nothing in the FOIA statute establishes that an agency's failure

to comply with this 20-day deadline automatically results in the agency's having to

produce the requested documents without continued processing, as EPIC suggests.  And

the D.C. Circuit's recent decision in *Citizens for Responsibility and Ethics in*

*Washington v. Federal Election Commission*, 711 F.3d 180 (D.C. Cir. 2013) ("*CREW*"),

clearly establishes that no such result follows from the infraction that EPIC identifies.

In *CREW*, the D.C. Circuit first succinctly summarizes the statutory deadlines

that apply with respect to an agency's response to a FOIA request:

> An agency usually has 20 working days to make a
> "determination" with adequate specificity, such that any
> withholding can be appealed administratively.  5 U.S.C.
> § 552(a)(6)(A)(i).  An agency can extend that 20-working-
> day timeline to 30 working days if unusual circumstances
> delay the agency's ability to search for, collect, examine,
> and consult about the responsive documents.  *Id.*
> § 552(a)(6)(B).

*CREW*, 711 F.3d at 189.  The Court further explains that a timely "determination" involves more than merely acknowledging receipt of the request and stating that the agency will produce any non-exempt records that it may later locate:

> Rather, in order to make a "determination" and thereby trigger the administrative exhaustion requirement, the agency must at least:  (i) gather and review the documents; (ii) determine and communicate the scope of the documents it intends to produce and withhold, and the reasons for withholding any documents; and (iii) inform the requester that it can appeal whatever portion of the "determination" is adverse.

*Id.* at 188.  The *CREW* opinion also clarifies that the "determination" that is to be made within the 20-day statutory window is distinct from the act of *producing* the requested records:

> To be clear, a "determination" does not require actual *production* of the records to the requester at the exact same time that the "determination" is communicated to the requester. Under the statutory scheme, a distinction exists between a "determination" and subsequent production.  As to actual production, FOIA requires that the agency make the records "promptly available," which depending on the circumstances typically would mean within days or a few weeks of a "determination," not months or years.  So, within 20 working days (or 30 working days in "unusual circumstances"), an agency must process a FOIA request and make a "determination."  At that point, the agency may still need some additional time to physically redact, duplicate, or assemble for production the documents that it has already gathered and decided to produce.  The agency must do so and then produce the records "promptly."

*CREW*, 711 F.3d at 188-89 (emphasis in original) (citing *Spannaus v. DOJ*, 824 F.2d 52, 59 n.7 (D.C. Cir. 1987), 5 U.S.C. § 552(a)(3)(A), (a)(6)(C)(i)).

Significantly for present purposes, *CREW* not only explains the timing and substance of the required FOIA response, it also unequivocally addresses the *consequences* that attach to an agency's failure to make the required "determination"

within the 20-day deadline.  According to the D.C. Circuit, "[i]f the agency does not adhere to FOIA's explicit timelines, *the 'penalty' is that the agency cannot rely on the administrative exhaustion requirement to keep cases from getting into court.*"  *CREW*, 711 F.3d at 189 (emphasis added).  Repeatedly referencing these exhaustion consequences, *CREW* states that an agency has 20 working days to "make a 'determination' with adequate specificity, such that any withholding can be appealed administratively."  *Id.*; *see also id.* at 188 (explaining what an agency must do in order to "make a 'determination' and thereby trigger the administrative exhaustion requirement").  Thus, far from EPIC's reading of the FOIA to require an agency to immediately hand over all of the requested documents as a result of its failure to meet the deadline, *CREW* makes clear that the impact of blowing the 20-day deadline relates *only to the requester's ability to get into court.  See id.* at 189 ("[T]he agency may continue to process the request, and the court (if suit has been filed) will supervise the agency's ongoing progress, ensuring that the agency continues to exercise due diligence in processing the request." (citing 5 U.S.C. § 552(a)(6)(C))).[3]

Properly understood and applied, then, *CREW* substantially decreases the likelihood that EPIC will prevail on the merits of its argument that the NSD's failure to adhere to the 20-day deadline violates FOIA in a manner that entitles EPIC to a court order granting it immediate access to the requested records.  This is because, under

---

[3]  In reaching this conclusion, the D.C. Circuit interpreted § 552(a)(6)(C), which allows for a court to "retain jurisdiction and allow the agency additional time to complete its review of the records" when "exceptional circumstances exist," as explained in *Open America v. Watergate Special Prosecution Force*, 547 F.2d 605 (D.C. Cir. 1997) (quoting 5 U.S.C. §552(a)(6)(C)).  The *Open America* Court held that "exceptional circumstances exist when the agency is deluged with a volume of requests for information vastly in excess of that anticipated by Congress, when the existing resources are inadequate to deal with the volume of such requests within the time limits of subsection (6)(A), and when the agency can show that it is exercising due diligence in processing the requests."  *Id.* at 611 (internal quotation marks and citation omitted).

*CREW*, an agency's response to a FOIA request generally involves two steps, only one of which implicates the 20-day statutory timeframe.  First, an agency will gather and review documents and make a "determination," which is a decision regarding the scope of the documents the agency intends to produce and withhold, and the reasons for withholding any documents.  *Id.* at 188-89.  By statute, the agency is required to communicate this determination to the requester (and mention the right to appeal) within 20 days of receipt of the request.  5 U.S.C. §552(a)(6)(A)(i).  Then, after the determination has been made and communicated, the agency proceeds to the second step, which is to process the responsive documents and produce them to the requester "promptly."  *CREW*, 711 F.3d at 188-89.  *CREW* also clearly recognizes that the 20-day determination deadline is not always practicable, and it explains what happens when that deadline is not met:  in such a circumstance, the FOIA requester is deemed to have exhausted his administrative remedies and can proceed immediately to federal court, after which the agency "may continue to process the request," but will do so under the court's supervision.  *Id*. at 189.

EPIC's vigorous contention to the contrary—*i.e.*, that the alleged statutory violation here, in and of itself, entitles it to immediate access to the requested records—relies almost exclusively on a 2006 district court opinion from this jurisdiction.  In that case, *Electronic Privacy Information Center v. Department of Justice*, 416 F. Supp. 2d 30 (D.D.C. 2006) ("*EPIC I*"), which also involved a tardy response to a FOIA request, the district judge granted EPIC's motion for a preliminary injunction and set the same 20-day response and production schedule that EPIC seeks here.[4]

---

[4]  Notably, the district judge later modified this deadline based on classified affidavits that DOJ submitted regarding its processing capacity.  *See EPIC I*, No. 06-cv-96, Order, ECF No. 18 (Mar. 24,

*EPIC I* is distinguishable from the instant case for at least two reasons.  First and foremost, the judge in *EPIC I* did not have the benefit of the D.C. Circuit's decision in *CREW*, and in particular, its holding regarding the specific consequences that attach to an agency's failure to meet the 20-day timeframe.  Second, and significantly, the district judge in *EPIC I* relied on a "presumption of agency delay" that the judge believed had arisen simply and solely because DOJ had failed to respond to EPIC's expedited FOIA request within 20 days.  *Id.* at 39.  DOJ had not presented any evidence regarding the impracticability of such a rapid response to the *EPIC I* court, *id.* at 40, and the judge was clear that the presumption of delay "is certainly rebuttable if the agency presents credible evidence that disclosure within such time period is truly not practicable."  *Id.* at 39.  Here, in contrast to *EPIC I*, DOJ has submitted an uncontested declaration from Mark A. Bradley, the Director of the FOIA and Declassification Unit of the Office of Law and Policy in the NSD, which maintains that it is impracticable for the NSD to complete the processing EPIC's FOIA Request within 20 days, in light of the 13 expedited FOIA requests the agency is already processing; the volume of classified material at issue; the need for agency staff to review the material to determine, first, if it remains properly classified, and second, whether the agency can segregate any non-classified material; and the competing national security obligations to which the same agency staffers who are responsible for gathering and reviewing documents responsive to the FOIA Request must attend.  (*See generally* Decl. of Mark A. Bradley ("Bradley Decl."), ECF No. 9-1.)  Thus, even if a presumption of delay

---

2006) (extending certain processing deadlines and ordering that *Vaughn* indices need not be created at that time).

exists—and in light of *CREW* this Court is doubtful that it does—no such presumption even arguably arises on the facts of the instant case.[5]

Finally, it must be noted that the fact that EPIC here requested and received a pledge from DOJ that the agency would expedite review of the FOIA Request does not increase the odds of EPIC's success on the merits of this matter.  To be sure, while agencies typically respond to FOIA requests on a "first-in/first-out" basis, an agency can expedite its processing of a FOIA request when a requester shows a "compelling need" for expedition, or in other circumstances that an agency establishes in its FOIA regulations.  *See* 5 U.S.C 552(a)(6).[6]  An agency must decide a request for expedited processing within 10 days after receipt.  *Id.*  If the agency approves the request for expedition, the particular FOIA request moves "to the front of the agency's queue" and the agency must process it "as soon as practicable."  *Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 259-60 (D.D.C. 2005) (internal quotation omitted); *see also* 5 U.S.C. §552(a)(6)(E)(iii) ("An agency shall process as soon as

---

[5]  The two other cases on which EPIC principally relies and which are closest to the facts in this case are also readily distinguished.  In *Washington Post v. Department of Homeland Security*, 459 F. Supp. 2d 61 (D.D.C. 2006), the Court granted the Post's request for a preliminary injunction requiring that the newspaper's FOIA request be processed within 20 days.  *Id.* at 64.  The issue in that case was whether the documents at issue were agency records, and not whether processing within a 20-day time frame was practicable.  *Id.* at 68.  In *Aguilera v. Federal Bureau of Investigation*, 941 F. Supp. 144 (D.D.C. 1996), the FBI had *refused* a request for expedition, and because the documents at issue were key evidence in an evidentiary hearing that a trial court had scheduled for the near future regarding the requester's conviction for murder, the Court entered a preliminary injunction requiring the FBI to expedite the processing of plaintiff's FOIA request.  *Id.* at 147, 151-52; *see also Cleaver v. Kelley*, 427 F. Supp. 80, 81-82 (D.D.C. 1976) (granting a preliminary injunction and ordering expedited processing of plaintiff's FOIA request where plaintiff had been indicted for attempted murder and assault, and trial was scheduled to begin in a month).  As discussed *infra*, EPIC has failed to establish that it is facing a similar looming deadline.

[6]  A "compelling need" exists if either: (1) failure to obtain expedited processing would pose an "imminent threat to the life or physical safety of an individual"; or (2) the requester is "primarily engaged in disseminating information" and shows an "urgency to inform the public concerning actual or alleged Federal Government activity."  5 U.S.C. § 552(a)(6)(E)(v).

practicable any request for records to which the agency has granted expedited

processing under this subparagraph.").

Here, DOJ has represented that EPIC's FOIA Request *was* moved to the head of

the line of regular FOIA requests that the NSD is handling, and that EPIC's FOIA

Request is now in a queue of 13 other "expedited" document requests.  (Bradley Decl.

¶ 4.)  The DOJ affiant also explains that EPIC'S FOIA Request—like many of the

others that the NSD handles—involves classified national security information, and that

it takes longer to process such information.  (*Id.* ¶¶ 7-8.)  Setting aside EPIC's utter

failure to explain why, in this era of diminished government resources, its own

"expedited" request should take precedence over any of the other "expedited" requests

pending before the NSD (many of which purportedly arrived prior to EPIC's), EPIC has

not presented any evidence whatsoever that would either (1) cast doubt on DOJ's

representations about the current status of EPIC's FOIA Request relative to all others,

or (2) tend to establish that DOJ has misrepresented the degree of its diligence and that

it is not, in fact, working to make a determination on EPIC's FOIA Request "as soon as

practicable."  *Cf. ACLU v. Dep't of Defense*, 339 F. Supp. 2d 501, 502-04 (S.D.N.Y.

2004) (finding that government was improperly proceeding at a "glacial pace" and

ordering production of documents within 30 days where "eleven months [after the FOIA

request was made], with small exception, no documents have been produced by

defendant; no documents have been identified; no exemptions have been claimed; and

no objections have been stated").

Instead, with respect to the merits of its claim, EPIC relies solely on the

following tautological argument:  DOJ has agreed to subject EPIC's FOIA Request to

"expedited" review; the FOIA statute states that an agency must make a determination regarding (non-expedited) FOIA requests within 20 days; more than 20 days have elapsed without a determination on EPIC's FOIA Request; therefore, DOJ must not have expedited EPIC's FOIA Request.  (PI Mem. at 9.)  The heart of this argument is EPIC's insistence that, pursuant to the statutory text, an agency *must* make a determination regarding a typical, non-expedited FOIA request within 20 days or suffer the consequence of a court order requiring production of the documents.  But as this Court has already explained, the D.C. Circuit's *CREW* decision establishes otherwise.

## B.    Irreparable Harm

Having concluded that EPIC is not likely to succeed on the merits, this Court turns to an evaluation of EPIC's assertions of irreparable harm in the absence of an injunction.  It is not easy to define the concept of irreparable harm, but it is undisputed that "[t]he irreparable injury requirement erects a very high bar for a movant." *Coalition for Common Sense in Gov't Procurement v. United States*, 576 F. Supp. 2d 162, 168 (D.D.C. 2008).  "[S]everal well-known and indisputable principles" guide the inquiry regarding irreparable injury.  *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam).  At a minimum, the party seeking injunctive relief must demonstrate that the claimed injury is "both certain and great" and that the alleged harm is "actual and not theoretical." *Id.*[7]  Moreover, because "the court must decide whether the harm will *in fact* occur[,]" a party seeking injunctive relief must "substantiate the claim [of] irreparable injury" and "must show that the alleged harm will directly result

---

[7]  As noted in Section II, *supra*, because EPIC seeks a mandatory preliminary injunction in this case, the applicable harm requirement exceeds "great" harm, and includes the need to demonstrate "very serious damage in the absence of an injunction." *Columbia Hosp. for Women Found.*, 15 F. Supp. 2d at 4.  Nevertheless, for the reasons discussed in this section, this Court concludes that EPIC has failed to satisfy even the "great" harm standard.

from the action which the movant seeks to enjoin." *Id.* (emphasis in original). Furthermore, because "[i]njunctive relief will not be granted against something merely feared as liable to occur at some indefinite time," the movant "must show that [t]he injury complained of [is] of such *imminence* that there is a clear and present need for equitable relief to prevent irreparable harm." *Id.* (internal quotation marks omitted) (second and third alteration in original). And the certain and immediate harm that a movant alleges must also be truly irreparable in the sense that it is "beyond remediation." *CFGC*, 454 F.3d at 297.

EPIC has not established that it will suffer irreparable harm if DOJ does not respond to its FOIA request and produce responsive documents immediately (*i.e.,* within 20 days). In this regard, EPIC first asserts that "[t]he nature of the right that EPIC seeks to vindicate in this action—expedited processing—depends on timeliness," (PI Mem. at 9), and that "[u]nless DOJ is ordered to process EPIC's FOIA Request immediately, EPIC's right to expedition under the FOIA will be irretrievably lost," (*id.* at 10). While it is true that some courts have granted preliminary injunctions where "time is of the essence," (*id.* at 14), surely EPIC's own subjective view of what qualifies as "timely" processing is not, and cannot be, the standard that governs this Court's evaluation of irreparable harm, and EPIC offers nothing more than a bald assertion that DOJ is obviously not processing its FOIA Request in a timely fashion. By contrast, DOJ has submitted uncontroverted evidence that the agency has, in fact, expedited EPIC's FOIA Request, even though it will not be able to complete processing the request in 20 days. This evidence substantially undermines EPIC's "timeliness" argument. In other words, even assuming that the loss of a "right to expedition" can

properly be characterized as irreparable harm, in light of DOJ's uncontested representations, EPIC has failed to establish that its right to expedition has been, or will be, extinguished absent a preliminary injunction.

EPIC also maintains that "any further delay in the processing of EPIC's FOIA Request will [] irreparably harm EPIC's ability and the ability of the public to obtain in a timely fashion information that is vital to the current and ongoing debate surrounding the scope of NSA surveillance programs." (PI Mem. at 10.) EPIC asserts that the "debate over foreign intelligence surveillance . . . has reached a critical juncture" (P.'s Reply Mem. in Support of its Mot. for a Prelim. Inj. ("PI Reply"), ECF No. 11, at 9), and speculates that "[t]he likelihood of a bill being passed in the near future is both 'certain and great[.]'" (PI Mem. at 12 (quoting *Wisc. Gas Co.*, 758 F.2d at 674)). But such speculation falls short of demonstrating that EPIC will suffer irreparable harm in the absence of a preliminary injunction.

First of all, it is not at all "certain" that the records EPIC seeks are crucial to the public's understanding of, or participation in, the ongoing surveillance debate. As proof that the FOIA Request concerns matters of current public discourse, EPIC cites to President Obama's January 17, 2014, statement on FISA reform, which called for to "the intelligence community and the Attorney General [to] identify reform approaches 'before the [§ 215] program comes up for reauthorization on March 28[th].'" (PI Reply at 10 (quoting Barack Obama, Remarks by the President on Review of Signals Intelligence (Jan. 17, 2014) ("Pres. Obama's Remarks").) But the March 28 deadline is when the FISA Court is scheduled to reauthorize the collection of *telephone* metadata under *section 215* of the USA Patriot Act of 2001 (Section 501 of FISA, 50 U.S.C. § 1861).

*See* Pres. Obama's Remarks.[8]  The President made no mention of the government's alleged use of the separate and distinct pen register/trap and trace authority provided in section 214 of the USA Patriot Act of 2001 (Sections 402 and 403 of FISA, 18 U.S.C. §§ 1842-43)—which appears to involve both a different type of data and a different method of collection than what drove EPIC to submit its FOIA Request in the first instance—and EPIC provides no evidence or argument regarding how or why documents pertaining to use of section 214 (the subject of the FOIA Request) would inform the public debate regarding the reauthorization of the section 215 program.

Moreover and in any event, DOJ counsel stated at the motion hearing that, at least with respect to the first category of requested documents, the NSD will provide its response by February 28, 2014, and it is hard to conceive of any irreparable harm that EPIC will suffer from this relatively short period of additional delay.  *See Landmark Legal Found. v. EPA*, 910 F. Supp. 2d 270, 278 (D.D.C. 2012) (finding no irreparable injury where agency has agreed to complete processing a request within a short period of time).  What is more, even if the Court orders DOJ to respond immediately, DOJ's response to the FOIA request is unlikely to yield all of the records that EPIC says it urgently needs in order to inform the public.  At the hearing on the preliminary injunction motion, DOJ counsel represented that most, if not all, of the Attorney General's reports that are responsive to EPIC's FOIA Request are classified; therefore, certain documents in all of the requested categories are likely to fall under FOIA Exemptions.  *See, e.g.*, 5 U.S.C. § 552(b) ("This section does not apply to matters that are—(1) (A) specifically authorized under criteria established by an Executive order to

---

[8]  Available at available at http://www.whitehouse.gov/the-press-office/2014/01/17/remarks-president-review-signals-intelligence (last visited Feb. 10, 2014).

be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order[.]")  EPIC cannot claim to be injured—much less "irreparably" so—if the NSD withholds documents that that EPIC is not entitled to access in the first instance, and even full-throated protest regarding allegedly unreasonable processing delays does not alter that reality.  Put another way, EPIC's contention that it will be irreparably harmed unless it receives the requested records quickly so that the public can participate fully in the ongoing debate is not only unproven, it is also fundamentally flawed because it ignores the well-established statutory FOIA process, which permits government agencies to withhold certain requested documents and to engage in subsequent litigation over them, without regard to the resulting production delay.[9]

Undaunted, EPIC points to the fact that "[m]any prominent congressional committees have acknowledged the importance of the debate . . . and have held several hearings on the topic over the past six months."  (PI Mem. at 11 (citations omitted).) But insofar as the current debate concerns potential future legislation regarding FISA surveillance in general, and perhaps even pen register/trap and trace authority in particular (*see* PI Reply at 9-10), there is no looming deadline by which Congress must act.  The FISA pen register/trap and trace provision is part of the larger USA Patriot

---

[9]  EPIC appears to acknowledge the realities of the oft-protracted FOIA production process with its insertion into the preliminary injunction motion of a request that, in addition to ordering DOJ to respond to its FOIA Request within 20 days, the Court also "order DOJ to serve on EPIC a *Vaughn* index ten days following the processing of EPIC's FOIA Request."  (PI Mem. at 16.)  This request is denied.  *Vaughn* indices are typically provided in connection with a the filing of a motion for summary judgment regarding the validity of an agency's decision to withhold certain documents.  *Schwarz v. Dep't of Treasury*, 131 F.Supp.2d 142, 147 (D.D.C. 2000).  EPIC cites no authority requiring this Court to order submission of the index on such an abbreviated timetable, and there is no reason to require DOJ to create an index and declaration justifying its decision to withhold certain documents until the agency has completed processing EPIC's FOIA request and the parties have had an opportunity to negotiate regarding any documents that are withheld.

Act of 2001, the relevant portions of which are not slated to expire until 2015.  *See*

Patriot Sunsets Extension Act of 2011, Pub. L. 112-14, 125 Stat. 216.  And while EPIC

has identified certain FISA-related bills that are pending in Congress, it has not pointed

to any scheduled committee hearings, let alone committee or floor votes, that indicate

action on those bills is imminent.  (PI Reply at 9-10.)

It is also clear from case law that a movant's general interest in being able to

engage in an ongoing public debate using information that it has requested under FOIA

is not sufficient to establish that irreparable harm will occur unless the movant receives

immediate access to that information.  For example, in *Judicial Watch, Inc. v. U.S.*

*Department of Homeland Security*, 514 F. Supp. 2d 7 (D.D.C. 2007), the district court

denied a request for a preliminary injunction prohibiting DHS from "continuing to

withhold" documents responsive to Judicial Watch's FOIA request for records

regarding Border Patrol agents shooting a Mexican national.  *Id.* at 8.  With respect to

irreparable harm, the court rejected the notion that mere delay in disclosing documents

would irreparably harm Judicial Watch's ability to provide information to the public,

particularly where the media had already extensively covered the event.  *See id.* at 10.

Noting specifically the absence of any evidence of a time-sensitive need for the

documents, the court concluded that "plaintiff's desire to have its case decided in an

expedited fashion . . . without more, is insufficient to constitute the irreparable harm

necessary to justify the extraordinary relief requested[.]"  *Id.*

So it is here.  While EPIC understandably wants the documents it seeks as soon

as possible, this Court is not convinced that, absent a court order requiring immediate

processing of EPIC's FOIA Request and document production, EPIC will suffer serious

and certain harm that qualifies as irreparable harm for the purpose of its request for a preliminary injunction.

### C.    Balancing the Equities and the Public Interest

The final two factors that a court in this jurisdiction must consider when deciding whether to grant a preliminary injunction are the balance of harms and the public's interest in the issuance of an injunction.  *See Arkansas Dairy Co-op Ass'n, Inc. v. U.S. Dep't of Agric.*, 573 F.3d 815, 821 (D.C. Cir. 2009).  When "balanc[ing] the competing claims of injury," the Court must "consider the effect on each party of the granting or withholding of the requested relief."  *Winter v. Nat. Resources Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citations omitted).  Additionally, "courts of equity should [have] particular regard for the public consequences in employing the extraordinary remedy of injunction."  *Id.* (internal quotation marks and citations omitted).  In this case, the balance of the equities and public's interest factors tip in favor denying the requested injunction.

First, although EPIC contends that it will be harmed without quick access to the requested records, issuing the injunction that EPIC seeks would most clearly impose an undue hardship on other FOIA requesters and would do serious damage to the NSD's orderly administration of FOIA requests.  As mentioned above, DOJ has presented undisputed evidence that 13 other "expedited" FOIA requests were pending within the NSD at the time that the agency expedited EPIC's FOIA Request.  (Bradley Decl. ¶ 4.) Given that there are only so many NSD staffers to process existing requests, allowing EPIC to jump to the head of the line would upset the agency's processes and be detrimental to the other expedited requesters, some of whom may have even more

pressing needs.  *See The Nation Magazine v. Dep't of State*, 805 F. Supp. 68, 74

(D.D.C. 1992) (holding that entry of a preliminary injunction expediting a FOIA request

over other pending requests "would severely jeopardize the public's interest in an

orderly, fair, and efficient administration of [] FOIA").

       Furthermore, the mere fact that FISA surveillance in general has been the subject

of considerable public attention (*see* PI Mem. at 10-12) does not necessarily mean that

it is in the public's interest for this Court to issue a preliminary injunction in this case.

*See Judicial Watch*, 514 F. Supp. 2d at 11.  For one thing, as mentioned previously, the

issue that has recently been in the news media involves use the FISA Court's

authorization under section 215 (50 U.S.C. § 1861) for the NSA to obtain records

directly from telecommunications providers, which is distinct from the issue the

government's use of pen registers and trap and trace devices under section 214 to

collect bulk internet data.  *See* 50 U.S.C. §§ 1842-43; *cf. Electronic Privacy Info. Ctr.

v. Dep't of Defense*, 355 F. Supp. 2d 98, 101-02 (D.D.C 2004) (agency properly denied

request for expedited processing where requester only provided evidence regarding

public interest in data mining in general, and not in the specific subject of its FOIA

request).

       To be sure, "there is an overriding public interest . . . in the general importance

of an agency's faithful adherence to its statutory mandate."  *Jacksonville Port Auth. v.

Adams*, 556 F.2d 52, 59 (D.C. Cir. 1977).  But there is also a tension between the

public's interest in an agency complying with its statutory mandate to release certain

documents and the public's interest in security, which Congress recognized when it

enacted laws that prohibit an agency from freely disseminating certain documents.

EPIC does not dispute that its FOIA Request most likely encompasses classified records that contain national security information, and thus that Executive Order 13526 (Dec. 29, 2009) limits DOJ's ability to release such documents to EPIC. This Court is not aware of any authority (and EPIC provides none) that would allow it *carte blanche* to order DOJ to produce such sensitive documents in response to a FOIA request anyway, without permitting DOJ to take the time it needs to conduct an adequate classification review. And this is even setting aside the fact that, according to DOJ's uncontested declaration, the gathering, review, and dissemination of the requested records simply cannot be done "immediately" as EPIC requests.[10]

To repeat, this is not a case in which the plaintiff has shown bad faith or any lack of diligence on the part of the NSD in processing the FOIA Request, which is now not even four months old. Rather, EPIC claims that the agency has acted wrongfully based simply and solely on the deadline set forth in the FOIA statute and the fact that more than 20 days have elapsed without a substantive response to its pending FOIA Request. EPIC pays no mind to the NSD's duty to conduct a careful balance of its competing obligations to release certain requested information under FOIA and to protect (*i.e.,* withhold) other information under Executive Order 13526 and federal statutes that promote national security. (*See generally* Bradley Decl.) Balancing these significant concerns is clearly in the public's interest, and EPIC has not given this Court any reason to disbelieve the agency's contention that achieving the appropriate balance here

---

[10] In one of the most telling moments of the preliminary motion hearing, the Court asked EPIC what the organization would have the Court do where, as here, the agency says that it is working diligently but that it simply cannot comply with any order that it produce the requested documents within 20 days. Hr'g Tr. at 11:16-22. The futility of the order that EPIC now seeks—and the judicial resources that have been, and would be, needlessly expended to enforce an order with which DOJ cannot comply— certainly cuts against EPIC's public interest argument.

will take more time than the 20 days the FOIA prescribes. *Cf. Ctr. For Nat'l Sec. Studies v. DOJ*, 331 F.3d 918, 926-27 (D.C. Cir. 2003) ("It is equally well-established that the judiciary owes some measure of deference to the executive in cases implicating national security, a uniquely executive purview.").

The bottom line is this:  given the competing public interests at stake in this matter, and also EPIC's failure to provide any evidence that DOJ is intentionally dragging its feet until the surveillance storm blows over, this Court sees no need to short-circuit the NSD's ongoing document review process preliminarily and in the manner that EPIC's motion requests. *See ACLU v. Dep't of Defense*, 339 F. Supp. 2d 501, 504 (D.D.C. 2004) ("It is the duty of the court to uphold FOIA by striking a proper balance between plaintiffs' right to receive information on government activity in a timely manner and the government's contention that national security concerns prevent timely disclosure or identification.").

## IV.   CONCLUSION

For the foregoing reasons, EPIC has failed to carry its burden with respect to any of the four preliminary injunction factors, and the Court concludes that its motion for a preliminary injunction must be **DENIED**.  This case will proceed to the merits, and the Court will exercise its ordinary jurisdiction over the pending FOIA process, which involves "supervis[ing] the agency's ongoing progress" and "ensuring that the agency continues to exercise due diligence in processing the request." *CREW*, 711 F.3d at 189; *see also id*. n. 7 (noting that "[t]he district court may of course consider FOIA cases in the ordinary course" because "[t]here is no statutory mandate for district courts to prioritize FOIA cases ahead of other civil cases on their dockets").

A separate order, including deadlines for further proceedings, will follow.

Dated:  February 11, 2014                    *Ketanji Brown Jackson*
                                            KETANJI BROWN JACKSON
                                            United States District Judge