**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

ELECTRONIC PRIVACY )
      INFORMATION CENTER, )
       )     Case No. 1:13-cv-01961-KBJ
      Plaintiff, )
       )
      v. )
       )
UNITED STATES )
      DEPARTMENT OF JUSTICE, )
       )
      Defendant. )
_____)

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

JOYCE R. BRANDA
Acting Assistant Attorney General

RONALD C. MACHEN
United States Attorney

ELIZABETH J. SHAPIRO
Deputy Branch Director

STEVEN Y. BRESSLER
Senior Counsel
U.S. Department of Justice, Civil Division
Ben Franklin Station, P.O. Box 833
Washington, D.C.  20044
(202) 305-0167
Steven.Bressler@usdoj.gov

*Counsel for Defendant*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................... 1

BACKGROUND ...................................................................................................................... 2

1.  Pen Register / Trap-and-Trace Authority under the
    Foreign Intelligence Surveillance Act ........................................................................ 2

2.  Factual Background ........................................................................................................ 3

ARGUMENT ........................................................................................................................... 4

I. STATUTORY STANDARDS .............................................................................................. 4

   A.  The Freedom of Information Act ............................................................................ 4

   B.  Special Considerations in National Security Cases ............................................. 7

II.  THE GOVERNMENT IS ENTITLED TO SUMMARY
     JUDGMENT ................................................................................................................ 8

   A.  The Government Properly Withheld Classified Information Pursuant to
       FOIA Exemption 1 ................................................................................................ 8

      1.  Defendant has Properly Withheld Classified NSA Information Pursuant
          to Exemption 1 .............................................................................................. 109

      2.  The Government has Properly Withheld Classified FBI Information
          Pursuant to FOIA Exemption 1 ..................................................................... 15

      3.  The Government has Properly Withheld Classified Information from
          the Department of Justice's Semi-Annual Reports to the House and
          Senate Select Intelligence Committees Pursuant to Exemption 1. ............. 16

      4.  The Government has Properly Withheld Classified CIA Information
          Pursuant to Exemption 1 ................................................................................ 17

   B.  The Government has Properly Withheld Information Pursuant to Multiple
       Statutes and FOIA Exemption 3. ..................................................................... 1819

1.   The Government has Properly Withheld Information Protected by
     Pursuant to the National Security Act and FOIA Exemption 3. ................................ 20

2.   The Government has Properly Withheld Information Protected by
     Section 6 of the NSA Act and FOIA Exemption 3. .................................................... 21

3.   The Government has Properly Withheld Information Protected by
     Section 6 of the CIA Act and FOIA Exemption 3. .................................................... 23

4.   The Government has Properly Withheld Information Protected by 18
     U.S.C. § 798 and FOIA Exemption 3. ....................................................................... 24

C.   The Government has Properly Withheld Information Concerning Law
     Enforcement Techniques and Procedures Pursuant to FOIA Exemption
     7(E). ................................................................................................................................. 25

D.   Defendant has Released All Non-Exempt, Reasonably Segregable
     Portions of the Responsive Documents. ......................................................................... 28

E.   Defendant Conducted a Reasonable and Adequate Search for Responsive
     Records. ........................................................................................................................... 29

CONCLUSION ................................................................................................................................ 31

# TABLE OF AUTHORITIES

## CASES

*ACLU v. Dep't of Defense*,
628 F.3d 612 (D.C. Cir. 2011) ............................................................................. 21

*ACLU v. Dep't of Justice*,
265 F. Supp. 2d 20 (D.D.C. 2003) ......................................................................... 8

*Assassination Archives & Research Ctr. v. CIA*,
334 F.3d 55 (D.C. Cir. 2003) ............................................................................... 23

*Ass'n of Retired R.R. Workers, Inc. v. U.S. R.R. Ret. Bd.*,
830 F.2d 331 (D.C. Cir. 1987) ................................................................. 7, 15, 20

*Baker & Hostetler LLP v. Dep't of Commerce*,
473 F.3d 312 (D.C. Cir. 2006) ........................................................................... 5, 6

*Balridge v. Shapiro*,
455 U.S. 345 (1982) .............................................................................................. 19

*Blackwell v. FBI*,
646 F.3d 37 (D.C. Cir. 2011) ............................................................................... 25

*Campbell v. Dep't of Justice*,
164 F.3d 20 (D.C. Cir. 1999) ............................................................................... 26

*CIA v. Sims*,
471 U.S. 159 (1985) .......................................................................................... 4, 22

*Ctr. for Nat'l Sec. Studies v. Dep't of Justice*,
331 F.3d 918 (D.C. Cir. 2003) ................................................................. 5, 7, 8, 26

*Electronic Frontier Found. v. Dep't of Justice*,
--- F.Supp.2d ---- ................................................................................................ 12

*Essential Info., Inc. v. U.S. Info. Agency*,
134 F.3d 1165 (D.C. Cir. 1998) ........................................................................... 19

*Fisher v. Dep't of Justice*,
772 F. Supp. 7 (D.D.C. 1991) .............................................................................. 27

*Fitzgibbon v. CIA*,
  911 F.2d 755 (D.C. Cir. 1990) ................................................................. 8, 18, 19

*Frugone v. CIA*,
  169 F.3d 772 (D.C. Cir. 1999) ................................................................. 8, 9

*Gardels v. CIA*,
  689 F.2d 1100 (D.C. Cir. 1982) ............................................................... 27

*Goland v. CIA*,
  607 F.2d 339 (D.C. Cir. 1978) ................................................................. 20

*Ground Saucer Watch v. CIA*,
  692 F.2d 770 (D.C. Cir. 1981) ................................................................. 6, 30

*GTE Sylvania, Inc. v. Consumers Union*,
  445 U.S. 375 (1980) ................................................................................. 6

*Halkin v. Helms*,
  598 F.2d 1 (D.C. Cir. 1978) ..................................................................... 11

*Hayden v. NSA,*,
  608 F.2d 1381 (D.C. Cir. 1979) ............................................................... 21, 23

*In re Motion for Release of Court Records*,
  526 F. Supp. 2d 484 (F.I.S.C. 2007) ....................................................... 2

*Jefferson v. Dep't of Justice*,
  284 F.3d 172 (D.C. Cir. 2002) ................................................................. 26

*John Doe Agency v. John Doe Corp.*,
  493 U.S. 146 (1989) ................................................................................. 4, 5, 6

*Johnson v. Exec. Office for U.S. Attorneys*,
  310 F.3d 771 (D.C. Cir. 2002) ................................................................. 29, 30

*Judicial Watch, Inc. v. Dep't of Commerce*,
  337 F. Supp. 2d 146 (D.D.C. 2004) ......................................................... 26

*Keys v. Dep't of Homeland Sec.*,
  510 F. Supp. 2d 121 (D.D.C. 2007) ......................................................... 26

*Kidd v. Dep't of Justice*,
  362 F. Supp. 2d 291 (D.D.C. 2005) ......................................................... 30

*Kidder v. FBI*,
    517 F. Supp. 2d 17 (D.D.C. 2007) ................................................................. 26, 30

*King v. Dep't of Justice*,
    830 F.2d 210 (D.C. Cir. 1987) ................................................................. 6, 8, 9

*Kissinger v. Reporters Comm. for Freedom of the Press*,
    445 U.S. 136 (1980) ................................................................................... 6

*Krikorian v. Dep't of State*,
    984 F.2d 461 (D.C. Cir. 1993) ................................................................. 21

*Larson v. Dep't of State*,
    565 F.3d 857 (D.C. Cir. 2009) ........................................................ *passim*

*Linder v. NSA,,*
    94 F.3d 693 (D.C. Cir. 1996) ................................................................. 21

*Loving v. Dep't of Defense*,
    496 F. Supp. 2d 101 (D.D.C. 2007) ....................................................... 29

*Mayer Brown LLP v. IRS,*
    562 F.3d at 1193 ...................................................................................... 32

*Maynard v. CIA*,
    986 F.2d 547 (1st Cir. 1993) ................................................................. 10

*Mead Data v. Dep't of the Air Force*,
    566 F.2d 242 (D.C. Cir. 1977) ............................................................... 28

*Meeropol v. Meese*,
    790 F.2d 942 (D.C. Cir. 1986) ............................................................... 29

*Military Audit Project v. Casey*,
    656 F.2d 724 (D.C. Cir. 1981) ................................................................. 7

*Milner v. Dep't of Navy*,
    --- U.S. ----, 131 S. Ct. 1259 (2011) ..................................................... 25

*Mohamed v. Jeppesen*,
    614 F.3d 1070 (9th Cir. 2010) ............................................................... 10

*Morley v. CIA*,
    508 F.3d 1108 (D.C. Cir. 2007) ............................................................... 9

*Nation Magazine v. U.S. Customs Serv.*,
   71 F.3d 885 (D.C. Cir. 1995) ..................................................................... 5

*Nat'l Sec. Archive Fund, Inc. v. CIA*,
   402 F. Supp. 2d 211 (D.D.C. 2005) ........................................................... 28

*Oglesby v. Dep't of Army*,
   920 F.2d 57 (D.C. Cir. 1990) ................................................................. 5, 29

*Perry v. Block*,
   684 F.2d 121 (D.C. Cir. 1982) .............................................................. 29, 30

*PHE, Inc. v. Dep't of Justice*,
   983 F.2d 248 (D.C. Cir. 1993) ................................................................... 25

*Policy Studies v. CIA*,
   885 F. Supp. 2d 120 (D.D.C. 2012) ........................................................... 24

*Pub. Employees for Envt'l Responsibility v. U.S. Section, Int'l Boundary & Water Com'n*,
   740 F.3d at  204 ......................................................................................... 25

*Ray v. Turner*,
   587 F.2d 1187 (D.C. Cir. 1978) ................................................................... 7

*Reliant Energy Power Generation, Inc. v. FERC*,
   520 F. Supp. 2d 194 (D.D.C. 2007) ............................................................. 6

*Roberts v. Dep't of Justice*,
   No. 92-1707, 1995 WL 356320 (D.D.C. Jan. 29, 1993) .......................... 30

*SafeCard Servs., Inc. v. SEC*,
   926 F.2d 1197 (D.C. Cir. 1991) ................................................................. 30

*Schoenman v. FBI*,
   763 F. Supp. 2d. 173 (D.D.C. 2011) .................................................... 21, 28

*Schrecker v. Dep't of Justice*,
   349 F.3d 657 (D.C. Cir. 2003) ................................................................... 29

*Smith v. ATF,*,
   977 F. Supp. 496 (D.D.C. 1997) ................................................................ 26

*Steinberg v. Dep't of Justice*,
   23 F.3d 548 (D.C. Cir. 1994) ...................................................................... 5

*Subh v. CIA*,
    760 F. Supp. 2d 66 (D.D.C. 2011) ........................................................................... 23

*Tex. Indep. Producers Legal Action Ass'n v. IRS*,
    605 F. Supp. 538 (D.D.C. 1984) ............................................................................. 30

*Valencia-Lucena v. U.S. Coast Guard*,
    180 F.3d 321 (D.C. Cir. 1999) .................................................................................. 5

*Valfells v. CIA*,
    717 F. Supp. 2d 110 (D.D.C. 2010) ......................................................................... 24

*W. Ctr. for Journalism v. IRS*,
    116 F. Supp. 2d 1 (D.D.C. 2000) ............................................................................. 30

*Weisberg v. Dep't of Justice*,
    705 F.2d 1344 (D.C. Cir. 1983) ................................................................................ 6

*Weisberg v. Dep't of Justice*,
    745 F.2d 1476 (D.C. Cir. 1984) ................................................................... 5, 29, 31

*Wilbur v. CIA*,
    355 F.3d 675 (D.C. Cir. 2004) ............................................................................. 5, 6

*Wilson v. DEA*,
    414 F. Supp. 2d 5 (D.D.C. 2006) .............................................................................. 6

*Wolf v. CIA*,
    473 F.3d 370 (D.C. Cir. 2007) .................................................................................. 8

*Zadvydas v. Davis*,
    533 U.S. 678 (2001) ............................................................................................. 7, 13

## STATUTES

5 U.S.C. § 552 .............................................................................................. *passim*
18 U.S.C. § 3127 ................................................................................................... 2
18 U.S.C. § 798 ................................................................................................... 24

50 U.S.C. § 1803(a) ........................................................................................ 2
50 U.S.C. § 1841 ............................................................................................ 1
50 U.S.C. § 1841(2) ....................................................................................... 2
50 U.S.C. § 1842 ............................................................................................ 2
50 U.S.C. § 1843 ............................................................................................ 3
50 U.S.C. § 1846 ............................................................................... 1, 3, 30
50 U.S.C. § 3605 .......................................................................................... 21
50 U.S.C. § 403-1(i)(1) ........................................................................... 21, 23
50 U.S.C. § 403-3(c)(7) (2001) .................................................................... 21
50 U.S.C. § 403g .......................................................................................... 23

## **LEGISLATIVE MATERIALS**

H.R. Rep. No. 89-1497, at 6 (1966), *reprinted in* 1966 U.S.C.C.A.N. 2418, 2423 ...................... 5

## PRELIMINARY STATEMENT

Plaintiff Electronic Privacy Information Center ("EPIC") challenges, in part, the response of defendant, the United States Department of Justice ( "the Department") to plaintiff's request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.  Plaintiff seeks three categories of documents relating to defendant's reports and submissions to Congressional committees that concern the approval and use of pen register and trap-and-trace ("PR/TT") devices under the Foreign Intelligence Surveillance Act ("FISA"), 50 U.S.C. §§ 1841-1846.

Since this Court denied plaintiff's request for a preliminary injunction, and following a reasonable and thorough search for responsive records, defendant has processed and produced hundreds of pages to plaintiff.  These include considerable information relating to a now-discontinued program approved by the Foreign Intelligence Surveillance Court ("FISC") under which the Government was authorized to use PR/TT devices to collect internet metadata in bulk.  That information was declassified by the Government last year.  Defendant has also produced to plaintiff the relevant portions of the Government's semiannual reports to Congress concerning the use of FISA PR/TT devices.  Consistent with FOIA's exemptions, however, the Government has withheld classified information, information specifically protected by statute, and information that would reveal sensitive law enforcement techniques, procedures, and guidelines.  Defendant has released as much of the responsive records to plaintiff as it can without revealing that FOIA-exempt information.

Because the Government's response to plaintiff's FOIA request fully complies with that statute and as discussed below, the Court should grant defendant's Motion for Summary Judgment.

**BACKGROUND**

1.   <u>Pen Register / Trap-and-Trace Authority under the Foreign Intelligence Surveillance Act</u>

Congress enacted FISA to authorize and regulate certain governmental surveillance of communications and other activities for purposes of gathering foreign intelligence.  Congress also created the Foreign Intelligence Surveillance Court ("FISC"), an Article III court of eleven appointed U.S. district judges with authority to consider applications and grant orders authorizing electronic surveillance and other forms of intelligence-gathering by the Government. 50 U.S.C. § 1803(a); *see In re Motion for Release of Court Records*, 526 F. Supp. 2d 484, 486 (F.I.S.C. 2007).

FISA includes a provision authorizing the FISC, upon application by the Government, to issue an order "approving the installation and use of a pen register or trap and trace device," *see* 50 U.S.C. § 1841(2); 18 U.S.C. § 3127(3), (4), to obtain information relevant to authorized Federal Bureau of Investigation ("FBI") national security investigations.  50 U.S.C. § 1842(a)(1), (c)(2).

Last year, the Government declassified the existence of now-discontinued, FISC-authorized bulk collection of Internet metadata pursuant to the FISA PR/TT provisions.  As the Director of National Intelligence has stated, the Government at one time acquired bulk Internet metadata under orders issued by the FISC pursuant to FISA's pen register/trap-and-trace provision.  *See* Statement of the Director of National Intelligence, *available at* http://icontherecord.tumblr.com/post/67419963949/dni-clapper-declassifies-additional-intelligence (last visited October 30, 2014).  The data authorized for collection included certain dialing, routing, addressing, and signaling information such as "to" and "from" lines in an e-mail, and the date and time an e-mail was sent, but not the content of an e-mail or the "subject" line.  *Id.*  The PR/TT devices collected large amounts of this transactional information, or

metadata, from certain telecommunications service providers, and the National Security Agency

("NSA") analyzed this metadata. *Id.* The FISC's orders authorizing this collection required the

Government to comply with "minimization procedures" limiting the retention and dissemination

of the metadata, including a requirement of "reasonable articulable suspicion" that selection

terms used to query the bulk data were associated with certain identified foreign terrorist

organizations. *Id.* This program of bulk Internet metadata collection was terminated in 2011

after an operational review. *Id.*

2.    Factual Background

By letter dated October 3, 2013, and received on October 18 following the lapse in federal

government appropriations at the beginning of Fiscal Year 2014, plaintiff submitted a FOIA

request to NSD. *See* First Declaration of Mark A. Bradley (ECF No. 9-1), ¶ 2. The letter stated:

> EPIC seeks all records related to the Attorney General's required semiannual reports
> between 2001 and the present under 50 U.S.C. § 1846.
> 1.  All reports made to the Permanent Select Committee on Intelligence in the House
>     of Representatives and the Select Committee on Intelligence in the Senate,
>     detailing the total number of orders for pen registers or trap and trace devices
>     granted or denied, and detailing the total number of pen registers or trap and trace
>     devices installed pursuant to 50 U.S.C. § 1843.
> 2.  All information provided to the aforementioned committees concerning all uses of
>     pen registers and trap and trace devices.
> 3.  All records used in preparation of the above materials, including statistical data.

*See* EPIC Request, Exhibit A to Pl. Motion for Preliminary Injunction (ECF No. 3-2); Compl. ¶ 18;

Answer ¶ 18. By letter dated October 29, 2013, NSD acknowledged receipt of the request. First

Bradley Decl. ¶ 3. And by a subsequent letter dated November 5, 2013, NSD granted plaintiff's

requests for expedited processing and waiver of processing fees. *Id.* In conversation with undersigned

counsel on January 7, 2014, counsel for plaintiff agreed to exclude from its request internal Department

of Justice emails and drafts of documents for which a final version is processed, although plaintiff

declined to narrow its request in other respects at that time.

Plaintiff moved for a preliminary injunction (ECF No. 3).  Following a hearing, this Court denied that Motion (ECF Nos. 14, 15), and the parties subsequently agreed on a schedule for processing and production of documents responsive to plaintiff's FOIA request (ECF Nos. 16, 17). Defendant has produced hundreds of pages to plaintiff.

More recently, the parties also agreed to further narrow the scope of issues in dispute.  In particular, plaintiff is no longer challenging the names of government employees withheld pursuant to FOIA Exemptions 6 and 7(C); twenty-five documents identified as "Preliminary case tracking report with handwritten notes used to compile reports to Congress;" eleven documents identified as "FISA PR/TT Applications;" a document identified as "Exhibit attached to Document 'Notice of Filing' describing NSA's use of a classified intelligence method in the conduct of the PR/TT program;" a document identified as "Detailed declaration concerning techniques and capabilities used in FBI investigations."  Second Bradley Decl. ("Bradley Decl.") ¶¶ 7-8.  Plaintiff has informed defendant, through counsel, that it intends to challenge withholdings in the remaining documents pursuant to Exemptions 1, 3, and 7(E), as well as defendant's segregability determinations.

## ARGUMENT

## I.  STATUTORY STANDARDS

### A.  The Freedom of Information Act

FOIA's "basic purpose" reflects a "general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989) (citation and internal quotation marks omitted).  "Congress recognized, however, that public disclosure is not always in the public interest."  *CIA v. Sims*, 471 U.S. 159, 166–67 (1985).  Accordingly, in passing FOIA, "Congress sought 'to reach a

workable balance between the right of the public to know and the need of the Government to keep information in confidence to the extent necessary without permitting indiscriminate secrecy.'" *John Doe Agency*, 493 U.S. at 152 (quoting H.R. Rep. No. 89-1497, at 6 (1966), *reprinted in* 1966 U.S.C.C.A.N. 2418, 2423).  As the D.C. Circuit has recognized, "FOIA represents a balance struck by Congress between the public's right to know and the government's legitimate interest in keeping certain information confidential." *Ctr. for Nat'l Sec. Studies v. Dep't of Justice*, 331 F.3d 918, 925 (D.C. Cir. 2003) (citing *John Doe Agency*, 493 U.S. at 152).

When conducting a search for records responsive to a FOIA request, an agency "must make 'a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested.'" *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995) (quoting *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)).  "An agency may establish the adequacy of its search by submitting reasonably detailed, nonconclusory affidavits describing its efforts," *Baker & Hostetler LLP v. Dep't of Commerce*, 473 F.3d 312, 318 (D.C. Cir. 2006), including by "setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched," *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999) (quoting *Oglesby*, 920 F.2d at 68).  The Court must evaluate not "whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." *Steinberg v. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994) (quoting *Weisberg v. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)).  Accordingly, an agency's "failure to turn up a particular document, or mere speculation that as yet uncovered documents might exist, does not undermine the determination that the

agency conducted an adequate search for the requested records." *Wilbur v. CIA*, 355 F.3d 675, 678 (D.C. Cir. 2004) (per curiam).  In evaluating the adequacy of a search, courts recognize that "[a]gency affidavits enjoy a presumption of good faith, which will withstand purely speculative claims about the existence and discoverability of other documents." *Ground Saucer Watch v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981); *see Baker & Hostetler*, 473 F.3d at 318; *Goland v. CIA*, 607 F.2d 339, 352–53 (D.C. Cir. 1978).  Accordingly, a plaintiff bears an "evidentiary burden" to "present evidence rebutting the agency's initial showing of a good faith search." *See Wilson v. DEA*, 414 F. Supp. 2d 5, 12 (D.D.C. 2006) (citing *Maynard v. CIA*, 986 F.2d 547, 560 (1st Cir. 1993); *Weisberg v. Dep't of Justice*, 705 F.2d 1344, 1351-52 (D.C. Cir. 1983)).

FOIA mandates disclosure of agency records unless the requested information falls within one of nine enumerated exemptions. *See* 5 U.S.C. § 552(b).  A court only has jurisdiction to compel an agency to disclose "improperly withheld" agency records, *i.e.*, records that do not fall within an exemption.  *GTE Sylvania, Inc. v. Consumers Union*, 445 U.S. 375, 384 (1980); *see also* 5 U.S.C. § 552(a)(4)(B) (providing the district court with jurisdiction only "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant"); *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980) ("Under 5 U.S.C. § 552(a)(4)(B)[,] federal jurisdiction is dependent upon a showing that an agency has (1) 'improperly' (2) 'withheld' (3) 'agency records.'").  FOIA's statutory exemptions "are intended to have meaningful reach and application," *John Doe Agency*, 493 U.S. at 152.

Most FOIA actions are resolved on summary judgment.  *Reliant Energy Power Generation, Inc. v. FERC*, 520 F. Supp. 2d 194, 200 (D.D.C. 2007).  The government bears the burden of proving that any withheld information falls within the exemptions it invokes.  *See* 5

U.S.C. § 552(a)(4)(B); *King v. Dep't of Justice*, 830 F.2d 210, 217 (D.C. Cir. 1987).  A court

may grant summary judgment to the government based entirely on the basis of information set

forth in agency affidavits or declarations which "describe the documents and the justifications

for nondisclosure with reasonably specific detail, demonstrate that the information withheld

logically falls within the claimed exemption, and are not controverted by either contrary

evidence in the record nor by evidence of agency bad faith."  *Military Audit Project v. Casey*,

656 F.2d 724, 738 (D.C. Cir. 1981).

### B.      Special Considerations in National Security Cases

Defendant has invoked Exemption 1 as one basis for withholding certain information and

records.  Information withheld on the basis of Exemption 1 often, as in this case, "implicat[es]

national security, a uniquely executive purview."  *Ctr. for Nat'l Sec. Studies v. Dep't of Justice*,

331 F.3d 918, 926–27 (D.C. Cir. 2003).  While courts review de novo an agency's withholding

of information pursuant to a FOIA request, "de novo review in FOIA cases is not everywhere

alike."  *Ass'n of Retired R.R. Workers, Inc. v. U.S. R.R. Ret. Bd.*, 830 F.2d 331, 336 (D.C. Cir.

1987).  Although de novo review calls for "an objective, independent judicial determination,"

courts nonetheless defer to an agency's determination in the national security context,

acknowledging that "the executive ha[s] unique insights into what adverse [e]ffects might occur

as a result of public disclosure of a particular classified record."  *Ray v. Turner*, 587 F.2d 1187,

1194 (D.C. Cir. 1978) (citation and internal quotation marks omitted).  Courts have specifically

recognized the "propriety of deference to the executive in the context of FOIA claims which

implicate national security."  *Ctr. for Nat'l Sec. Studies*, 331 F.3d at 927 (citing *Zadvydas v.*

*Davis*, 533 U.S. 678, 696 (2001)).

Accordingly, courts have "consistently deferred to executive affidavits predicting harm to the national security, and have found it unwise to undertake searching judicial review." *Ctr. for Nat'l Sec. Studies*, 331 F.3d at 927; *see Larson v. Dep't of State*, 565 F.3d 857, 865 (D.C. Cir. 2009) ("Today we reaffirm our deferential posture in FOIA cases regarding the 'uniquely executive purview' of national security."). "[I]n the national security context," therefore, "the reviewing court must give 'substantial weight'" to agency declarations. *ACLU v. Dep't of Justice*, 265 F. Supp. 2d 20, 27 (D.D.C. 2003) (quoting *King*, 830 F.2d at 217); *see Frugone v. CIA*, 169 F.3d 772, 775 (D.C. Cir. 1999) (stating that because "courts have little expertise in either international diplomacy or counterintelligence operations, we are in no position to dismiss the CIA's facially reasonable concerns" about the harm that disclosure could cause to national security); *Fitzgibbon v. CIA*, 911 F.2d 755, 766 (D.C. Cir. 1990) (holding that the district court erred in "perform[ing] its own calculus as to whether or not harm to the national security or to intelligence sources and methods would result from disclosure"). In according such deference, "a reviewing court must take into account . . . that any affidavit or other agency statement of threatened harm to national security will always be speculative to some extent, in the sense that it describes a potential future harm." *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007) (citation and internal quotation marks omitted).

## II.     THE GOVERNMENT IS ENTITLED TO SUMMARY JUDGMENT

Because defendant has complied with its obligations under the FOIA, it is entitled to summary judgment on plaintiff's claims.

### A. The Government Properly Withheld Classified Information Pursuant to FOIA Exemption 1.

Exemption 1 protects from disclosure records that are "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or

foreign policy, and (B) are in fact properly classified pursuant to such Executive order."  5

U.S.C. § 552(b)(1).  The current Executive Order, E.O. 13,526, governs the classification of

national security information.

An agency establishes that it has properly withheld information under Exemption 1 if it

demonstrates that it has met the classification requirements of E.O. 13,526. Section 1.1 of the

Executive Order sets forth four requirements for the classification of national security

information:  (1) an original classification authority classifies the information; (2) the U.S.

Government owns, produces, or controls the information; (3) the information is within one of

eight protected categories listed in section 1.4 of the Order; and (4) the original classification

authority determines that the unauthorized disclosure of the information reasonably could be

expected to result in a specified level of damage to the national security, and the original

classification authority is able to identify or describe the damages.  E.O. 13,526 § 1.1(a).  As

noted, the Court must accord "substantial weight" to agency affidavits concerning classified

information, *King*, 830 F.2d at 217, and must defer to the expertise of agencies involved in

national security and foreign policy, particularly to those agencies' articulations and predictive

judgments of potential harm to national security, *see Larson*, 565 F.3d at 865; *Frugone*, 169 F.3d

at 775; *Fitzgibbon*, 911 F.2d at 766.  Indeed, "little proof or explanation is required beyond a

plausible assertion that information is properly classified." *Morley v. CIA*, 508 F.3d 1108, 1124

(D.C. Cir. 2007).

Defendant, in consultation with the NSA, FBI, and Central Intelligence Agency ("CIA")

with respect to certain records, has properly withheld classified information pursuant to FOIA

Exemption 1.

1.   **Defendant has Properly Withheld Classified NSA Information Pursuant to Exemption 1.**

The Government has properly withheld several categories of classified information on behalf of the NSA and pursuant to FOIA Exemption 1.  *See* Bradley Decl. ¶ 7; Declaration of David J. Sherman ¶¶ 8-14, 20-81, 83-84.

Defendant withheld information relating to the categories of electronic communications metadata collected under FISA PR/TT authority and FISC orders.  Sherman Decl. ¶ 20.  As David J. Sherman, a senior NSA official and original classification authority, explains, disclosure of such details would reveal the scope of the now-discontinued bulk internet metadata collection program, including the Government's technological collection capabilities, and its successes (or failures) in collecting certain types of metadata.  *Id.* ¶ 22.  Because the Government is authorized to collect metadata under other authorities and may do so separate from the discontinued bulk program, revealing information about the scope of that discontinued program would allow adversaries of the United States today to take countermeasures and frustrate ongoing, individually targeted U.S. intelligence collection.  *Id.* ¶ 23.  And as courts have recognized, official confirmation of general information about an intelligence program (such as its existence) does not eliminate the risk to national security of compelling further disclosures of information about the program's details.  *E.g.*, *Mohamed v. Jeppesen*, 614 F.3d 1070, 1086, 1090 (9th Cir. 2010) (official acknowledgment of existence of CIA extraordinary rendition program did not preclude details of program remaining state secrets if details' disclosure would risk harm to national security).  As Mr. Sherman testifies, release of this information concerning the discontinued metadata collection program could be reasonably expected to cause exceptionally grave damage to national security and it is properly classified TOP SECRET.  Sherman Decl. ¶ 22.

Similarly, the Government properly withheld information that would reveal the types of electronic communications from which metadata was acquired in the discontinued bulk collection program.  *Id.* ¶ 28.  As with information on the categories of metadata discussed above, information concerning the types of electronic communications subject to metadata collection would shed light on the classified scope of the discontinued program and the Government's capabilities.  *Id.* ¶ 30.  This would also permit adversaries of the United States to "develop countermeasures that could be used to thwart not just email metadata collection, but also other types of communications collection" and result in a "loss of information crucial to the national security and defense of the United States."  *Id.*  Mr. Sherman has determined release of this information could reasonably be expected to cause exceptionally grave damage to national security, and it is accordingly classified TOP SECRET and exempt from disclosure under FOIA.  5 U.S.C. § 552(b)(1).  *Id.* ¶ 29.

The Government has also withheld information relating to the identities of electronic communication service providers that were compelled to participate in the discontinued bulk internet metadata collection program.  *Id.* ¶ 35.  Confirming (or denying) a relationship between the NSA and any telecommunications or electronic communications service provider would "reveal to foreign adversaries whether or not NSA utilizes particular intelligence sources [the carrier in question] and methods and, thus, would either compromise actual sources and methods or reveal that NSA does not utilize a particular source or method."  *Id.* ¶ 37.  This, in turn, would allow adversaries of the United States to avoid the Intelligence Community's surveillance.  *Id.* ¶¶ 37-39. *Accord Halkin v. Helms*, 598 F.2d 1, 8 (D.C. Cir. 1978) (rejecting argument "that admission or denial of the fact of acquisition of [certain] communications … would not reveal which circuits NSA has targeted" as "naïve").  As Mr. Sherman testifies, he

has determined that revealing such information could reasonably be expected to cause exceptionally grave damage to national security. Sherman Decl. ¶ 36. The information is therefore properly classified TOP SECRET and exempt from disclosure under FOIA. *Id.*; 5 U.S.C. § 552(b)(1).

The Government has also withheld dates and FISC docket numbers of records relating to the discontinued bulk internet metadata collection program. *Id.* ¶ 44. The Government has acknowledged that the program was reauthorized by the FISC approximately every 90 days from its inception until its termination in December 2011, except for a brief period. *Id.* ¶ 45. Revealing the withheld docket numbers and dates would allow adversaries of the United States to "deduce or infer the time period for which the program was not operational, thereby determining which of their communications . . . may have escaped NSA collection and querying." *Id.* This, in turn, would allow terrorists to ascertain, *e.g.*, which communication channels remain "safe." *Id.* ¶ 46. As Mr. Sherman testifies, he has determined that this information is properly classified SECRET and it is therefore exempt from disclosure under FOIA. *Id.* ¶ 47; 5 U.S.C. § 552(b)(1). *Cf. Elec. Frontier Found. v. Dep't of Justice*, --- F. Supp. 2d ----, Civ. No. 12-1441 (ABJ), 2014 WL 3542124, *6 (D.D.C. July 18, 2014) (approving Exemption 1 withholding of FISC docket numbers in documents concerning Section 702 of FISA).

The Government has also withheld information regarding the specific facilities from which electronic communications metadata was collected. Sherman Decl. ¶ 48. Although the bulk internet metadata collection program has been discontinued, "revealing which facilities [were] used for collection under that program would provide" adversaries of the United States with "unique insights into NSA's analytic process for identifying worldwide facilities for

collection." *Id.* ¶ 49.  Adversaries of the U.S. could apply such insights to develop

countermeasures against other forms of surveillance.  *Id.*  Moreover, such a disclosure would

alert targets of surveillance to which records NSA did and did not collect, so that they would

know which communications were "safe."  *Id.*  As Mr. Sherman testifies, he has determined

that this information is properly classified TOP SECRET and it is therefore exempt from

disclosure under FOIA.  *Id.* ¶ 50; 5 U.S.C. § 552(b)(1).

The Government has also withheld the identities of the targets from which

communications were collected under the discontinued bulk internet metadata collection

program.  Sherman Decl. ¶ 51.  As Mr. Sherman explains, disclosing specific targets of

intelligence collection would identify which entities the Government believes are engaged in

terrorism as well as the scope and limits of the discontinued bulk collection program.  *Id.* ¶ 53.

This, in turn, would allow terrorists to determine which past communications are, or are not,

likely to have been captured, and cause those targets to take steps to circumvent future

surveillance under other programs.  *Id.*  As Mr. Sherman testifies, release of surveillance target

identities could reasonably be expected to cause exceptionally grave damage to national

security.  *Id.* ¶ 52.  This information is therefore properly classified TOP SECRET, and is

exempt from disclosure under FOIA.  *Id.*; 5 U.S.C. § 552(b)(1).  *See also Wolf v. CIA*, 473 F.3d

370, 376 (D.C. Cir. 2007) (identities of intelligence targets were properly withheld under FOIA

Exemption 1).

The Government has also withheld information relating to the methods and techniques by

which adversaries of the United States "attempt to conceal their communications to avoid

detection and collection, otherwise known as their tradecraft," as well as "information

concerning the threats posed by particular adversaries."  Sherman Decl. ¶ 58.  As Mr. Sherman

explains, disclosure of such information could alert adversaries to the United States' awareness

of those adversaries' countermeasures. *Id.* ¶ 60. It could also alert adversaries such as terrorists

to the Government's awareness of particular threats to or plots against the nation. *Id.* That is

because "adversaries know how they communicate and therefore, upon a disclosure of the

government's awareness of specific examples of adversary tradecraft, targets would learn which

of their communications may have been vulnerable to collection." *Id.* This information could

help adversaries avoid ineffective tradecraft, and employ more effective tradecraft, and thus

deny the United States crucial information. *Id.* As Mr. Sherman testifies, he has determined

that release of this information could reasonably be expected to cause exceptionally grave

damage to national security. *Id.* ¶ 59. This information is therefore properly classified TOP

SECRET, and is exempt from disclosure under FOIA. *Id.*; 5 U.S.C. § 552(b)(1).

The Government has also withheld certain operational details of FISA PR/TT collection

previously authorized by the FISC, although it has released others. Sherman Decl. ¶¶ 65-66.

The withheld information includes, *e.g.*, details about equipment, collection capabilities,

analytical techniques, and database names. *Id.* ¶ 65. This information would reveal NSA's

technical capabilities to adversaries of the United States and allow them to develop

countermeasures, frustrate intelligence collection, and enhance attempts to penetrate NSA

networks. *Id.* ¶¶ 67-69. As Mr. Sherman testifies, release of this information could reasonably

be expected to cause exceptionally grave damage to national security. *Id.* ¶ 67. This

information is therefore properly classified TOP SECRET, and is exempt from disclosure under

FOIA. *Id.*; 5 U.S.C. § 552(b)(1).

The Government has also withheld in full all Secondary Orders of the FISC issued during

the discontinued PR/TT internet metadata bulk collection program. *Id.* ¶ 74. As Mr. Sherman

explains, revealing these orders (each of which was directed to a specific communications provider being compelled to provide metadata) or revealing even the number of orders could reasonably be expected to allow sophisticated adversaries of the United States to deduce the identities of the providers. *Id.* ¶ 75. Even attempting to redact the names of such providers where they are included in the orders would allow a sophisticated reader to determine the provider's identity "by looking at the length of the redacted[] material, and comparing any redacted Secondary Order with other declassified documents." *Id.* As explained above, revealing which providers participated in the bulk internet metadata collection program could reasonably be expected to cause exceptionally grave damage to the national security. *See id.* ¶¶ 77, 37-39. This information is therefore properly classified TOP SECRET, and is exempt from disclosure under FOIA. *Id.*; 5 U.S.C. § 552(b)(1).

**2. The Government has Properly Withheld Classified FBI Information Pursuant to FOIA Exemption 1.**

The Government has properly withheld classified information on behalf of the FBI and pursuant to FOIA Exemption 1. *See* Bradley Decl. ¶ 7; Declaration of David M. Hardy ¶¶ 24-34.

Defendant withheld information describing specific FBI intelligence activities or methods that are still used by the FBI today in gathering intelligence information. *Id.* ¶ 31[1]-33. As Mr. Hardy explains, release of this information would inform hostile entities of the FBI's intelligence-gathering methods, reveal current, specific targets of FBI investigations, and reveal the criteria used and priorities assigned to FBI national security investigations. *Id.* ¶ 32. The

---

[1] Paragraph 31 of Mr. Hardy's declaration contains classified information so it has been redacted from the public version of that declaration filed via the Court's ECF system. The same is true of several classified footnotes in Mr. Hardy's declaration. A full, unredacted, classified copy of the declaration is being lodged with a Department of Justice Classified Information Security Officer for *ex parte* submission to and *in camera* review by the Court.

documents at issue were originally submitted to the FISC in support of a Government

application for an order granting the installation and use of a PR/TT device to be used on

particular targets of national security investigations.  *Id.* ¶¶ 33-34.  Accordingly, the documents

contain specific descriptions of a particular FBI intelligence method and activity that, if

revealed, would permit hostile entities to thwart the FBI's authorized use of that method.  *Id.*

As Mr. Hardy, an original classification authority, explains, release of this withheld information

could reasonably be expected to "severely disrupt the FBI's intelligence gathering capabilities"

and cause serious or exceptionally grave damage to national security.  *Id.* ¶ 34.  This

information is therefore properly classified, and is exempt from disclosure under FOIA.  *Id.*; 5

U.S.C. § 552(b)(1).

> ### 3. The Government has Properly Withheld Classified Information from the Department of Justice's Semi-Annual Reports to the House and Senate Select Intelligence Committees Pursuant to Exemption 1.

The Government has properly withheld classified information from twenty-five

semiannual reports that the Attorney General has submitted to the House Permanent Select

Committee on Intelligence and the Senate Select Committee on Intelligence, as well as the

House and Senate Judiciary Committees.  Bradley Decl. ¶ 9.  The reports discuss, *inter alia*, all

PR/TT surveillances conducted under FISA from July 1, 2000 to December 21, 2012.  *Id.*

The reports have been released in part, but the withheld portions consist of three types of

information.  *Id.* ¶ 10.  The first is summary descriptions of intelligence targets and

investigations, which specifically describe national security investigations and how they are

conducted.  *Id.*  Release of this information could reveal the targets of the investigations,

"particularly to sophisticated observers including the targets themselves, because of other

details provided." *Id.* It would also reveal the techniques that the United States Intelligence Community employs in national security investigations. *Id.*

The Government has also withheld portions of the reports that contain summary descriptions of compliance incidents, which include details about United States intelligence methods. *Id.* Revealing those details could permit adversaries of the United States to circumvent intelligence collection and evade surveillance by the United States. *Id.*

And third, the Government has withheld information about intelligence sources and methods. *Id.* The reports contain "specific descriptions of the manner and means by which the United States Government conducts foreign intelligence surveillance, and as such, the withheld information describes sensitive intelligence activities, sources, and methods." *Id.*

As Mr. Bradley, an original classification authority (*id.* ¶ 2), explains, disclosure of this information would provide adversaries of the United States and foreign intelligence targets with insight into the Intelligence Community's capabilities, which could permit them to degrade and evade those capabilities. *Id.* ¶ 10. Disclosure could therefore be reasonably expected to cause serious or exceptionally grave damage to national security, and the withheld information is therefore classified and exempt from FOIA disclosure under Exemption 1. *Id.*; 5 U.S.C. § 552(b)(1).

### 4. The Government has Properly Withheld Classified CIA Information Pursuant to Exemption 1.

The Government has properly withheld classified information on behalf of the CIA and pursuant to FOIA Exemption 1 from a single document, a Declaration of then-Director of Central Intelligence George Tenet, which was released in part. *See* Bradley Decl. ¶ 7; Declaration of Martha M. Lutz ¶¶ 5-15, 19-23.

As Ms. Lutz explains, disclosure of the information withheld in the Tenet Declaration could be expected to lead to the identification of intelligence sources, methods, and activities of the CIA.  *Id.* ¶ 15.  The withheld information relates to specific sources, methods, and activities used by the CIA to track and collect information on terrorist threats, and relates to the CIA's methods to corroborate and synthesize collected intelligence.  *Id.* ¶ 20.  "The Tenet Declaration provides numerous, detailed pieces of intelligence information along with details as to how that information was obtained, processed and analyzed."  *Id.*  Protection of the CIA's intelligence sources and methods is critical to its ability to provide the President and other United States policymakers with information and fulfill the agency's counterterrorism mission.  *Id.* ¶ 21.  Revealing the information redacted from the Tenet Decl., however, would allow terrorist groups to "exploit gaps in coverage" of CIA intelligence gathering and "defeat the specific collection efforts of the CIA[.]"  *Id.* ¶ 22.  *Cf. Fitzgibbon*, 911 F.2d at 766 (holding that the district court erred in "perform[ing] its own calculus as to whether or not harm to the national security or to intelligence sources and methods would result from disclosure").

As Ms. Lutz explains, she is an original classification authority (Lutz Decl. ¶ 2) and has determined that the information withheld from the version of the Tenet Decl. released to Plaintiff is properly classified TOP SECRET because its disclosure could reasonably be expected to result in exceptionally grave damage to national security. Lutz Decl. ¶ 23.  This information is therefore exempt from disclosure under FOIA.  *Id.*; 5 U.S.C. § 552(b)(1).

Accordingly, for all of the reasons set forth above and in the accompanying declarations, defendant is entitled to summary judgment on all of its Exemption 1 withholdings.

**B. The Government has Properly Withheld Information Pursuant to Multiple Statutes and FOIA Exemption 3.**

The Government also properly withheld information pursuant to various applicable statutes and FOIA Exemption 3.  Exemption 3 applies to records that are "specifically exempted from disclosure" by other federal statutes "if that statute – establishes particular criteria for withholding or refers to the particular types of matters to be withheld."  5 U.S.C. § 552(b)(3).[2] In promulgating FOIA, Congress included Exemption 3 to recognize the existence of collateral statutes that limit the disclosure of information held by the government, and to incorporate such statutes within FOIA's exemptions.  *See Baldridge v. Shapiro*, 455 U.S. 345, 352-53 (1982); *Essential Info., Inc. v. U.S. Info. Agency*, 134 F.3d 1165, 1166 (D.C. Cir. 1998).  Under Exemption 3, "the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within the statute's coverage."  *Fitzgibbon v. CIA*, 911 F.2d 755, 761-62 (D.C. Cir. 1990).  The "purpose of Exemption 3 [is] to assure that Congress, not the agency, makes the basic nondisclosure decision."  *Ass'n of Retired R.R. Workers v. U.S. R.R. Ret. Bd.*, 830 F.2d 331, 336 (D.C. Cir. 1987).

Here, the Government has invoked Exemption 3 (often on the basis of multiple statutes) to protect the vast majority information of information over which the Government has asserted Exemption 1.  As this Circuit has recognized, "agencies may invoke the exemptions independently and courts may uphold agency action under one exemption without considering the applicability of the other."  *Larson*, 565 F.3d at 862-63.  This Court therefore need not reach

_____

[2] The relevant section of the FOIA statute setting forth Exemption 3 was amended five years ago to specify that statutes "enacted after the date of enactment of the OPEN FOIA Act of 2009" must specifically cite to the appropriate section of FOIA to qualify as withholding statutes pursuant to Exemption 3.  *See* 5 U.S.C. § 552(b)(3)(B) (added by OPEN FOIA Act of 2009, Pub. L. No. 111-83, tit. V, § 564, 123 Stat. 2184 (2009)).  Here, the statutes invoked by government were enacted well before the date of that amendment.

the Exemption 3 withholdings if it upholds all of defendant's Exemption 1 withholdings, nor

need the Court reach the Exemption 1 withholdings over documents other than 26 semiannual

reports to Congress if the Court upholds the Exemption 3 withholdings.

Courts apply a two-pronged inquiry when evaluating an agency's invocation of

Exemption 3.  *See Sims*, 471 U.S. at 167-68.  First, the court must determine whether the statute

identified by the agency qualifies as an exempting statute under Exemption 3.  Second, the court

should consider whether the withheld material falls within the scope of the exempting statute.

*See id.*  As the D.C. Circuit has recognized, "Exemption 3 presents considerations distinct and

apart from the other eight exemptions."  *Ass'n of Retired R.R. Workers*, 830 F.2d at 336.  "[I]ts

applicability depends less on the detailed factual contents of specific documents; the sole issue

for decision is the existence of a relevant statute and the inclusion of withheld material within the

statute's coverage."  *Id.* (quoting *Goland*, 607 F.2d at 350).

### 1.  The Government has Properly Withheld Information Protected by the National Security Act and FOIA Exemption 3.

The NSA, CIA, and FBI also invoke Section 102A(i)(1) of the National Security Act of

1947, as amended, as justification to withhold information pertaining to intelligence sources and

methods.  *See* Sherman Decl. ¶ 17; Hardy Decl. ¶¶ 36-38; Lutz Decl. ¶¶ 16-18.  That provision

states that the Director of National Intelligence "shall protect intelligence sources and methods

from unauthorized disclosure." 50 U.S.C. § 3024(i)(1).[3]  That statute qualifies as a withholding

---

[3] While the text of the statute speaks of the "Director of National Intelligence" – or, prior to 2004, of the Director of Central Intelligence, *see* 50 U.S.C. § 403-3(c)(7) (2001) – the Government has long taken the position that any member of the intelligence community, including the NSA, CIA, and FBI, may assert the National Security Act to protect intelligence sources and methods, and courts have regularly upheld other agencies' assertions of that Act in support of Exemption 3 withholdings.  *See, e.g.*, *Larson v. Dep't of State*, 565 F.3d 857, 868–69 (D.C. Cir. 2009) (National Security Agency); *Krikorian v. Dep't of State*, 984 F.2d 461, 465–66 (D.C. Cir. 1993) (Department of State); *Schoenman v. FBI*, 763 F. Supp. 2d 173, 193 n.12

statute under FOIA Exemption 3, *see, e.g.*, *ACLU v. Dep't of Defense*, 628 F.3d 612, 619 (D.C. Cir. 2011), and the Supreme Court has recognized the "wide-ranging authority" provided by the National Security Act, entrusting intelligence agencies to "weigh the variety of complex and subtle factors in determining whether disclosure of information may lead to an unacceptable risk of compromising the Agency's intelligence-gathering process." *Sims*, 471 U.S. at 180.  Indeed, rather than place any limit on the scope of the National Security Act, "Congress simply and pointedly protected all sources of intelligence that provide, or are engaged to provide, information the Agency needs to perform its statutory duties with respect to foreign intelligence." *Id.* at 169-70.  For the same reasons, NSA and FBI must invoke the protective shield of the National Security Act to protect their intelligence sources and methods and those of the broader intelligence community.  *See* Sherman Decl. ¶ 17; Hardy Decl. ¶¶ 36-38.

The Government has invoked the National Security Act to protect various intelligence sources and methods.  *See* Sherman Decl. ¶¶ 26 (categories of electronic communications metadata collected under discontinued bulk PR/TT program, revealing intelligence sources and methods); 33 (types of electronic communications acquired under discontinued bulk PR/TT program, revealing intelligence sources and methods); 42 (identities of telecommunications providers compelled to provide internet metadata, *i.e.*, intelligence sources); 49 (facilities from which metadata was collected, *i.e.*, intelligence sources); 56 (identities of targets of PR/TT collection, which would allow targets to deduce intelligence sources); 63 (information about adversary tradecraft, which could permit adversaries to deduce intelligence methods); 72 (operational details of discontinued bulk PR/TT collection program, *i.e.*, intelligence methods); 80 (secondary orders, which would reveal the identities of providers compelled to participate in

---

(D.D.C. 2011) (Department of Justice on behalf of FBI).

the discontinued bulk PR/TT collection program, *i.e.*, intelligence sources); Hardy Decl. ¶¶ 31-33, 35-36 (specific intelligence method); Lutz Decl. ¶¶ 17-20 (specific intelligence sources, methods, and activities of the CIA).  All of this information falls squarely within the scope of the National Security Act.

Notably, the mandate to withhold information pursuant to this statute is broader than the authority to withhold information pursuant to FOIA exemption 1 and Executive Order 13,526. *Cf. Gardels v. CIA*, 689 F.2d 1100, 1107 (D.C. Cir. 1982) (noting that the executive order governing classification of documents was "not designed to incorporate into its coverage the CIA's full statutory power to protect all of its 'intelligence sources and methods'").  This is because, unlike section 1.1(a)(4) of E.O. 13,526, the National Security Act does not require the Government to determine that the disclosure of the information would be expected to result in damage to the national security.  *Compare* 50 U.S.C. §§ 3024(i)(1), *with* E.O. 13,526 § 1.1(a)(4); *see also Assassination Archives & Research Ctr. v. CIA*, 334 F.3d 55, 58 n.3 (D.C. Cir. 2003) ("Because we conclude that the Agency easily establishes that the records . . . are exempt from disclosure under Exemption 3, we do not consider the applicability of Exemption 1.").  Congress has already made that determination by enacting these statutes.  *See Hayden v. NSA*, 608 F.2d 1381, 1390 (D.C. Cir. 1979) ("Congress has already, in enacting the statute, decided that disclosure of NSA activities is potentially harmful.").

**2. The Government has Properly Withheld Information Protected by Section 6 of the NSA Act and FOIA Exemption 3.**

The NSA relies on Section 6 of the National Security Agency Act of 1959, *codified at* 50 U.S.C. § 3605, which provides that "[n]othing in this Act or any other law . . . shall be construed to require the disclosure of the organization or any function of the National Security Agency, or any information with respect to the activities thereof . . . ."  As Mr. Sherman explains, all of the

categories of information withheld on behalf of the NSA are protected by Section 6 of the NSA

Act because they all relate to a function (signals intelligence) and activities of the NSA.  *See*

Sherman Decl. ¶¶ 25 (categories of internet metadata collected, relating to function and activities

of the NSA); 32 (types of communications acquired under discontinued bulk PR/TT program);

43 (identities of providers compelled to participate in discontinued bulk PR/TT program); 47

(dates and FISC docket numbers associated with discontinued bulk PR/TT collection program);

50 (facilities from which electronic metadata was collected); 55 (identities of targets of

intelligence collection); 62 (adversary tradecraft); 71 (operational details of communications

intelligence collection activities); 79 (FISC secondary orders authorizing NSA communications

intelligence activities).

All of this information plainly involves "any function of the [NSA], or . . . information

with respect to the activities thereof."  50 U.S.C. § 3605.   That is sufficient to invoke Exemption

3:  "The protection afforded by section 6 is, by its very terms, absolute.  If a document is covered

by section 6, NSA is entitled to withhold it regardless of the requesting party's needs."  *Linder v.*

*NSA*, 94 F.3d 693, 698 (D.C. Cir. 1996); *see id.* at 696 ("A specific showing of potential harm to

national security is irrelevant to the language of [section 6].  Congress has already decided that

disclosure of NSA activities is potentially harmful.") (citation, alterations omitted); *Hayden v.*

*NSA*, 608 F.2d 1381, 1390 (D.C. Cir. 1979).

### 3.  The Government has Properly Withheld Information Protected by Section 6 of the CIA Act and FOIA Exemption 3.

The withheld portions of one document, the Declaration of former Director of Central

Intelligence George Tenet (submitted to the FISC and later provided to Congress), are also

protected by Section 6 of the CIA Act of 1949 which provides that "CIA shall be exempt from

the "provisions of any other law which require the publication or disclosure of the organization,

functions, names, official titles, salaries, or numbers of personnel employed by the Agency." 50

U.S.C. § 3507.  *See* Lutz Decl. ¶ 18.  It is "well established" that the CIA Act is "precisely the

type of statute[] comprehended by exemption 3." *Subh v. CIA*, 760 F. Supp. 2d 66, 70 (D.D.C.

2011); *see Valfells v. CIA*, 717 F. Supp. 2d 110, 116 (D.D.C. 2010) (CIA Act is an Exemption 3

statute).

As Ms. Lutz explains, the withheld portions of the Tenet Decl. contain information about

CIA's core functions, and in particular specific intelligence sources, methods, and activities used

by the CIA to protect the United States against terrorist threats.  *Id.* ¶¶ 18, 20.  This information

is protected by Section 6 of the CIA Act and Exemption 3.  *E.g.*, *Inst. for Policy Studies v. CIA*,

885 F. Supp. 2d 120, 147 (D.D.C. 2012) (affirming CIA's Exemption 3 withholding pursuant to

the CIA Act of information relating to intelligence sources and methods).

> **4.   The Government has Properly Withheld Information Protected by 18
>        U.S.C. § 798 and FOIA Exemption 3.**

NSA also invokes 18 U.S.C. § 798 as an Exemption 3 statute here.  Sherman Decl. ¶ 18.

That criminal statute prohibits a person from knowingly and willfully disclosing to an

unauthorized person "any classified information . . . concerning the communication intelligence

activities of the United States . . . or . . . obtained by the processes of communication intelligence

from the communications of any foreign government, knowing the same to have been obtained

by such processes."  18 U.S.C. § 798(a)(3), (4).  Section 798 is an Exemption 3 statute.  *Larson*,

565 F.3d at 868.  As Mr. Sherman explains, release of much of the withheld information would

reveal, *inter alia*, classified information "concerning the communications intelligence activities

of the United States."  Sherman Decl. ¶¶ 27 (categories of metadata collected); 34 (types of

electronic communications acquired); 43 (identities of providers from whom communications

intelligence was or is collected); 57 (identities of targets of communications intelligence

activities); 64 (information about adversary tradecraft, which would reveal "the procedures and

methods that the NSA uses to intercept communications" intelligence); 73 (operational details of

communications intelligence collection under discontinued bulk PR/TT program); 81 (FISC

secondary orders, which would reveal the scope of communications intelligence collection

program and methods by which NSA intercepts communications intelligence).

Accordingly, for all of the reasons set forth above and in the accompanying declarations,

defendant is entitled to summary judgment on all of its Exemption 3 withholdings.

**C. The Government has Properly Withheld Information Concerning Law Enforcement Techniques and Procedures Pursuant to FOIA Exemption 7(E).**

Exemption 7(E) protects from disclosure information compiled for law enforcement

purposes where release of the information "would disclose techniques and procedures for law

enforcement investigations or prosecutions," without a requirement that the government establish

such disclosure would cause harm, or where it would "disclose guidelines for law enforcement

investigations or prosecutions if such disclosure could reasonably be expected to risk

circumvention of the law."[4]  5 U.S.C. § 552(b)(7)(E).

Congress intended that Exemption 7(E) protect from disclosure techniques and

procedures used to prevent and protect against crimes as well as techniques and procedures used

to investigate crimes after they have been committed.  *See, e.g., PHE, Inc. v. Dep't of Justice*,

983 F.2d 248, 250-51 (D.C. Cir. 1993) (holding that portions of FBI manual describing patterns

of violations, investigative techniques, and sources of information available to investigators were

protected by Exemption 7(E)).  *See also Milner v. Dep't of Navy*, --- U.S. ----, 131 S. Ct. 1259,

---

[4] "To clear that relatively low bar, an agency must demonstrate only that release of a document might increase the risk 'that a law will be violated or that past violators will escape legal consequences.'" *Pub. Emps. for Envtl. Responsibility v. U.S. Section, Int'l Boundary & Water Com'n*, 740 F.3d 195, 204-205 (D.C. Cir. 2014), *quoting  Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1193 (D.C. Cir. 2009), *& citing Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011).

1272-73 (2011) (Alito, J., concurring) (stating that "Particularly in recent years, terrorism prevention and national security measures have been recognized as vital to effective law enforcement efforts in our Nation[;]" also stating that "'law enforcement purposes'" under FOIA Exemption 7 "involve more than just investigation and prosecution," and that "security measures are critical to effective law enforcement as we know it.").  Law enforcement "techniques or procedures" are categorically protection from disclosure; the government need not show that harm would result from disclosure to invoke Exemption 7(E).  *See Keys v. Dep't of Homeland Sec.*, 510 F. Supp. 2d 121, 129 (D.D.C. 2007); *Judicial Watch, Inc. v. Dep't of Commerce*, 337 F. Supp. 2d 146, 181 (D.D.C. 2004); *Smith v. ATF*, 977 F. Supp. 496, 501 (D.D.C. 1997).

 "In assessing whether records are compiled for law enforcement purposes, . . . the focus is on how and under what circumstances the requested files were compiled, and 'whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding."' *Jefferson v. Dep't of Justice*, 284 F.3d 172, 176-77 (D.C. Cir. 2002) (citations omitted).  The range of law enforcement purposes falling within the scope of Exemption 7 includes government national security and counterterrorism activities.  *See, e.g., Ctr. for Nat'l Sec. Studies v. Dep't of Justice*, 331 F.3d 918, 926 (D.C. Cir. 2003); *Kidder v. FBI*, 517 F. Supp. 2d 17, 27 (D.D.C. 2007).  *Accord Milner*, 131 S. Ct. at 1272 (law enforcement purposes within the meaning of Exemption 7 include national security measures).  Furthermore, the D.C. Circuit accords special deference to law enforcement agencies like the FBI when they identify material as having been compiled for law enforcement purposes under Exemption 7.  *See Campbell v. Dep't of Justice*, 164 F.3d 20, 32 (D.C. Cir. 1998).

Plaintiff requested only information related to FISA PR/TTs, a tool used by the FBI (a component of defendant which is indisputably a law enforcement agency) to obtain information

pursuant to a court order and as part of authorized national security investigations. The withheld

portions of the records plainly meet the threshold requirements for Exemption 7(E) protection.

*See* Hardy Decl. ¶¶ 40-51. As explained below, the Government has properly asserted 5 U.S.C.

§ 552(b)(7)(E) over exempt law enforcement information.

First, the Government has asserted Exemption 7(E) to protect a confidential law

enforcement technique used by the Intelligence Community in national security investigations,

and details concerning that technique. *See* Hardy Decl. ¶¶ 31-32, 45-46, 51; Bradley Decl. ¶ 11.

Although Mr. Hardy discusses the harm that could reasonably be expected to flow from public

release of this information, *id.* ¶¶ 46, 51, as noted such techniques and procedures are

categorically protected by the Exemption, without any need for inquiry into the harm that would

result from their disclosure. *Fisher v. Dep't of Justice*, 772 F. Supp. 7, 12 n.9 (D.D.C. 1991).

The Department of Justice has also withheld information concerning a separate confidential law

enforcement technique. Bradley Decl. ¶ 11.

Similarly, the FBI asserts Exemption 7(E) to protect "methods the FBI uses to collect and

analyze information in connection with national security investigations," Hardy Decl. ¶¶ 47-48,

and the dates and types of its investigations, which would reveal the types of activities that

trigger a full vs. preliminary investigation *id.* ¶ 50.

Finally, pursuant to the first prong of Exemption 7(E) covering law enforcement

guidelines as well as the second prong covering law enforcement techniques, the Government

has withheld portions of the FBI's 2008 Domestic Investigations and Operations Guide

("DIOG") that instruct FBI employees "on the proper use of certain sensitive FBI procedures,

techniques, and strategies for conducting investigations." *Id.* ¶ 49. As Mr. Hardy explains, the

withheld portion of the DIOG responsive to plaintiff's request for FISA PR/TT information

"identifies the procedures, techniques, and strategies at issue."  *Id.*  Mr. Hardy further explains

that releasing such information would reveal sensitive, unknown uses of these specific

techniques and procedures, permit criminals to predict how and when the FBI will respond to

certain suspicious or criminal activities, and thus enable them to take countermeasures to thwart

the FBI techniques, procedures, and strategies at issue.  *Id.  See Pub. Emps. for Envtl.*

*Responsibility v. U.S. Section, Int'l Boundary & Water Comm'n*, 740 F.3d at  204-05 (to justify

7(E) exemption for law enforcement guidelines, "an agency must demonstrate only that release

of a document might increase the risk 'that a law will be violated or that past violators will

escape legal consequences.'"), *quoting Mayer Brown*, 562 F.3d at 1193.

Accordingly, defendant is entitled to summary judgment on all of its Exemption 7(E)

withholdings.

### D. Defendant has Released All Non-Exempt, Reasonably Segregable Portions of the Responsive Documents.

FOIA provides that "[a]ny reasonably segregable portion of a record shall be provided to

any person requesting such record after deletion of the portions which are exempt under this

subsection."  5 U.S.C. § 552(b)(9).  This provision does not require disclosure of records in

which the non-exempt information that remains is meaningless. *See, e.g., Nat'l Sec. Archive*

*Fund, Inc. v. CIA*, 402 F. Supp. 2d 211, 220-21 (D.D.C. 2005) (concluding that no reasonably

segregable information exists because "the non-exempt information would produce only

incomplete, fragmented, unintelligible sentences composed of isolated, meaningless words.").

"The question of segregability is by necessity subjective and context-specific, turning upon the

nature of the document in question and the information contained therein. An agency need not,

for instance, 'commit significant time and resources to the separation of disjointed words,

phrases, or even sentences which taken separately or together have minimal or no information

content.'" *Schoenman v. FBI*, 763 F. Supp. 2d. 173, 202 (D.D.C. 2011) (quoting *Mead Data v. Dep't of the Air Force*, 566 F.2d 242, 261 n.55 (D.C. Cir. 1977)).

The Government has reviewed the withheld material and disclosed all non-exempt information that reasonably could be disclosed. *See* Sherman Decl. ¶¶ 82-84, Hardy Decl. ¶¶ 52-53, Bradley Decl. ¶ 13, Lutz Decl. ¶ 24. Accordingly, defendant has produced all "reasonably segregable portion[s]" of the responsive records. 5 U.S.C. § 552(b). *See, e.g., Loving v. Dep't of Def.*, 496 F. Supp. 2d 101, 110 (D.D.C. 2007) (holding that "government's declaration and supporting material are sufficient to satisfy its burden to show with 'reasonable specificity' why the document cannot be further segregated," where declaration averred that agency had "released to plaintiff all material that could be reasonably segregated") (quoting *Johnson v. Exec. Office for U.S. Attorneys*, 310 F.3d 771, 776 (D.C. Cir. 2002)).

**E. Defendant Conducted a Reasonable and Adequate Search for Responsive Records.**

Defendant is also entitled to summary judgment on the adequacy of its search for any records responsive to plaintiff's request. As noted, an agency can show that it discharged its obligations under FOIA and is entitled to summary judgment by submitting declarations that "demonstrate that it has conducted a search reasonably calculated to uncover all relevant documents." *Weisberg*, 745 F.2d at 1485 (citations and internal quotations omitted). "There is no requirement that an agency search every record system." *Oglesby*, 920 F.2d at 68. Moreover, a failure to uncover a responsive document does not render the search inadequate; "the issue to be resolved is not whether there might exist any . . . documents possibly responsive to the request, but rather whether the search for those documents was adequate." *Weisberg*, 745 F.2d at 1485 (citation omitted); *see also Meeropol v. Meese*, 790 F.2d 942, 952-53 (D.C. Cir. 1986) (search is not presumed unreasonable simply because it fails to produce all relevant material); *Perry v. Block*, 684 F.2d 121, 128 (D.C. Cir. 1982) (agency need not demonstrate that all

responsive documents were found and that no other relevant documents could possibly exist).

Conducting a "reasonable" search is a process that requires "both systemic and case-specific

exercises of discretion and administrative judgment and expertise" and is "hardly an area in

which the courts should attempt to micro manage the executive branch." *Schrecker v. Dep't of*

*Justice*, 349 F.3d 657, 662 (D.C. Cir. 2003) (quoting *Johnson v. Exec. Office for U.S. Attorneys*,

310 F.3d 771, 776 (D.C. Cir. 2002)).

      In evaluating the adequacy of a search, courts accord agency affidavits "a presumption of

good faith which cannot be rebutted by purely speculative claims about the existence and

discoverability of other documents." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C.

Cir. 1991) (citation and internal quotation marks omitted); *see also Ground Saucer Watch, Inc. v.*

*CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981) (same).  Declarations should be "sufficiently detailed,"

but "[t]he standard . . . is not 'meticulous documentation [of] the details of an epic search.'" *Tex.*

*Indep. Producers Legal Action Ass'n v. IRS*, 605 F. Supp. 538, 547 (D.D.C. 1984) (quoting

*Perry*, 684 F.2d at 127), *aff'd in part, rev'd in part on other grounds*, 802 F.2d 1483 (D.C. Cir.

1986).  To establish the sufficiency of its search, the agency's affidavits therefore need only

explain the "scope and method of the search" in "reasonable detail." *Kidd v. Dep't of Justice*,

362 F. Supp. 2d 291, 295 (D.D.C. 2005) (quoting *Perry*, 684 F.2d at 127).  The agency is not

required to search every record system, but need only search those systems in which it believes

responsive records are likely to be located.  *W. Ctr. for Journalism v. IRS*, 116 F. Supp. 2d 1, 9

(D.D.C. 2000); *Roberts v. Dep't of Justice*, No. 92-1707, 1995 WL 356320, at *1 (D.D.C. Jan.

29, 1993).

      The description of defendant's search for responsive records in Mr. Bradley's declaration

plainly meets these standards.  Plaintiff's FOIA request to NSD sought categories of records

"related to the Attorney General's required semiannual reports between 2001 and [the date of the request] under 50 U.S.C. § 1846[.]"  *See* Bradley Decl. ¶ 4; FOIA Request, Exhibit 1 to Compl. As Mr. Bradley explains, NSD searched for responsive records in its Office of Intelligence, Oversight Section.  Bradley Decl. ¶ 6.  "Because of the Oversight Section's unique role as the component in charge of preparing and submitting these productions [to Congress], any NSD records responsive to the request would be found in that section."  *Id.*  As Mr. Bradley testifies, it "is therefore reasonable to expect that any records responsive to plaintiff's request would be located in those OI Oversight section files, and no additional, responsive records would be reasonably likely to be found elsewhere."  *Id.*  Mr. Bradley further explains that "the Oversight Section maintains a working file for each semiannual report and Congressional production" that "contain, among other records, tracking reports used to compile the statistical information for the semiannual reports."  *Id.*  An Oversight Section staff member "went through each of the working folders for the reports and productions submitted during the time span of the request, and he provided NSD FOIA with all records related to [PR/TT] devices, including any information provided to the House and Senate Intelligence Committees" concerning those devices "and any records used in preparation of those materials."  *Id.*  The Department's search was therefore reasonably calculated to uncover any records responsive to plaintiff's FOIA request, including its subcategories.  *See id.* ¶¶ 4, 6.

Defendant's search for responsive records was reasonable and adequate under FOIA. Defendant is, therefore, entitled to summary judgment on the adequacy of its search.  *See, e.g.*, *Weisberg*, 745 F.2d at 1485.

//

//

-31-

**CONCLUSION**

For all of the foregoing reasons, the Court should grant defendant's Motion for Summary

Judgment.

Dated October 31, 2014                         Respectfully submitted,

                                               JOYCE R. BRANDA
                                               Acting Assistant Attorney General

                                               RONALD C. MACHEN
                                               United States Attorney

                                               ELIZABETH J. SHAPIRO
                                               Deputy Branch Director

                                                  /s/ Steven Y. Bressler
                                               STEVEN Y. BRESSLER
                                               Senior Counsel
                                               U.S. Department of Justice, Civil Division
                                               Ben Franklin Station, P.O. Box 833
                                               Washington, D.C.  20044
                                               (202) 305-0167
                                               Steven.Bressler@usdoj.gov

                                               *Counsel for Defendant*