IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER | ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 1:13-cv-01961(KBJ) |
| v. | ) ) | |
| UNITED STATES DEPARTMENT OF JUSTICE | ) ) ) | |
| Defendant. | ) ) ) | |

## SECOND DECLARATION OF DAVID M. HARDY

I, David M. Hardy, declare as follows:

(1)     I am currently the Section Chief of the Record/Information Dissemination Section

("RIDS"), Records Management Division ("RMD"), in Winchester, Virginia.  I have held this

position since August 1, 2002.  Prior to joining the Federal Bureau of Investigation ("FBI"), from

May 1, 2001 to July 21, 2002, I was the Assistant Judge Advocate General of the Navy for Civil

Law.  In that capacity, I had direct oversight of Freedom of Information Act ("FOIA") policy,

procedures, appeals, and litigation for the Navy.  From October 1, 1980 to April 30, 2001, I

served as a Navy Judge Advocate at various commands and routinely worked with FOIA

matters.  I am also an attorney who has been licensed to practice law in the state of Texas since

1980.

(2)     In my official capacity as Section Chief of RIDS, I supervise approximately 223

employees who staff a total of ten (10) Federal Bureau of Investigation Headquarters ("FBIHQ")

units and two (2) field operational service center units whose collective mission is to effectively

plan, develop, direct, and manage responses to requests for access to FBI records and information pursuant to the FOIA, amended by the OPEN Government Act of 2007; the Open FOIA Act of 2009; the Privacy Act of 1974; Executive Order 13526; Presidential, Attorney General, and FBI policies and procedures; judicial decisions; and other Presidential and Congressional directives. I have been designated by the Attorney General of the United States as an original classification authority and a declassification authority pursuant to E.O. 13526, §§ 1.3 and 3.1. The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

(3)     Due to the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to requests for information from its files pursuant to the provisions of the FOIA, 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a. Specifically, I am aware of the FBI's handling of the Department of Justice referrals to the FBI from the National Security Division ("NSD"), pertaining to a Freedom of Information Act ("FOIA") request made by plaintiff, Electronic Privacy Information Center. The plaintiff requested records used to draft the semiannual reports on the use of pen registers and trap and trade ("PR/TT") devices for national security purposes.[1]

(4)     NSD forwarded a number of documents to the FBI as a consult referral. The FBI carefully reviewed and processed those documents under the FOIA, and filed a *Vaughn* declaration dated October 30, 2014 addressing its withholdings. Due to an administrative error, the FBI did not address some of the challenged documents; therefore, the FBI is filing this second declaration to address the remaining documents. The FBI respectfully requests the

---

1 The Foreign Intelligence Surveillance Act ("FISA") of 1978, P.L. 95-511, 50 U.S.C. § 1801 et seq, as amended, provides a statutory framework for the U.S. government to engage in electronic surveillance through the installation and use of pen registers and trap and trace devices for the purpose of obtaining foreign intelligence information. *See* Title IV of FISA, 50 U.S.C. §§ 1841-1846.

-2-

Court to accept this declaration as a supplement to the previously-filed declaration. This declaration incorporates my declaration dated October 30, 2014 (hereinafter "First Hardy Declaration").

(5)     In accordance with *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), this declaration is submitted to supplement the First Hardy Declaration and to support defendant's motion for summary judgment. The declaration will justify the FBI's withholding of information in full pursuant to FOIA Exemptions 1, 3, and 7(E).[2]  5 U.S.C. §§ 552 (b)(1), (b)(3), and (b)(7)(E).

## EXPLANATION OF THE CODED FORMAT USED FOR THE JUSTIFICATION OF DELETED MATERIAL

(6)     All documents have been thoroughly reviewed to achieve maximum disclosure consistent with the access provisions of the FOIA. Every effort has been made to provide plaintiff with all material in the public domain and with all reasonably segregable portions of releasable material. All material withheld by the FBI is exempt from disclosure pursuant to a FOIA exemption. Each page has been consecutively numbered - "EPIC-241 through EPIC-511." The withheld in full pages have been replaced by a Deleted Page Information Sheet, which identifies the reason and/or applicable FOIA exemptions relied upon to withhold the page in full as well as the corresponding Bates number. The Deleted Page Information Sheets have been provided to plaintiff and will be made available to the Court upon request.

(7)     The withheld in full pages contain coded categories of exemptions which detail the nature of the withheld information. The coded categories are provided to aid the Court and plaintiff in reviewing the FBI's explanation for invoking various FOIA exemptions to protect

---

2 The *Vaughn* Declaration only covers those FOIA Exemptions specifically challenged in plaintiff's 9/18/2014 email. Those exemptions are (b)(1), (b)(3), and (b)(7)(E). Also, upon subsequent review of the challenged documents, the FBI is asserting FOIA Exemption (b)(7)(A) for document #15 in addition to (b)(1), (b)(3), and (b)(7)(E). See infra ¶ 10.

exempt material.  A review of this information will reveal that the withheld material is exempt

from disclosure pursuant to a FOIA exemption, or is not reasonably segregable from exempt

information.

## MECHANICS OF USING THE CODED FORMAT
## WITH THE EXEMPTION CATEGORIES

(8)     Each withholding has a marking next to it denoting the applicable FOIA

exemption as well as a numerical designation identifying the specific nature of the withheld

information.  For example, on Bates page EPIC-241, Exemption (b)(7)(E)–1 is cited to protect

the FBI's investigative techniques and procedures.  The "(b)(7)(E)" designation refers to FOIA

Exemption 7(E) concerning Investigative Techniques and Procedures.  The numerical

designation "1" following the (b)(7)(E) narrows the category of protected information from the

main category to a more specific subcategory, "Investigative Techniques and Procedures."  The

coded categories are used to assist the Court and plaintiff in their review of the FBI's

withholdings among the challenged documents.

## SUMMARY OF JUSTIFICATION CATEGORIES

| CODED CATEGORIES | INFORMATION WITHHELD |
|---|---|
| **Category (b)(1)** | **CLASSIFIED INFORMATION** |
| **(b)(1)-1** | 1.4(c) Intelligence Activities Sources and Methods [cited, at times, in conjunction with (b)(3) and/or (b)(7)(E)] |
| **Category (b)(3)** | **INFORMATION PROTECTED BY STATUTE** |
| **(b)(3)-1** | Information Specifically Exempted by 50 U.S.C. § 3024 (i)(1) (National Security Act of 1947) [cited, at times, in conjunction with (b)(1) and/or (b)(7)(E)] |
| **Category (b)(7)(E)** | **INVESTIGATIVE TECHNIQUES AND PROCEDURES** |
| **(b)(7)(E)-1** | Investigative Techniques and Procedures [cited, at times, in conjunction with (b)(1) and (b)(3)] |

-4-

| CODED CATEGORIES | INFORMATION WITHHELD |
|---|---|
| (b)(7)(E)-5 | Specific Law Enforcement Technique Utilized to Conduct National Security Investigations [cited, at times, in conjunction with (b)(1) and (b)(3)] |

## JUSTIFICATION FOR NON-DISCLOSURE UNDER THE FOIA

(9)     Below is a list of the withheld in full documents, the asserted FOIA exemptions,

and the nature of the withheld information.

## DESCRIPTION OF DOCUMENTS

(10)     The documents at issue are as follows:

- PR-BR Order for Additional Briefing[3] – Document #12 (Bates pages EPIC-241-244)
- PR-BR Order - Document #13 (Bates pages EPIC-245-249)
- PR-BR Order Authorizing the Installation and Use of Pen Register(s) and Trap and Trace Device(s) and Requiring the Production of Certain Tangible Things – Document #14 (Bates pages EPIC-250-256)
- PR-BR Order – Document #15 (Bates pages EPIC-257-273)
- PR-BR Order[4] – Document #16 (Bates pages EPIC-274-290)
- PR-BR Order[5] – Document #17 (Bates pages EPIC-291-298)
- PR-BR Opinion and Order – Document #18 (Bates pages EPIC-299-300)
- PR-BR Order – Document #19 (Bates pages EPIC-301-317)
- PR/TT Order – Document #20 (Bates pages EPIC-318-319)
- PR/TT Order – Document #21 (Bates pages EPIC-320-336)
- PR/TT Supplemental Opinion – Document #22 (Bates pages EPIC-337-340)
- PR/TT Primary Order – Document #23 (Bates pages EPIC-341-347)
- PR/TT Order – Document #24 (Bates pages EPIC-348-353)
- PR/TT Supplemental Order for three cases – Document #25 (Bates pages EPIC-354-357)
- Order – Document #26 (Bates pages EPIC-358-367)
- PR/TT Primary Order – Document #27 (Bates pages EPIC-368-387)
- PR/TT Primary Order – Document #28 (Bates pages EPIC-388-400)
- PR/TT Primary Order – Document #29 (Bates pages EPIC-401-426)

3 This PR/BR order was withheld in full in civil action no. 11-cv-5221. The withholding was upheld by the U.S. District Court for the Northern District of California.
4 This PR/BR order was withheld in full in civil action no. 11-cv-5221. The withholding was upheld by the U.S. District Court for the Northern District of California.
5 This PR/BR order was withheld in full in civil action no. 11-cv-5221. The withholding was upheld by the U.S. District Court for the Northern District of California.

- Response to Orders for Additional Briefing – Document #68 (Bates pages EPIC-427-511)

(11)  All documents listed above involve descriptions of specific methods utilized by the FBI in collecting foreign intelligence and the techniques used in gathering such information under a FISA Pen Register and Business Records ("PR/BR") order or a Pen Register and Trap and Trace ("PR/TT") order.  The FBI employs these methods and techniques in its national security investigations with the purpose of collecting intelligence and the goal of protecting the United States from international terrorism.

(12)  Documents 12 through 19 and 68 are orders and a response to orders for additional briefing issued by the Foreign Intelligence Surveillance Court ("FISC") in relation to the collection of foreign intelligence information through the issuance of a PR/BR order.  The FBI has withheld these documents in full because a specific investigative method and technique is discussed in all nineteen (19) documents, and each one provides various levels of detail.  For example, documents 13 through 19 are FISC orders which provide details and investigative information regarding the underlying FISA application, the type and character of information to be collected from the PR/BR as well as details about the particular proceeding before the FISC.  Additionally, document 68 is a response to orders for additional briefing in reference to a request for two PR/BR orders.  This document discusses the method and technique in detail providing a discussion on the legal standards, citing particular case law, highlighting the legislative history as well as articulating policy considerations in utilizing this specific method and technique.  Attached to document 68 are four West Law case print outs.  The FBI withheld these print outs in full because they directly relate to the specific method and technique discussed in documents 12 through 19, and in the remaining parts of document 68.  The FBI is withholding the case law print outs, which are otherwise public source, in full under the same reasoning discussed in ¶¶ 20

-6-

and 53 of the First Hardy Declaration.  As stated in the previous declaration, the release of

seemingly "innocuous" information, when read in conjunction with the other documents, would

reveal critical details about an important investigative method and technique used by the FBI in

national security investigations.[6]

(13)     Documents 20 through 25 and 27 through 29 are FISC orders involving the

collection of foreign intelligence information through a specific method and technique used by

the FBI in connection to PR/TT orders.[7]  All nine documents involve the same classified method

and technique, and each order provides varying levels of detail.  For example, the FISC orders

discuss classified investigative information regarding the underlying FISA applications, the type

and character of information to be collected through the PR/TT order as well as details regarding

that particular FISC court proceeding.

(14)     Document 26 is a PR/TT order issued by a United States District Court involving

the same method and technique described in ¶ 31 of the First Hardy Declaration as well as in ¶

13 above.  The order provides details regarding the specific method and technique, for example,

details regarding the underlying FISA application, the type and character of information to be

collected through the PR/TT order as well as details regarding those specific FISC proceedings.

### EXEMPTION (b)(1)
### CLASSIFIED INFORMATION

(15)     5 U.S.C. § 552 (b)(1) exempts from disclosure records that are:

(A)     specifically authorized under criteria established by an Executive Order to
be kept secret in the interest of national defense or foreign policy; and

(B)     are in fact properly classified pursuant to such Executive Order.

(16)     Before I consider an Exemption 1 claim for withholding agency records, I

---

6 See First Hardy Decl., fn. 18.
7 See First Hardy Decl. at ¶ 31 for a detailed description of the specific method and technique.

determine whether the information in those records is information that satisfies the requirements of E.O. 13526, the Executive Order that governs the classification and protection of information that affects the national security,[8] and whether the information complies with the various substantive and procedural criteria of the Executive Order.  E.O. 13526, signed by President Barack Obama on December 29, 2009, is the Executive Order that currently applies to the protection of national security information.  I am bound by the requirements of E.O. 13526, when making classification determinations.[9]

(17)    For information to be properly classified, and thus, properly withheld from disclosure pursuant to Exemption (b)(1), the information must meet the requirements set forth in E.O. 13526, §1.1 (a):

> (1)    an original classification authority is classifying the information;
>
> (2)    the information is owned by, produced by or for, or is under the control of the United States Government;
>
> (3)    the information falls within one or more of the categories of information listed in §1.4 of this order; and
>
> (4)    the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, which includes defense against transnational terrorism, and the original classification authority is able to identify or describe the damage.

(18)    As I will explain in further detail below, in my role as an original classification authority, I have determined that the information withheld pursuant to Exemption (b)(1) is under the control of the United States Government, is classified and requires a classification marking at the "Secret" level because "the unauthorized disclosure of which reasonably could be expected to cause serious damage to the national security" and at the "Top Secret" because "the

---

[8]  Section 6.1 (cc) of E.O. 13526, defines "National Security" as "the national defense of foreign relations of the United States."

[9] The FBI can provide an *in camera*, *ex parte* declaration detailing its use of (b)(1) if requested by the Court.

unauthorized disclosure of which reasonably could be expected to cause exceptionally grave

damage to the national security." See E.O. 13526, §1.2(a)(1)and(2).  In addition to these

substantive requirements, certain procedural and administrative requirements of E.O. 13526 must

be followed before information can be considered to be properly classified, such as proper

identification and marking of documents.  I made certain that all procedural requirements of E.O.

13526 were followed in order to ensure the information was properly classified.  I made certain

that:

    (1)    each document was marked as required and stamped with the proper classification designation;

    (2)    each document was marked to indicate clearly which portions are classified, which portions are exempt from declassification as set forth in E.O. 13526, §1.5 (b), and which portions are unclassified;

    (3)    the prohibitions and limitations on classification specified in E.O. 13526, §1.7, were adhered to;

    (4)    the declassification policies set forth in E.O. 13526, §§3.1 and 3.3 were followed; and

    (5)    any reasonably segregable portions of these classified documents that did not meet the standards for classification under E.O. 13526 were declassified and marked for release, unless withholding was otherwise warranted under applicable law.

## Findings of Declarant

(19)    With the above requirements in mind, I personally and independently examined

the information withheld from plaintiff pursuant to FOIA Exemption 1.  I determined that this

classified information is owned by, was produced by or for, and/or is under the control of the

U.S. Government.  I further determined that the classified information continues to warrant

classification at the "Secret" and "Top Secret" levels and is exempt from disclosure pursuant to

E.O. 13526, §1.4, categories (c) intelligence activities (including covert action), intelligence

sources and methods, or cryptology.

**(b)(1)-1:      E.O. 13526, § 1.4(c) – Intelligence Activities, Sources and Methods**

(20)    E.O. 13526, § 1.4(c), exempts intelligence activities (including covert action),

intelligence sources or methods, or cryptology from disclosure.  An intelligence activity or

method includes any intelligence action or technique utilized by the FBI against a targeted

individual or organization who has been determined to be of national security interest.  An

intelligence method is used to indicate any procedure (human or non-human) utilized to obtain

information concerning such individual or organization.  An intelligence activity or method has

two characteristics.  First, the intelligence activity or method -- and information generated by it --

is needed by U. S. Intelligence Community to carry out its foreign intelligence and

counterintelligence missions.  Second, confidentiality must be maintained with respect to the

activity or method if the viability, productivity and usefulness of its information is to be

preserved.  As described in detail below, the withheld information is protected by Exemption 1

because it describes intelligence activities, sources, and methods utilized by the FBI in gathering

intelligence information.  The information falls squarely within the meaning of § 1.4(c).

Additionally, the FBI is also asserting FOIA Exemption (b)(3) [50 U.S.C. § 3024 (i)(1)]

(National Security Act of 1947) in conjunction with (b)(1) and is, at times, claiming (b)(7)(E).

(21)    The FBI has protected information under FOIA Exemption (b)(1) because it is

classified and the release of such information would reveal actual intelligence activities and

methods used by the FBI against specific targets who are the subject of foreign

counterintelligence investigations or operations; identify a target of a foreign counterintelligence

investigation; or disclose the intelligence gathering capabilities of the activities or methods

directed at specific targets.  The information obtained from the intelligence activities or methods

is very specific in nature, provided during a specific time period, and known to very few individuals.

(22)     It is my determination that disclosure of specific information describing the intelligence activities or methods that have been or are being used within these documents, and are still used by the FBI in gathering intelligence information in other cases, could reasonably be expected to cause serious damage and exceptionally grave damage to the national security for the following reasons: (1) disclosure would allow hostile entities to discover the current intelligence gathering methods used by the FBI; (2) disclosure would reveal current specific targets of the FBI's national security investigations; and (3) disclosure would reveal the determination of the criteria used and priorities assigned to current intelligence or counterintelligence investigations. With the aid of this detailed information, hostile entities and individuals could develop countermeasures which would, in turn, severely disrupt the FBI's intelligence gathering capabilities. This major disruption could result in severe damage to the FBI's efforts to detect and apprehend violators of the United States' national security and criminal laws.

(23)     The documents at issue were originally submitted to the FISC in support of the U.S. government's application for an order granting the use of a PR/BR and PR/TT, to be used on particular targets, in relation to national security investigations. The classified information within these documents pertains to specific investigative methods and techniques used by the FBI in collecting foreign intelligence information. The FBI's ability to use these methods and techniques while conducting electronic surveillance on a specified target through the use of a PR/BR and PR/TT is an important tool in gathering intelligence information. Revealing details about the specific investigative methods and techniques would interfere with the FBI's ability to effectively conduct national security investigations. The classified information withheld in these documents contains detailed intelligence activity information gathered or compiled and

-11-

intelligence sources and methods used by the FBI on specific individuals who are the subject of national security investigations. The disclosure of this information, and the investigative methods and techniques detailed within, could reasonably be expected to cause serious or exceptionally grave damage to our national security, as it would: (a) reveal the actual intelligence activity or method utilized by the FBI against a specific target; (b) disclose the intelligence-gathering capabilities of the method; and (c) provide an assessment of the intelligence source penetration of a specific target during a specific period of time. This information is properly classified at the "Secret" and "Top Secret" levels and withheld pursuant to E.O. 13526, § 1.4(c). Accordingly, this information is exempt from disclosure pursuant to Exemption 1.

(24)     It is my determination that the release of this information could permit hostile non-U.S. persons, entities, and foreign governments to appraise the scope, focus, location, target and capabilities of the FBI's intelligence-gathering methods and activities, and allow hostile agents to devise countermeasures to circumvent these intelligence activities or methods and render them useless in providing intelligence information. This revelation of intelligence activities and methods would severely disrupt the FBI's intelligence-gathering capabilities and could cause serious or exceptionally grave damage to our national security. This information is properly classified at the "Secret" and "Top Secret" levels and withheld pursuant to E.O. 13526, § 1.4(c). Thus, the information is exempt from disclosure pursuant to Exemption 1. [10]

## EXEMPTION (b)(3)
## INFORMATION PROTECTED BY STATUTE

(25)     5 U.S.C. § 552 (b)(3) exempts from disclosure information that is specifically protected by statute…provided that such statute (A)(i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (ii) establishes particular

---

[10] Exemption (b)(1)-1 has been cited in conjunction with (b)(3) and, at times, in conjunction with (b)(7)(E) on the following pages:  EPIC-241-357 and EPIC-368-476.

criteria for withholding or refers to particular types of matters to be withheld; and (B) if enacted

after the date of enactment of the OPEN FOIA Act of 2009, specifically cites to this paragraph.

The FBI asserted Exemption (b)(3) in conjunction with Exemption (b)(1) and, at times, in

connection with (b)(7)(E) to protect the intelligence sources and methods described above.  The

basis for the FBI's invocation of Exemption (b)(3) is detailed below.

### (b)(3)-1:        Information Specifically Exempted by 50 U.S.C. § 3024 (i)(1) (National Security Act of 1947)

(26)     The FBI has asserted Exemption (b)(3)-1 in conjunction with Exemption (b)(1)

and at times, with (b)(7)(E) to protect information pursuant to Section 102A(i)(1) of the National

Security Act of 1947 ("NSA"), as amended by the Intelligence Reform and Terrorism Prevention

Act of 2004 ("IRTPA"), 50 U.S.C. § 3024 (i)(1), which provides that the Director of National

Intelligence ("DNI") "shall protect from unauthorized disclosure intelligence sources and

methods."[11]  As relevant to U.S.C. § 552 (b)(3)(B), the National Security Act of 1947 was

enacted before the date of enactment of the OPEN FOIA Act of 2009.  On its face, this federal

statute leaves no discretion to the DNI about withholding from the public information about

intelligence sources and methods.  Thus, the protection afforded to intelligence sources and

methods by 50 U.S.C. § 3024(i)(1) is absolute.  See CIA v. Sims, 471 U.S. 159 (1985).

(27)     To fulfill its obligation of protecting intelligence sources and methods, the DNI is

authorized to establish and implement guidelines for the Intelligence Community ("IC") for the

classification of information under applicable laws, Executive Orders, or other Presidential

Directives, and for access to and dissemination of intelligence.  50 U.S.C. § 3024(i)(i)(1).  The

FBI is one of 17 member agencies comprising the IC, and as such must protect intelligence

sources and methods.

---

[11] Section 1024(i)(1) of the National Security Act was previously codified at 50 U.S.C. § 403(i)(1).  As a result of the reorganization of Title 50 of the U.S. Code, Section 102A(i)(1) is now codified at 50 U.S.C. § 3024(i)(1).

(28)     As described above, Congress enacted the NSA, as amended by the IRTPA, to

protect the IC's sources and methods of gathering intelligence.  Disclosure of such information

presents the potential for individuals to develop and implement countermeasures, which would

result in the loss of significant intelligence information, relied upon by national policymakers

and the IC.  Given that Congress specifically prohibited the disclosure of information pertaining

to intelligence sources and methods used by the IC as a whole, I have determined that the FBI's

intelligence sources and methods would be revealed if any of the withheld information is

disclosed to plaintiff.  Thus, the FBI is prohibited from disclosing information falling under 50

U.S.C. § 3024(i)(1).  Accordingly, this information was properly withheld pursuant to

Exemption 3, based on 50 U.S.C. § 3024(i)(1).[12]

## EXEMPTION (b)(7) THRESHOLD

(29)     Exemption (b)(7) of the FOIA protects from mandatory disclosure records or

information compiled for law enforcement purposes, but only to the extent that disclosure could

reasonably be expected to cause one of the six sets of harms enumerated in the subpart of the

exemption.  See 5 U.S.C. § 552 (b)(7).  The enumerated harm that could reasonably be expected

to result is - the disclosed information could reasonably be expected to interfere with and reveal

law enforcement techniques and procedures which, if made public, could be used to circumvent

the law.

(30)     Before an agency can invoke any of the harms enumerated in Exemption (b)(7),

it must first demonstrate that the records or information at issue were compiled for law

enforcement purposes.  Pursuant to 28 U.S.C. §§ 533, 534, and Executive Order 12,333 as

implemented by the Attorney General's Guidelines for Domestic FBI Operations (AGG-DOM)

---

[12] Exemption (b)(3)-1 has been cited with (b)(1) and, at times, in conjunction with (b)(E) on the following pages:
EPIC-241-357 and EPIC-368-476.

-14-

and CFR § 0.85, the FBI is the primary investigative agency of the federal government with authority and responsibility to investigate all violations of federal law not exclusively assigned to another agency, to conduct investigations and activities to protect the United States and its people from terrorism and threats to its national security, and further the foreign intelligence objectives of the United States.  Under this investigative authority, the responsive records herein were compiled for the purposes of investigating and gathering intelligence information, and apprehending and prosecuting subjects who have committed acts of terrorism against the United States, and such records relate to the enforcement of federal laws and such activity is within the law enforcement duty of the FBI.  Accordingly, the responsive records were generated pursuant to the law enforcement duties of the FBI as articulated above.  The FBI is responsible for detecting and investigating violations of Federal criminal laws, international terrorism, and threats to national security.  All records responsive to plaintiff's request and referred to the FBI pertain to national security investigations and specify the methods and techniques used in gathering intelligence information through FISA-related documents submitted to and issued by the FISC.  The documents at issue relate to matters before the FISC and detail the FBI's request for PR/BR and PR/TT orders to be used in collecting intelligence information in connection with individuals who are the subject of national security investigations.  These records were compiled for law enforcement purposes; squarely within the law enforcement duties of the FBI; and therefore, readily meet the threshold requirement of Exemption (b)(7).  The remaining inquiry concerns whether the disclosure of such records could reasonably be expected to unveil investigative techniques and procedures utilized by the FBI.

**EXEMPTION (b)(7)(E)**
**INVESTIGATIVE TECHNIQUES AND PROCEDURES**

(31)    5 U.S.C. § 552 (b)(7)(E) provides protection for:

law enforcement records which would disclose techniques and procedures
for law enforcement investigations or prosecutions, or would disclose
guidelines for law enforcement investigations or prosecutions if such
disclosure could reasonably be expected to risk circumvention of the law.

(32)    Exemption (b)(7)(E) has been asserted to protect information which contains

internal and highly sensitive investigatory techniques and procedures that are authorized for use

by the FBI. This exemption affords categorical protection to these techniques and procedures

used in such investigations; it protects techniques and procedures not well-known to the public as

well as non-public details about the use of well-known techniques and procedures. While these

FISA documents could easily be characterized as completely consisting of information that

would disclose investigative techniques and procedures, and thus, would be eligible for

protection under (b)(7)(E) in its entirety, the FBI endeavored to release as much segregable

information as possible to the plaintiff. The release of additional information would disclose

techniques and/or procedures used in law enforcement and national security investigations or

prosecutions, or would disclose guidelines for law enforcement and national security

investigations or prosecutions, that could reasonably be expected to risk circumvention of the

law. To describe the protected information in any further detail would identify and highlight the

sensitive information the FBI seeks to protect. The revelation of such details could enable the

targets of these techniques to develop countermeasures or avoid detection in order to circumvent

the FBI's law enforcement efforts.

(33)    The FBI has provided a description of the information protected under Exemption

(b)(7)(E) and its corresponding coded category below. The FBI will provide as much

information on the public record as possible without risking the release of sensitive FBI

-16-

techniques or procedures.

### (b)(7)(E)-1:   Investigative Techniques and Procedures

(34)     Exemption (b)(7)(E) has been asserted, at times, in conjunction with Exemption 1 and 3 to protect information regarding the techniques and procedures utilized by the FBI in conducting national security investigations including information that would reveal the types of techniques and procedures that are routinely used in such investigations, and are not publicly known as well as non-public details about the use of well-known techniques and procedures. The government's use of PR/BR and PR/TT orders to obtain information is a known public fact; however, the specific techniques used under a PR/BR or PR/TT order is not well-known.  All documents, at issue, contain sensitive information about specific investigative methods and techniques[13] used by the FBI in conducting national security investigations.  The investigative techniques are detailed throughout the withheld FISC orders (documents #12-29) as well as the response to orders for additional briefing (document #68) that were listed above.  For example, documents 12 through 19, and 68 detail one specific technique used to collect information under a PR/BR order while documents 20 through 29 describe another technique used under a PR/TT order.[14]  All the orders contain detailed information on those specific investigative techniques which the FBI seeks to protect.  More specifically, the orders provide information on the underlying FISA applications highlighting what information is important to the FBI as well as detailing the types of information the FBI seeks to obtain from such order.

(35)     Details about how, when, and under what circumstances these techniques are relied upon in the context of national security investigations are not disclosed nor are these details otherwise known to the public. Disclosure of such information could enable individuals

---

13 See supra ¶¶ 10-14 and First Hardy Decl. at ¶ 31.
[14] See First Hardy Decl. at ¶¶ 46-47.

and organizations to circumvent the use of these techniques, and the relative benefit of it could be diminished if details were revealed.  Additionally, it could allow individuals who are the subject of on-going investigations to uncover information that reveals the circumstances under which these techniques are used, the usefulness of the techniques in particular types of investigations, and the value of the information obtained.  Release of this type of information could enable subjects of investigations to educate themselves about the use of these techniques and develop countermeasures to circumvent or negate the effectiveness of these techniques.  To describe the investigative techniques in further detail would highlight the very information the FBI seeks to protect pursuant to this exemption.  Thus, the FBI properly withheld this information pursuant to FOIA Exemption 7(E).[15]

### (b)(7)(E)-5:  Sensitive Law Enforcement Techniques Utilized to Conduct National Security Investigations

(36)    The FBI has transformed into an intelligence-driven agency that uses the information it gathers to aid its mission of detecting and preventing harm to the national security. The two essential components of this effort can be found in the techniques used to collect and analyze intelligence information.  The FBI has described this new mandate in the IRTPA; however, the FBI has not disclosed details about the sensitive intelligence gathering/analysis methods, techniques, and procedures by which it intends to accomplish its mission.  These sensitive techniques are primarily used in conducting national security investigations.  All documents, at issue in this litigation, are FISC orders and contain information involving sensitive law enforcement techniques utilized by the FBI in collecting intelligence on individuals who are the subject of national security investigations.  More specifically, the PR/BR and PR/TT FISC orders contain specific information about important investigative methods used in national

---

[15] Exemption (b)(7)(E)-1 has been asserted, at times, in conjunction with (b)(1) and (b)(3) on the following pages: EPIC-241-511.

-18-

security investigations.[16] The release of such information would reveal sensitive techniques used by the FBI in collecting intelligence information in national security investigations, and would afford individuals and terrorist groups the opportunity to develop countermeasures aimed at diminishing the effectiveness of these techniques. The information protected under this exemption contains details about sensitive law enforcement techniques used by the FBI in collecting information under a PR/BR and PR/TT order in relation to current and prospective criminal, counterintelligence, and national security investigations. Revealing specific details on how these techniques are employed, potential targets of the techniques, and the nature of the information collected would enable individuals and terrorist groups to avoid detection by developing countermeasures and rendering the technique useless. Thus, the FBI properly withheld this information pursuant to FOIA Exemption 7(E).[17]

## SEGREGABILITY

(37)     All responsive, non-exempt records or portions of records referred to the FBI by NSD have been provided to the plaintiff. During the processing of these records, each page was individually examined to identify all non-exempt information and to determine whether it could be reasonably segregated from the exempt information. Even though some information, if examined in isolation, would appear benign or not sensitive, when read in conjunction with other responsive documents, it reveals sensitive information about FBI techniques and procedures used in national security investigations. For example, the otherwise innocuous portions of information contained in document 68, see ¶ 14 supra, could, when read or viewed within the context of other available documents and information, reveal highly sensitive information to sophisticated adversaries, for the same reasons I discussed in my prior declaration concerning an

16 See supra ¶ 35.
17 Exemption (b)(7)(E)-5 has been asserted, at times, in conjunction with (b)(1) and (b)(3) on the following pages: EPIC-241-511.

-19-

otherwise public Westlaw printout, see First Hardy Decl. ¶¶ 13, 16, 21.  Even something as

seemingly innocuous as a case citation or statutory provision, when read in connection with a

document containing significant legal analysis of an FISA PR/BR and PR/TT application, could

reveal the particular issue being examined and could risk disclosure of the existence, nature, or

scope of an underlying FISA application and/or intelligence method and technique.  *See* First

Hardy Decl. at ¶ 53.

(38)    All segregable information has been provided to the plaintiff.  The FBI only

withheld information that was classified, protected by statute, or information, if released, would

trigger reasonably foreseeable harm to one or more interests protected by the cited FOIA

Exemptions.

## CONCLUSION

(39)    The FBI has reviewed, processed, and released all non-exempt information from

records provided by NSD.  Accordingly, all reasonably segregable, non-exempt information has

been released to plaintiff and the FBI's justification for withholding such information has been

detailed in the First Hardy Declaration and in this supplemental declaration.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

and correct.

Executed this ___ day of November, 2014.


David M. Hardy
Section Chief
Record/Information Dissemination Section
Records Management Division
Federal Bureau of Investigation
Winchester, Virginia

-20-