## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                        )
ELECTRONIC PRIVACY                      )
    INFORMATION CENTER              )
                                        )
      Plaintiff,                  )
                                        )
      v.                          )      Case No. 1:13-cv-01961-KBJ
                                        )
UNITED STATES                           )
    DEPARTMENT OF JUSTICE           )
                                        )
      Defendant.                  )
_____ )


## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S OPPOSITION AND CROSS-MOTION FOR SUMMARY JUDGMENT


MARC ROTENBERG
EPIC President and Executive Director

GINGER P. MCCALL
Associate Director
EPIC Open Government Program Director

/s/ Alan Jay Butler
_____
ALAN JAY BUTLER
Senior Counsel
Electronic Privacy Information Center
1718 Connecticut Ave., NW
Suite 200
Washington, DC 20009

*Counsel for Plaintiff*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

BACKGROUND ................................................................................................... 2

ARGUMENT ........................................................................................................ 6

   I. STANDARD OF REVIEW ............................................................................. 7

   II. EPIC IS ENTITLED TO PARTIAL SUMMARY JUDGMENT ....................... 8

     A. NSD Has Improperly Withheld Information Under Exemptions 1 and 7(E) .............. 9

       1. The NSD Declaration is Conclusory and Insufficient to Establish That The Redacted
Portions of the Semiannual Reports Are Properly Classified Under Executive Order
13,526............................................................................................... 10

         a. The NSD Declaration Fails to Establish That the Procedural Requirements of
Executive Order 13,526 Have Been Met ............................................... 14

         b. The NSD Declaration Fails to Account for Evidence That Some Redacted Portions
of the Reports Do Not Logically or Plausibly Fall Within The Classification
Categories ........................................................................................ 16

       2. The NSD Improperly Withheld Information Under Exemption 7(E) ........................ 24

         a. The Semiannual Oversight Reports Were Not Compiled for Law Enforcement
Purposes .......................................................................................... 24

         b. The NSD Has Not Established That the Disclosure of Redacted Portions of the
Semiannual Reports Would Risk Circumvention of the Law.............................. 27

     B. The NSD and FBI Have Failed to Release Reasonably Segregable Portions of
Responsive Records ............................................................................... 28

   III. THE GOVERNMENT'S MOTION SHOULD BE DENIED .......................... 32

CONCLUSION.................................................................................................... 35

# TABLE OF AUTHORITIES

## Cases

*ACLU v. DOD*, 628 F.3d 612 (D.C. Cir. 2011) .................................................................. 10

*Allen v. CIA*, 636 F.2d 1287 (D.C. Cir. 1980), *overruled on other grounds by Founding Church
  of Scientology v. Smith*, 721 F.2d 828 (D.C. Cir. 1983)................................................. 16

*Am. Immigration Council v. DHS*, 950 F. Supp. 2d 221 (D.D.C. 2013) ...................................... 33

*Blackwell v. FBI*, 646 F.3d 37 (D.C. Cir. 2011) .............................................................. 27, 31, 34

*Brown v. FBI*, 873 F. Supp. 2d 388 (D.D.C. 2012) ...................................................................... 9

*Campbell v. DOJ*, 164 F.3d 20 (D.C. Cir. 1998)........................................................... 13, 19, 20

*Campbell v. DOJ*, 193 F. Supp. 2d 29 (D.D.C. 2001) ................................................................. 20

*Campbell v. DOJ*, 231 F. Supp. 2d 1 (D.D.C. 2002) ................................................................... 20

*Charles v. Office of the Armed Forces Med. Exam'r*, 979 F. Supp. 2d 35 (D.D.C. 2013)........... 29

*Church of Scientology of Cal., Inc. v. Turner*, 662 F.2d 784 (D.C. Cir. 1980) ............................ 9

*Citizens for Responsibility and Ethics in Washington v. DOJ*, 746 F.3d 1082
  (D.C. Cir. 2014).................................................................................................... 6, 8, 26

*Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854 (D.C. Cir. 1980)............................ 7

*Ctr. for Auto Safety v. EPA*, 731 F.2d 16 (D.C. Cir. 1984)........................................................ 29

*Ctr. for Int'l Envt. Law v. USTR*, 718 F.3d 899 (D.C. Cir. 2013) .............................................. 10

*Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83 (D.D.C. 2009)........................ 8

*DOJ v. Tax Analysts*, 492 U.S. 136 (1989)................................................................................ 7

*EPIC v. DHS*, 384 F. Supp. 2d 100 (D.D.C. 2005).................................................................... 7

*EPIC v. DHS*, 999 F. Supp. 2d 24 (D.D.C. 2013)................................................................... 7, 8

*EPIC v. DOJ*, 511 F. Supp. 2d 56 (D.D.C. 2007) ..................................................................... 7

*Hamdi v. Rumsfeld*, 542 U.S. 507 (2004) .............................................................................. 18

*Harrison v. Fed. Bureau of Prisons*, 681 F. Supp. 2d 76 (D.D.C. 2010) .................................. 33

*Hussain v. Obama*, 718 F.3d 964 (D.C. Cir. 2013) ................................................................. 19

*In re All Matters Submitted to the Foreign Intelligence Surveillance Court*,
  218 F. Supp. 2d 611 (FISC 2002), *abrogated by In re Sealed Case*, 310 F.3d 717
  (Foreign Intel. Surveillance Ct. Rev. 2002) ....................................................................... 5

*Jefferson v. DOJ, Office of Prof'l Responsibility*, 284 F.3d 172 (D.C. Cir. 2002)................ 26, 27

*John Doe Agency v. John Doe Corp.*, 493 U.S. 146 (1989) ...................................................... 24

*Johnson v. EOUSA*, 310 F.3d 771 (D.C. Cir. 2002).............................................................. 29, 33

*Judicial Watch, Inc. v. DHS*, 841 F. Supp. 2d 142 (D.D.C. 2012) ............................................ 32

*Judicial Watch, Inc. v. DOD*, 715 F.3d 937 (D.C. Cir. 2013) ..................................... 10, 14, 16

*King v. DOJ*, 830 F.2d 210 (D.C. Cir. 1987)............................................................... 9, 10, 34

*Lesar v. DOJ*, 636 F.2d 472 (D.C. Cir. 1980)......................................................................... 16

*Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242 (D.C. Cir. 1977)............................ 29

*Milner v. Dep't of the Navy*, 131 S. Ct. 1259 (2011)................................................................. 7

*Morley v. CIA*, 508 F.3d 1108 (D.C. Cir. 2007) ...................................................................... 13

*Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157 (2004) ............................................. 8

*Nat'l Ass'n of Home Builders v. Norton,* 309 F.3d 26 (D.C. Cir. 2002)....................................... 7

*Neuman v. United States*, ___ F. Supp. 3d ___, 2014 WL 4922584 (D.D.C. Sept. 30, 2014) ... 8, 9

*Oglesby v. United States Dep't of the Army*, 79 F.3d 1172 (D.C. Cir. 1996) .............................. 29

*People for the Ethical Treatment of Animals v. NIH*, 745 F.3d 535 (D.C. Cir. 2014) .................. 9

*Pub. Citizen, Inc. v. Rubber Mfrs. Ass'n*, 533 F.3d 810 (D.C. Cir. 2008) .................................. 7

*Pub. Empls. for Envtl. Responsibility v. U.S. Section, Int'l Boundary and Water*
   *Comm'n*, 740 F.3d 195 (D.C. Cir. 2014) ............................................ 24, 25, 26, 27
*Stolt-Nielsen Transp. Group Ltd v. United States*, 534 F.3d 728 (D.C. Cir. 2008) .................... 29
*Strunk v. U.S. Dep't of State*, 845 F. Supp. 2d 38 (D.D.C. 2012) ........................................ 27, 34
*Tax Analysts v. IRS*, 294 F.3d 71 (D.C. Cir. 2002) ........................................................ 25
*Trans-Pac. Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022 (D.C. Cir. 1999) ........... 29
*Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973) ....................................................... 33

**Statutes**
28 U.S.C. § 509A ............................................................................................... 6
5 U.S.C. § 552(a)(3)(A) ................................................................................. 8, 33
5 U.S.C. § 552(a)(4)(B) ..................................................................................... 7
5 U.S.C. § 552(b) ......................................................................................... 29, 33
5 U.S.C. § 552(b)(1) ................................................................................. 9, 10, 20
5 U.S.C. § 552(b)(1)(B) .................................................................................... 31
5 U.S.C. § 552(b)(3) ........................................................................................ 31
5 U.S.C. § 552(b)(7) ........................................................................................ 24
5 U.S.C. § 552(b)(7)(E) ................................................................................. 9, 24
50 U.S.C. § 1803(a) ........................................................................................... 4
50 U.S.C. § 1803(a)(1) ....................................................................................... 4
50 U.S.C. § 1803(g) ........................................................................................... 4
50 U.S.C. § 1808 ............................................................................................... 3
50 U.S.C. § 1846 ............................................................................................... 4
50 U.S.C. § 1846(b) ...................................................................................... 4, 22
Pub. L. 105-272, title VI, § 601, 112 Stat. 2396, 2404-10
   (codified as amended at 50 U.S.C. §§ 1841-46) ................................................... 4
USA PATRIOT Improvement and Reauthorization Act of 2005,
   Pub. L. 109-177, 120 Stat. 192 ...................................................................... 6

**Other Authorities**
1 Kris & Wilson, *National Security Investigations and Prosecutions* (2d ed. 2012) ................... 3, 25
James R. Clapper, Dir. of Nat'l Int., *DNI Clapper Declassifies Additional Intelligence*
   *Community Documents Regarding Collection Under Section 501 of the Foreign*
   *Intelligence Surveillance Act* (Nov. 18, 2013) ........................................... 5, 17, 19
Memorandum from Office of the General Counsel (Intelligence Law), Nat'l Sec. Agency,
   to the Senate Select Committee on Intelligence (April 1, 2011) ........................... 6, 31
Nat'l Sec. Div., U.S. Dep't of Justice, *Office of Intelligence* (last visited Nov. 21, 2014) ........... 25
Office of the Dir. of Nat'l Intelligence, *Semi-Annual Assessment of Compliance with the*
   *Procedures and Guidelines Issued Pursuant to Section 702 of the Foreign Intelligence*
   *Surveillance Act, Submitted by the Attorney General and the Director of National*
   *Intelligence* (2013) ................................................................................... 18
Press Release, James R. Clapper, Dir. of Nat'l Intelligence, *DNI Clapper Declassifies*
   *Additional Intelligence Community Documents Regarding Collection Under Section*
   *501 of the Foreign Intelligence Surveillance Act* (Oct. 28, 2013) ........................... 6
Press Release, James R. Clapper, Dir. of Nat'l Intelligence, *ODNI Releases Statistical*
   *Transparency Report Regarding Use of National Security Authorities* (June 27, 2014) ......... 23
Press Release, U.S. Dep't of Justice, *National Security Division Launches New Office of*
   *Intelligence* (Apr. 30, 2008) ........................................................................ 6

Press Release, U.S. Dep't of Justice, Office of Pub. Affairs, *Joint Statement by Attorney General Eric Holder and Director of National Intelligence James Clapper on New Reporting Methods for National Security Orders* (Jan. 27, 2014) .......................................................................... 23

U.S. Dep't of Justice, *National Security Division Launches New Office of Intelligence* (Apr. 30, 2008) .......................................................................................................................... 25

*Webster's Ninth New Collegiate Dictionary* (1985) .................................................................. 28

**Rules**

Fed. R. Civ. P. 56(a) ...................................................................................................................... 8

Foreign Intel. Surveillance Ct. R. P. ............................................................................................. 4

Foreign Intel. Surveillance Ct. R. P. 18(b)(1) .............................................................................. 4

**Regulations**

32 C.F.R. 2001.13(c) .................................................................................................................... 31

32 C.F.R. 2001.21 ........................................................................................................................ 14

32 C.F.R. 2001.21(b) ................................................................................................................... 14

32 C.F.R. 2001.21(b)(1) .............................................................................................................. 11

32 C.F.R. 2001.21(b)(3) .............................................................................................................. 12

32 C.F.R. 2001.21(c) .............................................................................................................. 12, 15

75 Fed. Reg. 37,254 (June 28, 2010) .......................................................................................... 11

Executive Order 13,526, 75 Fed. Reg. 707 (Dec. 29, 2009) ...................................... 10, 11, 12, 13

## PRELIMINARY STATEMENT

This case arises out of a Freedom of Information Act ("FOIA") request for seminannual reports that the Attorney General is required to submit to Congressional oversight committees regarding intelligence activities authorized under the Foreign Intelligence Surveillance Act ("FISA"). Other similar reports, including the Attorney General's annual FISA report, are routinely disclosed to the public but the contents of these semiannual FISA reports are not.

Plaintiff Electronic Privacy Information Center ("EPIC') now challenges the National Security Division of the Department of Justice ("NSD") withholding of certain portions of these reports under Exemptions 1 and 7(E), as well as the Federal Bureau of Investigation's failure to release reasonably segregable portions of a legal brief and associated case summaries that were submitted to the Foreign Intelligence Surveillance Court ("FISC"). These records contain discussions of significant FISC opinions regarding the scope of FISC's jurisdiction and the legal process required by the FISA. Both of these topics are of the utmost importance to the public and are necessary to inform the ongoing debate over current surveillance authorities.

The NSD has not satisfied its statutory obligation to disclose records responsive to EPICs request or established that they are exempt from disclosure. Regarding Exemption 1, the NSD has proferred only a few conclusory paragraphs that lack the detail necessary to describe the redacted materials or establish that those materials are properly classified. The NSD has also failed to establish that the reports were compiled for "law enforcement purposes" and subject to Exemption 7(E). Because the Government has improperly withheld non-exempt records, the Court should grant EPIC's Motion for Summary Judgment.

# BACKGROUND

I.   Factual Background

On October 3, 2013, EPIC sent, via certified mail, a FOIA request to the NSD. *See* Pl's Mot.

Prelim. Inj., Ex. A (ECF No. 3-2) ("EPIC FOIA Request"). In the FOIA request, EPIC sought:

> all records related to the Attorney General's required semiannual reports between 2001 and the present under 50 U.S.C. § 1846.
> 1. All reports made to the Permanent Select Committee on Intelligence in the House of Representatives and the Select Committee on Intelligence in the Senate, detailing the total number of orders for pen registers or trap and trace devices granted or denied, and detailing the total number of pen registers or trap and trace devices installed pursuant to 50 U.S.C. § 1843.
> 2. All information provided to the aforementioned committees concerning all uses of pen registers and trap and trace devices.
> 3. All records used in preparation of the above materials, including statistical data.

*See* EPIC FOIA Request; Compl. ¶ 18; Answer ¶ 18. EPIC also sought expedited processing of the

request pursuant to 5 U.S.C. § 552(a)(6)(E)(v)(II) and waiver of processing fees. *See* EPIC FOIA

Request; Compl ¶ 21. EPIC received an acknowledgement letter from Arnetta Mallory, FOIA

Coordinator at NSD, dated October 29, 2013. *See* Pl's Mot. Prelim. Inj., Ex. B (ECF No. 3-3);

Compl. ¶ 22. EPIC subsequently received a second letter from Ms. Mallory, granting its request for

expedited processing. The NSD found that EPIC had "demonstrated that there is a particular

urgency to inform the public about an actual or alleged federal government activity." *See* Pl's Mot.

Prelim. Inj., Ex. C (ECF No.3-4).

EPIC filed suit after the NSD failed to make a determination within the statutory deadline.

EPIC also moved for a preliminary injunction, requesting an order that the NSD "complete the

processing of plaintiff's FOIA request within twenty days." Pl's Mot. Prelim. Inj. at 1 (ECF No. 3).

After the NSD requested additional time to respond to EPIC's motion, (ECF No. 6), the agency

filed a Memorandum in Opposition and Answer. (ECF Nos. 9, 12). In its Opposition, the NSD

notified EPIC for the first time that it anticipated "providing plaintiff with a further response to

category 1 of the request no later than February 28, 2014." *See* Declaration of Mark A. Bradley ¶ 14

(ECF No. 9-1) ("First Bradley Declaration"). Following a hearing, the Court denied EPIC's motion

for a preliminary injunction, but held that the case would "proceed to the merits, and the Court will

exercise its ordinary jurisdiction over the pending FOIA process." Mem. Opp. at 26 (ECF No. 15).

The NSD subsequently released responsive records to EPIC, although it withheld certain

records in whole and in part. *See* Second Declaration of Mark A. Bradley, Ex. A (ECF No. 22-3)

("*Vaughn* Index"). After reviewing the records produced, EPIC requested that the agency process

additional portions of the FISA reports that had been marked as "out of scope / nonresponsive," and

the agency agreed to do so. EPIC also agreed to limit the scope of the issues prior to summary

judgment. *See* Second Declaration of Mark A. Bradley ¶ 8 (ECF No. 22-3) ("Bradley Declaration").

The NSD filed its Motion for Summary Judgment on October 31, 2014. (ECF No. 22). The NSD

subsequently filed a second declaration of David M. Hardy, which addressed some of the withheld

records. (ECF No. 24) ("Second Hardy Decl.").

II.   Foreign Intelligence Surveillance Act Reporting Requirements

Congress enacted the FISA in 1978 to curb domestic surveillance abuses and provide for

improved oversight of foreign intelligence activities. 1 Kris & Wilson, *National Security*

*Investigations and Prosecutions* § 3:1 (2d ed. 2012). To that end, Congress requires that "[o]n a

semiannual basis the Attorney General shall fully inform the House Permanent Select Committee on

Intelligence and the Senate Select Committee on Intelligence, and the Committee on the Judiciary

of the Senate, concerning all electronic surveillance" conducted under the FISA. 50 U.S.C. § 1808.

The FISA provision governing the use of "Pen Registers and Trap and Trace Devices for

Foreign Intelligence Purposes" was adopted as part of the Intelligence Authorization Act for Fiscal

Year 1999. Pub. L. 105-272, title VI, § 601, 112 Stat. 2396, 2404-10 (codified as amended at 50

U.S.C. §§ 1841-46). Similar to the traditional FISA report, Congress required the Attorney General

on a semiannual basis to "fully inform the Permanent Select Committee on Intelligence of the

House of Representatives and the Select Committee on Intelligence of the Senate, and the

Committee on the Judiciary of the House of Representatives and the Committee on the Judiciary of

the Senate, concerning all uses of pen registers and trap and trace devices pursuant to this

subchapter." 50 U.S.C. § 1846. Congress also required that the Attorney General provide:

> a report setting forth with respect to the preceding 6-month period:
> (1) the total number of applications made for orders approving the use of pen registers or trap and trace devices under this subchapter;
> (2) the total number of such orders either granted, modified, or denied; and
> (3) the total number of pen registers and trap and trace devices whose installation and use was authorized by the Attorney General on an emergency basis under section 1843 of this title, and the total number of subsequent orders approving or denying the installation and use of such pen registers and trap and trace devices.

50 U.S.C. § 1846(b).

III.   _Public Disclosure of Foreign Intelligence Surveillance Court Opinions and Orders_

When Congress enacted the FISA it also created a special court, composed of eleven

district court judges chosen by the Chief Justice and drawn from at least seven judicial circuits.

50 U.S.C. § 1803(a)(1). Congress provided that the FISA Court ("FISC") may "establish such

rules and procedures, and take such actions" as necessary to administer their responsibilities

under the FISA. 50 U.S.C. § 1803(g). The most current FISC rules were issued on November 1,

2010. *See* Foreign Intel. Surveillance Ct. R. P.  Both the FISA and the FISC Rules require that a

judge "must immediately provide a written statement of each reason for the decision" if she

denies the government's application under the FISA. 50 U.S.C. § 1803(a); Foreign Intel.

Surveillance Ct. R. P. 18(b)(1). However, FISC judges have also issued written opinions on

significant legal issues even in cases where they have granted the government's application for a

FISA order. *See*, *e.g.*, *In re All Matters Submitted to the Foreign Intelligence Surveillance Court*,

218 F. Supp. 2d 611 (FISC 2002), *abrogated by In re Sealed Case*, 310 F.3d 717 (Foreign Intel.

Surveillance Ct. Rev. 2002).

Last year the government declassified two FISC opinions regarding the application of the

FISA Pen Register provision, along with additional details about the use of the pen register

provision to collect electronic communications metadata. *See* James R. Clapper, Dir. of Nat'l

Int., *DNI Clapper Declassifies Additional Intelligence Community Documents Regarding*

*Collection Under Section 501 of the Foreign Intelligence Surveillance Act* (Nov. 18, 2013).[1] The

release specified that "[u]nder the now-discontinued PR/TT program, the FISC, after finding that

the Government's applications satisfied the requirements of FISA and the Constitution, approved

orders that enabled the Government to collect electronic communications metadata, such as the

'to,' 'from,' and 'cc' lines of an email and the email's time and date." *Id*. The release included

two FISC opinions, the first written by Judge Colleen Kollar-Kotelly at the inception of the

program, and the second written by Judge John D. Bates at the time when the program was re-

instated following significant compliance incidents. *Id*. Both of these opinions include detailed

discussions of the statutory and constitutional issues related to that surveillance, the FISC's

jurisdiction, the FISA process, and compliance issues presented by the Government's improper

use of the data it collected. *Id*.

The ODNI has also declassified and disclosed additional information about intelligence

sources and methods involving the collection of location data. *See* Press Release, James R.

Clapper, Dir. of Nat'l Intelligence, *DNI Clapper Declassifies Additional Intelligence Community*

*Documents Regarding Collection Under Section 501 of the Foreign Intelligence Surveillance Act*

---

[1] http://icontherecord.tumblr.com/post/67419963949/dni-clapper-declassifies-additional-intelligence.

(Oct. 28, 2013).[2] Specifically, the ODNI published a memorandum sent from the NSA to the

Senate Select Committee on Intelligence in 2011, detailing the NSA's collection of cell phone

mobility data ("cell site location information") pursuant to a FISC-authorized program. *See*

Memorandum from Office of the General Counsel (Intelligence Law), Nat'l Sec. Agency, to the

Senate Select Committee on Intelligence (April 1, 2011).[3]

IV.   The United States Department of Justice, National Security Division

The National Security Division ("NSD") of the U.S. Department of Justice was created

with the enactment of the USA PATRIOT Improvement and Reauthorization Act of 2005, Pub.

L. 109-177, 120 Stat. 192. The NSD consists of Justice Department elements "engaged primarily

in support of the intelligence and intelligence-related activities of the United States

Government." 28 U.S.C. § 509A. The Office of Intelligence within NSD, formerly known as the

Office of Intelligence Policy and Review, is "dedicated to the NSD's three primary functions –

operations, oversight, and litigation." Press Release, U.S. Dep't of Justice, *National Security*

*Division Launches New Office of Intelligence* (Apr. 30, 2008).[4] The Oversight Section of the

Office of Intelligence is "in charge of preparing and submitting" the semiannual FISA reports to

Congress. Bradley Decl. ¶ 6.

**ARGUMENT**

The FOIA was enacted "to facilitate public access to Government documents" and "was

designed to pierce the veil of administrative secrecy and to open agency action to the light of

public scrutiny." *Citizens for Responsibility and Ethics in Washington v. DOJ*, 746 F.3d 1082,

1088 (D.C. Cir. 2014) [hereinafter *CREW*] (quoting *Dep't of State v. Ray*, 502 U.S. 164, 173

---

[2] http://www.dni.gov/index.php/newsroom/press-releases/191-press-releases-2013/954-dni-clapper-declassifies-additional-intelligence-community-documents-regarding-collection-under-section-501-of-the-foreign-intelligence-surveillance-act.
[3] http://www.dni.gov/files/documents/501/NSA%20CSLI%20Gottsman%20Response_SealedFINAL.pdf.
[4] http://www.justice.gov/archive/opa/pr/2008/April/08_nsd_360.html.

(1991)). The underlying purpose of the FOIA is "to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *EPIC v. DHS*, 999 F. Supp. 2d 24, 29 (D.D.C. 2013) (quoting *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989)). "In enacting FOIA, Congress struck the balance it thought right—generally favoring disclosure, subject only to a handful of specified exemptions—and did so across the length and breadth of the Federal Government." *Milner v. Dep't of the Navy*, 131 S. Ct. 1259, 1266 (2011). As a result, the FOIA "mandates a strong presumption in favor of disclosure." *EPIC v. DOJ*, 511 F. Supp. 2d 56, 64 (D.D.C. 2007) (internal citations omitted).

The FOIA specifies that certain categories of information may be exempt from disclosure, "[b]ut these limited exemptions do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act." *Pub. Citizen, Inc. v. Rubber Mfrs. Ass'n,* 533 F.3d 810, 813 (D.C. Cir. 2008) (quoting *Nat'l Ass'n of Home Builders v. Norton,* 309 F.3d 26, 32 (D.C. Cir. 2002)). Therefore FOIA exemptions "must be narrowly construed." *Id*. "The statute's goal is broad disclosure, and the exemptions must be given a narrow compass." *Milner*, 131 S. Ct. at 1261 (internal citations omitted). Furthermore, "the burden is on the agency to sustain its action." 5 U.S.C. § 552(a)(4)(B); *see also EPIC v. DHS*, 384 F. Supp. 2d 100, 106 (D.D.C. 2005). Where the government has not carried this burden, summary judgment in favor of the Plaintiff is appropriate. *See, e.g.*, *DOJ v. Tax Analysts*, 492 U.S. 136, 142 (1989); *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 861 (D.C. Cir. 1980).

## I. STANDARD OF REVIEW

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). "A genuine issue of material fact is one that would change the outcome of the litigation."

*EPIC v. DHS*, 999 F. Supp. 2d 24, 28 (D.D.C. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 248 (1986)). FOIA cases are typically decided on motions for summary judgment. *Id.*;

*see Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009). A district

court reviewing a motion for summary judgment in a FOIA case "conducts a de novo review of

the record, and the responding federal agency bears the burden of proving that it has complied

with its obligations under the FOIA." *Neuman v. United States*, ___ F. Supp. 3d ___, 2014 WL

4922584, at *3 (D.D.C. Sept. 30, 2014); *see also* 5 U.S.C. § 552(a)(4)(B); *CREW*, 746 F.3d at

1088 (citing *DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 755 (1989)).

The court must "analyze all underlying facts and inferences in the light most favorable to

the FOIA requester," and therefore "summary judgment for an agency is only appropriate after

the agency proves that it has 'fully discharged its [FOIA] obligations.'" *Neuman*, 2014 WL

4922584, at *4 (citing *Moore v. Aspin*, 916 F. Supp. 32, 35 (D.D.C. 1996)). In some cases, the

agency may carry its burden by submitting affidavits that "describe the justifications for

nondisclosure with reasonably specific detail, demonstrate that the information withheld

logically falls within the claimed exemption, and are not controverted by either contrary

evidence in the record nor evidence of agency bad faith." *Id.* (citing *Larson v. Dep't of State*, 565

F.3d 857, 862 (D.C. Cir. 2009)).

## II. EPIC IS ENTITLED TO PARTIAL SUMMARY JUDGMENT

The FOIA provides that every government agency shall "upon any request which (i)

reasonably describes such records and (ii) is made in accordance with published rules . . . make

the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). But, despite the

"prodisclosure purpose" of the statute, *Nat'l Archives & Records Admin. v. Favish*, 541 U.S.

157, 174 (2004), the FOIA provides for nine exemptions. These exemptions outline "specified

circumstances under which disclosure is not required." *Neuman v. United States*, ___ F. Supp. 3d ___, 2014 WL 4922584, at *3 (D.D.C. Sept. 30, 2014); *see* 5 U.S.C. § 552(b).

In a FOIA case, the "agency bears the burden of establishing that an exemption applies." *People for the Ethical Treatment of Animals v. NIH*, 745 F.3d 535 (D.C. Cir. 2014). The agency may "meet this burden by filing affidavits describing the material withheld and the manner in which it falls within the exemption claimed." *King v. DOJ*, 830 F.2d 210, 217 (D.C. Cir. 1987) (citing *Military Audit Project v. Casey*, 656 F.2d at 738; *Lesar v. DOJ*, 636 F.2d at 481; *Hayden v. NSA*, 608 F.2d 1381, 1387 (D.C. Cir. 1979), *cert. denied*, 446 U.S. 937 (1980); *Ray v. Turner*, 587 F.2d at 1195). It is not sufficient for the agency to provide "vague, conclusory affidavits, or those that merely paraphrase the words of a statute." *Church of Scientology of Cal., Inc. v. Turner*, 662 F.2d 784, 787 (D.C. Cir. 1980) (per curiam). When an agency invokes an exemption, "it must submit affidavits that provide 'the kind of detailed, scrupulous description [of the withheld documents] that enables a District Court judge to perform a de novo review.'" *Brown v. FBI*, 873 F. Supp. 2d 388, 401 (D.D.C. 2012) (citing *Church of Scientology*, 662 F.2d at 786) (discussing an agency invocation of Exemption 3).

**A. NSD Has Improperly Withheld Information Under Exemptions 1 and 7(E)**

In this case, the NSD has redacted and withheld information concerning twenty-five semiannual Attorney General reports that were provided to Congress. The NSD argues that information is exempt from FOIA under 5 U.S.C. §§ 552(b)(1) and (b)(7)(E). *See* Def's Mot. Summ. J. at 16-17, 25-27 (ECF No. 22-1). But the NSD declarations fail to establish that the redacted information falls within the claimed exemptions. Furthermore, there is evidence on the record that certain redacted portions of the reports are not properly classified or subject to Exemption 1. The agency has also not established that these reports were compiled for law enforcement purposes or subject to Exemption 7(E).

**1. The NSD Declaration is Conclusory and Insufficient to Establish That The Redacted Portions of the Semiannual Reports Are Properly Classified Under Executive Order 13,526**

The twenty-five semiannual Attorney General reports released by the agency are not properly classified under Executive Order 13,526. 75 Fed. Reg. 707 (Dec. 29, 2009). The agency has failed to establish that it followed the procedural requirements of that order and has failed to show that the portions of the reports it redacted are properly subject to classification.

An agency seeking to withhold responsive records under Exemption 1 must establish that the records withheld are "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy; and (B) are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1); *see Judicial Watch, Inc. v. DOD*, 715 F.3d 937 (D.C. Cir. 2013); *Ctr. for Int'l Envt. Law v. USTR*, 718 F.3d 899, 904 (D.C. Cir. 2013); *ACLU v. DOD*, 628 F.3d 612, 624 (D.C. Cir. 2011). The current operative classification order under Exemption 1 is Executive Order 13,526. *Judicial Watch*, 715 F.3d at 941. In order to show that records were properly withheld under Exemption 1, the agency must satisfy "the Executive Order's substantive and procedural criteria." *Id*. (citing *Lesar v. DOJ*, 636 F.2d 472, 481 (D.C. Cir. 1980)); *see also King v. DOJ*, 830 F.2d 210, 215 (D.C. Cir. 1987) ("An agency may invoke this exemption only if it complies with classification procedures established by the relevant executive order and withholds only such material as conforms to the order's substantive criteria for classification." (citing *Lesar*, 636 F.2d at 483; *Ray v. Turner*, 587 F.2d 1187, 1195 (D.C. Cir. 1978); *Halperin v. Dep't of State*, 585 F.2d 699, 703 (D.C. Cir. 1977))).

Executive Order 13,526 has four key procedural requirements that must be met for any information to be properly classified:

    (1) an original classification authority is classifying the information;
    (2) the information is owned by, produced by or for, or is under the control of the United States Government

(3) the information falls within one or more of the categories of information listed in § 1.4 of this order; and

(4) the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, which includes defense against transnational terrorism, and the original classification authority is able to identify or describe the damage.

Exec. Order No. 13,526 § 1.1(a).

In addition, the order also requires that documents contain the proscribed identifications and markings necessary to establish that the procedural requirements have been met. "At the time of original classification," the original classification authority shall indicate "in a manner that is immediately apparent:" (1) the classification level as defined in section 1.2; (2) the identity of the original classification authority; (3) the "agency and office of origin, if not otherwise evident"; (4) declassification instructions; and (5) a "concise reason for classification that, at a minimum, cites the applicable classification categories in section 1.4 of this order." *Id.* § 1.6(a). "With respect to each classified document, the agency originating the document shall, by marking or other means, indicate which portions are classified, with the applicable classification level, and which portions are unclassified." *Id.* § 1.6(c). The "markings and indicia" used by the classification authority "shall conform to the standards prescribed in implementing directives issued pursuant to this order." *Id.* § 1.6(d).

The implementing directives of Executive Order 13,526 have been issued by the National Archives and Records Administration. *See* 75 Fed. Reg. 37,254 (June 28, 2010) (codified at 32 C.F.R. pts. 2001 and 2003). The directives require that the "overall classification" level of the document be placed "at the top and bottom of the outside of the front cover (if any), on the title page (if any), on the first page, and on the outside of the back cover (if any)." 32 C.F.R. § 2001.21(b)(1). The directives also require that "[e]ach interior page of a classified document shall be marked at the top and bottom either with the highest level of classification of

11

information contained on that page." 32 C.F.R. § 2001.21(b)(3). Each portion of the document,

"ordinarily a paragraph, but including subjects, titles . . . sub-paragraphs" and "other portions"

must also be "marked to indicate which portions are classified and which portions are

unclassified by placing a parenthetical symbol immediately preceding the portion to which it

applies." 32 C.F.R. § 2001.21(c).

According to the NSD Declaration, some portions of the twenty-five semiannual

Attorney General reports contain information "classified at the SECRET or TOP SECRET"

levels. Bradley Decl. ¶ 10. The Executive Order requires that the designation TOP SECRET

"shall be applied to information, the unauthorized disclosure of which reasonably could be

expected to cause exceptionally grave damage to the national security that the original

classification authority is able to identify or describe." Exec. Order No. 13,526 § 1.2(a)(1). The

SECRET designation "shall be applied to information, the unauthorized disclosure of which

reasonably could be expected to cause serious damage to the national security that the original

classification authority is able to identify or describe." *Id*. § 1.2(a)(2).

Information cannot be properly classified "unless its unauthorized disclosure could

reasonably be expected to cause identifiable or describable damage to the national security" to

the degree necessary based on the classification level in Section 1.2, and also the information

must "pertain to one or more" of the listed categories listed in Section 1.4:

> (a) military plans, weapons systems, or operations;
> (b) foreign government information;
> (c) intelligence activities (including covert action), intelligence sources or
>     methods, or cryptology;
> (d) foreign relations or foreign activities of the United States, including
>     confidential sources;
> (e) scientific, technological, or economic matters relating to the national security;
> (f) United States Government programs for safeguarding nuclear materials or
>     facilities;
> (g) vulnerabilities or capabilities of systems, installations, infrastructures,

projects, plans, or protection services relating to the national security; or
(h) the development, production, or use of weapons of mass destruction.

Exec. Order No. 13,526 § 1.4.

In the Exemption 1 context, the agency must make a "plausible assertion that information is properly classified." *Morley v. CIA*, 508 F.3d 1108, 1124 (D.C. Cir. 2007). Although courts afford "substantial weight" to the analysis of national security risks outlined in agency affidavits, that "deference is not equivalent to acquiescence; the declaration may justify summary judgment only if it is sufficient 'to afford the FOIA requester a meaningful opportunity to contest, and the district court an adequate foundation to review, the soundness of a withholding.'" *Campbell v. DOJ*, 164 F.3d 20, 30 (D.C. Cir. 1998) (quoting *King v. DOJ*, 830 F.2d 210, 218 (D.C. Cir. 1987)). An agency declaration can be deemed insufficient to support an Exemption 1 claim if it lacks "detail and specificity," if there is evidence of "bad faith," or if the declaration fails to "account for contrary record evidence." *Id.* at 30.

An affidavit that "contains merely a 'categorical description of redacted material coupled with categorical indication of anticipated consequences of disclosure is clearly inadequate.'" *Id.* (quoting *PHE, Inc. v. DOJ*, 983 F.2d 248, 250 (D.C. Cir. 1993)). In order to establish that the exemption applies, the affidavit "must show, with reasonable specificity, why the documents fall within the exemption. The affidavits will not suffice if the agency's claims are conclusory, merely reciting statutory standards, or if they are too vague or sweeping." *Campbell*, 164 F.3d at 30 (citing *Hayden v. NSA*, 608 F.2d 1381, 1387 (D.C. Cir. 1979)).

The NSD declaration in this case is clearly inadequate and cannot justify the redactions in the twenty-five semiannual Attorney General reports because it lacks detail and specificity, and because it fails to account for contrary record evidence. Furthermore, the NSD declaration fails to show that the redacted sections meet the procedural and substantive classification standards of

13

the Executive Order and its implementing directive.

### a. The NSD Declaration Fails to Establish That the Procedural Requirements of Executive Order 13,526 Have Been Met

An agency may only withhold records under Exemption 1 "if they are 'classified in accordance with the procedural criteria of the governing Executive Order as well as its substantive terms.'" *Judicial Watch, Inc. v. DOD*, 715 F.3d 937, 943 (D.C. Cir. 2013) (quoting *Lesar v. DOJ*, 636 F.2d 472, 483 (D.C. Cir. 1980)). The NSD declaration in this case fails to establish that the records were classified in accordance with the procedural requirements of Executive Order 13,526 and the implementing directive. The declaration states that Mark A. Bradley is an "original classification authority at the TOP SECRET level," Bradley Decl. ¶ 2, but does not establish that the redacted information in the reports was classified by an original classification authority, as required by Section 1.1(a) of the order. In fact, the declaration does not even establish that Mr. Bradley has personally reviewed all of the redacted information. *See* Bradley Decl. ¶ 10. The declaration merely states categorically that the redacted portions are "properly classified at the SECRET or TOP SECRET levels, because they meet the criteria for classification as set forth in subparagraphs (c) and (g) of Section 1.4 of Executive Order 13526." *Id.*

The documents produced to EPIC by the NSD also lack the markings and indications of properly classified material as required under the Executive Order 13,526 implementing directive. *See* 32 C.F.R. § 2001.21. None of the twenty-five reports include current "overall classification" markings required on the cover page or at the top of each page as required by 32 C.F.R. § 2001.21(b).[5] *See* Ex. 1 ("Released Portions of Semiannual Reports"). The agency has

---

[5] It appears that the original classification markings on the reports have been crossed out by NSD, but the agency has not replaced them with new classification markings and or provided any explanation for their decision to strike them.

also not included "portion markings" for redacted portions or subsections of the reports as required by 32 C.F.R. § 2001.21(c). The lack of necessary classification markings makes it impossible to know whether the redacted portions of the reports are being withheld as SECRET or TOP SECRET, and therefore impossible to know what classification standard should apply under Section 1.2 of the Executive Order.

Instead of identifying which portions of the document are classified as SECRET and TOP SECRET under Section 1.2 and describing the damage that could "reasonably be expected to caused by the unauthorized disclosure of" each portion, as required by Section 1.1, the declaration states that all the "withheld portions of these reports fall into three categories (1) summary descriptions of targets and investigations, (2) summary descriptions of compliance incidents, and (3) information pertaining to intelligence sources and methods." Bradley Decl. ¶ 10. The declaration then states that the disclosure of information from each of these categories could "cause serious and exceptionally grave damage to the national security of the United States." Bradley Decl. ¶ 10. But those statements do not satisfy the procedural requirements of Section 1.2. The SECRET and TOP SECRET classification levels are different and subject to distinct standards.[6] *See* Exec. Order No. 13,526 § 1.2(a). In order to satisfy this standard, the original classification authority must describe the damage that could be caused by the unauthorized disclosure of each piece of information, and that damage must comport with the requisite level required for the classification level in Section 1.2.

The markings and descriptions outlined in Section 1.6 of the Executive Order and 32 C.F.R. § 2001.21 are required for all properly classified information. By not including these markings or adequately identifying the relevant classification level for the redacted portions of

---

[6] There is no support in the Executive Order or the implementing directive for information being simultaneously classified as SECRET and TOP SECRET.

these semiannual reports, the agency has failed to satisfy its burden of proof under the FOIA. *See*

*Allen v. CIA*, 636 F.2d 1287, 1292 (D.C. Cir. 1980), *overruled on other grounds by Founding*

*Church of Scientology v. Smith*, 721 F.2d 828, 830 (D.C. Cir. 1983). The agency has also failed

to comply with the requirement of Section 1.1(a)(4) of the Executive Order because it has not

described the damage that would occur from the release of each portion of the document as

necessary to establish that those portions were properly classified at the levels described in

Section 1.2. Given the substantive and procedural violations of the Executive Order rules in this

case, the agency cannot show that it has complied with the disclosure requirements of the FOIA,

and the court has a variety of remedies available to address the agency's failure. *See Lesar*, 636

F.3d at 485 ("some substantive violations may require either a remand to the district court for in

camera inspection of the materials or the release of the documents. For procedural violations,

some may be of such importance to reflect adversely on the agency's overall classification

decision, requiring a remand to the district court for in camera inspection.").

> **b. The NSD Declaration Fails to Account for Evidence That Some**
> **Redacted Portions of the Reports Do Not Logically or Plausibly**
> **Fall Within The Classification Categories**

While an agency affidavit "or other agency statement of threatened harm to national

security will always be speculative to some extent," the court's role in a FOIA case is to "ensure

that those predictions are 'logical' or 'plausible.'" *Judicial Watch, Inc. v. DOD*, 715 F.3d 937,

943 (D.C. Cir. 2013) (quoting *ACLU v. DOD*, 628 F.3d 612, 619 (D.C. Cir. 2011)). In this case,

the agency has not satisfied its burden of showing that all of the redacted material in the

semiannual Attorney General reports logically or plausibly falls within the categories of

information properly classified under Executive Order 13,526. The agency claims that there are

"three categories" of information in the redacted portions of the reports that are properly

classified: "(1) summary descriptions of targets and investigations, (2) summary descriptions of

compliance incidents, and (3) information pertaining to intelligence sources and methods."
Bradley Decl. ¶ 10. But the agency's categorical descriptions are inadequate for two reasons.

First, the declaration does not explain why the disclosure of information that fits within these three categories necessarily meets the standards for classification under the Executive Order, especially given the fact that many details of the government's use of pen registers have already been publicly disclosed and discussed. The only evidence that the NSD has provided to support its conclusion that "serious and exceptionally grave damage" could be caused by the disclosure of the three categories of information are a few conclusory sentences in one paragraph of the NSD declaration. *See* Bradley Decl. ¶ 10. For example, the second category is supported by a single conclusory sentence: "The summary descriptions of compliance incidents contain details about intelligence methods, and this information could be used by our adversaries to circumvent intelligence collection and evade surveillance and cause serious and exceptionally grave damage to the national security of the United States." Bradley Decl. ¶ 10. The NSD declaration does not explain how a summary description of a "compliance incident" could be used to "evade surveillance" or whether any of the "details about intelligence methods" contained in these compliance reports have already been made public.

Over the last year and a half, the Director of National Intelligence has declassified a great deal of information about operations conducted under the FISA Pen Register authority, including the Internet metadata program that was in operation from 2006 until 2011 (a substantial portion of the period covered by the reports). *See* James R. Clapper, Dir. of Nat'l Int., *DNI Clapper Declassifies Additional Intelligence Community Documents Regarding Collection Under Section 501 of the Foreign Intelligence Surveillance Act* (Nov. 18, 2013). The Director of National Intelligence also released a declassified version of a recent report detailing compliance issues

with foreign intelligence surveillance conducted under 50 U.S.C. § 1881a. *See* Office of the Dir. of Nat'l Intelligence, *Semi-Annual Assessment of Compliance with the Procedures and Guidelines Issued Pursuant to Section 702 of the Foreign Intelligence Surveillance Act, Submitted by the Attorney General and the Director of National Intelligence* (2013).[7] Given that the Director of National Intelligence has released an entire compliance report about foreign intelligence surveillance, the conclusory sentence in the NSD declaration is not sufficient to justify withholding similar compliance report summaries in the semiannual Attorney General reports.

The first and third categories, "summary descriptions of targets and investigations" and "information pertaining to intelligence sources and methods," are more traditionally subject to classification, but the agency declaration does not contain sufficient detail to establish that disclosure of these particular redacted portions of the reports "could reasonably be expected to cause serious and exceptionally grave damage to national security." Bradley Decl. ¶ 10. As to the first category, the NSD declaration notes that the summary descriptions do not include "target names," but concludes that disclosure of these summaries could "nonetheless lead to revelation of target information" because of "other details provided." Bradley Decl. ¶ 10. However, this statement is merely a conclusion, and it provides no context or evidence in support. The declaration does not address or acknowledge the fact that the government has already declassified a substantial amount of information about its foreign intelligence investigations and targets. For example, the Director of National Intelligence has declassified the fact that Al Qaeda has been an Intelligence Community target since 2001. *See Hamdi v. Rumsfeld*, 542 U.S. 507, 510 (2004) (describing the President's orders soon after the 2001 Authorization for the Use of

---

[7] *Available at* http://icontherecord.tumblr.com/post/58944252298/dni-declassifies-intelligence-community-documents.

Military Force was passed "with a mission to subdue al Qaeda."); *Hussain v. Obama*, 718 F.3d

964 (D.C. Cir. 2013) (denying a petition for habeas corpus on the grounds that the detainee was

affiliated with al Qaeda, an "enemy force"). Therefore, to the extent that these investigation

summaries would reveal that Al Qaeda is the target of a DOJ investigation, the disclosure of that

information would not be likely to cause any harm since that fact is already public.

Similarly, the  "intelligence sources and methods" at issue in the summaries are, by

definition, FISA Pen Registers, since that is the subject of the reports. The government has

already disclosed and declassified a significant amount of information about its use of pen

register devices in national security investigations. *See* James R. Clapper, Dir. of Nat'l Int., *DNI*

*Clapper Declassifies Additional Intelligence Community Documents Regarding Collection*

*Under Section 501 of the Foreign Intelligence Surveillance Act* (Nov. 18, 2013). The NSD

declaration does not acknowledge this fact or provide any evidence to show that the redacted

portions of the reports contain information that is not already publicly available. The declaration

does include an acknowledgement of the agency's inability to "provide further detail"

concerning the methods at issue. *See* Bradley Decl. ¶ 10 n.1. However, the declaration's

reference to a classified paragraph in the declaration of David M. Hardy is off point and

unhelpful. The Hardy declaration clearly states that it only concerns the redacted portions of 8

specific documents listed in the *Vaughn* Index, and none of those documents are the semiannual

Attorney General reports. *See* Declaration of David M. Hardy ¶ 14 ("First Hardy Decl.").

The D.C. Circuit previously rejected a DOJ Exemption 1 claim based on similarly

conclusory evidence presented in *Campbell v. U.S. Department of Justice*. 164 F.3d 20 (D.C. Cir.

1998). Specifically, the court found that the agency declaration in that case was insufficient

because it "fails to draw any connection between the documents at issue and the general

19

standards that govern the national security exemption. For example, the declaration states that:

> [a]ll of the intelligence activities or methods detailed in the withheld information are currently utilized by the FBI" and that disclosure of intelligence methods is undesirable. However, the declaration makes no effort to assess how detailed a description of these Hoover-era methods the documents provide, and whether disclosure would be damaging in light of the degree of detail.

*Campbell*, 164 F.3d at 31. On remand, the district court found that the FBI's revised declaration was still insufficient to support its Exemption 1 claim, holding that the agency must provide "information as to precisely how national security is threatened" by the release of the specific information contained in the documents. *Campbell v. DOJ*, 193 F. Supp. 2d 29, 38 (D.D.C. 2001). The declaration must ultimately "provide sufficient information to permit [the requester] and the district court to understand the foundation for and necessity of the [agency's] classification decisions." *Campbell v. DOJ*, 231 F. Supp. 2d 1, 11 (D.D.C. 2002).

The NSD declaration is simply not detailed enough to establish that the redacted portions of the reports are properly classified and exempt under 5 U.S.C. § 552(b)(1).

Second, the unclassified section headings in the reports indicate that at least some of the redacted material does not fall within any of the three categories identified in the declaration. The only evidence that the NSD has provided in support of its conclusion that redacted portions of the reports contain these three categories of information is one conclusory sentence in the declaration. *See* Bradley Decl. ¶ 10. But contrary evidence in the record suggests that some of the redacted portions contain information not limited to the three categories listed in the declaration. The declaration fails to account for this contrary evidence or to describe the redacted information in sufficient detail to evaluate the classification decision. Importantly, the declaration does not describe the contents or structure of the reports, or attempt to explain why the redacted portions of the reports would not logically contain information other than summary descriptions of targets, compliance incidents, and intelligence sources and methods. And, in fact,

many of the unredacted headings in the reports suggest that the redacted portions contain a great deal of material that does not fit within those categories.

Headings in the reports indicate that the NSD has improperly withheld three additional types of information in its redactions: (1) significant FISC legal interpretations, (2) discussions of FISC jurisdiction and FISA legal procedures, and (3) aggregate statistics about the number of pen register applications filed and U.S. persons targeted.

Based on the unclassified report headings, the NSD is withholding summaries of FISC legal opinions from the reports, which are not properly classified under the categories described in the declaration. For example, on page 53 of document number 124 (the December 2005 report) the NSD redacted the section under the heading "Other Legal Interpretations under FISA by the FISC." *See* Ex. 1, Released Portions of Semiannual Reports at 000137. Then, beginning on page 3 of document number 125 (the July 2006 report), the NSD redacted a section titled "Summary of Significant Legal Interpretations." *Id*. at 000155. And finally, on page 3 of document number 126 (the December 2006 report) the NSD redacted another section titled "Summary of Significant Legal Interpretations." *Id*. at 000181.

These redacted portions of the semiannual reports contain summaries of FISC legal opinions, which do not fit into any of the three categories described in the NSD declaration. These legal interpretations are not summaries of "targets and investigations" or "compliance incidents," they are opinions that interpret the FISA and other statutory and constitutional provisions. They also do not clearly fit into the category of "information pertaining to intelligence sources and methods," except to the extent that the entire FISA statute pertains to intelligence sources and methods. But the NSD has not argued that a statute or constitutional provision can be properly classified. Given the fact that these redacted portions do not fit within

any of the three categories described in the NSD declaration, they are not properly classified according to the NSD's own analysis. *See* Bradley Decl. ¶ 10.

The unclassified headings also show that NSD is withholding discussions of FISC jurisdiction and FISA legal procedures from the reports, which are not properly classified under the categories described in the declaration. For example, on page 56 of document number 124 (the December 2005 report), the NSD redacted a sub-section titled "FISA Process Improvements." *See* Ex. 1, Released Portions of Semiannual Reports at 000139. Then, on pages 50-53 of document number 125 (the July 2006 report), the NSD redacted a discussion of the "Scope of the FISC's Jurisdiction." *Id*. at 000160-163. And, finally, on pages 56-60 of document number 126 (the December 2006 report) the NSD redacted a section under the heading "FISA Process Improvements." *Id*. at 000190-194.

Similar to the FISC legal opinions addressed above, these redacted portions of the reports describing the scope of FISC jurisdiction or improvements to the FISA process do not fit within any of the three categories described in the NSD declaration. These portions do not contain summaries of particular investigations, targets, or compliance incidents. They also do not appear to pertain to intelligence sources or methods, but rather are focused on the fundamental legal standards that underlie the FISC and the FISA process.

The reports also contain aggregate statistical information, as required under the statute, *see* 50 U.S.C. § 1846(b), about the number of pen register applications filed and the number of U.S. persons targeted during each reporting period. However, the agency has chosen to redact and withhold aggregate statistical information from some of the reports, but disclose the same type of information in other reports. The declaration includes no explanation for this discrepancy.

For example, the redactions of aggregate statistical information in two of the reports are inexplicable given that the same information was released in twenty-three other reports. Document 124 (the December 2005 report), Ex. 1, Released Portions of Semiannual Reports at 00127, and Document 125 (the July 2006 report), *id.* at 000152, state that "at least" 130 and 138 people were targeted whereas the exact number of targeted person was released in all other reports. Additionally, the number of U.S. Persons targeted was redacted from Document 126 (the December 2006 report), *id.*  at 00179, Document 127 (the June 2007 report), *id.* at 000205, and Document 137 (the June, 2012 report), *id.* at 000295, and was not included in the December 2005 report or the July 2006 report. But the same information about the aggregate number of U.S. persons targeted was released in all the other reports. The NSD has not provided any justification for its disparate treatment of aggregate statistical information in the different reports.

The NSD has also failed to establish that aggregate statistical information about the number of FISA applications filed and number of U.S. persons targeted can be properly classified under Executive Order 13,526 § 1.4. These aggregate statistics are not "intelligence sources or methods." And their disclosure is already permitted by the DOJ and other Intelligence Community agencies in other contexts. *See, e.g.*, Press Release, James R. Clapper, Dir. of Nat'l Intelligence, ODNI Releases Statistical Transparency Report Regarding Use of National Security Authorities (June 27, 2014);[8] Press Release, U.S. Dep't of Justice, Office of Pub. Affairs, *Joint Statement by Attorney General Eric Holder and Director of National Intelligence James Clapper on New Reporting Methods for National Security Orders* (Jan. 27, 2014).[9]

The NSD has improperly withheld information from the semiannual Attorney General

---

[8] http://www.dni.gov/index.php/newsroom/reports-and-publications/204-reports-publications-2014/1084-odni-releases-statistical-transparency-report-regarding-use-of-national-security-authorities
[9] http://www.justice.gov/opa/pr/joint-statement-attorney-general-eric-holder-and-director-national-intelligence-james-clapper.

reports. The agency asserts that this information is properly classified and thus exempt under 5

U.S.C. § 552(b)(1). However, the NSD has not met its burden of establishing that the withheld

information is in fact properly classified, and the conclusory statements made in paragraph 10 of

the declaration of Mark A. Bradley are insufficient to cure that deficiency.

### 2. The NSD Improperly Withheld Information Under Exemption 7(E)

To withhold records under Exemption 7(E) an agency must satisfy two statutory

requirements. First, the agency must satisfy the threshold Exemption 7 requirement that the

record was "compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7); *see John Doe*

*Agency v. John Doe Corp.*, 493 U.S. 146, 153 (1989) ("Before it may invoke [Exemption 7], the

Government has the burden of proving the existence of such a compilation for such a purpose.");

*Pub. Empls. for Envtl. Responsibility v. U.S. Section, Int'l Boundary and Water Comm'n*, 740

F.3d 195, 202-203 (D.C. Cir. 2014) [hereinafter *PEER*]. Second, the agency must show that

production would either "disclose techniques and procedures for law enforcement investigations

or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions

if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. §

552(b)(7)(E); *see PEER*, 740 F.3d at 204.

### a. The Semiannual Oversight Reports Were Not Compiled for Law Enforcement Purposes

The NSD cannot properly withhold portions of the semiannual Attorney General reports

under Exemption 7(E) because the reports were compiled for the purpose of facilitating

congressional oversight, and not for "law enforcement purposes." The term "compiled" in

Exemption 7 means that a document must be "created, gathered, or used by an agency for law

enforcement purposes at some time before the agency invokes the exemption." *PEER*, 740 F.3d

at 203 (citing *John Doe Agency*, 493 U.S. at 155). The D.C. Circuit recently discussed the "law

enforcement purpose" determination:

> This Court assesses an agency's Exemption 7 claim of a law enforcement purpose in a manner first articulated in *Pratt v. Webster,* 673 F.2d 408 (D.C. Cir. 1982). *See Tax Analysts v. IRS,* 294 F.3d 71, 76–79 (D.C. Cir. 2002). If the agency's principal function is law enforcement, we are "more deferential" to the agency's claimed purpose for the particular records. *Id.* at 77. If the agency has mixed law enforcement and administrative functions, we will "scrutinize with some skepticism the particular purpose claimed." *Id.* (quoting *Pratt,* 673 F.2d at 418).

*PEER*, 740 F.3d at 203. But ultimately the test depends on the purpose for which the document was compiled. *Id*.

The NSD's Office of Intelligence, Oversight Section is an administrative body and does not serve a law enforcement function. "Law enforcement" under Exemption 7 refers to the act of enforcing civil and criminal law. *Tax Analysts v. IRS*, 294 F.3d 71, 77 (D.C. Cir. 2002). The Oversight Section fulfills the DOJ's oversight role by "monitoring the activities of various Intelligence Community elements," and "fulfill[ing] various reporting obligations of the [DOJ]." Nat'l Sec. Div., U.S. Dep't of Justice, *Office of Intelligence* (last visited Nov. 21, 2014).[10] The primary role of the Section is to "conduct oversight of the intelligence and counterintelligence activities of the FBI, as well as those of other intelligence agencies, as appropriate, to ensure adherence to the Constitution and applicable laws of the United States." U.S. Dep't of Justice, *National Security Division Launches New Office of Intelligence* (Apr. 30, 2008);[11] *see* 1 Kris & Wilson, *National Security Investigations & Prosecutions* § 1.8 (2d ed. 2012). Because the Oversight Section serves an oversight function, not a law enforcement function, and the reports prepared by the Section were compiled for congressional oversight committees, the NSD cannot meet the threshold requirement of Exemption 7. And even if the court considers the overall function of NSD, which is a mixed function agency, the agency's claimed purpose of the records

---

[10] http://www.justice.gov/nsd/office-intelligence.
[11] *Available at* http://www.justice.gov/archive/opa/pr/2008/April/08_nsd_360.html.

must be "scrutinize[d] with some skepticism." *PEER*, 740 F.3d at 203.

The NSD's declaration lacks the "reasonably specific detail" required to carry the government's burden of establishing that these records were compiled for law enforcement purposes. *See CREW*, 746 F.3d at 1088 (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)). To determine whether records were compiled for law enforcement purposes, an agency must provide a clear explanation of "how and under what circumstances the requested files were compiled . . . and 'whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding.'" *Jefferson v. DOJ, Office of Prof'l Responsibility*, 284 F.3d 172, 176–77 (D.C. Cir. 2002) (citing *Weisberg v. DOJ*, 489 F.2d 1195, 1202 (D.C. Cir. 1973)). The NSD submits a three-sentence justification for withholding under 7(E):

> These withheld portions are also properly withheld under FOIA Exemption (b)(7)(E) which protects techniques and procedures for law enforcement investigations or prosecutions. The withheld material contains specific descriptions of the manner and means by which the United States Government conducts surveillance, and the withheld information describes sensitive law enforcement activities and techniques. Disclosure of this information would provide criminals with insight into how the United States Government gathers information for law enforcement investigations, which in turn could be used to develop the means to circumvent those techniques and evade prosecution.

Brady Decl. ¶ 11. The NSD further states in a footnote that it "cannot provide further detail in this public declaration," and directs EPIC to seek additional detail in the Hardy Declaration. Bradley Decl. ¶ 11, nn. 2-3. However, the paragraph to which the NSD cites is completely redacted. *See* First Hardy Decl. ¶ 31. The NSD's conclusory declaration fails to explain with reasonably specific detail how or under what circumstances the oversight reports, spanning thirteen years, were compiled.[12] *See, e.g.*, Document 115 (April 2001 Report), Ex. 1 at 000001-14; Document 139 (June 2013 Report), Ex. 1 at 000314-322. But we know that these records

---

[12] In stark contrast, the FBI spent sixteen pages explaining in detail how 7(E) applied to certain records. *See* First Brady Decl. ¶¶ 39-52, Second Brady Decl. ¶¶ 29-36.

were compiled for oversight purposes as required under the FISA and as described in the

documents themselves. To accept the NSD's justification would require the Court to take it for

granted that all of the records withheld under Exemption 7 automatically meet the "law

enforcement purposes" requirement. The NSD also neglects to explain how the oversight reports

relate to an enforcement proceeding. *Jefferson*, 284 F.3d at 176–77.

The NSD has failed to carry its burden of establishing that the oversight reports were

compiled for a law enforcement purpose.

> **b. The NSD Has Not Established That the Disclosure of Redacted Portions of the Semiannual Reports Would Risk Circumvention of the Law**

An agency that meets Exemption 7's threshold requirement must satisfy the additional

requirements of 7(E). Exemption 7(E) permits an agency to withhold documents that "would

disclose techniques and procedures for law enforcement investigations or prosecutions, or would

disclose guidelines for law enforcement investigations or prosecutions if such disclosure could

*reasonably be expected to risk circumvention of the law*." 5 U.S.C. § 552(b)(7)(E) (emphasis

added). To satisfy 7(E), an agency must "demonstrate logically how the release of the requested

information might create a risk of circumvention of the law." *Blackwell v. FBI*, 646 F.3d 37, 42

(D.C. Cir. 2011) (citing *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1194 (D.C. Cir. 2009)).[13] An

agency must provide a "relatively detailed justification" for each record that permits the

reviewing court to make a meaningful assessment of the redactions and to understand how

disclosure would create a reasonably expected risk of circumvention of the law. *Strunk v. U.S.

Dep't of State*, 845 F. Supp. 2d 38, 47 (D.D.C. 2012) (citing *Blackwell*, 646 F.3d at 42)).

The NSD fails to demonstrate logically how disclosure of oversight reports would risk

---

[13] Although other circuits have disagreed, the D.C. Circuit applies the "risk circumvention of the law" requirement to both "guidelines" and "techniques and procedures." *PEER*, 740 F.3d at 205 n. 4.

circumvention of the law, especially where the redacted material was not compiled for law enforcement purposes. The only evidence that the NSD provides in support of its Exemption 7(E) claim is the conclusory statement that "disclosure of [the withheld] information would provide criminals with insight on how the United States Government gathers information for law enforcement investigations, which in turn could be used to develop the means to circumvent those techniques and evade prosecution." Bradley Decl. ¶ 11. This statement, however, does not explain logically how disclosure of oversight reports containing legal memos and statistics provides criminals with the insight to circumvent information-gathering techniques.

Lastly, the NSD improperly withheld information under 7(E) because the withheld records were not "procedures," "techniques," or "guidelines" 5 U.S.C. § 552(b)(7)(E). A "procedure" is "a particular way of accomplishing something or of acting," a "technique" is "a method of accomplishing a desired aim," and a "guideline" is "an indication or outline (as by a government) of policy or conduct." *Webster's Ninth New Collegiate Dictionary*, 937, 1211 (1985) (definitions contemporaneous with the enactment of amendments to Exemption 7). Significant portions of the oversight reports withheld under 7(E) are plainly not covered by the statute. For example, the NSD seeks to withhold a document entitled "Scope of the FISC's Jurisdiction." *See* Ex. 1, Released Portions of Semiannual Reports at 000160. A document explaining the outlines of the FISC's jurisdiction is not a particular way or method of accomplishing something; nor does it outline NSD policy or conduct. Rather, the document simply reflects the NSD's view of a narrow part of the law.

### B. The NSD and FBI Have Failed to Release Reasonably Segregable Portions of Responsive Records

The FOIA "makes clear that the fact that a responsive document fits within an applicable exemption does not automatically entitle the keeper of such material to withhold the *entire*

record." *Charles v. Office of the Armed Forces Med. Exam'r*, 979 F. Supp. 2d 35, 42 (D.D.C.

2013). Thus even when an agency has properly invoked a FOIA exemption, it must disclose any

"reasonably segregable portion" of the record requested. 5 U.S.C. § 552(b); *see Stolt-Nielsen*

*Transp. Group Ltd v. United States*, 534 F.3d 728, 734 (D.C. Cir. 2008) (quoting *Sussman v.*

*U.S. Marshals Serv.*, 494 F.3d 1106, 1116 (D.C. Cir. 2007)); *Oglesby v. United States Dep't of*

*the Army*, 79 F.3d 1172, 1176 (D.C. Cir. 1996) ("If a document contains exempt information, the

agency must still release 'any reasonably segregable portion' after deletion of the nondisclosable

portions."). "The 'segregability' requirement applies to all documents and all exemptions in the

FOIA." *Ctr. for Auto Safety v. EPA*, 731 F.2d 16, 21 (D.C. Cir. 1984).

　　　The burden is on the agency to "provide a detailed justification for its non-segregability."

*Johnson v. EOUSA*, 310 F.3d 771, 776 (D.C. Cir. 2002) (internal quotation marks omitted). This

includes "a statement of [the government's] reasons," and a "descri[ption of] what proportion of

the information in a document is non-exempt and how that material is dispersed throughout the

document." *Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977).

Simply claiming that a segregability review has been conducted is insufficient. *Oglesby*, 79 F.3d

at 1180. In addition, if an agency seeks to "withhold a responsive document in its entirety on the

basis of a FOIA exemption, the agency bears the burden of demonstrating that the nonexempt

portions of the document are so inextricable from the exempt portions that document is not

reasonable segregable." *Charles*, 979 F. Supp. 2d at 42. Courts have an "affirmative duty to

consider the segregability issue *sua sponte*." *Trans-Pac. Policing Agreement v. U.S. Customs*

*Serv.*, 177 F.3d 1022, 1028 (D.C. Cir. 1999).

　　　In this case, the FBI and NSD have improperly withheld reasonably segregable non-

exempt information. First, the FBI has withheld a FISA briefing document in its entirety even

29

though, based on the agency's own description, the document contains information like legal

analysis and case citations that should be reasonably segregable from any exempt information.

Second, the NSD has failed to release non-exempt portions of its semiannual Attorney General

reports, as discussed above.

One of the records that the FBI has withheld in, Document 68, is entitled "Response to

Orders for Additional Briefing." Second Hardy Decl. ¶ 12. According to the agency, this

document "is a response to orders for additional briefing in reference to a request for two PR/BR

orders." *Id*. This document, at FBI Bates pages EPIC-427-511, is being withheld under

Exemptions 1, 3, and 7(E). Based on the description in the FBI declaration, it appears that

roughly half of this document (FBI Bates pages EPIC-427-476) is being withheld under

Exemptions 1 and 3. *See* Second Hardy Decl. ¶¶ 24 n. 10, 28 n.12. The FBI declaration provides

descriptions of its Exemption 1 withholdings, *id*. ¶¶ 20-24, its Exemption 3 withholdings, *id*. ¶¶

26-28, and its Exemption 7(E) withholdings. *Id*. ¶¶ 34-36. But these descriptions do not

adequately justify the withholding of case citations, summaries, and other legal analysis from the

document.

Document 68 contains "a discussion on the legal standards, citing particular case law,

highlighting the legislative history as well as articulating policy considerations in utilizing this

specific method and technique." Second Hardy Decl. ¶ 12. Attached to this document are "four

West Law case print outs," which the FBI is also withholding in full even though the agency

acknowledges that they "are otherwise public source." *Id*. The FBI's justification for withholding

these case print outs and discussions of legal standards is that "the release of seemingly

'innocuous' information, when read in conjunction with the other documents, would reveal

critical details about an important investigative method and technique used by the FBI in national

security investigations." *Id*. Specifically, the FBI states that "[e]ven something as seemingly innocuous as a case citation or statutory provision, when read in connection with a document containing significant legal analysis of an FISA PR/BR and PR/TT application, could reveal" the "issue being examined" or risk disclosure of "an underlying FISA application and/or intelligence method and technique." Second Hardy Decl. ¶ 37.

But none of the points made in the FBI declaration support the conclusion that these case citations are properly classified as required by Exemption 1, *see* 5 U.S.C. § 552(b)(1)(B), that they are exempt from disclosure by statute as required by Exemption 3, *see* 5 U.S.C. § 552(b)(3), or that their disclosure "could reasonably be expected to risk circumvention of the law" as required by Exemption 7(E). *See Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011). In fact, it is implausible that mere case citations, summaries, and legal analysis could be properly exempt under any of these provisions because the case information is public sourced and readily available. The agency would have to comply with special procedures to properly classify material that was previously unclassified. *See* 32 C.F.R. § 2001.13(c). The FBI even acknowledges in its first declaration that the agency's "use of PR/TT in criminal and national security investigations is well known and documented." First Hardy Decl. ¶ 20 n.15. For example, the Director of National Intelligence has declassified records about the Intelligence Community agencies testing their ability to acquire cell phone location information under the FISA. *See* Memorandum from Office of the General Counsel (Intelligence Law), Nat'l Sec. Agency, to the Senate Select Committee on Intelligence (April 1, 2011). The FBI has also not explained why release of information about the legal authorities cited by the FBI in a FISC brief could be expected to "risk circumvention of the law." The FBI has not identified any law that could be circumvented based on knowledge of legal cases cited in an FBI memorandum of law.

It is neither logical nor plausible that such a risk would result from disclosure of this segregable information.

In addition, to the extent this Court finds that some redacted portions of the NSD's semiannual Attorney General reports are properly subject to Exemption 1 or 7(E), the agency should still be required to release all reasonably segregable material identified and discussed above, including (1) summaries of FISC legal interpretations, (2) discussions of FISC jurisdiction and the FISA legal process, and (3) aggregate statistical information about the number of applications filed and U.S. persons targeted. The NSD has not satisfied its burden to show that it has released all reasonably segregable portions of these reports. The only discussion of segregability in the NSD declaration are the three conclusory sentences in the penultimate paragraph:

> I have also reviewed the reports for purposes of complying with FOIA's segregability provision which requires the Government to release "any reasonably segregable portion of a record" after proper application of the FOIA exemptions. 5 U.S.C. § 552(b). All non-exempt, responsive information in these reports was segregated and provided to plaintiffs in NSD's March 2014 release, discussed above. Because of the highly specific and detailed discussions contained in the semiannual reports, it is not possible to release additional meaningful information without revealing or tending to reveal the exempt information I describe above.

Bradley Decl. ¶ 13. Courts in this Circuit have previously found that an "empty invocation of the segregability standard" is not permitted under the FOIA. *Judicial Watch, Inc. v. DHS*, 841 F. Supp. 2d 142, 161 (D.D.C. 2012). The NSD declaration is simply insufficient to justify the extensive redactions in the semiannual reports.

## III. THE GOVERNMENT'S MOTION SHOULD BE DENIED

The FOIA requires that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules . . . shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). However, an agency may

withhold information if it fits within nine narrowly construed exemptions. *See* 5 U.S.C. § 552(b). But the FOIA also requires that the agency release any "reasonably segregable portion" of the records requested. 5 U.S.C. § 552(b). The agency in a FOIA case bears the burden of establishing that at least one exemption applies for each record withheld. *See Vaughn v. Rosen*, 484 F.2d 820, 823 (D.C. Cir. 1973). The agency also bears the burden of proving that it has complied with the segregability requirement. *Johnson v. EOUSA*, 310 F.3d 771, 776 (D.C. Cir. 2002).

An agency seeking to justify its withholding of responsive records under the FOIA must satisfy five overarching requirements in addition to the particular standards of each FOIA exemption claimed.

> The government must "(1) [I]dentify the document, by type and location in the body of documents requested; (2) note that [a particular exemption] is claimed; (3) describe the document withheld or any redacted portion thereof, disclosing as much information as possible without thwarting the exemption's purpose; (4) explain how this material falls within one or more of the categories . . .; and [if the exemption requires a showing of harm] (5) explain how disclosure of the material in question would cause the requisite degree of harm."

*Am. Immigration Council v. DHS*, 950 F. Supp. 2d 221, 235 (D.D.C. 2013) (quoting *King v. DOJ*, 830 F.2d 210, 224 (D.C. Cir. 1987). In order to be granted summary judgment, the agency must establish that it has satisfied all of the statutory requirements of the FOIA. *Harrison v. Fed. Bureau of Prisons*, 681 F. Supp. 2d 76, 85 (D.D.C. 2010).

In this case, the NSD, FBI, NSA, and CIA have withheld 139 responsive records in whole or in part. *See Vaughn* Index. Of these 139 records, EPIC is challenging the FBI's withholding in full of Document 68 and the NSD's withholding of redacted portions its twenty-five semiannual Attorney General reports (Documents 115-139). For the reasons discussed above, the NSD has failed to satisfy its burden to establish that Exemption 1 and Exemption 7(E) justify the withholding of redacted portions of the semiannual reports. The FBI has also failed to

justify its withholding in full of Document 68 under Exemptions 1, 3, and 7(E) without releasing reasonably segregable non-exempt information.

A court may award summary judgment to an agency invoking Exemption 1 only if "(1) the agency affidavits describe the documents withheld and the justifications for nondisclosure in enough detail and with sufficient specificity to demonstrate that material withheld is logically within the domain of the exemption claimed, and (2) the affidavits are neither controverted by contrary record evidence nor impugned by bad faith on the part of the agency." *King*, 830 F.2d at 217. The NSD declaration in this case does not sufficiently describe the redacted material or explain why those portions of the semiannual reports logically fall within Exemption 1. The NSD's Exemption 1 claim is also controverted by evidence in the reports themselves.

In order to properly invoke Exemption 7(E), an agency must "demonstrate logically how the release of the requested information might create a risk of circumvention of the law." *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011) (citing *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1194 (D.C. Cir. 2009)). An agency must also provide a "relatively detailed justification" for each record that permits the reviewing court to make a meaningful assessment of the redactions and to understand how disclosure would create a reasonably expected risk of circumvention of the law. *Strunk v. U.S. Dep't of State*, 845 F. Supp. 2d 38, 47 (D.D.C. 2012) (citing *Blackwell*, 646 F.3d at 42)). The NSD has failed to establish that the semiannual reports meet the threshold requirement of Exemption 7 or the more specific requirements of 7(E).

The agency declarations and indices in this case are not sufficient to establish that all responsive, non-exempt records have been disclosed as required under the FOIA.

**CONCLUSION**

For the foregoing reasons, the Court should deny the Defendant's Motion for Summary

Judgment in part and grant EPIC's Motion for Summary Judgment in part.


Dated: November 21, 2014                    Respectfully submitted,

                                            MARC ROTENBERG
                                            EPIC President and Executive Director

                                            GINGER P. MCCALL
                                            Associate Director
                                            EPIC Open Government Program Director

                                            /s/ Alan Jay Butler
                                            ALAN JAY BUTLER
                                            Senior Counsel
                                            Electronic Privacy Information Center
                                            1718 Connecticut Ave., NW
                                            Suite 200
                                            Washington, DC 20009

                                            *Counsel for Plaintiff*