# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____ )
ELECTRONIC PRIVACY                             )
      INFORMATION CENTER                     )
                                 )
            Plaintiff,                          )
                                 )
      v.                                         )      Case No. 1:13-cv-01961-KBJ
                                 )
UNITED STATES                                  )
      DEPARTMENT OF JUSTICE                  )
                                 )
            Defendant.                          )
_____ )

## MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

MARC ROTENBERG
EPIC President and Executive Director

/s/ Alan Jay Butler
_____
ALAN JAY BUTLER
Senior Counsel
Electronic Privacy Information Center
1718 Connecticut Ave., NW
Suite 200
Washington, DC 20009

*Counsel for Plaintiff*

**TABLE OF CONTENTS**

ARGUMENT ........................................................................................................... 1

I.     The DOJ cannot show that the remaining disputed materials are properly withheld

under Exemptions 1, 3, or 7(E). ....................................................................... 2

    A.     The DOJ's Exemption 1 claims are implausible and contradicted by the record... 2

    B.     The DOJ cannot satisfy the requirements of Exemption 3. .................................. 6

         1.     The DOJ previously waived these Exemption 3 claims by failing to

raise them in the first motion for summary judgment............................... 7

         2.     The remaining disputed materials fall outside the scope of the National

Security Act of 1947. ............................................................................... 8

    C.     The DOJ has not satisfied the Exemption 7 threshold test or established the

necessary criteria to satisfy subsection (E). ......................................................... 10

         1.     The semiannual reports are not subject to Exemption 7(E). ..................... 10

         2.     Publicly available Westlaw case printouts can never be properly

withheld under Exemption 7(E)................................................................ 13

II.    The DOJ has failed to release reasonably segregable portions of the remaining

challenged withholdings. ............................................................................... 14

CONCLUSION..................................................................................................... 16

# TABLE OF AUTHORITIES

**Cases**

*Campbell v. DOJ*, 164 F.3d 20 (D.C. Cir. 1998) ....................................................... 3, 11

*Carter v. U.S. Dep't of Commerce*, 830 F.2d 388 (D.C. Cir. 1987) ........................................... 3, 5

*Caton v. Norton*, No. CIV.04-CV-439-JD, 2005 WL 1009544 (D.N.H. May 2, 2005) ................. 5

*Charles v. Office of the Armed Forces Med. Exam'r*, 979 F. Supp. 2d 35 (D.D.C. 2013) .......... 15

*Cottone v. Reno*, 193 F.3d 550 (D.C. Cir. 1999) ................................................................ 14

*Ctr. for Nat'l Sec. Studies v. DOJ*, 331 F.3d 918 (D.C. Cir. 2003) ........................................... 10

*Detroit Free Press v. DOJ*, 174 F. Supp. 2d 597 (E.D. Mich. 2001) ........................................... 5

*DiBacco v. U.S. Army*, 795 F.3d 178 (D.C. Cir. 2015) ........................................................ 9, 10

*EPA v. Mink*, 410 U.S. 73 (1973) ................................................................................. 12

*In re United States*, 441 F. Supp. 2d 816 (S.D. Tex. 2006) ........................................................ 4, 5

*Jefferson v. DOJ, Office of Prof'l Responsibility*, 284 F.3d 172 (D.C. Cir. 2002) ................. 10, 11

*Maydak v. DOJ*, 218 F. 3d 760 (D.C. Cir. 2000) ........................................................ 6, 7

*Morley v. CIA*, 508 F.3d 1108, 1124 (D.C. Cir. 2007) ................................................................ 3

*Oglesby v. U.S. Dep't of the Army*, 79 F.3d 1172 (D.C. Cir. 1996) ........................................... 14

*Pratt v. Webster*, 673 F.2d 408 (D.C. Cir. 1982) ................................................................ 10

*Pub. Employees for Envtl. Responsibility v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mexico*, 740 F.3d 195 (D.C. Cir. 2014) ................................................................ 12

*Senate of Puerto Rico v. DOJ*, 823 F.2d 574 (D.C. Cir. 1987) ........................................... 8

*Stolt-Nielsen Transp. Group Ltd v. United States*, 534 F.3d 728 (D.C. Cir. 2008) ................. 14

**Statutes**

18 U.S.C. § 3127(3) ................................................................................................. 4

5 U.S.C. § 552(b) ................................................................................................. 14

5 U.S.C. § 552(b)(3) ................................................................................................. 9

5 U.S.C. § 552(b)(7)(E) ................................................................................................. 12, 13

National Security Act of 1947, 50 U.S.C. § 3024(i)(1) ................................................................ 8, 9

**Other Authorities**

Dir. of Nat'l Intelligence, *Members of the IC* ................................................................ 9

DOJ, *Report from the Field: The USA PATRIOT Act at Work* (2004) ........................................... 4

EPIC, *Foreign Intelligence Surveillance Act Court Orders 1979–2014* (2015) ................. 6

M. Wesley Clark, *Cell Phones as Tracking Devices*, 41 Val. U. L. Rev. 1413 (2007) ................. 4

Office of the Dir. of Nat'l Intelligence, *Release of Three Opinions by the Foreign Intelligence Surveillance Court* (April 19, 2016) ................................................................ 4

**ARGUMENT**

The Department of Justice ("DOJ") has failed entirely to supplement the "manifestly inadequate" declarations and statements that this Court previously found insufficient to justify summary judgment. Mem. Op. 7 (ECF No. 32). The Court should deny the agency's Motion and grant EPIC's Renewed Motion for three reasons. First, instead of providing the necessary statements to identify "precisely what information DOJ is actually withholding," *id.* at 8, the agency has merely resubmitted generic, boilerplate arguments about Exemptions 1 and 7(E). Second, the agency's release of newly reprocessed versions of certain pages shows that the DOJ was improperly withholding a significant amount of material in the first and second releases of the Semi-Annual Reports ("SARs"). And third, the veracity of the DOJ's evidence has been undermined by the agency's new assertions that material previously provided to the public is "properly classified" and that much of the redacted material is subject to Exemption 3 even though the agency previously waived that argument.

The DOJ's generalized arguments about the scope of the exemptions "lack the specificity necessary for this Court to evaluate whether DOJ has released all reasonably segregable portions of non-responsive documents and is acting properly to withhold the specific information EPIC now challenges." *Id.* The remaining challenged withholdings do not concern specific targets or investigations, but rather summaries of significant FISC decisions, discussions of the FISA process and the FISC's jurisdiction, and copies of publicly available court rulings that cannot properly be classified. This Court should accordingly deny the agency's Motion, closely scrutinize the materials submitted *in camera*, and grant EPIC's Renewed Motion as to the remaining challenged withholdings.

I.    **The DOJ cannot show that the remaining disputed materials are properly withheld under Exemptions 1, 3, or 7(E).**

Although the DOJ has previously conceded that a significant amount of material in the remaining challenged withholdings is not exempt under the FOIA, the agency now argues that certain portions of the reprocessed pages are properly withheld under Exemptions 1, 3, and 7(E). The agency claims that nearly all of the remaining challenged withholdings are exempt under (b)(1), that many of the remaining challenged withholdings are also exempt under (b)(3) and (b)(7)(E), but that a few of the remaining challenged withholdings are exempt only under (b)(3) and (b)(7)(E) or only under (b)(1) and (b)(3).[1] But the DOJ's arguments are unsupported by the record and should be rejected.

A.    **The DOJ's Exemption 1 claims are implausible and contradicted by the record.**

The agency has contradicted its own prior statements about the scope of classified material, and has failed to provide any detailed and plausible justification for why summaries of significant FISC legal interpretations, discussions of the FISC's jurisdiction and the FISA process, and publicly available Westlaw printouts can be properly classified.

The DOJ's Exemption 1 claims turn on conclusory assertions and heavily redacted declarations submitted by the FBI and the NSA. *See* Def.'s Mot. for Summ. J. ("Def.'s Renewed Mot.") at 8–11 (ECF No. 36-1); Fourth Hardy Decl. (ECF No. 35-1); Second Sherman Decl. (ECF No. 35-2). In the declarations made available to EPIC, the DOJ has redacted nearly all of the substantive arguments in support of the withholdings. But even without access to the complete declarations, it is plain that the agency's Exemption 1 claims fail as a matter of law. None of the cases cited by the DOJ justify the agency's broad assertion of classification for legal

---

[1] *See, e.g.*, Pl.'s Renewed Mot., Ex. 1 at 34, 71, 83.

interpretations by a federal court, discussions of court process and jurisdiction, and publicly available case printouts.

The agency's only support for the Exemption 1 claim, besides the conclusory declarations submitted by officials from other agencies, is a scant paragraph describing the degree of deference and weight given to agency affidavits. Def.'s Renewed Mot. at 9 (ECF No. 36-1). But the D.C. Circuit has made clear that "deference is not equivalent to acquiescence," *Campbell v. DOJ*, 164 F.3d 20, 30 (D.C. Cir. 1998), and that an agency declaration can be deemed insufficient to support an Exemption 1 claim if it lacks "detail and specificity," if there is evidence of "bad faith," or if the declaration fails to "account for contrary record evidence." *Id*. An agency must make a "plausible assertion that information is properly classified." *Morley v. CIA*, 508 F.3d 1108, 1124 (D.C. Cir. 2007). When "information contained in agency affidavits is contradicted by other evidence in the record" then "there is evidence of bad faith." *Carter v. U.S. Dep't of Commerce*, 830 F.2d 388, 393 (D.C. Cir. 1987).

The DOJ's supplemental declarations from the FBI and the NSA—agencies that neither created nor controlled the contested SARs—cannot support the DOJ's claimed exemptions. As EPIC explained in the prior cross-motion and reply, the release of summaries of significant legal interpretations of the FISC, discussions of the FISC jurisdiction, and discussions of FISA procedures could not "reasonably be expected" to cause "serious" or "exceptionally grave" damage to national security. *See* Pl.'s Mot. for Summ. J. ("Pl.'s Mot.") at 21–22 (ECF No. 25-1); Pl.'s Reply at 3–7 (ECF No. 30).

The DOJ's argument rests on a faulty premise: that these summaries must be withheld because they would reveal sources and methods of intelligence gathering. But although a pen register is a "method" of intelligence gathering, it is also discussed widely in opinions,

commentaries, and reports. *See, e.g.*, M. Wesley Clark, *Cell Phones as Tracking Devices*, 41 Val.

U. L. Rev. 1413 (2007); *In re United States*, 441 F. Supp. 2d 816 (S.D. Tex. 2006); DOJ, *Report*

*from the Field: The USA PATRIOT Act at Work* 24–25 (2004). In fact, the Director of National

Intelligence just last month released a FISC opinion discussing pen registers and trap-and-trace

devices under the FISA. Office of the Dir. of Nat'l Intelligence, *Release of Three Opinions by the*

*Foreign Intelligence Surveillance Court* (April 19, 2016).[2] The pen register surveillance "method"

is also defined and discussed in the U.S. Code, *see* 18 U.S.C. § 3127(3), and in cases that interpret

that provision. In addition, the FISC's interpretation of the law is not itself a "source" or

"method" of intelligence gathering, but a legal judgment that Congress has determined the public

has a right to access. *See* 50 U.S.C. § 1872(a).

The DOJ's argument that publicly available Westlaw printouts are also exempt from

disclosure reveals the absurdity of the agency's position. While it may be true, as the FBI

representative claims, that the Westlaw printouts concern "the FBI's intelligence methods and

activities," Classified Fourth Decl. of David M. Hardy ("Fourth Hardy Decl.") ¶ 27 (ECF No.

35-1), that is equally true of the publicly available versions of those cases. In fact, the DOJ has

already released portions of records that quote a publicly available pen register opinion in such a

way that it is easily identifiable. *See* Pl.'s Renewed Mot., Ex. 3 at 53–54 (ECF No. 37-6)

(discussing an "Opinion" that analyzed "Senator Leahy's final remarks about the PATRIOT Act"

and quoting a portion of the opinion that found the Senator "had been instrumental in passing the

CALEA 'reasonably available technology' limitation"); *see also In re United States*, 441 F.

Supp. 2d 816 (S.D. Tex. 2006) (addressing a DOJ application to obtain post-cut through dialed

---

[2] https://icontherecord.tumblr.com/post/143070924983/release-of-three-opinions-issued-by-the-foreign.

digits under the pen register provision).[3] The strained efforts to withhold this material, which is already available to the public, show bad faith on the part of the agency.

The DOJ's Exemption 1 claims should be rejected not only because the agency fails to make a "plausible assertion" of a risk of harm from disclosure, but also because the contradictory statements made by the agency on the record are evidence of bad faith. *See Carter*, 830 F.3d at 393; *Detroit Free Press v. DOJ*, 174 F. Supp. 2d 597, 601 (E.D. Mich. 2001) (finding that contradictory statements by the agency "call[ed] into question the veracity of the FBI's justification for withholding); *Caton v. Norton*, No. CIV.04-CV-439-JD, 2005 WL 1009544, at *4 (D.N.H. May 2, 2005) (finding that a plaintiff could "overcome the presumption" of validity of the agency declaration based on the "apparent implausibility" of the explanation). The agency has repeatedly contradicted its own statements. The record in this case and the latest round of supplemental filings have only exacerbated the problem.

The DOJ has made false and contradictory statements regarding the withholding of responsive records. This is also evidence of bad faith and should be taken into account as the Court reviews the documents *in camera*. First, the DOJ has released a substantial amount of new material that the agency previously argued, and claimed in sworn declarations, was properly classified and exempt from disclosure. *See* Pl.'s Renewed Mot., Ex. 1 at 11–18, 21–23, 29–31, 33–38, 40, 43–44, 50, 58–59, 65–71, 74, 78–83. Some of the newly released material was clearly marked as unclassified. *Id.* at 11–12, 14–15, 17–18, 21–22, 29–30, 35, 37–38, 39, 42–43, 58–59, 65–66, 78–79, 82–83. Second, the DOJ has redacted material throughout the reprocessed pages that it claims is exempt under (b)(1) even though the markings clearly indicate that those

---

[3] This is the only decision, according to a Westlaw search, that includes the same language quoted in the NSD's Verified Memorandum of Law (Document #88).

paragraphs no longer contain classified material. *See, e.g.*, *id.* at 12 (some portion markings are struck through while others are not). Third, the DOJ has improperly excluded material that is clearly within the remaining challenged withholdings. *See, e.g.*, *id.* at 17–19, 35, 59–60, 75. Fourth, the DOJ has inexplicably revived an argument that the agency conceded in the prior cross motions: that aggregate statistics about FISA applications can be properly classified, *id.* at 71, even though those statistics are already publicly available. EPIC, *Foreign Intelligence Surveillance Act Court Orders 1979–2015* (2016).[4]

None of the DOJ's contradictions and false statements are justifiable, and the agency has not proffered any explanation for its inconsistent claims and improper withholdings. The DOJ has also submitted the reprocessed pages out of order in such a way as to frustrate this Court's ability to compare them with prior releases. *See* Pl.'s Renewed Mot., Ex. 2 (ECF No. 37-5). The Court should recognize that the agency's self-contradictory positions and shifting arguments are the direct cause of a substantial and unnecessary duplication of efforts and an improper withholding of responsive records. Such behavior is clear evidence of bad faith and calls into question the veracity of the agency's statements to the Court.

## B.        The DOJ cannot satisfy the requirements of Exemption 3.

The DOJ now asserts, for the first time, that additional portions of the remaining challenged withholdings are subject to Exemption 3. The DOJ's Exemption 3 claims fail for three reasons. First, the DOJ has already waived these Exemption 3 claims by failing to raise them in either its administrative response, initial summary judgment motion, or in the January 2016 hearing. *See Maydak v. DOJ*, 218 F. 3d 760 (D.C. Cir. 2000). Second, as EPIC previously explained, the DOJ's newly discovered Exemption 3 claim—relying on the National Security

---

[4] https://epic.org/privacy/surveillance/fisa/stats/.

Act of 1947—is deficient and indicative of the agency's bad faith in processing EPIC's FOIA request. Pl.'s Renewed Mot. at 15–17. And third, the Exemption 3 claims described in the Second Sherman Declaration only concern a single page and do not adequately identify which material is being withheld.

### 1. The DOJ previously waived these Exemption 3 claims by failing to raise them in the first motion for summary judgment.

Even if the DOJ could establish that the disputed records were subject to the National Security Act, the Court should not entertain the agency's argument at this late stage in the litigation. By waiting until the eleventh hour to invoke Exemption 3, the agency has waived those claims. Agencies "must assert all exemptions at the same time, in the original district court proceedings." *Maydak v. DOJ*, 218 F.3d 760, 764 (D.C. Cir. 2000). As the D.C. Circuit observed in *Maydak*, "the delay caused by permitting the government to raise its FOIA exemption claims one at a time interferes both with the statutory goals of 'efficient, prompt, and full disclosure of information,' and with 'interests of judicial finality and economy.'" *Id.* (quoting *Senate of Puerto Rico v. DOJ*, 823 F.2d 574, 580 (D.C. Cir. 1987)). The D.C. Circuit has recognized only two narrow exceptions to the *Maydak* rule:

> [1] where, from pure human error, the government failed to invoke the correct exemption and will have to release information compromising national security or sensitive, personal, private information unless the court allows it to make an untimely exemption claim; and [2] where a substantial change in the factual context of the case or an interim development in the applicable law forces the government to invoke an exemption after the original district court proceedings have concluded.

*Id.* at 767.

Here, the DOJ has not even addressed its prior waiver or the *Maydak* rule, let alone offered evidence to show that one of the exceptions applies. The agency does not claim that "pure human error" justifies its failure to raise Exemption 3 in the first motion. Nor has the

agency provided evidence of a "substantial change" in the facts that would justify waiver. The agency has had numerous opportunities, including the January 2016 hearing, to raise this issue and it failed to do so. Now the agency is strategically shifting the focus of its argument to a new exemption, perhaps finally aware of the weakness of its Exemptions 1 and 7(E) claims. This whack-a-mole approach to FOIA litigation undermines the "fairness to parties seeking disclosure" which demands "a full and concentrated opportunity to challenge and test comprehensively the agency's evidence regarding all claimed exemptions." *Senate of Puerto Rico*, 823 F.2d at 580 ("We will not allow an agency 'to play cat and mouse by withholding its most powerful cannon until after the District Court has decided the case and then springing it on surprised opponents and the judge.'") (quoting *Grumman Aircraft Engineering Corp. v. Renegotiation Board*, 482 F.2d 710, 721–22 (D.C. Cir. 1973)).

### 2. The remaining disputed materials fall outside the scope of the National Security Act of 1947.

Contrary to the DOJ's assertions, Westlaw printouts and SARs prepared by the DOJ do not "fall squarely within the scope" of the National Security Act of 1947. Def.'s Renewed Mot. at 13–14. The D.C. Circuit has never held that records created and controlled by a non-Intelligence Community ("IC") agency, such as the ones at issue in this case, can be properly withheld pursuant to the National Security Act. Pl.'s Renewed Mot. at 16–17. The DOJ's only response on this point is a reference to three cases in a footnote of its Motion, but all three cases concerned FOIA requests to IC agencies and are not relevant to the issue before the court. Def.'s Renewed Mot. 13 n.3. Furthermore, the DOJ has offered no explanation for how any government official can discuss or otherwise release publicly available information related to FISA activities if the Exemption 3 rule is as broad as the agency claims. Def.'s Renewed Mot. 14. Because the Westlaw printouts and SARs fall outside the scope of the National Security Act, the DOJ's

withholdings are improper and contrary to the FOIA.

Exemption 3 applies to records that are "specifically exempted from disclosure by statute." 5 U.S.C. § 552(b)(3). In order to establish that a record is exempt under the provision, an agency must show that the withheld material falls within "the statute's coverage." *DiBacco v. U.S. Army*, 795 F.3d 178, 197 (D.C. Cir. 2015). Courts have acknowledged that the National Security Act is "a valid Exemption 3 statute." *Id*. An agency's Exemption 3 claim is therefore satisfied if the records at issue fall within the purview of the National Security Act.

The National Security Act requires the Director of National Intelligence ("DNI") to "protect from unauthorized disclosure intelligence sources and methods." 50 U.S.C. § 3024(i)(1). The DNI has exercised his authority under the National Security Act by establishing a "framework for oversight of classified information," Intelligence Community Directive 700. *DiBacco*, 795 F.3d at 198. Courts have thus found that Exemption 3 applies where "material contains 'intelligence sources and methods' within the National Security Act's coverage," *and* the material is being withheld by a member of the IC. *Id*. at 199. But the NSD is not a member of the IC. *See* Dir. of Nat'l Intelligence, *Members of the IC*.[5]

It is a matter of first impression in this Circuit whether a non-IC agency can assert an Exemption 3 claim based on the National Security Act. But the plain text of the statute indicates that such a claim is impermissible. *See DiBacco*, 795 F.3d at 197–200 (addressing the statutory and regulatory structure of the National Security Act). The National Security Act restricts the ability of the DNI, not civilian agencies, to release certain information. The D.C. Circuit has found that the DNI's directive to other IC members binds those other agencies as well. *DiBacco*,

---

[5] http://www.dni.gov/index.php/intelligence-community/members-of-the-ic (last visited May 4, 2016).

795 F.3d at 198. The National Security Act does not restrict agencies outside of the IC from releasing records. It is contrary to the statute for the NSD, or any other non-IC agency, to assert an Exemption 3 claim based on the National Security Act.

### C. The DOJ has not satisfied the Exemption 7 threshold test or established the necessary criteria to satisfy subsection (E).

Relying on conclusory assertions and misstatements of the law, the DOJ yet again fails to carry its burden of establishing that the remaining challenged withholdings are properly withheld under Exemption 7(E). First, the DOJ's conclusory assertions fail to establish that the SARs were "compiled for law enforcement purposes" under Exemption 7. Second, the agency, erroneously stating the applicable legal standard, fails to establish that the disclosure of the Westlaw printouts or withheld portions of the SARs would risk circumvention of the law.

### 1. The semiannual reports are not subject to Exemption 7(E).

The DOJ's references to cases involving investigatory records are unavailing, and the agency has not shown that the SARs are subject to Exemption 7(E). In support of its Exemption 7 threshold argument, the DOJ relies on cases concerning classic investigatory records, not records compiled for congressional oversight purposes. Def.'s Renewed Mot. at 18. *See Ctr. for Nat'l Sec. Studies v. DOJ*, 331 F.3d 918 (D.C. Cir. 2003) (concerning records of those detained in the investigation into the September 11th attacks); *Jefferson v. DOJ, Office of Prof'l Responsibility*, 284 F.3d 172 (D.C. Cir. 2002) (concerning investigations conducted by OPR).

The DOJ's position is also inconsistent with the two-part test articulated in *Pratt v. Webster*, 673 F.2d 408 (D.C. Cir. 1982), and adopted in *Jefferson*, 284 F.3d at 177. In order to find that records were compiled for law enforcement purposes under the two-part *Pratt* test, a court must find that "[1] the investigatory activity that gave rise to the documents is 'related to the enforcement of federal laws,' and [2] there is a rational nexus between the investigation at

issue and the agency's law enforcement duties." *Id*. The DOJ has not shown that the remaining challenged withholdings meet either standard. The activity giving rise to the SARs—compliance with a congressional oversight requirement—is wholly "[un]related to the enforcement of federal laws." Also, the SARs lack a "rational nexus" between an investigation and an agency's law enforcement duties. The SARs do not relate to any investigation, and the Oversight section of the NSD has no law enforcement duties. *See* EPIC's Mot. at 25. Because the SARs fail the *Pratt* test, they are not law enforcement records.

If the court were to extend the agency's "related to" test, Def.'s Renewed Mot. 17–18, beyond the investigatory records context, it would be practically limitless and provide no meaningful basis to assess whether records meet the Exemption 7 threshold test. The DOJ's reliance on *Campbell v. DOJ*, 164 F.3d 20 (D.C. Cir. 1998), is similarly unavailing because the court in *Campbell* merely established that deference should be given to agencies that "specializ[e] in law enforcement." *Id*. at 32. The DOJ has not provided any evidence to show that the National Security Division's Oversight Section, which created and maintains the SARs at issue in this case, serve a law enforcement purpose. Def.'s Renewed Mot., Statement of Material Facts ¶¶ 10–13 (ECF No. 36-2).

The only evidence that the DOJ has offered in support of the Exemption 7(E) assertion is a declaration from the FBI, which simply echoes the agency's prior conclusory assertion that the SARs were compiled for law enforcement purposes because they "were drawn from FBI investigative files." Fourth Hardy Decl. ¶ 19; see Def.'s Opp'n to Pl.'s Mot. for Summ. J. at 14 (ECF No. 27). But summaries of significant legal interpretations by the FISC, its jurisdiction, and FISA procedures sent to Congress for oversight plainly fall outside the scope of the DOJ's "law enforcement purpose." *See* Pl.'s Reply at 12–14. As EPIC previously explained, the

SARs—created by the NSD's Oversight Section—were compiled for oversight, not law enforcement, purposes. *See* Pl.'s Mot. at 25–27; Pl.'s Reply at 11–14. The SARs are oversight records, prepared by an oversight section, for a congressional oversight body. The agency's proposed test impermissibly stretches the text of the statute, and would transform the FOIA from a "disclosure statute" to a "withholding statute." *EPA v. Mink*, 410 U.S. 73, 79 (1973). Because the SARs were not compiled for law enforcement purposes, they do not satisfy the Exemption 7 threshold, and were thus improperly withheld.

Even if the DOJ established that the SARs were "compiled for law enforcement purposes," the agency would still fall short of establishing that disclosure of the reports would "risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E); Pl.'s Mot. at 27–28. The DOJ asserts that the agency need not show risk of harm when withholding "techniques or procedures" under Exemption 7(E), but this is incorrect as a matter of law. Def.'s Renewed Mot. at 17. Courts in this Circuit "[have] applied the 'risk circumvention of the law' requirement both to records containing guidelines and to records containing techniques and procedures." *Pub. Employees for Envtl. Responsibility v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mexico*, 740 F.3d 195, 205 n.4 (D.C. Cir. 2014); see also *Blackwell v. FBI*, 646 F.3d 37, 41–42 (D.C. Cir. 2011) (requiring the FBI to demonstrate how the release of forensic examination "procedures" would risk circumvention of the law). Thus, to the extent that the information withheld from the SARs are "techniques or procedures," the DOJ must establish that disclosure of that information would "risk circumvention of the law." § 552(b)(7)(E).

The limited portions of Mr. Hardy's declaration made available to EPIC provide no detail as to the asserted risk posed by the disclosure of the SARs. Fourth Hardy Decl. ¶ 21–23. EPIC renews its argument that the DOJ has failed to establish that disclosure of summaries of legal

12

opinions, legal memos, or statistics would "reasonably be expected to risk circumvention of the law." Pl.'s Mot. at 27–28; Pl.'s Reply at 14–15.

Because the DOJ has failed to establish that the SARs were compiled for law enforcement purposes and that disclosure would risk circumvention of the law, the agency has improperly withheld the SARs under Exemption 7(E).

        **2.**      **Publicly available Westlaw case printouts can never be properly withheld under Exemption 7(E).**

The agency argues that because the Westlaw printouts "relate to" FISA pen registers, the Westlaw printouts were compiled for law enforcement purposes. Def.'s Renewed Mot. at 18. But the DOJ's conclusory assertions are inadequate to justify the withholding of the Westlaw case printouts contained in Document 68. These decisions, which are publicly available in a widely used research database, were not "compiled for law enforcement purposes," but were compiled by a federal court. *See Milner v. Dep't of Navy*, 131 S. Ct. 1259, 1272 (2011) (Alito, J., concurring) ("[L]aw enforcement includes . . . the investigation and prosecution of offenses . . . and proactive steps designed to prevent criminal activity and maintain security."); Pl.'s Reply at 12.

The DOJ has also failed to establish how disclosure of a widely available Westlaw case printouts would "risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). After insisting that the "circumvention of the law" requirement does not apply, the agency attempts to rely on the FBI's conclusory declaration to show the risk of harm. The declaration, however, fails to logically connect the disclosure of information "described and discussed" in legal opinions on a public research database to a "risk of circumvention of the law." *See* Fourth Hardy Decl. ¶ 22. The DOJ has thus failed to carry its burden of showing that disclosure of the Westlaw printouts would risk circumvention of the law.

The Court should categorically reject the agency's claim that publicly available court decisions can be withheld under Exemption 7(E). The Westlaw case printouts at issue are already in the public domain, they have "thereby shed their Exemption [7] protection." *Cottone v. Reno*, 193 F.3d 550, 554 (D.C. Cir. 1999) (*discussed in Ewell v. DOJ*, No. CV 14-495 (RDM), 2016 WL 316777, at *6 (D.D.C. Jan. 26, 2016)). A plaintiff who can establish "that there is a permanent public record of the exact portions" of requested records can defeat any claimed exemption under the public domain doctrine. *Cottone*, 193 F.3d at 554 (quoting *Davis v. DOJ*, 968 F.2d 1276, 1280 (D.C. Cir. 1992)). All the plaintiff needs to do to meet this standard is "point to specific information in the public domain that appears to duplicate that being withheld." *Id*.

There is no dispute that the case printouts originated from Westlaw. *See* Def.'s Opp'n at 5 (asserting the proper classification of "Westlaw printouts"); Fourth Hardy Decl. ¶ 3 (describing Document 68 as containing "Westlaw case printouts"). Similarly, there can be no dispute that information provided by Westlaw is publicly accessible. Because the Westlaw case printouts withheld by the DOJ are *exact* duplicates of cases already made publicly available on Westlaw, those printouts are not exempt from disclosure under the FOIA.

## II. The DOJ has failed to release reasonably segregable portions of the remaining challenged withholdings.

The DOJ simply recites the statute's language to conclude that it has produced all segregable material. Def.'s Renewed Mot. at 19. Even where an agency has properly invoked a FOIA exemption, it must disclose any "reasonably segregable portion" of the record requested. 5 U.S.C. § 552(b); *see Stolt-Nielsen Transp. Group Ltd v. United States*, 534 F.3d 728, 734 (D.C. Cir. 2008) (quoting *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1116 (D.C. Cir. 2007)); *Oglesby v. U.S. Dep't of the Army*, 79 F.3d 1172, 1176 (D.C. Cir. 1996) ("If a document contains exempt information, the agency must still release 'any reasonably segregable portion' after

deletion of the nondisclosable portions."). Thus the FOIA "makes clear that the fact that a responsive document fits within an applicable exemption does not automatically entitle the keeper of such material to withhold the *entire* record." *Charles v. Office of the Armed Forces Med. Exam'r*, 979 F. Supp. 2d 35, 42 (D.D.C. 2013).

For the FBI, Mr. Hardy argues that the DOJ properly withheld the "seemingly public" Westlaw case printouts in full because, "when read or viewed within the context of other available documents and information, this material could reasonably be expected to reveal highly sensitive information to sophisticated adversaries." Fourth Hardy Decl. at 23. But the Westlaw printouts are not covered by any of the FOIA's exemptions and therefore they must be released. *Shapiro*, 2016 WL 287051, at *13. But even if portions of those Westlaw printouts were properly exempted, it is implausible that entire legal opinions would be devoid of reasonably segregable material. Thus, even if some of the Westlaw case printouts could fall under a FOIA exemption, the DOJ has improperly withheld reasonably segregable portions of those printouts.

Regarding the SARs, the NSA and the FBI assert that all reasonably segregable material has been released to EPIC. Second Sherman Decl. ¶¶ 16–17; Fourth Hardy Decl. ¶¶ 45–46. The agencies are incorrect. The DOJ has withheld summaries of FISC opinions, FISC jurisdiction, FISA procedures, and aggregate statistics contained in the SARs, which as EPIC has argued, fall outside the FOIA's exemptions. Pl.'s Mot. at 31. Furthermore, the agency has conceded that aggregate statistics and other portions of the SARs are not exempt under the FOIA. Thus, by failing to produce those portions of the SARs, the DOJ has failed to disclose all reasonably segregable material to EPIC.

**CONCLUSION**

For the foregoing reasons, the Court should deny in part the DOJ's Motion for Summary Judgment, and grant EPIC's Renewed Motion for Summary Judgment as to the remaining challenged withholdings.


Dated: May 6, 2016                        Respectfully submitted,

                                          MARC ROTENBERG
                                          EPIC President and Executive Director

                                          /s/ Alan Jay Butler
                                          ALAN JAY BUTLER
                                          Senior Counsel
                                          Electronic Privacy Information Center
                                          1718 Connecticut Ave., NW
                                          Suite 200
                                          Washington, DC 20009

                                          *Counsel for Plaintiff*