# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER ) ) ) ) Plaintiff, ) ) v. ) ) UNITED STATES ) DEPARTMENT OF JUSTICE ) ) ) Defendant. ) | Case No. 1:13-cv-01961-KBJ |

**PLAINTIFF'S REPLY IN SUPPORT OF THE RENEWED MOTION FOR SUMMARY JUDGMENT**

MARC ROTENBERG
EPIC President

*/s/ Alan Jay Butler*
ALAN JAY BUTLER
EPIC Senior Counsel
Electronic Privacy Information Center
1718 Connecticut Ave., NW
Suite 200
Washington, DC 20009

*Counsel for Plaintiff*

**TABLE OF CONTENTS**

Argument ............................................................................................................................... 1

    I.   The DOJ improperly withheld summaries of FISC opinions and orders concerning the legality of a surveillance technique that was widely known to the public. ................................................................................................................ 2

    II.  The DOJ continues to withhold portions of the semiannual reports that are not properly classified .......................................................................................... 3

    III. The DOJ has failed to satisfy the requirements of Exemption 3. ................................ 7

    IV. The DOJ has failed to carry its burden of establishing that Exemption 7(E) applies to the withheld records. .................................................................... 8

        A.   The congressional oversight reports were compiled for oversight, not law enforcement purposes. ........................................................................... 9

        B.   The DOJ has failed to establish that disclosure of summaries of FISC decisions and discussions of FISA process and FISC jurisdiction would risk circumvention of the law. .................................................................. 12

        C.   Collection of "post-cut-through dialed digits" is a publicly known technique that falls outside Exemption 7(E). ........................................... 13

        D.   Publicly available Westlaw printouts cannot be withheld under Exemption 7(E). ................................................................................... 14

    V.  The DOJ has failed to release all reasonably segregable, non-exempt material. ......... 14

Conclusion ........................................................................................................................... 15

## TABLE OF AUTHORITIES

**Cases**

*[Redacted]*,
  No. PR/TT [Redacted] (FISA Ct. 2010) .................................................................................. 13

*Abramson v. FBI*,
  456 U.S. 615 (1982) ................................................................................................................. 10

*Assassination Archives & Research Ctr., Inc. v. CIA*,
  903 F. Supp. 131 (D.D.C. 1995) ....................................................................................... 11, 12

*Blackwell v. FBI*,
  646 F.3d 37 (D.C. Cir. 2011) ................................................................................................... 12

*Campbell v. DOJ*,
  164 F.3d 20 (D.C. Cir.1998) ...................................................................................................... 9

*Carter v. U.S. Dep't of Commerce*,
  830 F.2d 388 (D.C. Cir. 1987) ................................................................................................... 5

*Ctr. for Nat'l Sec. Studies v. DOJ*,
  331 F.3d 918 (D.C. Cir. 2003) ................................................................................................... 9

*EPIC v. DEA*,
  --- F. Supp. 3d ---, No. 14-317, 2016 WL 3557007 (D.D.C. June 24, 2016) ....................... 2, 13

*EPIC v. DHS*,
  777 F.3d 518 (D.C. Cir. 2015) ................................................................................................. 11

*Gutman v. DOJ*,
  238 F. Supp. 2d 284 (D.D.C. 2003) ........................................................................................... 4

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
  806 F.3d 125 (3d Cir. 2015) .................................................................................................... 13

*In re U.S.*,
  515 F. Supp. 2d 325 (E.D.N.Y. 2007) ....................................................................................... 2

*In re U.S.*,
  622 F. Supp. 2d 411 (S.D. Tex. 2007) ....................................................................................... 2

*Johnson v. EOUSA*,
  310 F.3d 771 (D.C. Cir. 2002) ................................................................................................. 14

*Judicial Watch, Inc. v. DHS*,
  841 F. Supp. 2d 142 (D.D.C. 2012) ......................................................................................... 15

*Krikorian v. Dep't of State*,
  984 F.2d 461 (D.C. Cir. 1993) ................................................................................................... 8

*Larson v. Department of State*,
  565 F.3d 857 (D.C. Cir. 2009) ................................................................................................... 8

*Lesar v. DOJ*,
  636 F.2d 472 (D.C. Cir. 1980) ................................................................................................. 11

*Maydak v. DOJ*,
  218 F.3d 760 (D.C. Cir. 2000) ................................................................................................... 8

*Meeropol v. Meese*,
  790 F.3d 942 (D.C. Cir. 1983) ................................................................................................... 5

*Pratt v. Webster*,

673 F.2d 408 (D.C. Cir.1982) ............................................................................................. 9
*Pub. Empls. for Envtl. Responsibility v. U.S. Section, Int'l Boundary and Water Comm'n*,
   740 F.3d 195 (D.C. Cir. 2014) ................................................................................. 10, 12
*Public Citizen v. Dep't of State*,
   276 F.3d 634 (D.C. Cir. 2002) ........................................................................................ 5
*Quinon v. FBI*,
   86 F.3d 1222 (D.C. Cir. 1996) ........................................................................................ 9
*Sack v. Dep't of Defense*,
   --- F.3d ---, No. 14-5029, 2016 WL 2941942 (D.C. Cir. May 20, 2016) ................................ 12
*Schoenman v. FBI*,
   763 F. Supp. 2d 173 (D.D.C. 2011) ................................................................................. 8
*U.S. Telecomm. Ass'n v. FCC*,
   227 F.3d 450 (D.C. Cir. 2000) ........................................................................................ 2
*Wilderness Soc. v. U.S. Dep't of Interior*,
   344 F. Supp. 2d 1 (D.D.C. 2004) ................................................................................... 14

**Statutes**

5 U.S.C. § 552(b)(7)(E) .................................................................................................... 12
USA FREEDOM Act, Pub. L. 114-23, 129 Stat. 268 ......................................................... 7

**Other Authorities**

*A Review of the FBI's Use of Pen Register and Trap and Trace Devices Under the Foreign Intelligence Surveillance Act in 2007 through 2009*, Office of the Inspector General, Dep't of Justice (June 2015) ................................................................................................. 14
David McPhie, *Almost Private: Pen Registers, Packet Sniffers, and Privacy at the Margin*, 2005 Stan. Tech. L. Rev. 1 (2005) ......................................................................................... 13
*Members of the IC, Department of State*, Office of the Dir. of Nat'l Intel. ........................ 8
Ryan Singel, *Secret Spy Court Repeatedly Questions FBI Wiretap Network*, Wired (June 11, 2008) ............................................................................................................................ 2

**ARGUMENT**

The Department of Justice ("DOJ") continues to present this Court with a moving target in this case, but the record clearly shows that the agency improperly withheld portions of responsive records and that there is significant reason to doubt the agency's prior representations. Inexplicably, the DOJ argues that it is entitled to summary judgment, Mem. Opp. Pl.'s Cross-Mot. for Summ. J. ("Def.'s Opp'n") 1, ECF No. 38, in a case where the agency has conceded that it withheld records in violation of the Freedom of Information Act ("FOIA"). The DOJ's attempts to deflect from the central legal claim before this Court by arguing that that the agency "willingly" released additional records, Def.'s Opp'n 1, are entirely misleading: the agency was required to release all non-exempt records responsive to EPIC's request. The DOJ's argument that it "inadvertently redacted" records by "mistake," Def.'s Opp'n 1, only undercuts the credibility of the agency's own prior statements supporting the withholdings.

The Court should not rely on the DOJ's claims that the agency has properly evaluated the scope of Exemptions 1, 3 and 7(E) when the DOJ has repeatedly failed to do so. The DOJ has now released previously-redacted material from three of the semiannual reports in response to an order from the Office of the Director of National Intelligence ("ODNI"). These materials should never have been withheld, and the Court should not only grant EPIC's motion for partial summary judgment, but should also require the agency to submit all of the responsive records to ODNI for a thorough reevaluation of their proper classification level. The DOJ has also failed to support the Exemption 1, 3 and 7(E) claims regarding the remaining challenged withholdings, and the Court should order the agency to release these materials following *in camera* review.

I.  **The DOJ improperly withheld summaries of FISC opinions and orders concerning the legality of a surveillance technique that was widely known to the public.**

On July 6, 2016, the DOJ produced to EPIC reprocessed versions of documents 125, 126, and 127. *See* Exs.1–4. These documents contain summaries of Foreign Intelligence Surveillance Court ("FISC") decisions and communications with the DOJ from the mid-2000s concerning a well-known and widely discussed pen register surveillance issue—whether investigators could legally collect or use certain "post-cut-through dialed digits" ("PCTDDs") with a mere pen register order. Ex. 2 at 15; Ex. 3 at 9–11, 18–20; Ex. 4 at 8–11. *See In re U.S.*, 622 F. Supp. 2d 411, 421 (S.D. Tex. 2007) (denying pen register order seeking to obtain PCTDDs); *In re U.S.*, 515 F. Supp. 2d 325, 339 (E.D.N.Y. 2007) (holding that obtaining PCTDDs with a mere pen register order would violate the Fourth Amendment); *U.S. Telecomm. Ass'n v. FCC*, 227 F.3d 450, 462–63 (D.C. Cir. 2000) (vacating an FCC order that required telephone companies to produce PCTDDs under the Communications Assistance for Law Enforcement Act). Even the FISC's questioning of the DOJ regarding the collection of PCTDD's was reported in 2008. *See* Ryan Singel, *Secret Spy Court Repeatedly Questions FBI Wiretap Network*, Wired (June 11, 2008).[1]

The DOJ has not, and cannot, argue that the collection of PCTDDs is a secret, and the DOJ cannot support the conclusion that disclosure of these records would create the risk necessary to justify withholding under Exemptions 1 or 7(E). It is simply implausible that disclosure of summaries of court opinions and orders addressing the legality of a surveillance method that has been discussed in detail by courts across the United States (including the D.C. Circuit) could pose a risk to national security or a risk of circumvention of the law. *See EPIC v. DEA*, --- F. Supp. 3d ---, No. 14-317, 2016 WL 3557007 (D.D.C. June 24, 2016) (finding that

---

[1] https://www.wired.com/2008/06/secret-spy-cour/.

exemption "7(E) is intended to protect information that is not generally known to the public").

Not only does the subject matter of the newly released records show that the material was not properly classified, but the DOJ's own classification markings support this conclusion. For example: the subheading "Post-Cut-Through Digits Brief" on page 52 of document 125 is clearly labeled (U) or "unclassified," Ex. 2 at 15; the subheading "Post-Cut-Through Digits" on page 58 of document 126 is clearly labeled (U) or "unclassified," Ex. 3 at 18; the subheading "Post-Cut-Through Digits" on page 58 of document 127 is clearly labeled (U) or "unclassified," Ex. 4 at 9; all of these subheadings were redacted.[2] These PCTDD headings were always unclassified, yet the DOJ has offered no explanation as to why the summaries of the FISC's PCTDD orders and opinions could have been properly classified.

This Court will likely never see such a clear misapplication of Exemption 1. Accordingly, the Court should find that the DOJ unlawfully withheld these records and enter a judgment in favor of EPIC on this count.

## II.    The DOJ continues to withhold portions of the semiannual reports that are not properly classified

As the newly released FISC summaries show, the DOJ was unquestionably withholding records that were not properly classified and therefore not exempt under § 552(b)(1). But even after the new releases, the DOJ continues to withhold copies of Westlaw printouts, summaries of significant FISC legal interpretations (Ex. 2 at 8–10; Ex. 3 at 7, 9; Pl.'s Renewed Mot. Summ. J. ("EPIC RMSJ"), Ex. 1 at 17–18, 22–23, ECF No. 37-4), discussions of FISC jurisdiction (Ex. 2 at 13–14; Ex. 3 at 16–18; EPIC RMSJ, Ex. 1 at 15–16), and discussions of Foreign Intelligence Surveillance Act ("FISA") process improvements (Ex. 2 at 16; Ex 4 at 12; EPIC RMSJ, Ex. 1 at

---

[2] The Court can compare with prior versions of these documents included as Exhibit 1 to EPIC's Renewed Motion for Summary Judgment at 34, 50, 71.

19).

Furthermore, the DOJ has failed to comply with this Court's clear order to "explain with specificity the grounds for each partial or complete withholding that appears in the revised *Vaughn* Index, as well as the reasons why any non-exempt material that DOJ is withholding cannot reasonably be segregated from exempt material." Mem. Op. 9, ECF No. 32. In response to EPIC's arguments and references to the agency's unclear and ambiguous markings in the record, the DOJ cites the Fourth Hardy Declaration, Def.'s Opp'n 3, even though the agency concedes that "the declarations of Mr. Hardy and Mr. Sherman accompanying the reprocessed pages do not address" the portions that EPIC has highlighted. *Id.* at 7. Contrary to the DOJ's assertion, the new markings do not "assist the Court and Plaintiff in identifying which portions of the reproduced pages contain information that is still at issue in this case." Def.'s Opp'n 2. Luckily, the Court now has unredacted copies of the four semiannual reports, which it can review *in camera* to determine which portions remain within the challenged withholdings and which portions should be released.

When reviewing the documents *in camera*, the Court should not accord "substantial weight" to the agency declarations because those declarations have been shown to be incorrect and insufficient many times over in this case. The Court should reject the DOJ's argument that the release of material that should never have been withheld in the first place is somehow evidence of good faith. Def.'s Opp'n 3–4. The cases that the DOJ cites for this proposition do not support it, and they involved circumstances entirely unlike this case. In *Gutman*, the court found that where an agency performed a good faith search for responsive records, the failure to disclose responsive records that were not identified is not evidence of bad faith. *Gutman v. DOJ*, 238 F. Supp. 2d 284, 291 (D.D.C. 2003). The DOJ is similarly wrong to rely on *Meeropol v. Meese*, 790

F.3d 942, 953 (D.C. Cir. 1983), which also involved a challenge to the sufficiency of an agency's search. Because this case does not concern a challenge to a good faith search for responsive records, the court's discussion in *Gutman* is simply irrelevant.

The DOJ also finds no support in *Public Citizen*, where the court stated that if an agency initially refuses to disclose documents in response to a FOIA *request*, the subsequent disclosure of those records upon further review will not be treated as evidence of bad faith. *Public Citizen v. Dep't of State*, 276 F.3d 634, 645 (D.C. Cir. 2002). This case does not involve an agency's voluntary disclosure of records after further review of a FOIA request; the DOJ submitted sworn affidavits to the court attesting to the proper applications of Exemptions 1 and 7(E) that the agency now concedes were improper. When "information contained in agency affidavits is contradicted by other evidence in the record" then "there is evidence of bad faith." *Carter v. U.S. Dep't of Commerce*, 830 F.2d 388, 393 (D.C. Cir. 1987). And, even if the Court were to find that there was no intentional bad faith, the repeated mistakes, inconsistencies, and "inadvertent" redactions severely undercut the credibility of the government's supporting declarations.

The DOJ is correct that EPIC seeks the same outcome that the plaintiffs obtained in *Carter*, Def.'s Opp'n 5–6, but the agency has not reviewed the record in that case. The D.C. Circuit found that the "inconsistent" statements made by the government in *Carter* warranted further explanation in the lower court, noting that the court "may require supplemental affidavits from the agency or inspect the documents *in camera*." 830 F.2d at 394 n.19. But on remand, after the court ordered the agency to file a supplemental affidavit, the Department of Commerce found that those materials "should never have been withheld in their entirety." Order, *Carter v. U.S. Dep't of Commerce*, No. 85-975, 1988 WL 1536415 (D.D.C. Mar. 8, 1988). The court in *Carter* ordered the agency to make those materials available to the plaintiff. EPIC seeks the same

outcome in this case.

The DOJ has made inconsistent statements, and the declarations submitted by the agency are contrary to the evidence on the record, which clearly establishes that the DOJ was withholding unclassified material, *see* EPIC RMSJ 14, ECF No. 37-1. The DOJ's only response was the conclusory statement that "officials" have "reviewed all of the documents" and "have determined that they are properly classified," Def.'s Opp'n 7. That statement is contradicted by the record and by the government's own concession that it has "inadvertently" redacted non-exempt material, Def.'s Opp'n 1, 4, 6. As EPIC has already shown, the withholding of material clearly marked (U) under Exemption 1 cannot possibly be upheld and is clear evidence that the declarations were "inconsistent" at best, and likely submitted in bad faith. EPIC's citations to contradictory portion markings in the record, EPIC RMSJ 14, which the DOJ attempts to brush aside as "illogical," clearly support EPIC's point that Court cannot rely on the agency's classification review process or the agency declarations that are based on that review process.

Furthermore, the DOJ has conceded that certain materials are not exempt from disclosure. Some of these materials, including the PCTDD summaries and portions of reprocessed pages, have now been released but the agency continues to withhold other non-exempt portions. For example, the DOJ did not respond in its opposition to EPIC's argument that the agency is improperly withholding "aggregate statistics about the number of FISA applications submitted to and granted by the FISC." EPIC RMSJ 14 (citing RMSJ Ex. 1 at 71). The DOJ has therefore conceded this point and EPIC should be awarded summary judgment on that issue. The DOJ also fails to engage EPIC's argument that disclosure of pen register surveillance techniques, which are widely known and understood by the public, cannot plausibly cause harm to national security as required under Exemption 1. EPIC RMSJ 12–13. The only response that the DOJ offers is that

EPIC has not cited to an "official disclosure." Def.'s Opp'n at 8. But this misses the point. EPIC is not arguing that these reports have been officially disclosed; EPIC is arguing that the DOJ has not met its burden of proof to support the Exemption 1 claim. Take the example of the Westlaw printouts attached to Document 68. These documents are publicly available, and any person (including an adversary of the United States) can read them, yet the DOJ maintains that they are properly classified because their release would cause harm to national security. Def.'s Opp'n 4–10. But the agency has offered no plausible explanation for how disclosure would cause harm.

The three categories of remaining challenged withholdings are all subject to this same infirmity. The DOJ has offered no plausible explanation for how summaries of significant FISC legal interpretations, discussions of the FISC's jurisdiction, and discussions of FISA process improvements could plausibly cause harm to national security. Instead, the DOJ has requested that the Court afford "substantial weight" to agency declarations that have been shown to be inadequate, inconsistent, and incorrect. Def.'s Opp'n 5. The Court will now have the opportunity to review these records *in camera* and make its own determination regarding their contents. But to the extent that these summaries and discussions of basic legal principles concern known surveillance techniques, they should be disclosed. To the extent that these summaries address important interpretations of the law and the jurisdiction of the FISC, they should be disclosed. To the extent that these summaries give an insight into the process through which federal courts consider FISA applications, they should be disclosed. Congress recognized the importance of such disclosures when it passed the USA FREEDOM Act, Pub. L. 114-23, 129 Stat. 268.

## III. The DOJ has failed to satisfy the requirements of Exemption 3.

First, raising the Exemption 3 claims now after failing to do so, the DOJ has violated the D.C. Circuit's requirement that agencies "must assert all exemptions at the same time, in the

original district court proceedings." Pl.'s Opp'n to Def.'s Mot. for Summ. J. ("EPIC Opp'n") 7–8, ECF No. 39 (quoting *Maydak v. DOJ*, 218 F.3d 760, 764 (D.C. Cir. 2000)). Under *Maydak*, the agency has waived its Exemption 3 claims.

Second, the DOJ does not rebut the fact that no court has considered whether a non-Intelligence Community ("IC") member may assert Exemption 3 based on the National Security Act of 1947. EPIC RMSJ 16–17. Contrary to the DOJ's assertion, *Larson v. Department of State*, 565 F.3d 857 (D.C. Cir. 2009), did not involve a non-IC agency's assertion of the National Security Act. There, Exemption 3 was raised directly by the National Security Agency and Central Intelligence Agency—IC agencies that were both parties to the suit. *Id*. at 869. More importantly, the other agency *Larson*, the Department of State, is itself an IC member. *Members of the IC, Department of State*, Office of the Dir. of Nat'l Intel. (last visited July 20, 2016).[3] Similarly, because the other cases the DOJ cites do not involve a non-IC member asserting Exemption 3 based on the National Security Act, those cases are irrelevant. Def.'s Opp'n 11 (citing *Krikorian v. Dep't of State*, 984 F.2d 461, 465 (D.C. Cir. 1993) (involving a Department of State Exemption 3 claim); *Schoenman v. FBI*, 763 F. Supp. 2d 173, 193 n.12 (D.D.C. 2011) (involving a dispute over Exemptions 1, 2, and 7, and where plaintiff "never disputed the FBI's reliance on Exemption 3.")).

The DOJ has failed to satisfy the requirements of Exemption 3.

### IV. The DOJ has failed to carry its burden of establishing that Exemption 7(E) applies to the withheld records.

The DOJ has invoked Exemption 7(E) in withholding two categories of records—semiannual reports and Westlaw printouts—but relies on conclusory declarations and assertions,

---

[3] https://www.dni.gov/index.php/intelligence-community/members-of-the-ic#dos.

and a misstatement of the law. For both categories of records, the agency's Exemption 7(E) claims should be rejected.

### A. The congressional oversight reports were compiled for oversight, not law enforcement purposes.

As a starting point, the DOJ asserts that the NSD's Oversight Section should receive deference for its claim that semiannual reports were "compiled for law enforcement purposes," Def.'s Opp'n 12, but the cases the agency cites do not support the proposition. While the D.C. Circuit once observed that "the DOJ is an agency 'specializ[ing] in law enforcement,'" *Ctr. for Nat'l Sec. Studies v. DOJ*, 331 F.3d 918, 926 (D.C. Cir. 2003), the court could not have reasonably intended that statement to apply to every DOJ component, including non-law-enforcement components like the Office of Legislative Affairs[4] and the National Criminal Justice Reference Service.[5] Indeed, the cases cited by *Center for National Security Studies* involved records held by the FBI, an agency clearly specializing in law enforcement under the meaning of Exemption 7. *Campbell v. DOJ*, 164 F.3d 20, 26 (D.C. Cir. 1998); *Quinon v. FBI*, 86 F.3d 1222, 1228 (D.C. Cir. 1996); *Pratt v. Webster*, 673 F.2d 408, 410 (D.C. Cir. 1982).

EPIC does not dispute that the FBI specializes in law enforcement, but the FBI does not control the records in this case. The NSD's Oversight Section, whose records are at issue, serves primarily administrative functions. *About the Division, Sections and Offices, Oversight Section*, Dep't of Justice (last updated June 28, 2016) ("[T] the Oversight Section identifies individual and systemic incidents of non-compliance, and then works with the responsible agencies to

---

[4] *About the Office*, Office of Legis. Affairs, Dep't of Justice (last updated Oct. 20, 2014), https://www.justice.gov/ola/about-office. ("The Office of Legislative Affairs (OLA) has responsibility for the development and implementation of strategies to advance the Department's legislative initiatives and other interests relating to Congress.").

[5] *About NCJRS*, Nat'l Criminal Justice Reference Serv., Dep't of Justice (last viewed July 19, 2016), https://www.ncjrs.gov/whatsncjrs.html. ("[T]he National Criminal Justice Reference Service (NCJRS) is a federally funded resource offering justice and drug-related information to support research, policy, and program development worldwide.").

correct existing problems, as well as to limit the occurrence of future incidents.").[6] The agency's conclusion that these records were compiled for law enforcement purposes should thus be "scrutinize[d] with some skepticism." *Pub. Empls. for Envtl. Responsibility v. U.S. Section, Int'l Boundary and Water Comm'n* ("PEER"), 740 F.3d 195, 203 (D.C. Cir. 2014).

Even if the Court were to grant the agency deference as to its Exemption 7 threshold claim, the D.C. Circuit has stressed that the focus is on "whether the document in question was compiled for law enforcement purposes." *PEER*, 740 F.3d at 203. In this case, the DOJ has not sufficiently explained how portions of semiannual oversight reports are records "compiled for law enforcement purposes." Instead, the agency asks the Court to adopt an incomplete reading of *Abramson v. FBI*, 456 U.S. 615 (1982) to reach that conclusion. *Abramson* held that "information initially contained in a record made for law enforcement purposes continues to meet the threshold requirements of Exemption 7 where that recorded information is reproduced or summarized in a new document prepared for a now-law-enforcement purpose." *Id*. at 631–32. But principle is limited to instances in which the new record "*essentially reproduces* and is *substantially the equivalent* of all or part of an earlier record made for law enforcement uses." *Id*. at 625. "Of course, it is the agency's burden to establish that the requested information originated in a record protected by Exemption 7." *Id.* at 632.

In this case, the DOJ has failed to carry its burden of establishing that the earlier records from which the disputed records were compiled were made for law enforcement purposes. The conclusory statement that the withheld portions of the semiannual reports "were drawn from FBI investigative files that were generated and compiled pursuant to the law enforcement duties of the FBI" is flatly insufficient. Def.'s Opp'n 12 (citing Fourth Hardy Decl. ¶19). Further, it is

---

[6] https://www.justice.gov/nsd/sections-offices#oversight.

highly questionable that the withheld portions of semiannual reports (i.e. summaries of FISC opinions, and discussions of the FISA process and FISC jurisdiction), which are not themselves based on FBI investigative files, "essentially reproduce" and are "substantially equivalent" to all or part of those investigative files. With respect to discussions of FISA process and FISC jurisdiction, the record shows that information in the summaries was drawn from legal opinions issued by a federal court. Legal opinions are not compiled for law enforcement purposes. To conclude otherwise would expand Exemption 7 far beyond what Congress intended to protect, and violate the D.C. Circuit's instruction to "both narrowly construe the FOIA's exemptions and apply the statute's plain text." *EPIC v. DHS*, 777 F.3d 518, 525 (D.C. Cir. 2015) (citing *Milner v. Dep't of Nay*, 562 U.S. 562, 565 (2011); *see also John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152–53; *Abramson*, 456 U.S. at 630–31).

      The other cases the DOJ cites are distinguishable and, thus, do not advance the agency's position. In *Lesar v. Department of Justice*, the plaintiff sought DOJ reports summarizing an Office of Professional Responsibility inquiry into the legality of the FBI's investigation of Dr. Martin Luther King, Jr. 636 F.2d 472, 487 (D.C. Cir. 1980). But the requested reports were part of an investigation, and thus themselves compiled for law enforcement purposes. *Id.* at 487 ("Indeed, one of the specific purposes for which the Task Force was created was that of ascertaining whether the FBI's activities regarding Dr. King were improper or illegal."). Similarly, *Assassination Archives & Research Center, Inc. v. Central Intelligence Agency*, 903 F. Supp. 131 (D.D.C. 1995), does not advance the agency's position. In *Assassination Archives*, a requester sought an FBI administrative file, including summaries of "information gathered regarding criminal investigations." *Id.* at 133. In *Assassination Archives*, unlike in this case, there was no dispute whether the requested file, which included "names and information received from

third parties who were interviewed," essentially reproduced and was substantially equivalent to the information contained in the original law enforcement files. *Id.*

      **B.**      **The DOJ has failed to establish that disclosure of summaries of FISC decisions and discussions of FISA process and FISC jurisdiction would risk circumvention of the law.**

Exemption 7(E) permits an agency to withhold records only where "disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). The DOJ fails to establish that disclosure of semiannual reports would risk circumvention of the law, and at the same time incorrectly asserts that the requirement does not apply. Contrary to the agency's incorrect assertion, Def.'s Opp'n 13, the D.C. Circuit requires a withholding agency to establish "risk circumvention of the law" for both "guidelines" and "techniques and procedures." *Sack v. Dep't of Defense*, --- F.3d ---, No. 14-5029, 2016 WL 2941942 at *7 (D.C. Cir. May 20, 2016); *PEER,* 740 F.3d at 205 n.4 ("This Court has applied the 'risk circumvention of the law' requirement both to records containing guidelines and to records containing techniques and procedures."). To satisfy this requirement, an agency must "*demonstrate logically* how the release of the requested information might create a risk of circumvention of the law." *Blackwell*, 646 F.3d at 42 (emphasis added). The DOJ's insistence on reading this requirement out of the FOIA is contrary to Circuit law and should be rejected.

The DOJ asserts, without explanation, that disclosure of the withheld semiannual reports "could enable the targets of these techniques to develop countermeasures or avoid detection in order to circumvent the FBI's law enforcement efforts." Def.'s Opp'n 13 (citing Fourth Hardy Decl. ¶ 21). But this is a conclusion, not an argument. The question is whether summaries of FISA process and the FISC's jurisdiction could reasonably risk circumvention of the law. The DOJ has been afforded numerous opportunities to answer this question, but has failed to provide an answer. Because the DOJ has not provided the Court a logical demonstration of how

12

disclosure of the semiannual reports could risk circumvention of the law, the agency has not satisfied Exemption 7(E)'s requirements.

      **C.    Collection of "post-cut-through dialed digits" is a publicly known technique that falls outside Exemption 7(E).**

An agency invoking Exemption 7(E) must show that the information withheld "is not generally known to public." *EPIC v. DEA*, --- F. Supp. 3d ---, 2016 WL 3557007, at *32 (D.D.C. June 24, 2016) (rejecting DEA's 7(E) claim after finding that "publicly available information about [telecommunication] companies' facility locations is as available now as it would be were the DEA to disclose the identities of the companies assisting with" a mass surveillance program).

In its opposition, the DOJ asserts that 7(E) protects "confidential law enforcement techniques," Def.'s Opp'n 13, but fails to acknowledge the fact that many of the summaries withheld concern techniques, like the collection of "post-cut-through dialed digits" that are not confidential. In fact, these techniques are widely discussed by courts, academics, and even the DOJ itself. *See In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125, 137–38 (3d Cir. 2015) (analyzing a FISC discussion on distinguishing content and non-content in the context of post-cut-through dialed digits); *[Redacted],* No. PR/TT [Redacted], at *33 (FISA Ct. 2010) (finding post-cut-through dialed digits "as dialing information, some of which also constitutes contents");[7] David McPhie, *Almost Private: Pen Registers, Packet Sniffers, and Privacy at the Margin*, 2005 Stan. Tech. L. Rev. 1, 17–22 (2005) (discussing whether law enforcement "ought to be able to collect post-cut-through digits under a pen register order in those cases where the pen register cannot be utilized in a way that will automatically filter out digits that represent content"); *A Review of the FBI's Use of Pen Register and Trap and Trace Devices Under the Foreign Intelligence Surveillance Act in 2007 through 2009*, Office of the

---

[7] *Available at* https://www.dni.gov/files/documents/1118/CLEANEDPRTT%201.pdf.

Inspector General, Dep't of Justice (June 2015).[8]

Exemption 7(E) does not apply to the records that contain discussions of post-cut-through dialed digits or other similarly public techniques, such as collection of location data. The Court should now review the records *in camera* and order the DOJ to release the remaining challenged materials.

### D. Publicly available Westlaw printouts cannot be withheld under Exemption 7(E).

The DOJ continues to improperly withhold Westlaw case printouts, relying on a classified declaration to which EPIC has no access. Because the agency has not responded to EPIC's opposition regarding Document 68, no response is required. EPIC reiterates the objections to the agency's withholding of the Westlaw printouts. EPIC RMSJ 18–19; EPIC Opp'n 13–14.

### V. The DOJ has failed to release all reasonably segregable, non-exempt material.

The DOJ's sparse declaration and *Vaughn* index are insufficient to meet the agency's burden to "provide a detailed justification for its non-segregability." *Johnson v. Exec. Office for U.S. Attorneys*, 310 F.3d 771, 776 (D.C. Cir. 2002) (internal quotation marks omitted). Courts have rejected "blanket declaration[s] that all facts are so intertwined to prevent disclosure under the FOIA does not constitute a sufficient explanation of non-segregability . . . . Rather, for *each* entry the defendant is required to specify in detail which portions of the document are disclosable and which are allegedly exempt." *Wilderness Soc. v. U.S. Dep't of Interior*, 344 F. Supp. 2d 1, 19 (D.D.C. 2004) (internal citations omitted)).

As EPIC has explained in detail, unsubstantiated claims of segregability must be rejected. *Judicial Watch, Inc. v. DHS*, 841 F. Supp. 2d 142, 161 (D.D.C. 2012) (finding "empty invocation

---

[8] *Available at* https://oig.justice.gov/reports/2015/o1506.pdf.

of the segregability standard" is not permitted under the FOIA). DOJ has failed to establish that it has disclosed all reasonably segregable non-exempt materials.

## CONCLUSION

For the foregoing reasons, the Court should grant EPIC's Cross-Motion for Summary Judgment.


Dated: July 20, 2016                                  Respectfully submitted,

                                                      MARC ROTENBERG
                                                      EPIC President

                                                      */s/ Alan Jay Butler*
                                                      ALAN JAY BUTLER
                                                      EPIC Senior Counsel
                                                      Electronic Privacy Information Center
                                                      1718 Connecticut Ave., NW
                                                      Suite 200
                                                      Washington, DC 20009

                                                      *Counsel for Plaintiff*