# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil No. 13-cv-1961 (KBJ) |
| DEPARTMENT OF JUSTICE, | ) ) | |
| Defendant. | ) ) ) | |

## MEMORANDUM OPINION

This decision marks the Court's third foray into the dispute between plaintiff Electronic Privacy Information Center ("EPIC") and the Department of Justice ("DOJ") regarding a document request that EPIC submitted to DOJ under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, in October of 2013. EPIC seeks records about a now-expired U.S. government national security program that involved the surreptitious use of pen register and trap-and-trace ("PR/TT") devices to collect communications information (*see* Compl., ECF No. 1), and this Court previously denied EPIC's motion for a preliminary injunction, which the organization had filed contemporaneously with its complaint. *See Elec. Privacy Info. Ctr. v. DOJ*, 15 F. Supp. 3d 32 (D.D.C. 2014) ("*EPIC I*") (denying the request for an order that required DOJ to process the pending FOIA request immediately and provide responsive documents within 20 days). This Court has also summarily denied previous cross-motions for summary judgment in this matter, largely due to the government's continued release of additional responsive materials while the parties were briefing those motions. *See Elec.*

*Privacy Info. Ctr. v. DOJ*, No. 13cv1961, 2016 WL 447426 (D.D.C. Feb. 4, 2016) ("*EPIC II*").

The parties have now narrowed the scope of the dispute, such that the only issues left for this Court to resolve are whether the government has properly withheld two categories of materials pursuant to FOIA Exemptions 1, 3, and/or 7(E): (1) Westlaw printouts that were attached to a certain brief that the government submitted to the Foreign Intelligence Surveillance Court ("FISC"), and (2) portions of certain reports that DOJ issued to Congress, consisting of summaries of FISC legal opinions, descriptions of the scope of the FISC's jurisdiction, and discussions of process improvements (collectively, the "Remaining Challenges").[1] DOJ has submitted a revised *Vaughn* Index and supplemental affidavits speaking to the propriety of these withholdings (*see* Revised *Vaughn* Index, ECF No. 35; Fourth Decl. of David M. Hardy ("Hardy Suppl. Decl."), ECF No. 35-1; Decl. of David J. Sherman ("Sherman Suppl. Decl."), ECF No. 35-2), and it has also filed—*ex parte* and *in camera*—both unredacted copies of the withheld materials and classified versions of the government's supplemental declarations (*see* Notice of Lodging Documents for *In Camera* Review with the Classified Info. Sec. Officer ("Notice of Classified Lodging"), ECF No. 34; *In Camera, Ex Parte* Classified Fourth Decl. of David M. Hardy ("Classified Hardy Suppl.

---

[1] As explained herein (*see infra* Part III.A.1), in the course of evaluating the response to EPIC's FOIA request, DOJ referred particular responsive documents to the Federal Bureau of Investigation ("FBI") and the National Security Agency ("NSA") for review and exemption determinations. (*See* Decl. of Mark A. Bradley ("Bradley Decl."), ECF No. 22-3, ¶ 7.) The NSA and the FBI are not parties to this lawsuit; however, the Remaining Challenges involve withholding determinations that these agencies made. Therefore, the Court will collectively refer to those two agencies, along with DOJ (the named defendant), as "the government" when discussing the various withholdings.

Decl."); *In Camera*, *Ex Parte* Decl. of David J. Sherman ("Classified Sherman Suppl. Decl.")).

Before this Court at present are the parties' renewed cross-motions for summary judgment regarding these two categories of materials. (*See* Def.'s Mot. for Summ. J. ("Def.'s Mot."), ECF No. 36; Pl.'s Renewed Mot. for Summ. J. ("Pl.'s Mot."), ECF No. 37.) DOJ argues that the government properly withheld all of the information at issue in this case pursuant to Exemptions 3 and 7(E) (*see* Def.'s Mot. at 18–23), and that the classified material in the Congressional reports and FISC filing is further properly withheld under Exemption 1 (*see id.* at 13–16).[2] DOJ also contends that the government has released all non-exempt, reasonably segregable portions of the records that EPIC has requested. (*See id.* at 23–24.) EPIC's cross-motion insists that the fact that some of the material that DOJ initially withheld as exempt has now been released suggests that DOJ is acting in bad faith with respect to the withheld materials. (*See* Pl.'s Mot. at 12–14.) EPIC further asserts that none of the information that the government has withheld is properly deemed classified (*see id*. at 16–19), nor is it specifically exempted from disclosure by statute (*id.* at 19–21), nor do the materials satisfy the Exemption 7(E) criteria for protected law-enforcement information (*see id.* at 21–23). EPIC also argues that the government has failed to release all reasonably segregable information. (*See id.* at 24–25.)

On September 30, 2017, this Court issued an order that **GRANTED IN PART AND DENIED IN PART** DOJ's motion for summary judgment, and also **DENIED**

---

[2] Page numbers cited herein refer to those that the Court's electronic case filing system automatically assigns.

EPIC's Renewed Motion for Summary Judgment without prejudice. (*See* ECF No. 45.) This Memorandum Opinion explains the reasons for that order. In sum, and as discussed fully below, the Court has conducted an *in camera* review of the relevant materials, and it concurs with DOJ's contention that FOIA Exemption 3 was properly invoked with respect to the Westlaw printouts and the redacted portions of the Congressional reports that EPIC is challenging in this action. (*See infra* Sec. III.A.1.) It is also clear to the Court that the government has identified an Executive order that specifically authorizes it to maintain the secrecy of the material at issue in the interest of national defense, and that the challenged withheld material is properly classified pursuant to that order; therefore, the government is also entitled to rely on Exemption 1 to withhold the requested information.

Notably, however, DOJ's general success in establishing that the disputed information can be withheld comes with a caveat: the Court has identified at least three redactions in the Congressional reports that DOJ has categorized as undisputed (i.e., "outside the Remaining Challenges") but that do appear to fit within the categories of disputed redactions still at issue in this case. Given this mischaracterization, DOJ has not provided any reasons for the government's withholdings with respect to these particular redactions; therefore, this Court is in no better position to evaluate the appropriateness of these particular redactions than it was prior to the government's supplemental submissions. *See EPIC II*, 2016 WL 447426, at *3 (remarking that "the current sworn statements are too general in scope" and that "because the declarations fail to home in on the specific withholdings now at issue, they are manifestly inadequate to assist the Court in determining whether the declarants have made a

reasonable assessment" under the FOIA).  The Court has also identified two other aspects of the government's withholdings with respect to the congressional reports—a footnote on page 57 of Document 126 and a notation on page 59 of Document 127—that require further clarification, as explained below.  Consequently, the accompanying Order requires DOJ to submit one or more supplemental declarations with respect to the congressional reports, in order to address the issues identified herein, and the Order also sets a schedule for submission of renewed motions for summary.

## I.  BACKGROUND

### A.  Prior Proceedings

The prior proceedings in this matter are described in detail in the two opinions that this Court has previously issued in this case.  *See EPIC I*, 15 F. Supp. 3d 32; *EPIC II*, 2016 WL 447426.  Thus, only a brief recounting of the relevant background details is necessary here.  In short, EPIC submitted a FOIA request to DOJ on October 3, 2013, seeking certain records that pertain to the United States government's prior surreptitious use of PR/TT devices under the Foreign Intelligence Surveillance Act ("FISA"), 50 U.S.C. §§ 1841–46:

> 1.  All reports made to the Permanent Select Committee on Intelligence in the House of Representatives and the Select Committee on Intelligence in the Senate, detailing the total number of orders for pen registers or trap and trace devices granted or denied, and detailing the total number of pen registers or trap and trace devices installed pursuant to 50 U.S.C. § 1843.
>
> 2.  All information provided to the aforementioned committees concerning all uses of pen registers and trap and trace devices.
>
> 3.  All records used in preparation of the above materials, including statistical data.

(EPIC FOIA Request, Ex. A to Pl.'s Mot. for Prelim. Inj., ECF No. 3-2.)  EPIC filed the instant lawsuit, along with a motion for a preliminary injunction, when DOJ did not respond to this FOIA request by the statutory deadline.  (*See* Compl., ECF No. 1.)

After this Court denied EPIC's motion for a preliminary injunction, *EPIC I*, 15 F. Supp. 3d 32, DOJ proceeded to process EPIC's FOIA request, and in doing so, referred certain documents to the Federal Bureau of Investigation ("FBI") and the National Security Agency ("NSA") for review and a withholding determination.  (*See* Bradley Decl. ¶ 7.)  *See also* 28 C.F.R. § 16.4(d)(2)(i) ("When the component processing the request believes that a different component, agency, or other Federal Government office is best able to determine whether to disclose the record, the component typically should refer the responsibility for responding to the request regarding that record, as long as the referral is to a component or agency that is subject to the FOIA.").  The government completed processing EPIC's FOIA request by late summer of 2014, and the parties then proceeded to brief cross-motions for summary judgment.

On October 31, 2014, DOJ submitted its opening summary judgment brief and supporting declarations from declarants of DOJ, the NSA, and the FBI, and it also filed a *Vaughn* Index that contained 92 entries and invoked Exemptions 1, 3, 6, 7(C), and 7(E).  *EPIC II*, 2016 WL 447426, at *2.  (*See Vaughn* Index, Ex. A to 2d Decl. of Mark A. Bradley ("Bradley Decl."), ECF No. 22-3, at 8–24.)  Then, during the course of the remaining briefing of the summary judgment motions, the number of documents at issue shrank substantially, until at a motion hearing that this Court held on January 21, 2016, counsel for EPIC represented that only two issues remained for this Court to resolve:

(1) whether the government has properly withheld the Westlaw printouts that are attached to *Vaughn* Index Document 68, which is a classified legal brief that the government once submitted to the FISC, and (2) whether the government properly redacted from the Semi-Annual Reports that DOJ made to Congress regarding use of FSIA PR/TT devices (hereinafter, the "SARs") information that consisted of summaries of FISC legal opinions, descriptions of the scope of the FISC's jurisdiction, and discussions of FISA process improvements. *Id.* at *3. Importantly, upon its consideration of the parties' briefs and supporting materials, this Court found "that the declarations that DOJ has submitted in support of its motion for summary judgment do not address these withholdings *in particular*" and, thus, DOJ's evidence was insufficient to enable the Court to determine whether the government had properly invoked FOIA exemptions to withhold the information in dispute. *Id.* (emphasis in original). Consequently, the Court denied the parties' cross-motions without prejudice, and required DOJ to submit additional declarations that were tailored to the withholdings at issue. *Id.* at *4. The Court also mandated that DOJ submit the two categories of contested documents for *in camera* review. *Id.*

**B.     Current Proceedings**

On March 18, 2016, DOJ filed an updated *Vaughn* Index and unclassified declarations from David M. Hardy of the FBI and David J. Sherman of the NSA. (*See* Revised *Vaughn* Index; Hardy Suppl. Decl.; Sherman Suppl. Decl.) On that same day, DOJ also lodged with the Classified Information Security Officer classified versions of the Hardy and Sherman supplemental declarations, as well a copy of Document 68 (the FISC brief) and the attached Westlaw printouts, and unredacted copies of the five contested SARs, which are documents 124–127 and 129 on the *Vaughn* Index. (*See*

Notice of Classified Lodging; Classified Hardy Suppl. Decl.; Classified Sherman Suppl. Decl.)

On April 8, 2016, the parties filed renewed cross-motions for summary judgment based on this significantly narrowed range of documents. (*See* Def.'s Mot.; Pl.'s Mot.) These are the motions that are presently before this Court. In its motion, DOJ argues that it is entitled to summary judgment because the government properly invoked FOIA Exemption 1 to withhold the Westlaw printouts attached to Document 68 and the redacted portions SARs, given that these materials contain classified NSA or FBI information. (*See* Def.'s Mot. at 13–16.) DOJ also contends that it was appropriate for the government to rely on FOIA Exemption 3, which permits the withholding of records that are "specifically exempted from disclosure by [a] statute [that] . . . establishes particular criteria for withholding or refers to particular types of matters to be withheld[,]" 5 U.S.C. § 552(b)(3). (*See* Def.'s Mot. at 16–21.) In this regard, DOJ maintains that the withheld material contains classified information regarding United States communications intelligence activities, or pertains to the NSA's operations, and is thus exempted from disclosure under Section 102A(i)(1) of the National Security Act of 1947, 50 U.S.C. § 3024(i)(1) (exempting "intelligence sources and methods" from disclosure), or Section 6 of the National Security Agency Act of 1959, 50 U.S.C. § 3605 (authorizing the withholding of information that relates to "the organization or any function of the [NSA], or any information with respect to the activities thereof"), or 18 U.S.C. § 798(a)(3) (prohibiting disclosure of "classified information. . . concerning the communication intelligence activities of the United States"). (Def.'s Mot. at 18–21). DOJ further insists that the Westlaw printouts and the Congressional reports were

"compiled for law enforcement purposes[,]" and thus fall within the protective ambit of

FOIA Exemption 7(E) (*id.* at 23), and that the government has released all non-exempt,

reasonably segregable portions of records that are responsive to EPIC's FOIA request

(*id.* at 23).

For its part, EPIC argues that by continuously releasing materials that it

originally withheld, DOJ has called into question not only the propriety of the initial

withholdings but also the government's continued withholding of the material that

remains at issue in this case.  (*See* Pl.'s Mot. at 13–15.)  EPIC also challenges DOJ's

Exemption 1 arguments, asserting that the material at issue is not "properly classified"

given its nature (*id.* at 16 (citations omitted)), and that the government's withholding of

otherwise publicly available Westlaw printouts is especially "absurd[]" (*id.* at 17).

With respect to the government's reliance on Exemption 3, EPIC contends, first, that

the government invoked Exemption 3 belatedly and in bad faith; and second, that

affidavits from the FBI and the NSA are legally insufficient to justify the Exemption 3

withholdings because *DOJ's National Security Division* ("NSD") created and controls

the documents at issue, and NSD is not a member of the intelligence community that is

permitted to invoke the National Security Act for purposes of Exemption 3.  (*Id.* at 19–

21).  EPIC also strenuously objects to DOJ's Exemption 7(E) arguments (*id.* at 21–23),

and insists that "it is implausible that entire legal opinions" such as the Westlaw

printouts "would be devoid of reasonably segregable material" (*id.* at 24).  Similarly,

EPIC states that the summaries of FISC opinions, FISC jurisdiction, and FISA

procedures are reasonably segregable, non-exempt material that must be disclosed (*id.*

at 24–25).

The parties' cross-motions for summary judgment are now ripe for this Court's review. (*See* Def.'s Mem. of Law in Opp'n to Pl.'s Mot. ("Def.'s Opp'n"), ECF No. 38; Pl.'s Mem. in Opp'n to Def.'s Mot. ("Pl.'s Opp'n"), ECF No. 39; Def.'s Reply in Supp. of Def.'s Mot., ECF No. 42; Pl.'s Reply in Supp. of Pl.'s Mot. ("Pl.'s Reply"), ECF No. 43.)

## II.    LEGAL STANDARDS

### A.    The FOIA And Its Exemptions

The FOIA seeks to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991) (internal quotation marks and citation omitted). As relevant here, the statute prescribes that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). However, "[i]n enacting FOIA, the Congress sought to balance the public's interest in governmental transparency against legitimate governmental and private interests [that] could be harmed by release of certain types of information." *United Tech. Corp. v. U.S. Dep't of Def.*, 601 F.3d 557, 559 (D.C. Cir. 2010) (second alteration in original) (internal quotation marks and citations omitted).

To that end, the FOIA specifies nine exemptions that permit agencies to withhold information from disclosure. *See* 5 U.S.C. § 552(b); *see also Judicial Watch, Inc. v. U.S. Dep't of the Treasury*, 796 F. Supp. 2d 13, 18 (D.D.C. 2011). For example, agencies are authorized to withhold otherwise responsive documents and information

that are "properly classified" pursuant to an Executive order or otherwise "specifically

exempted from disclosure" under certain statutes. 5 U.S.C § 552(b)(1), (3). "These

exemptions are explicitly made exclusive, and must be narrowly construed." *Milner v.

Dep't of the Navy*, 562 U.S. 562, 565 (2011) (internal quotation marks and citations

omitted). Moreover, even if a portion of the records is justifiably withheld pursuant to

one of the enumerated exemptions, the FOIA provides that "[a]ny reasonably segregable

portion of a record shall be provided to any person requesting such record after deletion

of the portions which are exempt[.]" 5 U.S.C. § 552(b); *see also Assassination

Archives & Research Ctr. v. CIA*., 334 F.3d 55, 58 (D.C. Cir. 2003) (explaining that

"even if an agency establishes an exemption, it must nonetheless disclose all reasonably

segregable, nonexempt portions of the requested record(s)" (citing 5 U.S.C. § 552(b));

*Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977)

("The focus of the FOIA is information, not documents, and an agency cannot justify

withholding an entire document simply by showing that it contains some exempt

material.").

### B.     Summary Judgment In FOIA Cases Generally

"FOIA cases typically and appropriately are decided on motions for summary

judgment." *Judicial Watch, Inc. v. Dep't of the Navy*, 25 F. Supp. 3d 131, 136 (D.D.C.

2014) (quoting *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C.

2009)). A district court reviewing a motion for summary judgment in the FOIA context

conducts a *de novo* review of the record, 5 U.S.C. § 552(a)(4)(B), analyzing all

underlying facts and inferences in the light most favorable to the FOIA requester. *See

Willis v. Dep't of Justice*, 581 F. Supp. 2d 57, 65 (D.D.C. 2008). Because Rule 56 of

the Federal Rules of Civil Procedure provides that summary judgment is warranted only

if the pleadings, disclosure materials on file, and affidavits "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law[,]" Fed. R. Civ. P. 56(a); *see also Judicial Watch v. Navy*, 25 F. Supp. 3d at 136 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986)), in a FOIA case, summary judgment for an agency is appropriate only when the agency proves that it has "fully discharged its [FOIA] obligations[,]" *Moore v. Aspin*, 916 F. Supp. 32, 35 (D.D.C. 1996). Thus, an "agency must demonstrate that 'each document that falls within the class requested either has been produced . . . or is wholly exempt from [FOIA's] inspection requirements[.]'" *Gov't Accountability Project v. FDA*, 206 F. Supp. 3d 420, 430 (D.D.C. 2016) (quoting *Gilda Indus., Inc. v. U.S. Customs & Border Prot. Bureau*, 457 F. Supp. 2d 6, 9 (D.D.C. 2006) (first and second alterations in original).

If an agency contends that it is entitled to withhold information under a FOIA exemption, it "bears the burden of proving the applicability of [the] claimed exemptions[,]" and such a showing is typically made in agency affidavits. *Am. Civil Liberties Union v. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011). Such affidavits are entitled to a presumption of good faith, and the court can award the agency summary judgment based solely on the information so provided. *See Hedrick v. FBI*, 216 F. Supp. 3d 84, 94–95 (D.D.C. 2016). However, to be sufficient to support a summary judgment motion, the agency's affidavits must describe "the justifications for nondisclosure with reasonably specific detail, [and] demonstrate that the information withheld logically falls within the claimed exemption," and must not be "controverted

by either contrary evidence in the record []or by evidence of agency bad faith."
*Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).

Although a reviewing court evaluates *de novo* an agency's invocation of a FOIA exemption and its supporting declarations, *see Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007), "in conducting *de novo* review in the context of national security concerns, courts must accord substantial weight to an agency's affidavit concerning the details of the classified status of the disputed record." *Id.* (emphasis, internal quotation marks, and citation omitted). This is because "'the Executive departments responsible for national defense and foreign policy matters have unique insights into what adverse [e]ffects might occur as a result of a particular classified record[.]'" *McGehee v. Casey*, 718 F.2d 1137, 1148 (D.C. Cir. 1983) (quoting S. Rep. No. 1200, 93d Cong., 2d Sess. 12, U.S. Code & Admin. News 1974, p. 6267 (1974) (Conf. Rpt. on the FOIA Amendments)).

That said, the Court is authorized to conduct its own evaluation of whether or not disputed documents fall within the scope of the enumerated exemptions. The FOIA permits *in camera* review of withheld records, but notably, "'the use of *in camera* affidavits has generally been disfavored[.]'" *Shapiro v. DOJ*, 239 F. Supp. 3d 100, 110 (D.D.C. 2017) (quoting *Armstrong v. Exec. Office of the President*, 97 F.3d 575, 580 (D.C. Cir. 1996)). When presented with an *in camera* submission, the court must ensure that "as much as possible of the in camera submission [is made] available to the opposing party" without disclosing the material that the agency seeks to protect. *Armstrong*, 97 F.3d at 580; *see also Barnard v. Dep't of Homeland Sec.*, 598 F. Supp. 2d 1, 16 (D.D.C. 2009) ("[W]here, as here, an agency indicates that no additional

information concerning an investigation may be publicly disclosed without revealing precisely the information that the agency seeks to withhold, the receipt of *in camera* declarations is appropriate.").

Finally, with respect to the duty to produce all reasonably segregable information that remains after exempt information has been withheld, "[t]he government bears the burden of demonstrating that no reasonably segregable material exists in the withheld documents[,]" and "must provide[ ] a detailed justification and not just conclusory statements to demonstrate that all reasonably segregable information has been released." *Barouch v. DOJ*, 962 F. Supp. 2d 30, 56 (D.D.C. 2013) (internal quotation marks and citation omitted).

## III.    ANALYSIS

To their credit, the parties in this case have diligently narrowed the range of documents at issue from 92 to six, such that only five SARs (Documents 124–127 and 129) and one set of Westlaw printouts (which are attached to Document 68) remain in dispute at this time. *See supra* Part I.A.  The detailed facts that underpin the government's decision to withhold these responsive records are revealed only in the classified declarations that DOJ has provided to this Court—which, admittedly, puts EPIC at a distinct disadvantage with respect to its argument that the withheld information should be released.  (*See* Pl.'s Opp'n at 5 (noting that DOJ makes only "conclusory assertions" in the public filings, and "has redacted nearly all of the substantive arguments in support of the withholdings").)  This Court is sensitive to the public's interest in having a fulsome public record, and it is also aware that "*in camera* review 'deprives the FOIA requester of an opportunity to present his interpretation of

the withheld documents'" as a general matter. *Jarvik v. CIA*, 741 F. Supp. 2d 106, 111 (D.D.C. 2010) (quoting *Quinon v. FBI*, 86 F.3d 1222, 1228 (D.C. Cir. 1996)). However, as explained above, the FOIA authorizes an agency to support its withholdings through classified, *in camera* declarations when there is a reasonable risk "that public itemization and detailed justification would compromise legitimate secrecy interests[.]" *Hayden v. Nat'l Sec. Agency/Cent. Sec. Serv.*, 608 F.2d 1381, 1385 (D.C. Cir. 1979); *see also Edmonds v. FBI*, 272 F. Supp. 2d 35, 46–47 (D.D.C. 2003) (explaining that *in camera* review is warranted "when extensive public justification would threaten to reveal the very information for which a FOIA exemption is claimed" (quoting *Lykins v. DOJ*, 725 F.2d 1455, 1463 (D.C. Cir. 1984) (alteration in original))).

This is such a case. In this Court's view, the content of the classified declarations, along with the unredacted materials to which they pertain, justify the government's concerns about potentially harmful disclosure. To the extent that this Court is able, it has explained below its reasons for concluding that the government has properly relied on FOIA Exemption 3, and alternatively FOIA Exemption 1, to withhold nearly all of the redacted and undisclosed materials that are still at issue in this case, including the Westlaw printouts and nearly all of the portions of the SARs that are at issue. However, *in camera* review of the SARs reveals that the government may have failed to address a handful of withholdings that are still in dispute, and as a result, the Court will require supplemental submissions regarding these redactions, as described below.

## A. The Government Properly Invoked Exemption 3 To Withhold The Information At Issue

An agency may rely on Exemption 3 to withhold records in response to a FOIA request where a statute "specifically exempt[s]" the requested information from disclosure, so long as that statute *either* "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue[,]" *or* "establishes particular criteria for withholding or refers to particular types of matters to be withheld[.]" 5 U.S.C. § 552(b)(3). The two listed conditions are disjunctive, and thus the statute at issue "need satisfy only one of them to qualify under Exemption 3." *Gov't Accountability Project*, 206 F. Supp. 3d at 428 (citing *Pub. Citizen, Inc. v. Rubber Mfrs. Ass'n*, 533 F.3d 810, 813 (D.C. Cir. 2008)). However, notably, "[b]efore a court inquires into whether any of the [two statutory] conditions [for withholding information] are met . . . it must first determine whether the statute is a withholding statute at all by deciding whether it satisfies 'the threshold requirement that it *specifically exempt* matters from disclosure.'" *Pub. Citizen*, 533 F.3d at 813–14 (emphasis in original) (quoting *Reporters Comm. for Freedom of the Press v. DOJ*, 816 F.2d 730, 734 (D.C. Cir. 1987)).

"To determine whether a statute qualifies as a withholding statute as required, courts look to 'the language of the statute on its face[.]'" *Gov't Accountability Project*, 206 F. Supp. 3d at 429 (quoting *Zanoni v. U.S. Dep't of Agric.*, 605 F. Supp. 2d 230, 236 (D.D.C. 2009)). "In other words, a statute that is claimed to qualify as an Exemption 3 withholding statute must, on its face, exempt matters from disclosure." *Reporters Comm.*, 816 F.2d at 735, *rev'd on other grounds*, 489 U.S. 749 (1989). If the statute passes this threshold test, the court next determines whether the statute satisfies

either of the two statutory disjunctive conditions for withholding the responsive information. *See Gov't Accountability Project*, 206 F. Supp. 3d at 428; *see also Fitzgibbon*, 911 F.2d at 761-62 ("[T]he sole issue for decision [with respect to Exemption 3] is the existence of a relevant statute and the inclusion of withheld material within the statute's coverage." (internal quotation marks and citation omitted)).

Here, the government has pointed to three separate statutes—Section 102A(i)(1) of the National Security Act of 1947, 50 U.S.C. § 3024(i)(1); Section 6 of the National Security Agency Act of 1959, 50 U.S.C. § 3605; and 18 U.S.C. § 798—and asserts that each qualifies as a withholding statute for the purpose of Exemption 3. (*See* Def.'s Mot. at 18-21.) The government further argues that these statutes required the relevant government agencies to withhold the redacted portions of the SARs and the Westlaw printouts, because that material either concerns U.S. communications intelligence activities and is classified, or pertains to NSA operations. (*See id.*) As explained below, there appears to be no dispute about this legal analysis; instead, EPIC seeks to advance the novel contention that, even though DOJ's NSD referred certain documents to the FBI and the NSA for exemption determinations under governing FOIA regulations, the government cannot assert certain otherwise applicable FOIA exemptions in the instant context because the FOIA request was directed to NSD in the first instance. As explained below, this Court agrees with the government that Exemption 3 is applicable to the withholdings at issue, and it rejects EPIC's assertion that this FOIA exemption has nevertheless been improperly invoked under the circumstances presented in this case.

1.    The Statutes That The Government Relies Upon Qualify As  
        "Withholding Statutes," And The Challenged Information Was  
        Within The Scope Of Each Statute

The FBI and the NSA have each reviewed the materials responsive to EPIC's FOIA request, and both have cited Exemption 3 to withhold certain information.  (*See supra* Section I.B.)  The FBI seeks to withhold the Westlaw printouts and to make redactions on 20 pages of the SARS, and it relies on a single statute to justify all of these withholdings under Exemption 3—Section 102A(i)(1) of the National Security Act of 1947, 50 U.S.C. § 3024(i)(1), which requires the "Director of National Intelligence" ("DNI") to "protect from unauthorized disclosure intelligence sources and methods."  (Hardy Suppl. Decl. ¶ 15.)  The DNI has delegated enforcement of this National Security Act mandate to the heads of the 17 agencies that constitute the "Intelligence Community[,]" *see* Intelligence Community Directive 700, at 3 (June 7, 2012), available at http://www.dni.gov/files/documents/ICD/ICD_700.pdf, and the FBI and the NSA (but not the NSD) are among these agencies, *see* Dir. of Nat'l Intelligence, Members of the IC, https://www.dni.gov/index.php/what-we-do/members-of-the-ic; *see also DiBacco v. U.S. Army*, 795 F.3d 178, 197–99 (D.C. Cir. 2015); *ACLU v. U.S. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011).  The NSA has also relied on Section 102(A)(i)(1) of the National Security Act to justify certain withholdings.  (*See* Vaughn Index at 3.)  Additionally, with respect to its withholding on page 51 of Document 129, the NSA also points to 50 U.S.C. § 3605 (Section 6 of the National Security Agency Act of 1959), which authorizes the government to withhold information that relates to "the organization or any function of the [NSA], or any information with respect to the activities thereof," and 18 U.S.C. § 798, which prohibits disclosure of "classified

information . . . concerning the communication intelligence activities of the United States[.]" (*See* Sherman Suppl. Decl. ¶ 2.)

It is well established that each of the statutes that the FBI and the NSA relies upon qualifies as an Exemption 3 withholding statute, because each specifically exempts particular material from disclosure and satisfies one aspect of Exemption 3's disjunctive tests. *See, e.g.*, *DiBacco*, 795 F.3d at 199 (noting that Section 102A(i)(1) is an Exemption 3 withholding statute that mandates withholding of intelligence sources and methods); *Hayden v. NSA*, 608 F.2d 1381, 1389–90 (D.C. Cir. 1979) (explaining that Section 6 is an Exemption 3 withholding statute that specifies information to be withheld); *Larson v. Dep't of State*, 565 F.3d 857, 868 (D.C. Cir. 2009) (finding that 18 U.S.C. § 798 is an Exemption 3 withholding statute that mandates withholding of the covered material). Thus, the question this Court must address is whether the withheld material at issue here falls within the scope of these statutes.

With respect to the portions of the SARs that the FBI has withheld and that are discussed in the unredacted materials that the government has submitted, this Court finds that withheld material pertains to specific surveillance techniques (*see* Document 124 at 3–4, 47, 50; Document 125 at 3–5, 50–52; Document 126 at 56–60; Document 127 at 58–61), or discusses particular strengths or limitations of the FISC process in relation to surveillance techniques, and thus the reactions broadly pertain to intelligence methods that must be protected from disclosure under Section 102A(i)(1). Turning to the Westlaw printouts, this Court likewise finds that, given the context in which the printouts exist in this litigation—*i.e.*, as part of a classified brief submitted to the FISC—the printouts also constitute intelligence sources and methods for purposes of

Section 102A(i)(1), and therefore the FBI properly withheld those materials. With respect to the portions of the SARs that the NSA has redacted, this Court's own *in camera* review of the unredacted text of the material reveals that the withheld material discusses a particular classified NSA surveillance method (*see* Document 129 at 51), and thus is protected from disclosure.[3]

In light of its own *in camera* review and the submitted declarations, the Court readily finds that the material falls within the ambit of each cited statute—specifically, the withheld information pertains to intelligence sources and methods and NSA activities within the scope of 50 U.S.C. §§ 3024(i)(1) and 3605, and also contains classified information concerning communication activities within the ambit of 18 U.S.C § 798.

      2. <u>DOJ Is Entitled To Invoke Exemption 3 Based On Affidavits From The FBI And The NSA Under The Circumstances Presented Here</u>

EPIC does not contest that the statutes that the government relies upon are withholding statutes, nor does it appear that EPIC rejects the prior substantive analysis—*i.e.*, that the withheld information at issue in this case can properly be withheld under Exemption 3. Indeed, it has made no argument to the contrary. But EPIC does vigorously maintain that DOJ has not followed the right *procedure* for establishing the applicability of Exemption 3 with respect to the withholdings at issue. Specifically, EPIC maintains that a division of DOJ—the NSD—"created and controls the records at issue" (Pl.'s Mot. at 19), yet there is no declaration from NSD to justify any of the withholdings; rather, the only declarations the government has provided are

---

[3] Section III.B *infra*, further explains why the redacted material either constitutes intelligence sources and methods, or is classified, or has otherwise been properly withheld.

from the FBI and NSA (*see id.*).  Continuing along this track, EPIC argues that "[i]t is a matter of first impression in this Circuit whether a non-[Intelligence Community] agency can assert an Exemption 3 claim based on [Section 102A(i)(1) of] the National Security Act."  (*Id.* at 20.)  EPIC further maintains that DOJ has asserted Exemption 3 belatedly and in bad faith, and that DOJ in fact waived the exemption by not asserting it during the prior round of summary judgment briefing in this matter.  (*Id.* at 19; Pl.'s Opp'n at 10–11.)

The Court will address this last alleged procedural deficiency first:  given the convoluted procedural history of the instant case, EPIC's argument that the government has waived the right to rely on Exemption 3 by failing to invoke that exemption in its earlier *Vaughn* Index is not well-founded.  The parties here have engaged in two rounds of summary judgment briefing before this Court, and at this Court's request, the government has now provided a more detailed explanation of its withholdings, asserting Exemption 3 along with the previously-raised Exemptions 1 and 7(E).  The Court does not perceive the government as having acted in bad faith, nor does it view the government's filings as providing post-hoc rationalizations for withholdings already made.  Rather, the document-production process is a fluid one at the district-court level, and it often includes contemporaneous review and continuous production determinations by agency-defendants.  Thus, in this Court's view, the government is entitled to articulate fully all of the justifications for the withholdings that it makes prior to the Court's ruling on summary judgment—and this is especially so when the Court has expressly invited it to do so.

To be sure, the D.C. Circuit's precedent prohibits an agency from invoking new FOIA exemptions when the proceeding is before the district court *after remand*, following an appeal, as EPIC points out. (*See* Pl.'s Opp'n at 10 (citing *Maydak v. DOJ*, 218 F.3d 760, 764 (D.C. Cir. 2000).) But the D.C. Circuit's holding is clearly grounded in finality concerns. *See Maydak*, 218 F.3d at 764 (finding that allowing an agency to invoke new FOIA exemptions on remand—thereby essentially restarting the litigation—could interfere with the FOIA's "statutory goals of 'efficient, prompt, and full disclosure of information,' and with 'interests of judicial finality and economy'" (quoting *Senate of Puerto Rico v. DOJ*, 823 F.2d 574, 580 (D.C. Cir. 1987))); *see also CREW v. DOJ*, 854 F.3d 675, 680–81 (D.C. Cir. 2017) (holding that district court erred in allowing agency to assert new FOIA exemption when considering case on remand); *Senate of Puerto Rico*, 823 F.2d at 580 (noting that agencies cannot "make new exemption claims to a district court after the judge has ruled in the other party's favor") (citation omitted). And no such problem is present here, because the Court never reached the merits of the parties' initial summary judgment motions, and there have not yet been any appellate proceedings. What is more, as far as this Court can tell, EPIC has not been prejudiced in any meaningful sense by the delay in the government's assertion of Exemption 3, nor has it provided any *evidence* of bad faith with respect to the government's timing on this issue. (*See* Pl.'s Mot. at 19.)

EPIC's contention that DOJ is not the proper agency to invoke Exemption 3 (*see* Pl.'s Mot. at 20 ("The National Security Act restricts the ability of the DNI, not civilian agencies, to release certain information")), and that its reliance on affidavits from NSA and the FBI is improper (*see id.* at 19 ("The DOJ has not submitted any declaration

from the NSD, the agency that created and controls the records at issue, to justify the Exemption 3 claim")), fares no better. The record clearly reveals that DOJ followed a *referral* process when it responded to EPIC's FOIA request, consistent with the agency's regulations. Specifically, DOJ's regulations expressly provide that, when a DOJ component that is processing a FOIA request "believes that a different component, agency, or other Federal Government office is best able to determine whether to disclose [a certain] record, the component typically should refer the responsibility for responding to the request regarding that record, as long as the referral is to a component or agency that is subject to the FOIA." 28 C.F.R. 16.4(d)(2)(i). Moreover, and importantly, when such a referral takes place, "the second agency . . . then becomes responsible for directly responding to the requester as to those documents." *Schoenman v. FBI*, No. 04-cv-2202, 2009 WL 763065, at *6 (D.D.C. Mar. 19, 2009). The applicable regulations further prescribe a more limited "consultation" procedure that applies "[w]hen records originated with the component processing the request, but contain within them information of interest to another component, agency, or other Federal Government office[.]" 28 C.F.R. § 16.4(d)(1). In that circumstance, "the component processing the request should typically consult with that other component or agency prior to making a release determination." *Id.*

Here, the undisputed evidence establishes that DOJ's NSD referred the SARs and Westlaw printouts to the FBI and NSA pursuant to these regulations with the intent of having those other agencies determine whether any exemptions should be invoked. (*See* Bradley Decl. ¶ 7 ("In addition, NSD referred documents to the [NSA, FBI, and CIA].") Courts in this district have long recognized the permissibility of such a referral, *see,*

*e.g.*, *Elec. Privacy Info. Ctr. v. NSA*, 795 F. Supp. 2d 85, 92 (D.D.C. 2011), and EPIC

neither challenges the validity of DOJ's referral regulations nor cites any authority that

limits the ability of the agency receiving the FOIA referral to invoke any otherwise-

applicable FOIA exemption. (*See* Pl.'s Mot. at 19–21.)[4] EPIC also fails to explain, or

support, its suggestion that an agency's compliance with its own referral regulations

constitutes "bad faith[.]" (*See id.* at 19.) As such, EPIC's arguments about NSD's

limited authority provide no basis for invalidating the government's assertion of

Exemption 3.

In the final analysis, this Court finds no procedural impropriety in DOJ's

reliance on the FBI and NSA affidavits to support the invocation of Exemption 3,

despite the fact that the withheld records are under NSD's control. And with respect to

Section 102A(i)(1) in particular, the referral process that was followed here indicates

that a member of the Intelligence Community was the relevant decision-maker with

respect to these records, and has called for their withholding, precisely as Section

102A(i)(2) envisions.

### B. The Government Can Also Withhold The Information At Issue Under Exemption 1

FOIA's Exemption 1 provides an independent and alternative justification for the

government's withholding of the disputed portions of the SARs and the Westlaw

printouts. Exemption 1 permits an agency to withhold information that is "specifically

authorized under criteria established by an Executive order to be kept secret in the

---

[4] This is for good reason, as it makes little sense to instruct an agency to refer documents to another agency for the latter agency to make exemption determinations (or, if the consultation process is used, to consult with another before making its own release determination), but at the same time circumscribe the ability of either agency to invoke an otherwise-applicable FOIA exemption as a result of the referral or consultation.

interest of national defense or foreign policy" and is "in fact properly classified pursuant to such Executive order[,]" 5 U.S.C. § 552(b)(1)(A). "Thus, an agency attempting to withhold information under [E]xemption 1 must show that it 'complies with classification procedures established by the relevant executive order and withholds only such material as conforms to the order's substantive criteria for classification.'" *Mobley v. DOJ*, 870 F. Supp. 2d 61, 66 (D.D.C. 2012) (quoting *King v. DOJ*, 830 F.2d 210, 214 (D.C. Cir. 1987)).

As relevant here, Executive Order 13,526 governs the classification of national security information and delineates four conditions that must be met for information to be deemed "classified" properly:

> (1) an original classification authority is classifying the information;
>
> (2) the information is owned by, produced by or for, or is under the control of the United States Government;
>
> (3) the information falls within one or more of the categories of information listed in section 1.4 of this order; and
>
> (4) the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, which includes defense against transnational terrorism, and the original classification authority is able to identify or describe the damage.

Exec. Order 13,526 of Dec. 29, 2009 § 1.1, Classified National Security Information, 75 Fed. Reg. 705, 707 (Jan. 5, 2010) ("E.O. 13,526"). Notably, in section 1.4, the Executive order references eight specific categories of information that "could reasonably be expected to cause identifiable or describable damage to the national security[,]" including information pertaining to "intelligence activities (including covert action) [and] intelligence sources or methods, . . . foreign relations or foreign activities

of the United States, . . . [or] vulnerabilities or capabilities of systems, installations, infrastructures, projects, plans, or protection services relating to the national security[.]" E.O. 13,526 § 1.4(c), (d), (g). Thus, if information that is responsive to a FOIA request fits into any of the eight categories, and if an original classifying authority has designated the information classified based on that authority's determination that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, the information has properly been deemed "classified" and the government can invoke Exemption 1 to withhold the information from disclosure under the FOIA. *See Larson v. Dep't of State*, 565 F.3d 857, 864 (D.C. Cir. 2009) (in evaluating whether material is properly classified, a court must "accord substantial weight to an agency's affidavit concerning the . . . classified status of the disputed record") (internal quotation marks and citation omitted).

In this case, the invocation of Exemption 1 is proper, because the government has both pointed to an applicable Executive Order and established through its declarations that the withheld material is properly classified under the Order's terms.

    1.    <u>The Remaining SARS Challenges Concern Information That Has Properly Been Deemed Classified</u>

EPIC challenges the government's withholding of information in the SARs that pertains to summaries of FISC legal opinions, descriptions of the scope of the FISC's jurisdiction, and discussions of process improvements on Exemption 1 grounds, because in EPIC's view, such information cannot properly be deemed classified. (*See* Pl.'s Mot. at 16–18.) This Court disagrees. Notwithstanding the fact that the challenged SARs redactions concern legal opinions and descriptions, it is clear that they nevertheless satisfy the criteria for classification set forth in Executive Order 13,256.

First of all, the challenged SARs information indisputably satisfies the first and second criteria of Executive Order 13,256. *See* 75 Fed. Reg. at 707. Hardy and Sherman each declares that he has the requisite classification authority (*see* Hardy Suppl. Decl. ¶ 2; Decl. of Alan J. Sherman ("Sherman Decl."), ECF No. 22-6, ¶ 2), and there is no dispute that United States Government has control of the withheld material (*see* Hardy Suppl. Decl. ¶ 11; Sherman Decl. ¶ 2).

The challenged SARs information also constitutes "intelligence sources and methods" within the meaning of section 1.4 of Executive Order 13,256, and thus, satisfies the third criterion. Section 1.4(c) of Executive Order 13,526 provides that information can be deemed classified when "it pertains to . . . intelligence activities (including covert action), intelligence sources or methods, or cryptology[,]" E.O. 15,526 § 1.4(c) (emphasis added), and both Sherman and Hardy declare that the redacted portions of the SARs satisfy this requirement. (*See* Hardy Suppl. Decl. ¶ 11 (declaring that FBI information in the SARs "is exempt from disclosure pursuant to E.O. 13526, §1.4, category (c) intelligence activities (including covert action), intelligence sources and methods, or cryptology"); Sherman Suppl. Decl. ¶ 3 ("I have determined that the NSA information at issue in this case concerns. . . intelligence sources, methods, vulnerabilities and capabilities, and foreign activities of the United States (citing E.O. 13526 § 1.4(d), (g)).) In this regard, the redacted declarations do appear largely conclusory, but the unredacted versions of their statements provide additional detail in support of this contention, and as noted, the national security-related opinion of qualified government officials is entitled to substantial deference in the classification realm. *See Larson*, 565 F.3d at 864.

EPIC appears to concede that, insofar as the withheld materials concern pen registers, "a pen register is a 'method' of intelligence gathering" (Pl.'s Mot. at 16), but it maintains that the "particular *interpretation* of the FISA pen register provision *by the FISC* is not itself a 'source' or 'method' of intelligence gathering, but a legal judgment" (Pl.'s Mot. at 17 (emphasis added).) This argument misses the mark entirely. The relevant question is not the nature of the withheld information (here, a decision of the FISC and any derivative discussion contained in the SARs), or whether the requested material constitutes a protected form of information in and of itself, but instead whether the withheld information "*pertains to*" an intelligence source or method. E.O. 15,526 § 1.4(c) (emphasis added); *see also ACLU v. CIA*, 109 F. Supp. 3d 220, 236 (D.D.C. 2015) ("Thus, a legal analysis need not constitute an intelligence activity, source, or method by itself to warrant protection so long as it pertains to an intelligence activity, source, or method."), *aff'd sub nom.*, *ACLU v. DOJ*, 640 F. App'x 9 (D.C. Cir. 2016); *N.Y. Times Co. v. DOJ*, 915 F. Supp. 2d 508, 535 (S.D.N.Y. 2013) (finding "no reason why legal analysis cannot be classified pursuant to E.O. 13526 if it pertains to matters that are themselves classified"), *aff'd in part, rev'd in part on other grounds*, 756 F.3d 100 (2d Cir. 2014). And this Court's *in camera* review of the identified SARs withholdings reveals that the withheld material not only broadly pertains to intelligence sources and methods, as both Sherman and Hardy declare, but also (1) reveals details about specific surveillance techniques in the context of summaries of FISC decisions and legal analysis (*see* Document 124 at 3-4; Document 125 at 3–5, 50–52; Document 126 at 56–60; Document 127 at 58–61); (2) discusses particular strengths, weaknesses, and/or potential changes in FISC processes (*see* Document 125, Page 59); (3) describes

the scope of the FISC's jurisdiction as it relates to specific intelligence sources and methods (*see* Document 124 at 47, 50); and provides specific, non-public, factual information regarding NSA signals intelligence methods (*see* Document 129, at 51).

The fourth and final criterion of E.O. 13,256 requires a classification authority to both determine "that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security" and articulate such damage, E.O. 13,526, § 1.1(a), and this Court finds that Sherman and Hardy have made sufficient efforts in this regard. Notably, such an authority's assessment of the harm to national security "need only be both 'plausible' and 'logical' to justify the invocation of a FOIA exemption in the national security context[,]" *ACLU v. U.S. Dep't of Def.*, 628 F.3d 612, 624 (D.C. Cir. 2011) (citing *Wolf v. CIA*, 473 F.3d 370, 374–75 (D.C. Cir. 2007)), and the D.C. Circuit has clarified that:

> "[i]f an agency's statements supporting exemption contain reasonable specificity of detail as to demonstrate that the withheld information logically falls within the claimed exemption and evidence in the record does not suggest otherwise, . . . the [district] court should not conduct a more detailed inquiry to test the agency's judgment and expertise or to evaluate whether the court agrees with the agency's opinions."

*Larson v. Dep't of State*, 565 F.3d 857, 865 (D.C. Cir. 2009).

Without even considering the declarations, it is eminently logical that publicly disclosing the strengths, weaknesses, and/or changes in the FISC's own processes, or the limits of the FISC's jurisdiction, presents a risk that potential targets will alter their behavior to account for the disclosed practices and/or limitations. *See, e.g.*, *Sack v. U.S. Dep't of Def.*, 823 F.3d 687, 695 (D.C. Cir. 2016) (holding that the agency properly withheld reports regarding the use of polygraphs for the purpose of background investigations, when revealing information "pertaining to the strengths of

polygraphs, their weaknesses, or anything else [] would create at least a risk that subversive individuals will be armed with advanced knowledge of the procedures used by the United States to screen applicants for sensitive employment positions and security clearances") (internal quotation marks and citation omitted). Adding to this the Court's review of the classified versions of the Hardy and Sherman Supplemental Declarations, the Court notes that the unredacted declarations contain detailed and logical explanations of the plausible harm that might flow from revealing to potential targets the details about the surveillance methods and techniques that are discussed in the challenged records (*see* Classified Hardy Suppl. Decl. ¶¶ 30–31, 34–36, 39, 43; Classified Sherman Suppl. Decl. ¶¶ 9-11), which is all that criterion four requires.

EPIC's only response is to point to the USA FREEDOM ACT, Pub. L. 114-23, 129 Stat. 268 (*see* Pl.'s Mot. at 11), which is a statute that requires the Director of National Intelligence to "make publicly available to the greatest extent practicable each [] decision, order, or opinion" of the FISC "that includes a significant construction or interpretation of any provision of law[,]" 50 U.S.C. § 1872(a), but this invocation falls far short of rebutting the reasoned assessments that Hardy and Sherman have made. That is, even if Congress has determined that FISC opinions should generally be made public, as EPIC argues, that this is not an iron-clad statutory mandate, for the statute also establishes that the Director of National Intelligence can *waive* this disclosure requirement if he or she determines that waiver "is necessary to protect the national security of the United States or properly classified intelligence sources or methods[.]" 50 U.S.C. § 1872(c). What is more, the FREEDOM ACT was enacted in June 2015— well *after* the reports at issue here were created—and there is nothing to indicate that

Congress intended the statute to apply retroactively to prior FISC decisions. *Cf.*

*Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 37 (2006) ("[I]t has become a rule of

general application that a statute shall not be given retroactive effect unless such

construction is required by explicit language or by necessary implication.") (internal

quotation marks and citation omitted).

Thus, based on its review of both the unredacted SARs and the classified

declarations, this Court finds that the government has established that the material it

redacted from the SARs is properly classified, *see* E.O. 13,256, and therefore can be

withheld under Exemption 1.

2. The Westlaw Printouts Can Be Withheld Under Exemption 1,
Notwithstanding The Fact That This Particular Information Is
Otherwise Publicly Available

The Court has conducted the same four-factor classification analysis with respect

to the Westlaw printouts that are attached to the brief submitted to the FISC. As with

the SARs, there is no question that (1) the government relies upon an Executive order

that permits it to classify national security information, *see id.*, thereby satisfying the

first factor; (2) Hardy has the requisite classification authority and the government

controls the material (*see* Hardy Suppl. Decl. ¶ 2), which satisfies prong two; and (3)

the printouts pertain to the FBI's intelligence methods and activities (*see* Pl.'s Mot. at

17), which satisfies the third prong of the applicable framework.

The parties' dispute thus centers around the risks of harm associated with

disclosure of these printout outs, which are otherwise publicly available on Westlaw.

EPIC maintains that the Westlaw printouts cannot themselves be withheld under

Exemption 1 because their public status dispels any risk of harm from disclosure in this

matter. (*See id.* ("The DOJ's argument that publicly available Westlaw printouts are

also exempt from disclosure reveals the absurdity of the agency's position.").) The government acknowledges that the Westlaw printouts may appear "otherwise innocuous[,]" (*see* Def.'s Opp'n at 13), but it insists that the printouts must be evaluated *in the context in which they exist* for the purpose of the instant FOIA request—i.e., as attachments to a classified brief submitted to the FISC—and, when so viewed, the printouts may properly be withheld as classified (*see id*.). In this regard, the government's core contention is that, "when read or viewed within the context of other available documents and information," even seemingly innocuous, publicly available information can "reveal highly sensitive information to sophisticated adversaries, such as critical details about important investigative methods and techniques used by the FBI in national security investigations." (2d Decl. of David M. Hardy, ECF No. 24, ¶ 37; Mot. Hr'g. Tr. at 29 ("That the MPD here in D.C. may use a pen register trap and trace or some more specific technique under its authority under criminal law to apprehend drug dealers or whoever else here in D.C. is not the same as the FBI acknowledging or confirming that the FBI or the U.S. intelligence community or otherwise uses this authority to interdict or apprehend terrorists[.]").)

In this Court's view, the government has the better of this argument. Indeed, the Executive order that governs classification of information expressly contemplates a situation in which otherwise unclassified materials may nevertheless be deemed classified depending on the context in which they are retrieved—it states that "[c]ompilations of items of information that are individually unclassified may be classified if the compiled information reveals an additional association or relationship that: (1) meets the standards for classification under this order, and (2) is not otherwise

revealed in the individual items of information." E.O. 13,526 § 1.7(e). Furthermore, the D.C. Circuit has long held that, in the context of reviewing classification of information, courts must keep in mind that "[e]ach individual piece of intelligence information, much like a piece of a jigsaw puzzle, may aid in piecing together other bits of information even when the individual piece is not of obvious importance in itself." *Halperin v. CIA*, 629 F.2d 144, 150 (D.C. Cir. 1980); *see also Ctr. for Nat'l Sec. Studies v. DOJ*, 331 F.3d 918, 929 (D.C. Cir. 2003) (holding that the government properly invoked a FOIA exemption to withhold a list of all of the individuals detained in its post-September 11 terrorism investigation, even where some names had already been publicly disclosed, because the compiled list "could be of great use to al Qaeda in plotting future terrorist attacks or intimidating witnesses in the present investigation"); *Taylor v. Dep't of the Army*, 684 F.2d 99, 104–105 (D.C. Cir. 1982) (upholding classification of compilation of information on army combat units even though individual pieces of information were not classified). It is also clear beyond cavil that "[t]hings that d[o] not make sense to the District Judge would make all too much sense to a foreign counter-intelligence specialist who could learn much about this nation's intelligence-gathering capabilities from what these documents revealed about sources and methods." *United States v. Yunis*, 867 F.2d 617, 623 (D.C. Cir. 1989).

Mindful of the deference it must afford to the government in this context, *see Ctr. for Nat'l. Sec. Studies*, 331 F.3d at 929, this Court finds that the government's explanation of the harm that might result from release of the Westlaw printouts, and how such a disclosure could reveal national security information that is not evident from looking at the documents in isolation, is reasonable and sufficient to support its

invocation of Exemption 1. (*See* Mot. Hr'g Tr. at 30 ("[R]eleasing these Westlaw printouts in this context even without the memo to which they were attached . . . would confirm to adversaries of the United States that there was a significant legal interpretation by the FISA court at a certain time involving the specific uses of FISA PR/TT authority that are nonpublic.").) In this regard, the Court accepts the government's assertion that the Westlaw printouts and the main brief to which they are attached are rightfully construed as a single document, and that disclosure of the attachments would elucidate the substance of the main (undeniably classified) document, such that the government is entitled to withhold the attachments themselves. *Mobley*, 924 F. Supp. 2d at 73 (CIA properly withheld documents where, because of the nature of the documents, "revealing even small portions of the documents would tend to reveal the specific information the CIA is seeking to protect." (internal quotation marks and citation omitted)). *Cf. Charles v. Office of the Armed Forces Med. Exam'r*, 979 F. Supp. 2d 35, 45–46 (D.D.C. 2013) (where disclosure of any portion of draft document would reveal agency's protected editorial process, entire document was exempt from disclosure and no portions were reasonably segrable).

### C.     No Reasonably Segregable Information Exists In The Withheld Documents

To the extent that EPIC's argument regarding the government's withholding of the Westlaw printouts can be cast as a general segregability contention (*see* Pl.'s Mot. at 24), the argument misunderstands the unseverable relationship between the classified FISC brief and its attachments, and thus fails for the reasons explained in Part III.B.2 above. EPIC's more pointed assertion that at least some portion of the Westlaw printouts themselves should have been released on segregability grounds (*see* Pl.'s

Opp'n at 18 (arguing that "it is implausible that entire legal opinions would be devoid of reasonably segregable material")) is also misguided, because release of any portion of a Westlaw document carries with it the reasonable risk that anyone with access to public electronic databases such as Lexis and Westlaw could proceed to search for the released language and thereby locate a full copy of the document the government seeks to protect.[5]

As for the SARS, this Court has conducted a careful *in camera* review of the information that the government has withheld as well as its classified supplemental declarations, and it finds that the government has satisfied its obligation "of demonstrating that no reasonably segregable material exists in the withheld documents[.]" *Barouch*, 962 F. Supp. 2d at 56. Stated simply, the SARS redactions are narrowly tailored, and the Court agrees with the government that it is not possible for any additional information to be released without disclosing the very information that the government seeks to protect. *See Mobley*, 924 F. Supp. 2d at 73.

### D. The Government Must Explain Certain Challenged Redactions That Are Not Adequately Addressed In The Supplemental Submissions

All that said, this Court's in camera review revealed certain inconsistencies in the redactions that the government must address. First, the government appears to have mistakenly labeled certain material as *not* being within the Remaining Challenges identified in *EPIC II*, when it appears to fall within the categories of information that

---

[5] EPIC's own brief provides an example of just how such reverse-search-engineering is done. (*See* Pl.'s Opp'n at 7–8 & n.3 (noting that EPIC was able to determine which unnamed district court case the government was discussing in a memorandum submitted to the FISC where that case was the only one "according to a Westlaw search, that includes the same language quoted in the NSD's Verified Memorandum of Law").) Thus, because release of any portion of the case printouts would disclose the exact information that DOJ seeks to protect, no reasonably segregable material exists in the withheld documents. *Barouch*, 962 F. Supp. 2d at 56; *Mobley*, 924 F. Supp. 2d at 73.

are still in dispute.  (*See, e.g.*, pages 53–54 of Document 124, under the heading "Other Legal Interpretations under FISA by the FISC"; page 56 of Document 124, under the heading "FISA Process Improvements"; and page 69 of Document 127, under the heading "FISA Process Improvements.")  Based on its review of the unredacted text, the Court believes that this material may in fact be within the Remaining Challenges, and therefore, the government must either explain why the Court's reading is incorrect, or submit a supplemental declaration that provides an explanation for why the information is exempt from disclosure.

Second, the government has labeled at least one footnote as outside the Remaining Challenges even though the footnote pertains to text that the government admits is within the Remaining Challenges.  (*See* Document 126, page 57.)  The Court will require the government to explain this discrepancy in its supplemental submission, and if the government agrees that the material is within the Remaining Challenges, it must provide a declaration that addresses the text of the footnote and why it is exempt from disclosure.

Third, and finally, on page 59 of Document 127, there is a notation that material is "within the remaining challenged withholdings," even though no redactions appear on the page, and the government will therefore be required to explain the notation that it has made on this page.

## IV.    CONCLUSION

After careful consideration of the parties' briefings and DOJ's ex parte and classified submissions, and as set forth in the accompanying Order, the Court upholds the government's general invocations of Exemptions 1 and 3 to withhold the remaining

items at issue in this lawsuit.  Therefore, as set forth in its Order of September 30, 2017,  DOJ's motion for summary judgment has been **GRANTED IN PART AND DENIED IN PART** and EPIC's motion for summary judgment has been **DENIED** without prejudice with respect to the withholding addressed in the supplemental declarations.

The Court will provide the government with one final opportunity to support the withholdings outlined above in Section III.D, and it will require supplemental submissions as outlined in the Order that accompanies this Memorandum Opinion.


DATE:  November 7, 2017                    *Ketanji Brown Jackson*
                                           KETANJI BROWN JACKSON
                                           United States District Judge